ELECTRONICALLY FILED - 2024 Jul 10 4:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF GREENWOOD** | ) | **EIGHTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| GREENWOOD COMMISSIONERS OF PUBLIC WORKS, | ) | C.A. No.: 2024-CP-24-_____ |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | **SUMMONS** |
| v. | ) | (JURY TRIAL DEMANDED) |
| | ) | |
| CONE MILLS RECEIVER, LLC; OPPERMAN WEBBING, INC.; T&S BRASS AND BRONZE WORKS, INC.; | ) | |
| | ) | |
| | ) | |
| *Defendants*. | ) | |

**TO THE DEFENDANTS ABOVE-NAMED:**

YOU ARE HEREBY SUMMONED and required to answer the Complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to this Complaint upon the subscribers at 291 S. Pine Street, Spartanburg, South Carolina 29302, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the Complaint, judgment by default will be rendered against you for the relief demanded in the Complaint.

*Signature Page Follows*

Respectfully submitted,

*/s/ John B. White. Jr.*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiff*

July 10, 2024

ELECTRONICALLY FILED - 2024 Jul 10 4:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Jul 10 4:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF GREENWOOD** | ) | **EIGHTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| GREENWOOD COMMISSIONERS OF PUBLIC WORKS, | ) | C.A. No.: 2024-CP-24-_____ |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | **COMPLAINT** |
| v. | ) | (JURY TRIAL DEMANDED) |
| | ) | |
| CONE MILLS RECEIVER, LLC; OPPERMAN WEBBING, INC.; T&S BRASS AND BRONZE WORKS, INC.; | ) | |
| | ) | |
| *Defendants.* | ) | |

Plaintiff, GREENWOOD COMMISSIONERS OF PUBLIC WORKS, by and through the undersigned counsel, brings this action against the above-named Defendants for compensatory and punitive damages, injunctive relief, and abatement of a nuisance, and alleges as follows:

## STATEMENT OF THE CASE

1. Plaintiff, Greenwood Commissioners of Public Works, brings this action to address Defendants' ongoing contamination of the Reedy River, Saluda River, Lake Greenwood, and Plaintiff's property with certain toxic per- and polyfluoroalkyl substances ("PFAS"): perfluorooctanoic acid ("PFOA"); perfluorooctanesulfonic acid ("PFOS"); perfluorononanoic acid ("PFNA"); perfluorobutane sulfonate ("PFBS"); perfluorohexane sulfonate ("PFHxS"); and hexafluoropropylene oxide dimer acid ("HFPO-DA" or "GenX Chemicals").

2. Defendants have discharged and continue to discharge products that contain or degrade to these PFAS to the Reedy River, Saluda River, and Lake Greenwood, which travel downstream to Plaintiff's water intakes on Lake Greenwood and contaminate both Plaintiff's

ELECTRONICALLY FILED - 2024 Jul 10 4:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

property and the domestic water supply for nearly 23,500 water customers in Greenwood and Abbeville Counties. Plaintiff seeks a declaratory judgment, injunctive relief, abatement, damages, and an award of costs, including attorneys' fees, for Defendants' repeated and ongoing PFAS contamination.

3.    Plaintiff provides potable water to residents of Greenwood and Abbeville Counties. It is the owner and occupant of riparian land located in Greenwood County on Lake Greenwood, where it owns and operates the W.R. Wise Water Treatment Facility (a surface water treatment plant, or "SWTP") and related buildings, improvements, and equipment that make up its water treatment and distribution system. Plaintiff operates water intakes on Lake Greenwood, from which it draws raw water for treatment in the SWTP before distribution of treated water to its customers.

4.    Defendants own and/or operate industrial facilities upstream of Plaintiff's water intakes and have in the past and/or currently use products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in their industrial processes. Defendants discharge these products to surface waters via certain wastewater treatment plants ("WWTPs") located upstream of Plaintiff's water intakes. These WWTPs include the Mauldin Road WWTP in Greenville, South Carolina and the Piedmont Regional WWTP in Piedmont, South Carolina.

5.    Industrial wastewater from Defendants' facilities contains high levels of PFAS, which cannot be adequately removed by conventional wastewater treatment processes at WWTPs; are discharged to the Reedy and Saluda Rivers; and flow downstream to Plaintiff's water intakes on Lake Greenwood. As a direct and proximate result of Defendants' actions, Plaintiff has suffered losses to the use and enjoyment of its property rights, and Plaintiff's property has been, and will

2

ELECTRONICALLY FILED - 2024 Jul 10 4:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

continuously be, trespassed and damaged by water contaminated with dangerous concentrations of PFAS.

6.     Defendants' PFAS contaminates Plaintiff's water sources at concentrations well exceeding what the U.S. Environmental Protection Agency ("EPA") deems unsafe for consumption. And Plaintiff's existing water treatment processes cannot remove them. Instead, Plaintiff will be required to construct, install, and operate new water treatment technologies to remove, and provide water free from, Defendants' PFAS.

7.     As a result of Defendants' intentional, willful, wanton, reckless, and/or negligent acts and omissions and the nuisance thereby created, maintained, and continued, Plaintiff has suffered injury to its property rights and resulting damages, including compensatory and consequential damages. Plaintiff is also seeking equitable and injunctive relief requiring Defendants to cease discharging PFAS into the Reedy River, Saluda River, and Lake Greenwood; and requiring Defendants to fund the acquisition, installation, and operation of water treatment technologies at Plaintiff's SWTP that will remove Defendants' PFAS from drinking water. In addition, based on Defendants' intentional, willful, wanton, reckless, malicious, and oppressive misconduct, Plaintiff is seeking the recovery of punitive damages.

## DISCLAIMER

8.     Plaintiff makes no assertion of fact concerning, and brings no cause of action based on, the manufacture, sale, distribution, use, or disposal of PFAS associated with aqueous film forming foam ("AFFF"), whether commercial, MilSpec, or other variety. Plaintiff expressly disclaims any causes of action, injury, or damages resulting from the manufacture, sale, distribution, use, or disposal of any AFFF by any Defendant or third-party.

9.     All Plaintiff's causes of action arise under South Carolina law, and Plaintiff brings no cause of action and seeks no relief under federal law or statute.

## JURISDICTION AND VENUE

5.     This Court has subject matter jurisdiction over this action pursuant to Article V of the Constitution of the State of South Carolina and sections 5-31-210, 6-11-1610, and 14-1-80 of the South Carolina Code.

6.     This Court has personal jurisdiction over all Defendants, consistent with due process and South Carolina's long-arm statute, section 36-2-803 of the South Carolina Code.

7.     Venue is properly in this Court pursuant to sections 15-7-10 and -30 of the South Carolina Code because the subject of the action is for injuries sustained to Plaintiff's property located in Greenwood County, and the most substantial part of Defendants' alleged acts or omissions occurred in Greenwood County. *See id.* at § 15-7-30(B) ("If there is more than one defendant, the action may be tried in any county where the action properly may be maintained against one of the defendants pursuant to this section.").

## PARTIES

### I.     Plaintiff

8.     Plaintiff Greenwood Commissioners of Public Works is the duly elected commission authorized to provide potable water and additional public utility services to residents of Greenwood and Abbeville Counties. *See* S.C. Code Ann. § 5-31-210 (1976).

9.     Plaintiff owns land located at 202 Water Plant Road, Greenwood, South Carolina 29649, on which it operates its W.R. Wise SWTP and related buildings, improvements, and

4

ELECTRONICALLY FILED - 2024 Jul 10 4:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

equipment that make up its water treatment and distribution system. Plaintiff's land is riparian to Lake Greenwood, from which it draws water for treatment and provision to its customers.

10.    Plaintiff's SWTP provides potable water for nearly 23,500 customers.

## II.    Defendants

11.    Defendant **Cone Mills Receiver, LLC ("Cone Mills")** is a South Carolina limited liability company and is the receiver for American Fast Print, which purchased and operated the Cone Mills industrial facility in and around 3335 Old Buncombe Road in Greenville, South Carolina. At this facility, Cone Mills used products that contained or degraded to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of products related to the textile industry. As part of its processes, Cone Mills directly or indirectly discharged industrial wastewater contaminated with products that contained or degraded to these PFAS into the Reedy River upstream of Plaintiff's water intakes on Lake Greenwood. The Cone Mills facility also utilized industrial wastewater lagoons contaminated with high levels of these PFAS and/or their precursors alongside the Reedy River. These lagoons currently and continually release contaminated wastewater into the Reedy River upstream of Lake Greenwood. PFAS and/or their precursors from both Cone Mills's legacy discharges and continuing lagoon discharges resist environmental degradation, flow downstream from the Reedy River, and thereby contaminate Plaintiff's properties and its water source.

12.    Defendant **Opperman Webbing, Inc. ("Opperman")** is a South Carolina corporation and operates an industrial facility located at 129 Hollow Drive, Piedmont, South Carolina 29673. There, it uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of webbing products and/or other products. As part of its processes, Opperman's facility discharges industrial wastewater contaminated with

5

ELECTRONICALLY FILED - 2024 Jul 10 4:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Jul 10 4:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

products that contain or degrade to these PFAS to the Piedmont Regional WWTP. The Piedmont Regional WWTP cannot remove Opperman's PFAS, which it discharges into the Saluda River upstream of Lake Greenwood and Plaintiff's water intakes. Opperman's PFAS resist environmental degradation, flow downstream the Saluda River, and thereby contaminate Plaintiff's property and its water source.

13.     Defendant **T&S Brass and Bronze Works, Inc. ("T&S")** is a Delaware corporation with its global headquarters located in South Carolina. T&S maintains an industrial facility located at 2 Saddleback Cove, Travelers Rest, South Carolina 29690. There, it uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of faucets, fittings, and other specialty products. As part of its processes, T&S's plant discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to the Mauldin Road WWTP. The Mauldin Road WWTP cannot remove T&S's PFAS, which it discharges into the Reedy River upstream of Lake Greenwood and Plaintiff's water intakes. T&S's PFAS resist environmental degradation, flow downstream the Reedy River, and thereby contaminate Plaintiff's property and its water source.

## FACTUAL ALLEGATIONS

### I.      Background and Hazards of PFAS

14.      PFAS are a large group of man-made chemicals that do not occur naturally in the environment. Due to their strong carbon-fluorine bonds, PFAS are extremely stable, repel both oil and water, and are resistant to heat and chemical reactions. As a result of these properties, PFAS have a wide variety of industrial, commercial, and consumer applications.

15.     The stable carbon-fluorine bonds that make PFAS pervasive in industrial, commercial, and consumer products also result in their persistence in the environment. They are

6

ELECTRONICALLY FILED - 2024 Jul 10 4:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

colloquially termed "forever chemicals," as terminal PFAS have no known environmental breakdown mechanism, are readily absorbed into biota, and tend to bioaccumulate with repeated exposure.

16.     There are both polymer and non-polymer PFAS. Non-polymer PFAS include well-known substances like PFOA, PFOS, PFHxS, PFNA, PFBS, and HFPO-DA aka GenX Chemicals. Polymer PFAS include fluoropolymers and side-chain fluorinated polymers that are often the active chemistry in PFAS products utilized by Defendants.

17.     There are also both terminal PFAS and their precursors. Precursors may undergo environmental degradation that ultimately results in the formation of terminal PFAS—meaning no further degradation occurs under normal environmental conditions. PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals are all terminal PFAS.

18.     Both polymer and non-polymer PFAS can degrade to terminal PFAS. Generally, terminal PFAS are present in or otherwise form from PFAS products via three primary routes: (1) as a direct byproduct of the manufacturing process; (2) the degradation of precursor PFAS that are byproducts of the manufacturing process; and/or (3) the degradation of polymer PFAS into terminal PFAS and precursor PFAS.

19.     PFAS leach from soil to groundwater and are highly mobile and water soluble, making groundwater and surface water particularly vulnerable to contamination. Therefore, a major source of human exposure to PFAS is through ingestion of contaminated drinking water. Exposure is dose-additive, meaning that exposure to low levels of multiple PFAS, which individually would pose little or no risk, can result in a combined dose capable of causing adverse health effects.

7

ELECTRONICALLY FILED - 2024 Jul 10 4:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

20.    While there are thousands of different PFAS chemicals, current scientific evidence shows that harmful health effects can result from consuming drinking water with any level of PFOA or PFOS, and at certain aggregate levels of PFHxS, PFNA, PFBS, and GenX Chemicals. Depending on the type of PFAS, negative health effects include increased risk of certain types of cancer and adverse impacts on fetal growth and development; reproduction; and on liver, thyroid, immune, cardiovascular, and/or nervous system function.

21.    PFOA and PFOS have been the most widely used PFAS, and they are the most studied by regulators and the scientific community. While some industries voluntarily phased out products containing PFOA and PFOS by 2015, their limited use continues even in the United States. Due to their persistent nature, PFOA and PFOS remain in the environment from decades of legacy industrial use.

22.    Products based on PFAS consisting of shorter fluorinated carbon chains were developed to replace PFOA and PFOS, and they are now used in industrial applications to confer similar properties and characteristics. These "short-chain" PFAS are still bioaccumulative and environmentally persistent, and some short-chain PFAS products nevertheless still contain PFOA and PFOS and their precursors.  Terminal short-chain PFAS include PFHxS, PFNA, PFBS, and GenX Chemicals.

23.    Based on the science available in 2009, EPA published provisional drinking water health advisories for short-term exposure to PFOA and PFOS. U.S.E.P.A., Provisional Health Advisories for Perfluorooctanoic Acid (PFOA) and Perfluorooctane Sulfonate (PFOS) (Jan. 8, 2009), *available at* https://www.epa.gov/sites/default/files/2015-09/documents/pfoa-pfos-provisional.pdf. The advisory levels for PFOA were 400 parts per trillion ("ppt") and 200 ppt for PFOS. In the same publication, EPA reported that it conducted sampling of public drinking water

ELECTRONICALLY FILED - 2024 Jul 10 4:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

in Alabama communities, finding PFOA and PFOS levels lower than 40 ppt. It explained, "Based on its current understanding, EPA believes these levels are not of concern and residents may rely upon public water systems."

24.     On May 16, 2016, due to the evolution of science on the health effects of PFOA and PFOS, EPA published lifetime health advisory levels for each chemical in drinking water. Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate, 81 Fed. Reg. 33250 (May 25, 2016). Superseding 2009 provisional levels, the 2016 levels for PFOA and PFOS were 70 ppt, independently or in the aggregate. EPA explained that its new health advisories "identify the concentration of PFOA and PFOS in drinking water at or below which adverse health effects are not anticipated to occur over a lifetime of exposure."

25.     EPA's 2016 Health Advisories were based on peer-reviewed studies of the effects of PFOA and PFOS on laboratory animals and epidemiological studies of human populations exposed to PFOA and PFOS. These studies indicated that exposure to PFOA and PFOS over certain levels may result in adverse health effects, including developmental defects to fetuses, cancer (testicular, kidney), liver effects, immune effects, thyroid effects, and other adverse effects. But based on its review of the science, EPA stated that its analysis indicated exposure to PFOA and PFOS at or below health advisory levels "will not result in adverse health effects (including cancer and non-cancer) to the general population over a lifetime (or any shorter period) of exposure to these chemicals." *Id.*

26.     On June 15, 2022, EPA again updated health advisory levels for PFOA and PFOS on an interim basis, which replaced 2016 advisory levels. Lifetime Drinking Water Health Advisories for Four Perfluoroalkyl Substances, 87 Fed. Reg. 36848 (June 21, 2022). EPA

explained that updated human epidemiological data indicated "that the level at which negative health effects could occur are much lower than previously understood when the agency issued its 2016 health advisories for PFOA and PFOS"—finding "associations between PFOA and/or PFOS exposure and effects on the immune system, the cardiovascular system, development (e.g., decreased birth weight), and cancer." *Id.* Concerned with the public health implications of its data, EPA issued interim levels pending determination of maximum contaminant levels and maximum contaminant level goals. The interim levels were 0.004 ppt for PFOA and 0.02 ppt for PFOS.

27.    Simultaneously, EPA also issued health advisories for the first time covering PFBS and GenX Chemicals. EPA reported that "GenX Chemicals have been linked to health effects on the liver, the kidney, the immune system, and developmental effects, as well as cancer." *Id.* For PFBS, it noted studies indicating health effects on the thyroid, reproductive system, development, and kidney. Based on its 2021 toxicity studies for these chemicals, EPA released final health advisories for each: GenX Chemicals at 10 ppt and PFBS at 2,000 ppt.

28.    In March of 2023, EPA issued proposed maximum contaminant level ("MCL")s and maximum contaminant level goal ("MCLG")s for PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals. PFAS Nat'l Primary Drinking Water Regulation Rulemaking, 88 Fed. Reg. 18638 (Mar. 29, 2023) (to be codified at 40 C.F.R. pt. 141, 142). An MCLG is the maximum level of a contaminant in drinking water at which no known or anticipated adverse effect on the health of persons would occur, allowing an adequate margin of safety. An MCL is the maximum allowable level of a contaminant that may be delivered to any user of a public water system and is based on the feasibility of existing technology to detect PFAS at a threshold level.

29.    At that time, EPA announced that, "[f]ollowing a systematic review of available human epidemiological and animal toxicity studies, EPA has determined that PFOA and PFOS are

10

ELECTRONICALLY FILED - 2024 Jul 10 4:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Jul 10 4:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

likely to cause cancer (e.g., kidney and liver cancer) and that there is no dose below which either chemical is considered safe." *Id.* Therefore, it proposed MCLG levels for both chemicals at zero ppt. Enforceable MCL levels for each chemical were proposed at 4 ppt. According to EPA, "[a]ny exceedance of this limit requires action to protect public health, regardless of any mixture in which they are found." *Id.*

30.     Due to their toxic effects, dose additivity, and presence in drinking water, EPA proposed a hazard index approach covering mixtures of PFHxS, PFNA, PFBS, and GenX Chemicals. The hazard index is the sum of each PFAS's "hazard quotient." Hazard quotients are first calculated by dividing the applicable PFAS's "exposure metric" (i.e., concentration in drinking water) by its "health reference value" (PFHxS: 9 ppt; GenX Chemicals: 10 ppt; PFNA: 10 ppt; PFBS: 2,000 ppt). If the sum of each's hazard quotient is below 1.0, then it "represents a level at which no known or anticipated adverse effects on the health of persons is expected to occur and which allows for an adequate margin of safety." *Id.* If greater than 1.0, then "potential risk is indicated." *Id.*

31.     EPA stated that, once its proposed MCLs became final, it would "save thousands of lives and prevent tens of thousands of avoidable illnesses." U.S.E.P.A., *EPA Releases Annual Report Showing Steady Progress to Protect Communities from PFAS Pollution* (Dec. 14, 2023), *available at* https://www.epa.gov/newsreleases/epa-releases-annual-report-showing-steady-progress-protect-communities-pfas-pollution.

32.     EPA finalized its proposed MCLs and MCLGs on April 10, 2024. U.S.E.P.A., *PFAS Nat'l Primary Drinking Water Regulation Rulemaking* (Apr. 10, 2024), *available at* https://www.epa.gov/system/files/documents/2024-04/pfas-npdwr_prepubfederalregisternotice_4.8.24.pdf (pre-publication version). In accompanying publications, EPA declared, "The science

11

is clear: exposure to these six PFAS is linked to significant health risks" that include "certain cancers and heart impacts in adults, and immune and developmental impacts in infants and children." U.S.E.P.A., *Frequently Asked Questions and Answers: Final PFAS Nat'l Drinking Water Regulation* (Apr. 10, 2024); *see also* U.S.E.P.A., Final PFAS Nat'l Drinking Water Regulation Landing Page, http://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas (providing links to EPA PFAS regulation publications).

33.     The final regulation solidifies MCLs of 4.0 ppt for PFOA and PFOS and 10.0 ppt for PFNA, PFHxS, and GenX Chemicals, including a Hazard Index that covers mixtures of PFBS with PFNA, PFHxS, and GenX Chemicals. It also enshrines MCLGs of zero ppt for PFOA and PFOS, which EPA states "reflects the latest science showing that there is no level of exposure to these two PFAS without risk of health impacts." U.S.E.P.A., *Presentation: Overview EPA PFAS NPDWR* (Apr. 10, 2024). According to EPA, "[t]he more you reduce your exposure to PFAS, the more you reduce your risk." U.S.E.P.A., *Frequently Asked Questions and Answers: Final PFAS Nat'l Drinking Water Regulation* (Apr. 10, 2024).

34.     EPA's final regulations mandate several new obligations regarding PFAS, including the implementation of solutions to reduce regulated PFAS concentrations in the drinking water that Plaintiff distributes, maintenance of ongoing compliance monitoring, and informing the public of PFAS levels in the water and of any violations. By 2027, Plaintiff must begin conducting and reporting regular PFAS monitoring, and by 2029, Plaintiff must comply with all MCLs.

## II.     Contamination of Lake Greenwood and Plaintiff's Water Supply with PFAS

35.     Lake Greenwood was formed in the late 1930s from the construction of a hydroelectric dam downstream of the confluence of the Saluda and Reedy Rivers. Both rivers flow

ELECTRONICALLY FILED - 2024 Jul 10 4:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Jul 10 4:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

southeast through Greenville, South Carolina and, from there, feed Lake Greenwood roughly 35 miles downstream.

36.     The Mauldin Road and Piedmont Regional WWTPs operate on the Reedy and Saluda Rivers upstream of Lake Greenwood and Plaintiff's SWTP and water intakes.

37.     PFAS sampling of the Saluda River, Reedy River, and Lake Greenwood confirms the presence of PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals throughout these bodies of water, and they exist at high levels at Plaintiff's water intakes. Indeed, sampling at Plaintiff's water intakes confirm the presence of PFOA and PFOS at concentrations much higher than what EPA deems unsafe for consumption. Defendants are the source.

38.     Defendants are owners and operators of manufacturing plants, related industrial facilities, and/or waste disposal services near Greenwood County. In their industrial processes, Defendants utilize products that contain or degrade to PFOS, PFOA, PFHxS, PFNA, PFBS, and/or GenX Chemicals. Defendants' industrial processes generate industrial wastewater containing these PFAS chemicals and/or their precursors, which they discharge to either the Mauldin Road or Piedmont Regional WWTP.

39.     The Mauldin Road WWTP utilizes conventional wastewater treatment methods to treat wastewater, which are unable to remove PFAS. After treatment, the Mauldin Road WWTP discharges water contaminated with Defendants' products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals into the Reedy River upstream of Lake Greenwood. These PFAS and their precursors flow downstream to Plaintiff's water intakes on Lake Greenwood, damaging Plaintiff's property and contaminating its water source.

40.     The Piedmont Regional WWTP utilizes conventional wastewater treatment methods to treat wastewater, which are unable to remove PFAS. After treatment, the Piedmont

13

ELECTRONICALLY FILED - 2024 Jul 10 4:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Regional WWTP discharges water contaminated with Defendants' products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals into the Saluda River upstream of Lake Greenwood. These PFAS and their precursors flow downstream to Plaintiff's water intakes on Lake Greenwood, damaging Plaintiff's property and contaminating its water source.

41.     Defendants knew or should have known that these WWTPs utilize conventional treatment methods for wastewater that cannot remove Defendants' PFAS. All Defendants also know or should have known that the WWTPs discharge treated effluent contaminated with their PFAS chemicals to the rivers, contaminating the water that Plaintiff draws for its customers.

**III.     Defendants have harmed Plaintiff and Plaintiff's community.**

42.     Defendants have for decades discharged PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and their precursors into the Reedy River, Saluda River, and Lake Greenwood, which have caused, and continue to cause, contamination of these waters with PFAS chemicals exceeding EPA's current health advisories, MCLGs, and MCLs. Indeed, absent new treatment technologies, Plaintiff cannot use its property and property rights to provide water that is either free of all PFOA and PFOS, or compliant with EPA's MCLs.

43.     Defendants' conduct has proximately caused the contamination of the Reedy River; Saluda River; Lake Greenwood; and of Plaintiff's land, its SWTP, and its water treatment and distribution system with PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals, including PFOA and PFOS at concentrations well above EPA's current MCLGs and MCLs.

44.     Defendants, individually and acting through their employees and agents, and in concert with each other, have knowingly, intentionally, recklessly, and/or negligently engaged in conduct or omissions that proximately caused unreasonable interference with Plaintiff's right to

14

ELECTRONICALLY FILED - 2024 Jul 10 4:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

use and enjoy its property, its right to use the water of Lake Greenwood, and has caused Plaintiff additional past, present, and future injury to property.

45.　　Despite knowing that there is no safe dose for PFOA or PFOS, and that PFHxS, PFNA, PFBS, and GenX Chemicals are hazardous to human health, Defendants, directly or indirectly, discharged industrial wastewater contaminated with these chemicals into the Reedy River, Saluda River, and Lake Greenwood, which they knew or should have known contaminated Plaintiff's property and its water supply.

## FIRST CAUSE OF ACTION

### Private Nuisance

46.　　Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

47.　　Plaintiff is a governmental entity that operates a water treatment plant and water distribution system for the purpose of producing and supplying safe potable water for residents of Greenwood and Abbeville Counties. It uses its properties to effectuate that purpose, including the withdrawal of raw water from Lake Greenwood, the treatment of raw water, and the distribution of treated water to its customers.

48.　　Plaintiff is a riparian landowner of property abutting Lake Greenwood in Greenwood County, South Carolina, and Plaintiff has a property right in the reasonable use of the water, including for its provision to customers.

49.　　Through the conduct described herein, Defendants created, contributed to, and/or maintained a nuisance; that is, the contamination of the Reedy River, Saluda River, and Lake Greenwood with PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals at concentrations far exceeding those EPA deems unsafe for consumption.

15

ELECTRONICALLY FILED - 2024 Jul 10 4:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

50.     Due to Defendants' contamination, Plaintiff cannot provide water to its customers without PFAS, or even at PFAS concentrations that comply with EPA's MCLs, without installing new water treatment technology.

51.     Defendants' contamination caused, contributed to, and/or maintains a nuisance that substantially and unreasonably interferes with Plaintiff's use and enjoyment of its property, interferes with Plaintiff's property and its riparian rights, damages Plaintiff's property, and causes Plaintiff additional inconvenience, annoyance, and harm.

52.     Defendants, individually and acting through their employees and agents, and in concert with each other, have knowingly, intentionally, recklessly, and/or negligently engaged in conduct that unreasonably interferes with Plaintiff's property rights.

53.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered, now suffers, and will continue to suffer damages related to Defendants' contamination of the Reedy River, Saluda River, Lake Greenwood, and Plaintiff's property, including loss in value, the cost of removing Defendants' PFAS, and other damages to be proved at trial.

54.     In addition to its claims for damages, Plaintiff is entitled to injunctive and/or equitable relief to abate the nuisance created, contributed to, and maintained by Defendants.

55.     The ongoing contamination of the Reedy River, Saluda River, Lake Greenwood, and Plaintiff's property constitutes a continuing irreparable injury for which there is no adequate remedy at law. Plaintiff requests that this Court issue an order and decree requiring Defendants to take all steps necessary to prevent further discharge of PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals and to fund the measures necessary to prevent these PFAS from continuing to interfere with Plaintiff's use and enjoyment of its land and its riparian use of Lake Greenwood to supply potable water to its customers.

16

ELECTRONICALLY FILED - 2024 Jul 10 4:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

56.     Defendants' interference with Plaintiff's use of its property can be abated by methods that include, but are not limited to:

(a)     ceasing Defendants' discharges of products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to surface waters; and

(b)     funding the acquisition, installation, and operation of new water treatment technology at Plaintiff's SWTP to remove legacy PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemical contamination.

57.     Defendants are jointly and severally liable to Plaintiffs for all damages resulting from this nuisance, and the costs of its abatement, in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

## SECOND CAUSE OF ACTION

### Public Nuisance

58.     Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

59.     Plaintiff is a governmental entity that operates a water treatment plant and water distribution system for the purpose of providing and supplying safe potable water for residents of Greenwood County. It uses its properties to effectuate that purpose, including the withdrawal of raw water from Lake Greenwood, the treatment of raw water, and the distribution of treated water to customers in Greenwood County.

60.     Plaintiff's customers use the water Plaintiff provides for many purposes, including drinking, cooking, bathing, cleaning, washing, and watering plants and gardens.

61.     Plaintiffs' customers, and indeed all residents in Plaintiff's community, have a right to potable water that is reasonably pure and safe for their use—and thus free from contamination by Defendants' PFOA, PFOS, PFNA, PFHxS, PFBS, and GenX Chemicals. Defendants'

17

ELECTRONICALLY FILED - 2024 Jul 10 4:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

contamination unreasonably interferes with, disrupts, and threatens public health, safety, and order. Indeed, EPA makes clear that there is no safe dose for consuming PFOA and PFOS.

62.     Plaintiff has sustained special injuries as a result of Defendants' public nuisance, including but not limited to, the lost use of its property; inability to provide safe potable water to customers without unsafe concentrations of PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals; expenses associated with future acquisition, installation, and operation of required treatment technologies to remove unsafe concentrations of these PFAS from water; expenses incurred in discovering and identifying sources of Defendants' contamination; interference with Plaintiff's riparian right to use Lake Greenwood; interference with the use of Plaintiff's SWTP and water treatment and distribution system; and lost revenue.

63.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered, now suffers, and will continue to suffer special injury and damages related to Defendants' contamination of the Reedy River, Saluda River, Lake Greenwood, and Plaintiff's property.

64.     Defendants, individually and acting through their employees and agents, and in concert with each other, have knowingly, intentionally, recklessly, and/or negligently engaged in conduct that unreasonably interferes with Plaintiff's property rights and endangered the health of Plaintiff's customers, consumers of Plaintiff's drinking water, and Plaintiff's community.

65.     As a result of the nuisance caused by Defendants, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including loss in value, the cost of removing Defendants' PFAS, and other damages to be proved at trial.

66.     In addition to its claims for damages, Plaintiff is entitled to injunctive and/or equitable relief to abate the nuisance created, contributed to, and maintained by Defendants.

ELECTRONICALLY FILED - 2024 Jul 10 4:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

67.     Defendants' ongoing contamination constitutes a continuing threat to public health, safety, and order, and it constitutes irreparable injury for which there is no adequate remedy at law. Plaintiff requests that this Court issue an order and decree requiring Defendants to take all steps necessary to prevent further discharge of PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals and to fund the measures necessary to prevent these PFAS from continuing to threaten public health and safety and ensure that Plaintiff's customers and residents of Plaintiff's community receive water free from PFAS.

68.     Defendants' contamination of potable water with unsafe concentrations of PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals can be abated by methods that include, but are not limited to:

(a)     ceasing Defendants' direct and indirect discharges of products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to surface waters; and

(b)     requiring Defendants to fund the acquisition, installation, and operation of new water treatment technology at Plaintiff's SWTP to remove legacy PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemical contamination.

69.     Defendants are jointly and severally liable to Plaintiffs for all damages resulting from this nuisance, and the costs of abatement, in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

### THIRD CAUSE OF ACTION

**Trespass**

70.     Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

19

ELECTRONICALLY FILED - 2024 Jul 10 4:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

71.     Plaintiff owns, possesses, and actively exercises its right to use its land, SWTP, and related buildings, improvements, and equipment that make up its water treatment and distribution system.

72.     Defendants intentionally discharged and continue to discharge PFAS to the Mauldin Road and Piedmont Regional WWTPs notwithstanding that they knew and/or reasonably should have known that:

(a)     these WWTPs cannot remove their PFAS from wastewater before discharging to the Reedy and Saluda Rivers;

(b)     Plaintiff draws water from Lake Greenwood for provision of safe potable water to its customers;

(c)     the water Plaintiff draws from Lake Greenwood is contaminated with the PFAS the Defendants discharge to these WWTPs; and, thereby,

(d)     water contaminated with high concentrations of Defendants' PFAS invades Plaintiff's properties.

73.     Plaintiff has not consented to, and does not consent to, the invasion of its properties by water contaminated with PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals at concentrations exceeding EPA's MCLs and MCLGs and well beyond what EPA deems unsafe for consumption.

74.     Defendants' invasions of Plaintiff's properties are continuing and ongoing, and each separate invasion of PFAS-contaminated water constitutes a new trespass each time Plaintiff's water pumps are active.

75.     Defendants intend that, while using PFAS in their industrial processes, PFAS-containing wastewater generated by those processes be discharged to the Mauldin Road and

20

ELECTRONICALLY FILED - 2024 Jul 10 4:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Piedmont Regional WWTPs. Defendants' conduct is wanton, willful, and in reckless disregard of Plaintiff's property and riparian rights.

76.     Defendants' conduct is the actual and proximate cause of the invasion of PFAS-contaminated water into Plaintiff's properties, including its land, SWTP, and related buildings, improvements, and equipment that make up its water treatment and distribution system. The damage to Plaintiff's properties is the direct and proximate result of Defendants' intentional conduct.

77.     As a direct, proximate, and foreseeable result of Defendants' trespasses, Plaintiff has suffered, now suffers, and will continue to suffer invasion of its property rights and damages, including loss in value, the cost of removing Defendants' PFAS, and other damages to be proved at trial.

78.     Defendants' ongoing trespasses can be abated by, among other measures, ceasing all discharges of PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors to the Reedy River, Saluda River, and Lake Greenwood. In addition to compensatory and punitive damages, Plaintiff requests a permanent injunction prohibiting this conduct.

## FOURTH CAUSE OF ACTION

### Negligence, Gross Negligence, and/or Recklessness

79.     Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

80.     Defendants have a duty to use due care in the handling, use, and disposal of products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to avoid causing an unreasonable risk of harm to others, which includes preventing the direct and/or indirect discharge of these PFAS into the Reedy River, Saluda River, and Lake Greenwood, thereby interfering with Plaintiff's property rights and injuring Plaintiff's property.

21

81.    Defendants knew or should have known that the PFAS they discharged were environmentally persistent, bioaccumulative, and dose-additive, that conventional wastewater treatment technologies utilized by their wastewater treatment facilities could not remove their PFAS, and that surface waters—including the Reedy River, Saluda River, and Lake Greenwood—were vulnerable to the contamination that has taken and now takes place.

82.    Defendants nonetheless negligently, recklessly, wantonly, and/or willfully breached their duty in causing products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to escape their premises and contaminate the Reedy River, Saluda River, and Lake Greenwood, thereby interfering with Plaintiff's property rights and injuring Plaintiff's property.

83.    As a direct, proximate, and foreseeable result of Defendants' conduct, practices, actions, omissions, and inactions, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including but not limited to loss in value, the cost of removing Defendants' PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals, future costs of acquiring, installing, and operating adequate water treatment technologies, and other damages to be proved at trial.

84.    Defendants are jointly and severally liable to Plaintiffs for all damages resulting from their conduct, practices, actions, omissions, and inactions, in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands trial by jury, and respectfully request that the Court grant the following relief:

ELECTRONICALLY FILED - 2024 Jul 10 4:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Jul 10 4:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

(a)     Enter a judgment and decree against all Defendants enjoining them from maintaining the nuisance they have caused, created, and maintained;

(b)     Enter a judgment and decree against all Defendants, jointly and severally, requiring them to abate the nuisance they have caused, created, and maintained;

(c)     Enter a judgment and decree against all Defendants enjoining them from continuing their trespasses onto Plaintiff's property;

(d)     Enter a judgment and decree against all Defendants, jointly and severally, requiring them to cease the discharge or release of products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals into rivers, streams, and/or tributaries where they contaminate Plaintiff's water supply in Lake Greenwood;

(e)     Enter a judgment and decree against all Defendants, jointly and severally, requiring them to remove their PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX chemicals from Plaintiff's water system by funding the acquisition, installation, and operation of treatment technology capable of removing them;

(f)     Enter a judgment and decree against all Defendants, jointly and severally, requiring them to prevent the release of PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals into rivers, streams, and tributaries that contaminate Plaintiff's water system;

(g)     Enter a judgment against all Defendants, jointly and severally, for past, present, and future compensatory damages in such amounts as the evidence shows Plaintiff to be justly entitled to recover, including interest and reasonable attorneys' fees and litigation expenses, and punitive damages, as applicable, in an amount sufficient to punish and penalize Defendants, and deter them from repeating their wrongful conduct, and all costs; and

(h)     Award such other relief and further relief as this Court deems just, proper, and equitable.

Respectfully submitted,

*/s/ John B. White. Jr.*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiff*

July 10, 2024

ELECTRONICALLY FILED - 2024 Jul 10 4:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

STATE OF SOUTH CAROLINA

COUNTY OF GREENWOOD

IN THE COURT OF COMMON PLEAS

FOR THE EIGHTH JUDICIAL CIRCUIT

Greenwood Commissioners of Public Works,

Plaintiff,

v.

Cone Mills Receiver, LLC; Opperman Webbing, Inc.; T&S Brass and Bronze Works, Inc.,

Defendants.

C.A. No. 2024-CP-24-00735

**ACCEPTANCE OF SERVICE ON BEHALF OF CONE MILLS RECEIVER, LLC**

Pursuant to Rule 4(j), SCRCP, I hereby accept and acknowledge service and my receipt via email of the Summons and Complaint in the above captioned matter on behalf of Defendant Cone Mills Receiver, LLC, effective this __15th__ Day of July, 2024.

_____
Dr. Kelly D. H. Lowry
The Law Firm of Lowry and Associates, LLC
P.O. Drawer 750
White Stone, SC 29386
kelly@lowryandassociates.com

ELECTRONICALLY FILED - 2024 Jul 16 10:26 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Jul 25 5:07 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

## AFFIDAVIT OF SERVICE

**State of SC**                    **County of Greenwood**                    **Common Pleas Court**

Case Number: 2024-CP-24-00735

Plaintiff:
**Greenwood Commissioners of Public Works**

vs.

Defendant:
**Opperman Webbing Inc.**

For:
John B White Jr. PA
Po Box 2465
Spartanburg, SC 29304

Received by Upstate Private Investigators to be served on **Registered Agent Sherry M Kelly, 129 Hollow Drive, Piedmont, SC 29673**.

I, Beth Hawkins, being duly sworn, depose and say that on the **25th day of July, 2024** at **2:25 pm**, I:

**INDIVIDUALLY/PERSONALLY** served by delivering a true copy of the **Letter to Registered Agent and Summons and Complaint** with the date and hour of service endorsed thereon by me, to: **Registered Agent Sherry M Kelly** at the address of: **129 Hollow Drive, Piedmont, SC 29673**, and informed said person of the contents therein, in compliance with state statutes.

I certify that I am over the age of 18, have no interest in the above action, and am a Certified Process Server, in good standing, in the judicial circuit in which the process was served.

Subscribed and Sworn to before me on the 25th day of July 20 24 by the affiant who is personally known to me.

_____
NOTARY PUBLIC

My Commission Expires:
8·14·29

**Beth Hawkins**
Process Server

**Upstate Private Investigators**
**PO Box 2522**
**Anderson, SC 29622**
**(864) 940-3393**

Our Job Serial Number: UPI-2024000221
Ref: 2024-CP-30-00735

Copyright © 1992-2024 DreamBuilt Software, Inc. - Process Server's Toolbox V9.0a

ELECTRONICALLY FILED - 2024 Jul 30 2:03 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

STATE OF SOUTH CAROLINA

COUNTY OF GREENWOOD

IN THE COURT OF COMMON PLEAS

FOR THE EIGHTH JUDICIAL CIRCUIT

GREENWOOD COMMISSIONERS OF
PUBLIC WORKS,

Plaintiff,

v.

CONE MILLS RECEIVER, LLC *et al.*,

Defendants.

CASE NO. 2024-CP-24-00735

**PLAINTIFF'S NOTICE OF FILING
OF MOTION TO ASSIGN SINGLE
JUDGE IN SOUTH CAROLINA
SUPREME COURT**

Plaintiff Greenwood Commissioners of Public Works hereby provides notice to the Court that on July 24, 2024, it filed the attached Motion to Assign Single Judge in the South Carolina Supreme Court, wherein Plaintiff seeks the assignment of a single circuit court judge to preside over all pending PFAS-related cases, as well as any future related actions, and vesting that judge with jurisdiction in all circuits to dispose of pretrial matters, motions, and trials.

Respectfully submitted,

 _/s/ John B. White, Jr.____
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
JOHN B. WHITE, JR. P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com

*Counsel for Plaintiff*

July 30, 2024

1

ELECTRONICALLY FILED - 2024 Jul 30 2:03 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

THE STATE OF SOUTH CAROLINA
In the Supreme Court

**RECEIVED**

**Jul 24 2024**

S.C. SUPREME COURT

_____

Spartanburg County
C.A. No. 2024-CP-42-02480
_____

Woodruff-Roebuck Water District ................................................................... Plaintiff,

v.

AFL Telecommunications, LLC *et al.*........................................................... Defendants.

_____

Greenwood County
C.A. No. 2024-CP-24-00735
_____

Greenwood Commissioners of Public Works.................................................... Plaintiff,

v.

Cone Mills Receiver, LLC *et al.*.................................................................. Defendants.

_____

Laurens County
C.A. No. 2024-CP-30-00734
_____

Laurens County Water and Sewer Commission ................................................ Plaintiff,

v.

Cone Mills Receiver, LLC *et al.*.................................................................. Defendants.

ELECTRONICALLY FILED - 2024 Jul 30 2:03 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

---

## MOTION TO ASSIGN A SINGLE JUDGE

---

Plaintiffs in the above-captioned cases, by and through their undersigned counsel, respectfully request that Chief Justice Beatty, Chief Justice of the South Carolina Supreme Court, pursuant to his authority vested by Article V, section 4 of the South Carolina Constitution, issue an order assigning all pending PFAS-related cases filed by publicly owned drinking water providers in circuit courts,[1] as well as any future related actions,[2] to a single judge for pretrial proceedings, trial, and adjudication and vest that judge with jurisdiction to dispose of such matters in all circuits in the State of South Carolina.[3]

Plaintiffs seek assignment of these cases to a single judge because they involve many common questions of law, and some of the cases will present common questions of fact. Having one judge preside over these cases will conserve judicial and party resources, eliminate duplicative discovery practice, avoid conflicting pretrial rulings, and promote a more just and efficient resolution of this litigation. Relatedly, this will ensure continuity in pretrial rulings regarding

---

[1] *Woodruff-Roebuck Water Dist. v. AFL Telecomms., LLC et al.*, C.A. No. 2024-CP-42-02480 (Spartanburg Cnty. Ct. Comm. Pleas, filed June 18, 2024); *Greenwood Comm'rs of Pub. Works v. Cone Mills Receiver, LLC et al.*, C.A. No. 2024-CP-24-00735 (Greenwood Cnty. Ct. Comm. Pleas, filed July 10, 2024; *Laurens Cnty. Water & Sewer Comm'n v. Cone Mills Receiver, LLC et al.*, C.A. No. 2024-CP-30-00734 (Laurens Cnty. Ct. Comm. Pleas, filed July 16, 2024).

[2] Many additional cases will be filed in the circuit courts in other counties across the State, further warranting the assignment of a single judge.

[3] By bringing this motion for assignment of a single judge to preside over discovery, motions, other pretrial matters, and trial, Plaintiffs do not waive their right to independently litigate their respective cases, nor do they waive their right to a jury trial on each of their cases in their respective counties.

ELECTRONICALLY FILED - 2024 Jul 30 2:03 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

similar parties, witnesses, and pretrial matters, and will avoid further unnecessary and duplicative efforts by courts and counsel.

## BACKGROUND

Three PFAS-related cases are currently pending in circuit courts throughout the State, and counsel anticipates additional cases to be forthcoming. Plaintiffs are South Carolina special purpose districts and municipalities that provide drinking water to individuals, businesses, and other entities, and they are suing various Defendants to hold them responsible for contaminating Plaintiffs' property and source water with certain toxic per- and polyfluoroalkyl substances, which are collectively referred to as "PFAS" chemicals.[4] Through these cases, Plaintiffs seek to recoup monies and costs they will be required to spend to remove PFAS from their drinking water supplies that resulted from Defendants' contamination. The complaints all seek compensatory and punitive damages, as well as abatement and injunctive relief, under various South Carolina statutory and common law causes of action, including: (1) private nuisance; (2) public nuisance; (3) trespass; and (4) negligence, gross negligence, and/or recklessness. The various Defendants named in Plaintiffs' complaints own and/or operate industrial facilities upstream of Plaintiffs' water intakes and have in the past and/or currently use products that contain or degrade to certain PFAS chemicals in their industrial processes.

---

[4] PFAS are a large group of manmade chemicals that do not occur naturally in the environment. Due to their strong carbon-fluorine bonds, PFAS are extremely stable, repel both oil and water, and are resistant to heat and chemical reactions. As a result of these properties, PFAS have been used in a wide variety of industrial and chemical applications, but they persist in the environment and have no known environmental breakdown mechanism. PFAS are colloquially termed "forever chemicals."

ELECTRONICALLY FILED - 2024 Jul 30 2:03 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**ARGUMENT**

### A.     The Nature of the Cases

The PFAS-related lawsuits brought by public water systems that provide drinking water to the citizens of South Carolina are of significant public interest. Current scientific evidence shows that PFAS can cause harmful health effects, and a major source of human exposure to PFAS is through ingestion of contaminated drinking water. On April 10, 2024, the U.S. Environmental Protection Agency ("EPA") finalized new maximum contaminant levels ("MCLs") and maximum contaminant level goals ("MCLGs") for certain types of PFAS chemicals in publicly supplied drinking water. While an MCLG is the maximum level of a contaminant in drinking water at which no known or anticipated adverse human health effects will occur and is a goal, the MCL is an enforceable limit delineating the maximum allowable level of a contaminant in the drinking water supplied by a public water system.[5] EPA's new PFAS MCLs will require public water systems such as Plaintiffs to conduct ongoing compliance monitoring, inform the public of PFAS levels in their water, and ultimately implement solutions to reduce regulated PFAS concentrations in the drinking water they distribute.[6]

Plaintiffs' water sources have been contaminated by the various Defendants with PFAS at concentrations above EPA's new requirements. Plaintiffs' existing water treatment processes

---

[5] EPA's final regulation solidifies MCLs of 4.0 parts per trillion ("ppt") for PFOA and PFOS, and 10.0 ppt for PFNA, PFHxS, and GenX Chemicals, including a Hazard Index that covers mixtures of PFBS with PFNA, PFHxS, and GenX Chemicals. It also establishes MCLGs of zero ppt for PFOA and PFOS, which EPA states "reflects the latest science showing that there is no level of exposure to these two PFAS without risk of health impacts." U.S.E.P.A., *Presentation: Overview EPA PFAS NPDWR* (Apr. 10, 2024).

[6] Plaintiffs must begin conducting and reporting regular PFAS monitoring by 2027, and Plaintiffs must comply with all MCLs by 2029.

ELECTRONICALLY FILED - 2024 Jul 30 2:03 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

cannot remove PFAS from their drinking water.  Plaintiffs must therefore evaluate and implement new technologies to remove PFAS. In doing so, Plaintiffs will be required to incur significant costs—both over the next five years and for decades to come—to comply with the new MCLs and/or MCLGs and to protect the health of those who consume their drinking water. Rather than requiring their ratepayers—the individuals, businesses, and other entities in South Carolina that purchase drinking water—to fund those increased costs, Plaintiffs have brought these lawsuits against Defendants, which contaminated their water sources, to hold them responsible for funding the engineering, acquisition, installation, operation, and maintenance of water treatment technologies that will remove PFAS from drinking water at Plaintiffs' water treatment plants.[7]

B.      **The Benefits of Assigning a Single Judge**

The purpose of assigning similar cases such as the PFAS-related cases referenced in this Motion (collectively, the "PFAS Litigation") to a single judge is to eliminate inconsistent pretrial rulings and to promote judicial economy for both the parties and the court system. While judicial assignment is discretionary in nature, such action is warranted here because these cases will share several common questions of law and fact. *See* S.C. Const. art. V, § 4; Rule 42(a), SCRCP. Specifically, these cases all arise from the PFAS contamination of Plaintiffs' drinking water sources by Defendants that have discharged PFAS to South Carolina surface waters. They also allege similar causes of action against multiple Defendants. Given the nature of the cases and the parties involved, Plaintiffs anticipate complex and voluminous discovery, which will invite some overlapping witnesses, depositions, discovery issues, and motions. Assigning one judge to preside

---

[7] Plaintiffs are not making any factual assertions and bring no causes of action based on the manufacture, sale, distribution, use, or disposal of PFAS associated with aqueous film forming foam ("AFFF"), whether commercial, MilSpec, or any other variety. Plaintiffs expressly disclaim any causes of action, injury, or damages resulting from the manufacture, sale, distribution, use, or disposal of any AFFF by any Defendant or third party.

over these matters will avoid conflicting rulings, preserve judicial resources, reduce unnecessary hardship to the parties, and otherwise promote a just and efficient result in these cases.

The Chief Justice has previously ordered assignment to a single judge in similar litigation. For example, when multiple South Carolina political subdivisions filed opioid lawsuits in state court, the Chief Justice entered an order "assigning a single circuit judge to dispose of all matters arising out of the opioid litigation" and ordering consolidation for pretrial purposes, but not for trial, after finding that doing so would "promote the effective and expeditious disposition of th[e] litigation through uniform rulings" and "conserve the resources of the parties, their counsel, and the judiciary." *RE: Opioid Litigation*, Order No. 2018-08-23-01. Additionally, the asbestosis and asbestos litigation filed in South Carolina's circuit courts has for many years been assigned to a single judge with "jurisdiction in all circuits in this state to dispose of all pretrial matters and motions, as well as trials, arising out of asbestosis and asbestos litigation filed within the state court system."[8] Order No. 2017-03-03-01; *see also* Order No. 2009-06-29-01; Order No. 2019-05-28-02. In both the opioid litigation and asbestos litigation, assigning a single judge to oversee the management of such cases has resulted in greater efficiencies and consistency than if numerous different circuit court judges across the State had been presiding over them separately.

## C.　　The Relief Sought

Through this Motion, Plaintiffs respectfully request that the Chief Justice exercise his authority pursuant to Article V, section 4 of the South Carolina Constitution to assign a single judge to preside over the PFAS Litigation. As with the opioid and asbestos litigation, PFAS cases

---

[8] Currently, the Honorable Jean Hoefer Toal, retired Chief Justice of the Supreme Court, serves as the Chief Administrative Judge for Administrative Purposes over all South Carolina asbestosis and asbestos litigation, and Justice Toal has authority to preside over such matters herself or assign certain other circuit court judges to preside over individual cases. Order No. 2019-05-28-02 (May 28, 2019).

ELECTRONICALLY FILED - 2024 Jul 30 2:03 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Jul 30 2:03 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

should proceed independently, on their own merits, in the appropriate venues, and the Chief Justice has the authority to vest a single judge with jurisdiction in all circuits in South Carolina to dispose of pretrial matters, motions, and trials arising out of the PFAS Litigation.

While Plaintiffs anticipate that some coordination among the PFAS Litigation may occur, Plaintiffs do not seek an order consolidating all discovery and pretrial activities in the litigation, as each Plaintiff must litigate its own case to recover the funds needed to comply with EPA's requirements and protect the health of their constituents by removing PFAS from their water sources. Even though the PFAS Litigation presents similar legal issues across the cases and some overlapping factual issues, each Plaintiffs draws its water from different sources, has different systems, and will require uniquely tailored solutions to address their particular problems. There are also some differences among Defendants who polluted Plaintiffs' water sources. As a result, the resolution of one Plaintiff's case (whether through settlement or trial) will not determine or significantly inform the appropriate resolution of another Plaintiff's case. Thus, although it will be efficient and beneficial for a single judge to be familiar with and preside over all such matters, neither discovery consolidation nor bellwether treatment among the cases would be feasible or beneficial. For these reasons, Plaintiffs request an Order assigning a single judge to preside over all pending PFAS-related cases listed above, as well as any future related actions, and vesting that judge with jurisdiction in all circuits to dispose of pretrial matters, motions, and trials.

## CONCLUSION

Based on the foregoing, Plaintiffs respectfully request that this Court grant their Motion to Assign a Single Judge over the related South Carolina PFAS actions currently pending in South Carolina circuit courts and any future PFAS-related actions that are filed in state court.

7

ELECTRONICALLY FILED - 2024 Jul 30 2:03 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Respectfully moved,


 /s/ John B. White, Jr._____
 /s/ Marghretta H. Shisko_
John B. White, Jr. (SC Bar No. 5996)
Marghretta H. Shisko (SC Bar No. 100106)
John B. White, Jr. P.A.
291 S. Pine Street
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com

*Counsel for Plaintiffs*

July 24, 2024

# AFFIDAVIT OF SERVICE

**State of South Carolina**          **County of Greenwood**          **Common Pleas Court**

Case Number: 2024-CP-24-00735

Plaintiff:
**GREENWOOD COMMISSIONERS OF PUBLIC WORKS**

vs.

Defendant:
**CONE MILLS RECEIVER, LLC, et al**

Received by FALCON EXPRESS SERVICES, LLC to be served on **T & S Brass and Bronze Works**, Inc. **C/o The Prentice-Hall Corporation System**, Inc. as Registered Agent, 251 Little Falls Drive, **Wilmington, DE 19808**.

I, Ramona Talvacchio, being duly sworn, depose and say that on the **24th day of July, 2024** at **12:34 pm**, I:

served a **REGISTERED AGENT** by delivering a true copy of the **LETTER, SUMMONS and COMPLAINT** with the date and hour of service endorsed thereon by me, to: **Lynanne Gares** as **Registered Agent** at the address of: **251 Little Falls Drive, Wilmington, DE 19808** on behalf of **T & S Brass and Bronze Works, Inc.**, and informed said person of the contents therein, in compliance with state statutes.

Any and all physical description details are approximations.

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

Subscribed and Sworn to before me on the _26_
day of ___JULY___, _2024_ by the affiant who
is personally known to me.

_____
NOTARY PUBLIC
My Commission Expires: _MAY 14 2027_

Ramona Talvacchio
Process Server

**FALCON EXPRESS SERVICES, LLC**
**7001-A Saint Andrews Rd**
**Suite 12-264**
**Columbia, SC 29212**
**(843) 577-9696**

Our Job Serial Number: FES-2024006834

JOSEPH TALVACCHIO JR
Notary Public
State of Delaware
My Commission Expires on May 14, 2027

Copyright © 1992-2024 DreamBuilt Software, Inc. - Process Server's Toolbox V9.0a

ELECTRONICALLY FILED - 2024 Aug 06 8:41 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

# The Supreme Court of South Carolina

RE:  PFAS Litigation

_____

O R D E R

_____

Pursuant to the provisions of Article V, Section 4 of the South Carolina Constitution, I find that assigning a single circuit judge to dispose of all matters arising out of the PFAS litigation currently pending and to be filed in the state court system will promote the effective and expeditious disposition of this litigation through uniform rulings and will conserve the judicial resources of the parties, their counsel, and the judiciary.  Therefore,

IT IS ORDERED that the Honorable Grace Gilchrist Knie be vested with exclusive jurisdiction to hear and dispose of all PFAS litigation cases.  Judge Knie shall decide all pretrial motions and other pretrial matters, including appropriate scheduling deadlines and admission of counsel *pro hac vice* pursuant to Rule 404, SCACR, arising out of the PFAS cases filed in the state court system. Judge Knie shall have jurisdiction in all circuits in the state to dispose of all pretrial matters arising out of the PFAS litigation and may schedule such hearings as may be necessary at any time without regard as to whether there is a term of court scheduled.

IT IS FURTHER ORDERED that for administrative purposes and convenience, upon the filing of a new action involving PFAS litigation, the clerk of court shall notify Judge Knie, via email, of such filing within five business days. This notification shall include the case caption, including the docket number, as well as the name of the attorney or party signing the pleadings.  Judge Knie shall then direct the clerk of court as to the preferred method for transmitting the pleadings and additional filings to her office.

IT IS FURTHER ORDERED that Judge Knie shall have jurisdiction to issue case management orders directing the consolidation of certain pretrial matters within the PFAS litigation.

IT IS FURTHER ORDERED that this is not a consolidation for trial purposes.  At the conclusion of all pretrial matters, any party may move to have

ELECTRONICALLY FILED - 2024 Aug 16 5:02 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

trial ready cases transferred to the trial roster of the court of original jurisdiction or the court of appropriate venue for trial.  Judge Knie shall preside over the trials of all PFAS cases.

This order shall remain in effect until amended or rescinded by the Chief Justice.

_____ C.J.
FOR THE COURT
John W. Kittredge
Chief Justice of South Carolina

Columbia, South Carolina
August 14, 2024

ELECTRONICALLY FILED - 2024 Aug 16 5:02 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF GREENWOOD** | ) | **EIGHTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| GREENWOOD COMMISSIONERS OF PUBLIC WORKS, | ) | C.A. No. 2024-CP-24-00735 |
| | ) | |
| *Plaintiff*, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONE MILLS RECEIVER, LLC; | ) | **AMENDED SUMMONS** |
| CRYOVAC, INC.; CRYOVAC, LLC; | ) | (JURY TRIAL DEMANDED) |
| FIRSTSOURCE WORLDWIDE, LLC; | ) | |
| FITESA SIMPSONVILLE, INC.; | ) | |
| MILLIKEN & COMPANY; OPPERMAN | ) | |
| WEBBING, INC.; T&S BRASS AND | ) | |
| BRONZE WORKS, INC.; UNICHEM | ) | |
| SPECIALTY CHEMICALS, LLC, | ) | |
| | ) | |
| *Defendants*. | ) | |

**TO THE DEFENDANTS ABOVE-NAMED:**

YOU ARE HEREBY SUMMONED and required to answer the Amended Complaint herein, a copy of which is herewith served upon you, and to serve a copy of your answer to this Amended Complaint upon the subscribers at 291 S. Pine Street, Spartanburg, South Carolina 29302, within thirty (30) days after service hereof, exclusive of the day of such service, and if you fail to answer the Amended Complaint, judgment by default will be rendered against you for the relief demanded in the Amended Complaint.

*Signature Page Follows*

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Respectfully submitted,

*/s/ John B. White. Jr.*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiff*

August 23, 2024

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF GREENWOOD** | ) | **EIGHTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| GREENWOOD COMMISSIONERS OF PUBLIC WORKS, | ) | C.A. No. 2024-CP-24-00735 |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONE MILLS RECEIVER, LLC; | ) | **AMENDED COMPLAINT** |
| CRYOVAC, INC.; CRYOVAC, LLC; | ) | (JURY TRIAL DEMANDED) |
| FIRSTSOURCE WORLDWIDE, LLC; | ) | |
| FITESA SIMPSONVILLE, INC.; | ) | |
| MILLIKEN & COMPANY; OPPERMAN | ) | |
| WEBBING, INC.; T&S BRASS AND | ) | |
| BRONZE WORKS, INC.; UNICHEM | ) | |
| SPECIALTY CHEMICALS, LLC, | ) | |
| | ) | |
| *Defendants.* | ) | |

Plaintiff, GREENWOOD COMMISSIONERS OF PUBLIC WORKS, by and through the undersigned counsel, brings this action against the above-named Defendants for compensatory and punitive damages, injunctive relief, and abatement of a nuisance, and alleges as follows:

## STATEMENT OF THE CASE

1. Plaintiff, Greenwood Commissioners of Public Works, brings this action to address Defendants' ongoing contamination of the Reedy River, Saluda River, Lake Greenwood, and Plaintiff's property with certain toxic per- and polyfluoroalkyl substances ("PFAS"): perfluorooctanoic acid ("PFOA"); perfluorooctanesulfonic acid ("PFOS"); perfluorononanoic acid ("PFNA"); perfluorobutane sulfonate ("PFBS"); perfluorohexane sulfonate ("PFHxS"); and hexafluoropropylene oxide dimer acid ("HFPO-DA" or "GenX Chemicals").

2. Defendants have discharged and continue to discharge products that contain or degrade to these PFAS to the Reedy River, Saluda River, and Lake Greenwood, which travel

downstream to Plaintiff's water intakes on Lake Greenwood and contaminate both Plaintiff's property and the domestic water supply for nearly 23,500 water customers in Greenwood and Abbeville Counties. Plaintiff seeks a declaratory judgment, injunctive relief, abatement, damages, and an award of costs, including attorneys' fees, for Defendants' repeated and ongoing PFAS contamination.

3.     Plaintiff provides potable water to residents of Greenwood and Abbeville Counties. It owns and occupies land located in Greenwood County on Lake Greenwood, where it operates the W.R. Wise Water Treatment Facility (a surface water treatment plant, or "SWTP") and related buildings, improvements, and equipment that make up its water treatment and distribution system. Plaintiff operates water intakes on Lake Greenwood, from which it draws raw water for treatment in the SWTP before distribution to its customers.

4.     Defendants own and/or operate industrial facilities upstream of Plaintiff's water intakes and have in the past and/or currently use products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in their industrial processes. Defendants discharge these products to surface waters via certain wastewater treatment plants ("WWTPs") located upstream of Plaintiff's water intakes. These WWTPs include the Mauldin Road WWTP in Greenville, South Carolina; the Lower Reedy WWTP in Simpsonville, South Carolina; and the Piedmont Regional WWTP in Piedmont, South Carolina.

5.     Industrial wastewater from Defendants' facilities contains high levels of PFAS, which cannot be adequately removed by conventional wastewater treatment processes at WWTPs; are discharged to the Reedy and Saluda Rivers; and flow downstream to Plaintiff's water intakes on Lake Greenwood. As a direct and proximate result of Defendants' actions, Plaintiff has suffered losses to the use and enjoyment of its property rights, and Plaintiff's property has been, and will

2

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

continuously be, trespassed and damaged by water contaminated with concentrations of PFAS that the U.S. Environmental Protection Agency ("EPA") deems unsafe.

6. Defendants' PFAS contaminates Plaintiff's water sources at concentrations well exceeding what EPA deems unsafe for consumption. And Plaintiff's existing water treatment processes cannot remove them. Instead, Plaintiff will be required to construct, install, and operate new water treatment technologies to remove, and provide water free from, Defendants' PFAS.

7. As a result of Defendants' intentional, willful, wanton, reckless, and/or negligent acts and omissions and the nuisance thereby created, maintained, and continued, Plaintiff has suffered injury to its property rights and resulting damages, including compensatory and consequential damages. Plaintiff is also seeking equitable and injunctive relief requiring Defendants to cease discharging PFAS into the Reedy River, Saluda River, and Lake Greenwood; and requiring Defendants to fund the acquisition, installation, and operation of water treatment technologies at Plaintiff's SWTP that will remove Defendants' PFAS from drinking water. In addition, based on Defendants' intentional, willful, wanton, reckless, malicious, and oppressive misconduct, Plaintiff is seeking the recovery of punitive damages.

## DISCLAIMER

8. Plaintiff makes no assertion of fact concerning, and brings no cause of action based on, the manufacture, sale, distribution, use, or disposal of PFAS associated with aqueous film forming foam ("AFFF"), whether commercial, MilSpec, or other variety. Plaintiff expressly disclaims any causes of action, injury, or damages resulting from the manufacture, sale, distribution, use, or disposal of any AFFF by any Defendant or third-party.

9. All Plaintiff's causes of action arise under South Carolina law, and Plaintiff brings no cause of action and seeks no relief under federal law or statute.

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

## JURISDICTION AND VENUE

10.     This Court has subject matter jurisdiction over this action pursuant to Article V of the Constitution of the State of South Carolina and sections 5-31-210, 6-11-1610, and 14-1-80 of the South Carolina Code.

11.     This Court has personal jurisdiction over all Defendants, consistent with due process and South Carolina's long-arm statute, section 36-2-803 of the South Carolina Code.

12.     Venue is properly in this Court pursuant to sections 15-7-10 and -30 of the South Carolina Code because the subject of the action is for injuries sustained to Plaintiff's property located in Greenwood County, and the most substantial part of Defendants' alleged acts or omissions occurred in Greenwood County. *See id.* at § 15-7-30(B) ("If there is more than one defendant, the action may be tried in any county where the action properly may be maintained against one of the defendants pursuant to this section.").

## PARTIES

### I.     Plaintiff

13.     Plaintiff Greenwood Commissioners of Public Works is the duly elected commission authorized to provide potable water and additional public utility services to residents of Greenwood and Abbeville Counties. *See* S.C. Code Ann. § 5-31-210 (1976).

14.     Plaintiff owns land located at 202 Water Plant Road, Greenwood, South Carolina 29649, on which it operates its W.R. Wise SWTP and related buildings, improvements, and equipment that make up its water treatment and distribution system. Plaintiff's land abuts Lake Greenwood, from which it draws water for treatment and provision to its customers.

15.     Plaintiff's SWTP provides potable water for nearly 23,500 customers.

4

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

## II.    Defendants

16.    Defendant **Cone Mills Receiver, LLC ("Cone Mills")** is a South Carolina limited liability company and is the receiver for American Fast Print, which purchased and operated the Cone Mills industrial facility in and around 3335 Old Buncombe Road in Greenville, South Carolina. At this facility, Cone Mills used products that contained or degraded to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of products related to the textile industry. As part of its processes, Cone Mills directly or indirectly discharged industrial wastewater contaminated with products that contained or degraded to these PFAS into the Reedy River upstream of Plaintiff's water intakes on Lake Greenwood. The Cone Mills facility also utilized industrial wastewater lagoons contaminated with high levels of these PFAS and/or their precursors alongside the Reedy River. These lagoons currently and continually release contaminated wastewater into the Reedy River upstream of Lake Greenwood. PFAS and/or their precursors from both Cone Mills's legacy discharges and continuing lagoon discharges resist environmental degradation, flow downstream the Reedy River, and thereby contaminate Plaintiff's properties and its water source.

17.    Defendant **Cryovac, Inc.** is a Delaware corporation authorized to do business in South Carolina. Defendant **Cryovac, LLC (collectively "Cryovac")** is a Delaware limited liability company authorized to do business in South Carolina. Cryovac maintains an industrial facility located at 803 N. Maple Street, Simpsonville, South Carolina 29681. There, it uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of food packaging products. As part of its processes, Cryovac's facility discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to the Lower Reedy WWTP. The Lower Reedy WWTP cannot remove Cryovac's PFAS,

5

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

which it discharges into the Reedy River upstream of Lake Greenwood and Plaintiff's water intakes. Cryovac's PFAS resist environmental degradation, flow downstream the Reedy River, and thereby contaminate Plaintiff's property and its water source.

18.     Defendant **First Source Worldwide, LLC ("First Source")** is a Wisconsin limited liability company that does business in South Carolina. First Source maintains an industrial facility located at 175 Echelon Road, Greenville, South Carolina 29605. There, it uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of coatings, textile chemical products, and/or other products. As part of its processes, First Source's facility discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to the Lower Reedy WWTP. The Lower Reedy WWTP cannot remove First Source's PFAS, which it discharges into the Reedy River upstream of Lake Greenwood and Plaintiff's water intakes. First Source's PFAS resist environmental degradation, flow downstream the Reedy River, and thereby contaminate Plaintiff's property and its water source.

19.     Defendant **Fitesa Simpsonville, Inc. ("Fitesa")** is a Delaware corporation authorized to do business in South Carolina. Fitesa maintains an industrial facility located at 840 S.E. Main Street, Simpsonville, South Carolina 29681. There, it uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of fabrics. As part of its processes, Fitesa's plant discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to the Lower Reedy WWTP. The Lower Reedy WWTP cannot remove Fitesa's PFAS, which it discharges into the Reedy River upstream of Lake Greenwood and Plaintiff's water intakes. Fitesa's PFAS resist environmental degradation, flow downstream the Reedy River, and thereby contaminate Plaintiff's property and its water source.

6

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

20.     Defendant **Milliken & Company ("Milliken")** is a Delaware corporation with its principal office located in South Carolina. Between approximately 1960 and 2015, Milliken owned and operated the Judson Mill located at 701 Easley Bridge Road, Greenville, South Carolina 29611. There, it used products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of textile products. As part of its processes, Judson Mill discharged industrial wastewater contaminated with products that contain or degrade to these PFAS to, on information and belief, the Mauldin Road WWTP. The Mauldin Road WWTP could not remove Milliken's PFAS, which it discharged into the Reedy River upstream of Lake Greenwood and Plaintiff's water intakes. In addition, Milliken did not remediate Judson Mill upon its closure, and the site remains contaminated with these PFAS and their precursors that migrate to Brushy Creek and the Reedy River via groundwater migration and stormwater discharges. Milliken's PFAS resist environmental degradation, flow downstream Brushy Creek and the Reedy River, and thereby contaminated Plaintiff's property and its water source.

21.     Defendant **Opperman Webbing, Inc. ("Opperman")** is a South Carolina corporation and operates an industrial facility located at 129 Hollow Drive, Piedmont, South Carolina 29673. There, it uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of webbing products and/or other products. As part of its processes, Opperman's facility discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to the Piedmont Regional WWTP. The Piedmont Regional WWTP cannot remove Opperman's PFAS, which it discharges into the Saluda River upstream of Lake Greenwood and Plaintiff's water intakes. Opperman's PFAS resist environmental degradation, flow downstream the Saluda River, and thereby contaminate Plaintiff's property and its water source.

7

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

22.     Defendant **T&S Brass and Bronze Works, Inc. ("T&S")** is a Delaware corporation with its global headquarters located in South Carolina. T&S maintains an industrial facility located at 2 Saddleback Cove, Travelers Rest, South Carolina 29690. There, it uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in the manufacture of faucets, fittings, and other specialty products. As part of its processes, T&S's plant discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to the Mauldin Road WWTP. The Mauldin Road WWTP cannot remove T&S's PFAS, which it discharges into the Reedy River upstream of Lake Greenwood and Plaintiff's water intakes. T&S's PFAS resist environmental degradation, flow downstream the Reedy River, and thereby contaminate Plaintiff's property and its water source.

23.     Defendant **Unichem Specialty Chemicals, LLC ("Unichem")** is a Delaware limited liability company authorized to do business in South Carolina. Unichem maintains an industrial facility located at 8 N. Kings Road, Greenville, South Carolina 29605. There, it uses products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals in chemical manufacturing. As part of its processes, Unichem's plant discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to the Mauldin Road WWTP. The Mauldin Road WWTP cannot remove Unichem's PFAS, which it discharges into the Reedy River upstream of Lake Greenwood and Plaintiff's water intakes. Unichem's PFAS resist environmental degradation, flow downstream the Reedy River, and thereby contaminate Plaintiff's property and its water source.

## FACTUAL ALLEGATIONS

### I.     Background and Hazards of PFAS

24.     PFAS are a large group of man-made chemicals that do not occur naturally in the environment. Due to their strong carbon-fluorine bonds, PFAS are extremely stable, repel both oil

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

and water, and are resistant to heat and chemical reactions. As a result of these properties, PFAS have a wide variety of industrial, commercial, and consumer applications.

25.    The stable carbon-fluorine bonds that make PFAS pervasive in industrial, commercial, and consumer products also result in their persistence in the environment. They are colloquially termed "forever chemicals," as terminal PFAS have no known environmental breakdown mechanism, are readily absorbed into biota, and tend to bioaccumulate with repeated exposure.

26.    There are both polymer and non-polymer PFAS. Non-polymer PFAS include well-known substances like PFOA, PFOS, PFHxS, PFNA, PFBS, and HFPO-DA aka GenX Chemicals. Polymer PFAS include fluoropolymers and side-chain fluorinated polymers that are often the active chemistry in PFAS products utilized by Defendants.

27.    There are also both terminal PFAS and their precursors. Precursors may undergo environmental degradation that ultimately results in the formation of terminal PFAS—meaning no further degradation occurs under normal environmental conditions. PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals are all terminal PFAS.

28.    Both polymer and non-polymer PFAS can degrade to terminal PFAS. Generally, terminal PFAS are present in or otherwise form from PFAS products via three primary routes: (1) as a direct byproduct of the manufacturing process; (2) the degradation of precursor PFAS that are byproducts of the manufacturing process; and/or (3) the degradation of polymer PFAS into terminal PFAS and precursor PFAS.

29.    PFAS leach from soil to groundwater and are highly mobile and water soluble, making groundwater and surface water particularly vulnerable to contamination. Therefore, a major source of human exposure to PFAS is through ingestion of contaminated drinking water.

9

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Exposure is dose-additive, meaning that exposure to low levels of multiple PFAS, which individually would pose little or no risk, can result in a combined dose capable of causing adverse health effects.

30.    While there are thousands of different PFAS chemicals, current scientific evidence shows that harmful health effects can result from consuming drinking water with any level of PFOA or PFOS, and at certain aggregate levels of PFHxS, PFNA, PFBS, and GenX Chemicals. Depending on the type of PFAS, negative health effects include increased risk of certain types of cancer and adverse impacts on fetal growth and development; reproduction; and on liver, thyroid, immune, cardiovascular, and/or nervous system function.

31.    PFOA and PFOS have been the most widely used PFAS, and they are the most studied by regulators and the scientific community. While some industries voluntarily phased out products containing PFOA and PFOS by 2015, their limited use continues even in the United States. Due to their persistent nature, PFOA and PFOS remain in the environment from decades of legacy industrial use.

32.    Products based on PFAS consisting of shorter fluorinated carbon chains were developed to replace PFOA and PFOS, and they are now used in industrial applications to confer similar properties and characteristics. These "short-chain" PFAS are still bioaccumulative and environmentally persistent, and some short-chain PFAS products nevertheless still contain PFOA and PFOS and their precursors.  Terminal short-chain PFAS include PFHxS, PFNA, PFBS, and GenX Chemicals.

33.    Based on the science available in 2009, EPA published provisional drinking water health advisories for short-term exposure to PFOA and PFOS. U.S.E.P.A., Provisional Health Advisories for Perfluorooctanoic Acid (PFOA) and Perfluorooctane Sulfonate (PFOS) (Jan. 8,

10

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

2009), *available at* https://www.epa.gov/sites/default/files/2015-09/documents/pfoa-pfos-provisional.pdf. The advisory levels for PFOA were 400 parts per trillion ("ppt") and 200 ppt for PFOS. In the same publication, EPA reported that it conducted sampling of public drinking water in Alabama communities, finding PFOA and PFOS levels lower than 40 ppt. It explained, "Based on its current understanding, EPA believes these levels are not of concern and residents may rely upon public water systems."

34.     On May 16, 2016, due to the evolution of science on the health effects of PFOA and PFOS, EPA published lifetime health advisory levels for each chemical in drinking water. Lifetime Health Advisories and Health Effects Support Documents for Perfluorooctanoic Acid and Perfluorooctane Sulfonate, 81 Fed. Reg. 33250 (May 25, 2016). Superseding 2009 provisional levels, the 2016 levels for PFOA and PFOS were 70 ppt, independently or in the aggregate. EPA explained that its new health advisories "identify the concentration of PFOA and PFOS in drinking water at or below which adverse health effects are not anticipated to occur over a lifetime of exposure." *Id.*

35.     EPA's 2016 Health Advisories were based on peer-reviewed studies of the effects of PFOA and PFOS on laboratory animals and epidemiological studies of human populations exposed to PFOA and PFOS. These studies indicated that exposure to PFOA and PFOS over certain levels may result in adverse health effects, including developmental defects to fetuses, cancer (testicular, kidney), liver effects, immune effects, thyroid effects, and other adverse effects. But based on its review of the science, EPA stated that its analysis indicated exposure to PFOA and PFOS at or below health advisory levels "will not result in adverse health effects (including cancer and non-cancer) to the general population over a lifetime (or any shorter period) of exposure to these chemicals." *Id.*

36.     On June 15, 2022, EPA again updated health advisory levels for PFOA and PFOS on an interim basis, which replaced 2016 advisory levels. Lifetime Drinking Water Health Advisories for Four Perfluoroalkyl Substances, 87 Fed. Reg. 36848 (June 21, 2022). EPA explained that updated human epidemiological data indicated "that the level at which negative health effects could occur are much lower than previously understood when the agency issued its 2016 health advisories for PFOA and PFOS"—finding "associations between PFOA and/or PFOS exposure and effects on the immune system, the cardiovascular system, development (e.g., decreased birth weight), and cancer." *Id.* Concerned with the public health implications of its data, EPA issued interim levels pending determination of maximum contaminant levels and maximum contaminant level goals. The interim levels were 0.004 ppt for PFOA and 0.02 ppt for PFOS.

37.     Simultaneously, EPA also issued health advisories for the first time covering PFBS and GenX Chemicals. EPA reported that "GenX Chemicals have been linked to health effects on the liver, the kidney, the immune system, and developmental effects, as well as cancer." *Id.* For PFBS, it noted studies indicating health effects on the thyroid, reproductive system, development, and kidney. Based on its 2021 toxicity studies for these chemicals, EPA released final health advisories for each: GenX Chemicals at 10 ppt and PFBS at 2,000 ppt.

38.     In March of 2023, EPA issued proposed maximum contaminant level ("MCL")s and maximum contaminant level goal ("MCLG")s for PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals. PFAS Nat'l Primary Drinking Water Regulation Rulemaking, 88 Fed. Reg. 18638 (Mar. 29, 2023) (to be codified at 40 C.F.R. pt. 141, 142). An MCLG is the maximum level of a contaminant in drinking water at which no known or anticipated adverse effect on the health of persons would occur, allowing an adequate margin of safety. An MCL is the maximum

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

allowable level of a contaminant that may be delivered to any user of a public water system and is based on the feasibility of existing technology to detect PFAS at a threshold level.

39.     At that time, EPA announced that, "[f]ollowing a systematic review of available human epidemiological and animal toxicity studies, EPA has determined that PFOA and PFOS are likely to cause cancer (e.g., kidney and liver cancer) and that there is no dose below which either chemical is considered safe." *Id.* Therefore, it proposed MCLG levels for both chemicals at zero ppt. Enforceable MCL levels for each chemical were proposed at 4 ppt. According to EPA, "[a]ny exceedance of this limit requires action to protect public health, regardless of any mixture in which they are found." *Id.*

40.     Due to their toxic effects, dose additivity, and presence in drinking water, EPA proposed a hazard index approach covering mixtures of PFHxS, PFNA, PFBS, and GenX Chemicals. The hazard index is the sum of each PFAS's "hazard quotient." Hazard quotients are first calculated by dividing the applicable PFAS's "exposure metric" (i.e., concentration in drinking water) by its "health reference value" (PFHxS: 9 ppt; GenX Chemicals: 10 ppt; PFNA: 10 ppt; PFBS: 2,000 ppt). If the sum of each's hazard quotient is below 1.0, then it "represents a level at which no known or anticipated adverse effects on the health of persons is expected to occur and which allows for an adequate margin of safety." *Id.* If greater than 1.0, then "potential risk is indicated." *Id.*

41.     EPA stated that, once its proposed MCLs became final, it would "save thousands of lives and prevent tens of thousands of avoidable illnesses." U.S.E.P.A., *EPA Releases Annual Report Showing Steady Progress to Protect Communities from PFAS Pollution* (Dec. 14, 2023), *available at* https://www.epa.gov/newsreleases/epa-releases-annual-report-showing-steady-progress-protect-communities-pfas-pollution.

13

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

42.    EPA finalized its proposed MCLs and MCLGs on April 10, 2024. U.S.E.P.A., *PFAS Nat'l Primary Drinking Water Regulation Rulemaking* (Apr. 10, 2024), *available at* https://www.epa.gov/system/files/documents/2024-04/pfas-npdwr_prepubfederalregisternotice_ 4.8.24.pdf (pre-publication version). In accompanying publications, EPA declared, "The science is clear: exposure to these six PFAS is linked to significant health risks" that include "certain cancers and heart impacts in adults, and immune and developmental impacts in infants and children." U.S.E.P.A., *Frequently Asked Questions and Answers: Final PFAS Nat'l Drinking Water Regulation* (Apr. 10, 2024); *see also* U.S.E.P.A., Final PFAS Nat'l Drinking Water Regulation Landing Page, http://www.epa.gov/sdwa/and-polyfluoroalkyl-substances-pfas (providing links to EPA PFAS regulation publications).

43.    The final regulation solidifies MCLs of 4.0 ppt for PFOA and PFOS and 10.0 ppt for PFNA, PFHxS, and GenX Chemicals, including a Hazard Index that covers mixtures of PFBS with PFNA, PFHxS, and GenX Chemicals. It also enshrines MCLGs of zero ppt for PFOA and PFOS, which EPA states "reflects the latest science showing that there is no level of exposure to these two PFAS without risk of health impacts." U.S.E.P.A., *Presentation: Overview EPA PFAS NPDWR* (Apr. 10, 2024). According to EPA, "[t]he more you reduce your exposure to PFAS, the more you reduce your risk." U.S.E.P.A., *Frequently Asked Questions and Answers: Final PFAS Nat'l Drinking Water Regulation* (Apr. 10, 2024).

44.    EPA's final regulations mandate several new obligations regarding PFAS, including the implementation of solutions to reduce regulated PFAS concentrations in the drinking water that Plaintiff distributes, maintenance of ongoing compliance monitoring, and informing the public of PFAS levels in the water and of any violations. By 2027, Plaintiff must begin conducting and reporting regular PFAS monitoring, and by 2029, Plaintiff must comply with all MCLs.

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**II.    Contamination of Lake Greenwood and Plaintiff's Water Supply with PFAS**

45.    Lake Greenwood was formed in the late 1930s from the construction of a hydroelectric dam downstream of the confluence of the Saluda and Reedy Rivers. Both rivers flow southeast through Greenville, South Carolina and, from there, feed Lake Greenwood roughly 35 miles downstream.



ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

46.     As shown above, the Mauldin Road, Lower Reedy, and Piedmont Regional WWTPs operate on the Reedy and Saluda Rivers upstream of Lake Greenwood and Plaintiff's SWTP and water intakes.

47.     PFAS sampling of the Saluda River, Reedy River, and Lake Greenwood confirms the presence of PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals throughout these bodies of water, and they exist at levels exceeding EPA's MCLs and MCLGs at Plaintiff's water intakes. Indeed, sampling at Plaintiff's water intakes confirm the presence of PFOA and PFOS at concentrations higher than what EPA deems unsafe for consumption. Defendants are the source.

48.     Defendants are owners and operators of manufacturing plants, related industrial facilities, and/or waste disposal services near Greenwood County. In their industrial processes, Defendants utilize products that contain or degrade to PFOS, PFOA, PFHxS, PFNA, PFBS, and/or GenX Chemicals. Defendants' industrial processes generate industrial wastewater containing these PFAS chemicals and/or their precursors, which they discharge to either the Mauldin Road, Lower Reedy, or Piedmont Regional WWTP.

49.     The Mauldin Road WWTP utilizes conventional wastewater treatment methods to treat wastewater, which are unable to remove PFAS. After treatment, the Mauldin Road WWTP discharges water contaminated with Defendants' products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals into the Reedy River upstream of Lake Greenwood. These PFAS and their precursors flow downstream to Plaintiff's water intakes on Lake Greenwood, damaging Plaintiff's property and contaminating its water source.

50.     The Lower Reedy WWTP utilizes conventional wastewater treatment methods to treat wastewater, which are unable to remove PFAS. After treatment, the Lower Reedy WWTP discharges water contaminated with Defendants' products that contain or degrade to PFOA, PFOS,

16

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

PFHxS, PFNA, PFBS, and GenX Chemicals into the Reedy River upstream of Lake Greenwood. These PFAS and their precursors flow downstream to Plaintiff's water intakes on Lake Greenwood, damaging Plaintiff's property and contaminating its water source.

51. The Piedmont Regional WWTP utilizes conventional wastewater treatment methods to treat wastewater, which are unable to remove PFAS. After treatment, the Piedmont Regional WWTP discharges water contaminated with Defendants' products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals into the Saluda River upstream of Lake Greenwood. These PFAS and their precursors flow downstream to Plaintiff's water intakes on Lake Greenwood, damaging Plaintiff's property and contaminating its water source.

52. All Defendants knew or should have known that these WWTPs utilize conventional treatment methods for wastewater that cannot remove Defendants' PFAS. All Defendants also know or should have known that the WWTPs discharge treated effluent contaminated with their PFAS chemicals to the rivers, contaminating the water that Plaintiff draws for its customers.

**III.     Defendants have harmed Plaintiff and Plaintiff's community.**

53. Defendants have for decades discharged PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and their precursors into the Reedy River, Saluda River, and Lake Greenwood, which have caused, and continue to cause, contamination of these waters with PFAS chemicals exceeding EPA's current health advisories, MCLGs, and MCLs. Indeed, absent new treatment technologies, Plaintiff cannot use its property and property rights to provide water that is either free of all PFOA and PFOS, or compliant with EPA's MCLs.

54. Defendants' conduct has proximately caused the contamination of the Reedy River; Saluda River; Lake Greenwood; and of Plaintiff's land, its SWTP, and its water treatment and

17

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

distribution system with PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals, including PFOA and PFOS at concentrations above EPA's current MCLGs and MCLs.

55.     Defendants, individually and acting through their employees and agents, and in concert with each other, have knowingly, intentionally, recklessly, and/or negligently engaged in conduct or omissions that proximately caused unreasonable interference with Plaintiff's right to use and enjoy its property, its right to use the water of Lake Greenwood, and has caused Plaintiff additional past, present, and future injury to property.

56.     Despite knowing that there is no safe dose for PFOA or PFOS, and that PFHxS, PFNA, PFBS, and GenX Chemicals are hazardous to human health, Defendants, directly or indirectly, discharged industrial wastewater contaminated with these chemicals into the Reedy River, Saluda River, and Lake Greenwood, which they knew or should have known contaminated Plaintiff's property and its water supply.

## FIRST CAUSE OF ACTION

### Private Nuisance

57.     Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

58.     Plaintiff is a governmental entity that operates a water treatment plant and water distribution system for the purpose of producing and supplying safe potable water for residents of Greenwood and Abbeville Counties. It uses its properties for that purpose, including the withdrawal of raw water from Lake Greenwood, the treatment of raw water, and the distribution of treated water to its customers.

59.     Plaintiff owns property abutting Lake Greenwood, and Plaintiff has a property right in the reasonable use of the water, including for its provision to customers.

60.     Through the conduct described herein, Defendants created, contributed to, and/or maintained a nuisance; that is, the contamination of the Reedy River, Saluda River, and Lake

18

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Greenwood with PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals at concentrations exceeding those EPA deems unsafe for consumption.

61.     Due to Defendants' contamination, Plaintiff cannot provide water to its customers without PFAS, or even at PFAS concentrations that comply with EPA's MCLs, without installing new water treatment technology.

62.     Defendants' contamination caused, contributed to, and/or maintains a nuisance that substantially and unreasonably interferes with Plaintiff's use and enjoyment of its property, interferes with Plaintiff's property and its property rights, damages Plaintiff's property, and causes Plaintiff additional inconvenience, annoyance, and harm.

63.     Defendants, individually and acting through their employees and agents, and in concert with each other, have knowingly, intentionally, recklessly, and/or negligently engaged in conduct that unreasonably interferes with Plaintiff's property rights.

64.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered, now suffers, and will continue to suffer damages related to Defendants' contamination of the Reedy River, Saluda River, Lake Greenwood, and Plaintiff's property, including loss in value, the cost of removing Defendants' PFAS, and other damages to be proved at trial.

65.     In addition to its claims for damages, Plaintiff is entitled to injunctive and/or equitable relief to abate the nuisance created, contributed to, and maintained by Defendants.

66.     The ongoing contamination of the Reedy River, Saluda River, Lake Greenwood, and Plaintiff's property constitutes a continuing irreparable injury for which there is no adequate remedy at law. Plaintiff requests that this Court issue an order and decree requiring Defendants to take all steps necessary to prevent further discharge of PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals and to fund the measures necessary to prevent these PFAS from continuing to

interfere with Plaintiff's use and enjoyment of its land and its use of Lake Greenwood to supply potable water to its customers.

67.     Defendants' interference with Plaintiff's use of its property can be abated by methods that include, but are not limited to:

(a)     ceasing Defendants' discharges of products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to surface waters; and

(b)     funding the acquisition, installation, and operation of new water treatment technology at Plaintiff's SWTP to remove legacy PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemical contamination.

68.     Defendants are jointly and severally liable to Plaintiffs for all damages resulting from this nuisance, and the costs of its abatement, in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

## SECOND CAUSE OF ACTION

### Public Nuisance

69.     Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

70.     Plaintiff is a governmental entity that operates a water treatment plant and water distribution system for the purpose of providing and supplying safe potable water for residents of Greenwood County. It uses its properties for that purpose, including the withdrawal of raw water from Lake Greenwood, the treatment of raw water, and the distribution of treated water to customers in Greenwood County.

71.     Plaintiff's customers use the water Plaintiff provides for many purposes, including drinking, cooking, bathing, cleaning, washing, and watering plants and gardens.

20

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

72.     Plaintiffs' customers, and indeed all residents in Plaintiff's community, have a right to potable water that is reasonably pure and safe for their use—and thus free from contamination by Defendants' PFOA, PFOS, PFNA, PFHxS, PFBS, and GenX Chemicals. Defendants' contamination unreasonably interferes with, disrupts, and threatens public health, safety, and order. Indeed, EPA makes clear that there is no safe dose for consuming PFOA and PFOS.

73.     Plaintiff has sustained special injuries as a result of Defendants' public nuisance, including but not limited to, the lost use of its property; the inability to provide potable water to customers without concentrations of PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals deemed unsafe by EPA; expenses associated with future acquisition, installation, and operation of required treatment technologies to remove unsafe concentrations of these PFAS from water; expenses incurred in discovering and identifying sources of Defendants' contamination; interference with Plaintiff's right to use Lake Greenwood; interference with the use of Plaintiff's SWTP and water treatment and distribution system; and lost revenue.

74.     As a direct and proximate result of Defendants' acts and omissions, Plaintiff has suffered, now suffers, and will continue to suffer special injury and damages related to Defendants' contamination of the Reedy River, Saluda River, Lake Greenwood, and Plaintiff's property.

75.     Defendants, individually and acting through their employees and agents, and in concert with each other, have knowingly, intentionally, recklessly, and/or negligently engaged in conduct that unreasonably interferes with Plaintiff's property rights and endangered the health of Plaintiff's customers, consumers of Plaintiff's drinking water, and Plaintiff's community.

76.     As a result of the nuisance caused by Defendants, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including loss in value, the cost of removing Defendants' PFAS, and other damages to be proved at trial.

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

77. In addition to its claims for damages, Plaintiff is entitled to injunctive and/or equitable relief to abate the nuisance created, contributed to, and maintained by Defendants.

78. Defendants' ongoing contamination constitutes a continuing threat to public health, safety, and order, and it constitutes irreparable injury for which there is no adequate remedy at law. Plaintiff requests that this Court issue an order and decree requiring Defendants to take all steps necessary to prevent further discharge of PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals and to fund the measures necessary to prevent these PFAS from continuing to threaten public health and safety and ensure that Plaintiff's customers and residents of Plaintiff's community receive water free from PFAS.

79. Defendants' contamination of potable water with unsafe concentrations of PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals can be abated by methods that include, but are not limited to:

(a) ceasing Defendants' direct and indirect discharges of products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to surface waters; and

(b) requiring Defendants to fund the acquisition, installation, and operation of new water treatment technology at Plaintiff's SWTP to remove legacy PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemical contamination.

80. Defendants are jointly and severally liable to Plaintiffs for all damages resulting from this nuisance, and the costs of abatement, in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

## THIRD CAUSE OF ACTION

### Trespass

81. Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

22

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

82.     Plaintiff owns, possesses, and actively exercises its right to use its land, SWTP, and related buildings, improvements, and equipment that make up its water treatment and distribution system. Additionally, Plaintiff has the right to draw water from Lake Greenwood to provide potable water to its customers, and Plaintiff has a possessory interest in the water that it withdraws from Lake Greenwood to treat and sell to its customers.

83.     Defendants intentionally discharged and continue to discharge PFAS to the Mauldin Road, Lower Reedy, and Piedmont Regional WWTPs notwithstanding that they knew and/or reasonably should have known that:

(a)     these WWTPs cannot remove their PFAS from wastewater before discharging to the Reedy and Saluda Rivers;

(b)     Plaintiff draws water from Lake Greenwood for the provision of safe potable water to its customers;

(c)     the water Plaintiff draws from Lake Greenwood is contaminated with the PFAS the Defendants discharge to these WWTPs; and, thereby,

(d)     water contaminated with high concentrations of Defendants' PFAS invades Plaintiff's properties.

84.     Plaintiff has not consented to, and does not consent to, the invasion of its properties by water contaminated with PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals at concentrations exceeding EPA's MCLs and MCLGs and well beyond what EPA deems unsafe for consumption.

85.     Defendants' invasions of Plaintiff's properties are continuing and ongoing, and each separate invasion of PFAS-contaminated water constitutes a new trespass each time Plaintiff's water pumps are active.

23

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

86. Defendants intend that, while using PFAS in their industrial processes, PFAS-containing wastewater generated by those processes be discharged to the Mauldin Road, Lower Reedy, and Piedmont Regional WWTPs. Defendants' conduct is wanton, willful, and in reckless disregard of Plaintiff's property and property rights.

87. Defendants' conduct is the actual and proximate cause of the invasion of PFAS-contaminated water into Plaintiff's properties, including its land, SWTP, and related buildings, improvements, and equipment that make up its water treatment and distribution system. The damage to Plaintiff's properties is the direct and proximate result of Defendants' intentional conduct.

88. As a direct, proximate, and foreseeable result of Defendants' trespasses, Plaintiff has suffered, now suffers, and will continue to suffer invasion of its property rights and damages, including loss in value, the cost of removing Defendants' PFAS, and other damages to be proved at trial.

89. Defendants' ongoing trespasses can be abated by, among other measures, ceasing all discharges of PFOA, PFOS, PFHxS, PFNA, PFBS, GenX Chemicals, and/or their precursors to the Reedy River, Saluda River, and Lake Greenwood. In addition to compensatory and punitive damages, Plaintiff requests a permanent injunction prohibiting this conduct.

## FOURTH CAUSE OF ACTION

### Negligence, Gross Negligence, and/or Recklessness

90. Plaintiff incorporates all prior allegations by reference as if fully set forth herein.

91. Defendants have a duty to use due care in the handling, use, and disposal of products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to avoid causing an unreasonable risk of harm to others, which includes preventing the direct

24

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

and/or indirect discharge of these PFAS into the Reedy River, Saluda River, and Lake Greenwood, thereby interfering with Plaintiff's property rights and injuring Plaintiff's property.

92.     Defendants knew or should have known that the PFAS they discharged were environmentally persistent, bioaccumulative, and dose-additive, that conventional wastewater treatment technologies utilized by their wastewater treatment facilities could not remove their PFAS, and that surface waters—including the Reedy River, Saluda River, and Lake Greenwood— were vulnerable to the contamination that has taken and now takes place.

93.     Defendants nonetheless negligently, recklessly, wantonly, and/or willfully breached their duty in causing products containing or degrading to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals to escape their premises and contaminate the Reedy River, Saluda River, and Lake Greenwood, thereby interfering with Plaintiff's property rights and injuring Plaintiff's property.

94.     As a direct, proximate, and foreseeable result of Defendants' conduct, practices, actions, omissions, and inactions, Plaintiff has suffered, and will continue to suffer, losses resulting from injury to its properties, including but not limited to loss in value, the cost of removing Defendants' PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals, future costs of acquiring, installing, and operating adequate water treatment technologies, and other damages to be proved at trial.

95.     Defendants are jointly and severally liable to Plaintiffs for all damages resulting from their conduct, practices, actions, omissions, and inactions, in an amount to be determined at trial, as well as punitive damages in an amount to be determined at trial, and costs and attorneys' fees.

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**PRAYER FOR RELIEF**

**WHEREFORE,** Plaintiff demands trial by jury, and respectfully requests that the Court grant the following relief:

(a)     Enter a judgment and decree against all Defendants enjoining them from maintaining the nuisance they have caused, created, and maintained;

(b)     Enter a judgment and decree against all Defendants, jointly and severally, requiring them to abate the nuisance they have caused, created, and maintained;

(c)     Enter a judgment and decree against all Defendants enjoining them from continuing their trespasses onto Plaintiff's property;

(d)     Enter a judgment and decree against all Defendants, jointly and severally, requiring them to cease the discharge or release of products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals into rivers, streams, and/or tributaries where they contaminate Plaintiff's water supply in Lake Greenwood;

(e)     Enter a judgment and decree against all Defendants, jointly and severally, requiring them to remove their PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX chemicals from Plaintiff's water system by funding the acquisition, installation, and operation of treatment technology capable of removing them;

(f)     Enter a judgment and decree against all Defendants, jointly and severally, requiring them to prevent the release of PFOA, PFOS, PFHxS, PFNA, PFBS, and GenX Chemicals into rivers, streams, and tributaries that contaminate Plaintiff's water system;

(g)     Enter a judgment against all Defendants, jointly and severally, for past, present, and future compensatory damages in such amounts as the evidence shows Plaintiff to be justly entitled to recover, including interest and reasonable attorneys' fees and litigation expenses, and punitive

26

damages, as applicable, in an amount sufficient to punish and penalize Defendants, and to deter them from repeating their wrongful conduct, and all costs; and

(h)     Award such other relief and further relief as this Court deems just, proper, and equitable.

Respectfully submitted,

/s/ John B. White. Jr.
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiff*

August 23, 2024

27

ELECTRONICALLY FILED - 2024 Aug 23 12:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

## AFFIDAVIT OF SERVICE

**State of South Carolina**          **County of Greenwood**          **Common Pleas Court**

Case Number: 2024-CP-24-00735

Plaintiff:
**GREENWOOD COMMISSIONERS OF PUBLIC WORKS**

vs.

Defendant:
**CONE MILLS RECEIVER, LLC, et al**

Received by FALCON EXPRESS SERVICES, LLC to be served on **T & S Brass and Bronze Works, Inc. C/o The Prentice-Hall Corporation System**, Inc. as Registered Agent, 251 Little Falls Drive, **Wilmington, DE 19808**.

I, Ramona Talvacchio, being duly sworn, depose and say that on the **24th day of July, 2024** at **12:34 pm, I:**

served a **REGISTERED AGENT** by delivering a true copy of the **LETTER, SUMMONS and COMPLAINT** with the date and hour of service endorsed thereon by me, to: **Lynanne Gares** as **Registered Agent** at the address of: **251 Little Falls Drive, Wilmington, DE 19808** on behalf of **T & S Brass and Bronze Works, Inc.**, and informed said person of the contents therein, in compliance with state statutes.

Any and all physical description details are approximations.

I certify that I have no interest in the above action, am of legal age and have proper authority in the jurisdiction in which this service was made.

Subscribed and Sworn to before me on the 26 day of JULY ,2024 by the affiant who is personally known to me.

_____
NOTARY PUBLIC
My Commission Expires: MAY 14 2027

JOSEPH TALVACCHIO JR
Notary Public
State of Delaware
My Commission Expires on May 14, 2027

**Ramona Talvacchio**
Process Server

**FALCON EXPRESS SERVICES, LLC**
**7001-A Saint Andrews Rd**
**Suite 12-264**
**Columbia, SC 29212**
**(843) 577-9696**

Our Job Serial Number: FES-2024006834

Copyright © 1992-2024 DreamBuilt Software, Inc. - Process Server's Toolbox V9.0a

ELECTRONICALLY FILED - 2024 Aug 06 8:41 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Aug 29 10:58 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF GREENWOOD** | ) | **EIGHTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| GREENWOOD COMMISSIONERS OF | ) | C.A. No. 2024-CP-24-00735 |
| PUBLIC WORKS, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONE MILLS RECEIVER, LLC; | ) | **ACCEPTANCE OF SERVICE** |
| CRYOVAC, INC.; CRYOVAC, LLC; | ) | **ON BEHALF OF T&S BRASS AND** |
| FIRSTSOURCE WORLDWIDE, LLC; | ) | **BRONZE WORKS, INC.** |
| FITESA SIMPSONVILLE, INC.; | ) | |
| MILLIKEN & COMPANY; OPPERMAN | ) | |
| WEBBING, INC.; T&S BRASS AND | ) | |
| BRONZE WORKS, INC.; UNICHEM | ) | |
| SPECIALTY CHEMICALS, LLC, | ) | |
| | ) | |
| *Defendants.* | ) | |

Pursuant to Rule 4(j), SCRCP, I hereby accept and acknowledge service and my receipt via email of the Amended Summons and Amended Complaint in the above captioned matter on behalf of Defendant T&S Brass and Bronze Works, Inc., effective this __29th__ day of August, 2024.

Ethan R. Ware
Richard H. Willis
John G. Tamasitis
Williams Mullen
1230 Main Street, Suite 330
Columbia, SC 29201
eware@williamsmullen.com
rwillis@williamsmullen.com
jtamasitis@williamsmullen.com

*Counsel for Defendant T&S Brass and Bronze Works, Inc.*

ELECTRONICALLY FILED - 2024 Sep 04 2:13 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF GREENWOOD** | ) | **EIGHTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| GREENWOOD COMMISSIONERS OF PUBLIC WORKS, | ) | C.A. No. 2024-CP-24-00735 |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONE MILLS RECEIVER, LLC; CRYOVAC, INC.; CRYOVAC, LLC; FIRSTSOURCE WORLDWIDE, LLC; FITESA SIMPSONVILLE, INC.; MILLIKEN & COMPANY; OPPERMAN WEBBING, INC.; T&S BRASS AND BRONZE WORKS, INC.; UNICHEM SPECIALTY CHEMICALS, LLC, | ) ) ) ) ) ) ) ) ) | **ACCEPTANCE OF SERVICE ON BEHALF OF OPPERMAN WEBBING, INC.** |
| | ) | |
| *Defendants.* | ) | |

Pursuant to Rule 4(j), SCRCP, I hereby accept and acknowledge service and my receipt via email of the Amended Summons and Amended Complaint in the above captioned matter on behalf of Defendant Opperman Webbing, Inc., effective this 3rd day of September, 2024.

Paul Harrill
Burr & Forman
1221 Main Street, Suite 1800
Columbia, SC 29201
PHarrill@burr.com

*Counsel for Defendant Opperman Webbing, Inc.*

ELECTRONICALLY FILED - 2024 Sep 04 3:24 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

STATE OF SOUTH CAROLINA

COUNTY OF GREENWOOD

IN THE COURT OF COMMON PLEAS

FOR THE EIGHTH JUDICIAL CIRCUIT

GREENWOOD COMMISSIONERS OF
PUBLIC WORKS,

Plaintiff,

v.

CONE MILLS RECEIVER, LLC *et al.*,

Defendants.

CASE NO. 2024-CP-24-00735

**MOTION FOR PRO HAC VICE
ADMISSION OF FRANK JEROME
TAPLEY**

The undersigned local counsel hereby moves, together with the attached Application and Affidavit, that Frank Jerome Tapley of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, be admitted *pro hac vice* in the above captioned matter. As local counsel I understand that:

1. I will personally sign each pleading, motion, discovery procedure, or other document that I serve or file in this court.

2. All pleadings and other documents that I file in this case will contain my name, firm name, address, and phone number and those of my associate counsel admitted *pro hac vice*; and service of all pleadings and notices as required shall be sufficient if served upon me, and it is my responsibility to serve my associate counsel admitted *pro hac vice*.

3. Unless excused by the court, I will be present at all pretrial conferences, hearings, and trials and may attend discovery proceedings. I will be prepared to actively participate, if necessary.

4. Undersigned counsel hereby certifies that they contacted counsel of record regarding Mr. Lutz's admission and received no objection.

Mr. Tapley is a member in good standing with his local bar association, and the Verified

1

Application for Admission *Pro Hac Vice* in the State of South Carolina setting forth the necessary

information required by Rule 404(d), SCACR, is attached to and incorporated into this motion.

Dated: September 4, 2024

RESPECTFULLY SUBMITTED,

**JOHN B. WHITE JR., PA**

By: *s /John B. White, Jr.*
John B. White, Jr. (SC Bar No. 5996)
Marghretta H. Shisko (SC Bar No. 100106)
Griffin L. Lynch (SC Bar No. 72518)
Christopher R. Jones (SC Bar No. 101265)
291 S. Pine Street
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
glynch@johnbwhitelaw.com
cjones@johnbwhitelaw.com

*Attorneys for Plaintiff*

ELECTRONICALLY FILED - 2024 Sep 04 3:24 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Filed CP 8th Jud Cir Greenwood, SC
SEP 19 '24 PM 1:38

**EXHIBIT**

## VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE*
## IN THE STATE OF SOUTH CAROLINA

**Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.**

Greenwood Commissioners of Public Works

**Plaintiff**

VS.

Cone Mills Receiver, LLC; Opperman Webbing, Inc.; T & S Brass and Bronze Works, Inc.

**Defendant**

Case No. 2024-CP-24-00735

Mailing Address of Tribunal:

In The Court of Common Pleas Eighth Judicial Circuit

Tribunal

528 Monument Street

Greenwood, SC 29646

Comes now **Frank Jerome Tapley** , applicant herein, and respectfully represents the following:

1. Applicant resides at:

▮▮▮

Street Address

| ▮▮▮ | ▮▮▮ | ▮▮▮ |
| --- | --- | --- |
| City | County | State | Zip Code |

▮▮▮

Telephone

2. Applicant is an attorney and a member of the law firm of (or practices law under the name of)

Cory Watson, P.C. , with offices at

2131 Magnolia Avenue South

Street Address

| Birmingham | Jefferson | Alabama | 35205 |
| --- | --- | --- | --- |
| City | County | State | Zip Code |
| 205-328-2200 | 205-370-1116 | 205-324-7896 | jtapley@corywatson.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

3. Applicant has been retained personally or as a member of the above-named law firm by

Greenwood Commissioners of Public Works to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

4. Since **September 26** of **2003** , Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of **Alabama** where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

5.  List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
|---|---|
| Alabama Supreme Court | 9/26/2003 |
| Florida Supreme Court | 4/25/2006 |
| Tennessee Supreme Court | 2/17/2022 |
| United States District Court Northern District of Alabama | 10/22/2003 |
| United States District Court Middle District of Alabama | 10/22/2003 |
| United States District Court Southern District of Alabama | 10/22/2003 |
| Please see the attachment for remaining court admission information. | |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

Yes

6.  Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency?  If yes, give particulars, e.g., jurisdiction, court date.

No

7.  Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked?  If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

No

8.  Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked? If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

No

9.  Please be aware that local counsel must be Rule 403 certified.  Local counsel of record associated

with Applicant in this case is __John B. White, Jr.__ of the __John B. White, Jr., P.A.__ law firm, which has offices at:

291 S. Pine Street/ P.O. Box 2465 (29304)

_____
Street Address

| Spartanburg | Spartanburg | South Carolina | 29305 |
|---|---|---|---|
| City | County | State | Zip Code |
| 864-594-5988 | 864-590-8701 | 864-594-5870 | jwhite@johnbwhitelaw.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

*Page 2 of 4*

5996
_____

South Carolina Bar Number
(You must provide Bar Number)

10. Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

| | | | | |
|---|---|---|---|---|
| Yes - Woodruff Roebuck Water District v. AFL Telecommunications, LLC et al | Active | 7/10/2024 | Marghretta Shisko | Granted |
| Yes - Grand Strand Water & Sewer District v. Burlington Industries, Inc | Active | 8/22/2024 | John B. White | Pending |

11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

| |
|---|
| Yes |

12. Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this _____22nd_____ day of August_____, 20 _24___

*[signature]*

APPLICANT

## VERIFICATION

STATE OF <u>SOUTH CAROLINA</u>          )

COUNTY OF <u>JEFFERSON</u>          )

I,      <u>Frank Jerome Tapley</u>                                    , do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true.  I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice.  Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding.  Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

<u>APPLICANT/AFFIANT</u>

Subscribed and sworn to before me this <u>22nd</u> day of <u>August</u>          , 20<u>24</u>

<u>(Notary Signature)</u>

Notary Public for the State of <u>alabama</u>

My Commission Expires: <u>9/13/2024</u>

## LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this      <u>26th</u>      day of      <u>August</u>      , 20 <u>24</u>

<u>LOCAL COUNSEL OF RECORD</u>

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this <u>26th</u> day of <u>August</u>          , 20 <u>24</u>

*Page 4 of 4*

**ATTACHMENT TO PRO HAC VICE APPLICATION OF FRANK JEROME TAPLEY**

| Court | Date Admitted: |
| --- | --- |
| USDC Northern District of Florida | 12/16/2005 |
| USDC Middle District of Florida | 6/13/2007 |
| USDC Southern District of Indiana | 12/16/2011 |
| US Court of Appeals for the 9th Circuit | 12/30/2011 |
| USDC Southern District of Florida | 4/18/2012 |
| USDC Western District of Wisconsin | 5/24/2013 |
| US Court of Appeals for the 5th Circuit | 6/30/2015 |
| US Court of Appeals for the 11th Circuit | 8/23/2017 |
| US Eastern District of Arkansas | 11/11/2019 |
| US Western District of Arkansas | 11/11/2019 |
| US Court of Appeals for the 6th Circuit | 5/13/2021 |
| USDC Western District of Tennessee | 2/15/2023 |
| United States Supreme Court | 3/20/2023 |
| USDC Northern District of Ohio | 4/13/2023 |
| USDC Eastern District of Tennessee | 5/25/2023 |

# The Supreme Court of Alabama



## Certificate Of Admission

I, Megan B. Rhodebeck, Clerk of the Supreme Court of Alabama, do hereby certify that _____ **Frank Jerome Tapley** _____ was duly and legally admitted to practice law by the Supreme Court of Alabama on _____ **September 26, 2003** _____ and is now an attorney in good standing at the Bar of this Court, as shown by the records of said Court on file in this office.

I further certify that the Supreme Court of Alabama is the highest court of record in this State.

Done on _____ **July 1, 2024** _____ with the seal of the Supreme Court of Alabama attached.



*Megan B. Rhodebeck*
Megan B. Rhodebeck
Clerk of the Supreme Court of Alabama

ELECTRONICALLY FILED - 2024 Sep 16 9:38 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF GREENWOOD | FOR THE EIGHTH JUDICIAL CIRCUIT |

GREENWOOD COMMISSIONERS OF
PUBLIC WORKS,

                      Plaintiff,

v.

CONE MILLS RECEIVER, LLC *et al.*,

                      Defendants.

CASE NO. 2024-CP-24-00735

**ORDER GRANTING PRO HAC VICE ADMISSION OF FRANK JEROME TAPLEY**

Having considered the Motion of John B. White, Jr., on behalf of Plaintiff Greenwood Commissioners of Public Works, to admit Frank Jerome Tapley, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, *pro hac vice*, to appear on behalf of the Plaintiff in the above captioned matter and the Verified Application for Admission *Pro Hac Vice* in support thereof, it is hereby

ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**

ELECTRONICALLY FILED - 2024 Sep 16 9:38 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735



Greenwood Common Pleas

**Case Caption:**     Greenwood Commissioners Of Public Works VS   Cone Mills
Receiver, Llc , defendant, et al

**Case Number:**     2024CP2400735

**Type:**     Order/Pro Hac Vice

So Ordered

S/ Frank R. Addy, Jr.

Electronically signed on 2024-09-13 12:15:16     page 2 of 2

ELECTRONICALLY FILED - 2024 Sep 04 3:24 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

STATE OF SOUTH CAROLINA

COUNTY OF GREENWOOD

IN THE COURT OF COMMON PLEAS

FOR THE EIGHTH JUDICIAL CIRCUIT

GREENWOOD COMMISSIONERS OF
PUBLIC WORKS,

Plaintiff,

v.

CONE MILLS RECEIVER, LLC *et al.*,

Defendants.

CASE NO. 2024-CP-24-00735

**MOTION FOR PRO HAC VICE
ADMISSION OF BRETT COOPER
THOMPSON**

The undersigned local counsel hereby moves, together with the attached Application and Affidavit, that Brett Cooper Thompson of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, be admitted *pro hac vice* in the above captioned matter. As local counsel I understand that:

1. I will personally sign each pleading, motion, discovery procedure, or other document that I serve or file in this court.

2. All pleadings and other documents that I file in this case will contain my name, firm name, address, and phone number and those of my associate counsel admitted *pro hac vice*; and service of all pleadings and notices as required shall be sufficient if served upon me, and it is my responsibility to serve my associate counsel admitted *pro hac vice*.

3. Unless excused by the court, I will be present at all pretrial conferences, hearings, and trials and may attend discovery proceedings. I will be prepared to actively participate, if necessary.

4. Undersigned counsel hereby certifies that they contacted counsel of record regarding Mr. Lutz's admission and received no objection.

Mr. Thompson is a member in good standing with his local bar association, and the Verified

1

Application for Admission *Pro Hac Vice* in the State of South Carolina setting forth the necessary

information required by Rule 404(d), SCACR, is attached to and incorporated into this motion.

Dated: September 4, 2024

RESPECTFULLY SUBMITTED,

**JOHN B. WHITE JR., PA**

By: *s /John B. White, Jr.*
John B. White, Jr. (SC Bar No. 5996)
Marghretta H. Shisko (SC Bar No. 100106)
Griffin L. Lynch (SC Bar No. 72518)
Christopher R. Jones (SC Bar No. 101265)
291 S. Pine Street
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
glynch@johnbwhitelaw.com
cjones@johnbwhitelaw.com

*Attorneys for Plaintiff*

ELECTRONICALLY FILED - 2024 Sep 04 3:24 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

2

Filed CP 8th Jud Cir Greenwood, SC
SEP 19 '24 PM 1:37

# EXHIBIT

## VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE*
## IN THE STATE OF SOUTH CAROLINA

Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.

Greenwood Commissioners of Public Works,
**Plaintiff**

Case No.: 2024-CP-24-00735

In The Court of Common Pleas Eighth Judicial Circuit
**Tribunal**

vs.
Cone Mills Receiver, LLC; Opperman Webbing, Inc.; T&S Brass and Bronze Works, Inc.;
**Defendant**

Mailing Address of Tribunal: 528 Monument Street, Greenwood, SC 29646

Comes now Brett Cooper Thompson, applicant herein, and respectfully represents the following:

1. Applicant resides at:

**Street Address** [redacted]

**City** [redacted]  **County** [redacted]  **State** [redacted]  **Zip Code** [redacted]

**Telephone** [redacted]

2. Applicant is an attorney and a member of the law firm of (or practices law under the name of)
Cory Watson, P.C., with offices at

2131 Magnolia Avenue South
**Street Address**

**City** Birmingham  **County** Jefferson  **State** Alabama  **Zip Code** 35205

**Primary Telephone** 205-328-2200  **Cell Phone** 615-870-8952  **Fax Number** 205-324-7896  **Email Address** bthompson@corywatson.com

3. Applicant has been retained personally or as a member of the above-named law firm by Greenwood Commissioners of Public Works to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

4. Since September 30 of 2011, Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of Alabama where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

5. List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
|---|---|
| Alabama Supreme Court | 9/30/2011 |
| United States District Court Northern District of Alabama | 10/19/2011 |
| United States District Court Middle District of Alabama | 10/19/2011 |
| United States District Court Southern District of Alabama | 3/7/2018 |
| | |
| | |
| | |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

| Yes |
|---|

6. Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency? If yes, give particulars, e.g., jurisdiction, court date.

| No |
|---|

7. Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked? If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

| No |
|---|

8. Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked? If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

| No |
|---|

9. Please be aware that local counsel must be Rule 403 certified. Local counsel of record associated

with Applicant in this case is ___John B. White, Jr.___ of the ___John B. White, Jr., P.A.___

law firm, which has offices at:

291 S. Pine Street/ P.O. Box 2465 (29304)
_____
Street Address

| Spartanburg | Spartanburg | South Carolina | 2930⏁ |
|---|---|---|---|
| City | County | State | Zip Code |
| 864-594-5988 | 864-706-8701 | 864-594-5870 | jwhite@johnbwhitelaw.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

5996
_____

South Carolina Bar Number
(You must provide Bar Number)

    10.    Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

| | | | | |
|---|---|---|---|---|
| Yes - Woodruff Roebuck Water District v. AFL Telecommunications, LLC et al | Active | 7/15/2024 | John B. White | Granted |
| Yes - Grand Strand Water & Sewer Authority v. Burlington Industries, Inc. | Active | 8/22/2024 | John B. White | Pending |

    11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

| |
|---|
| Yes |

    12. Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this _____22nd_____ day of ___August___, 20 _24___

_____
APPLICANT

# VERIFICATION

STATE OF SOUTH CAROLINA    )

COUNTY OF JEFFERSON     )

I,  Brett Cooper Thompson           , do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true. I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice. Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding. Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

_____
APPLICANT/AFFIANT

Subscribed and sworn to before me this 22nd day of August, 2024

_____
(Notary Signature)

Notary Public for the State of alabama

My Commission Expires: 9/15/2024

# LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this 26th day of August, 2024

_____
LOCAL COUNSEL OF RECORD

# CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this _____ day of August, 20 24

_____

# The Supreme Court of Alabama



## Certificate Of Admission

I, Megan B. Rhodebeck, Clerk of the Supreme Court of Alabama, do hereby certify that _____Brett Cooper Thompson_____ was duly and legally admitted to practice law by the Supreme Court of Alabama on _____September 30, 2011_____ and is now an attorney in good standing at the Bar of this Court, as shown by the records of said Court on file in this office.

I further certify that the Supreme Court of Alabama is the highest court of record in this State.

Done on _____July 1, 2024_____ with the seal of the Supreme Court of Alabama attached.



_Megan B. Rhodebeck_
Megan B. Rhodebeck
Clerk of the Supreme Court of Alabama

ELECTRONICALLY FILED - 2024 Sep 16 9:38 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

STATE OF SOUTH CAROLINA

COUNTY OF GREENWOOD

IN THE COURT OF COMMON PLEAS

FOR THE EIGHTH JUDICIAL CIRCUIT

GREENWOOD COMMISSIONERS OF
PUBLIC WORKS,

Plaintiff,

v.

CONE MILLS RECEIVER, LLC *et al.*,

Defendants.

CASE NO. 2024-CP-24-00735

**ORDER GRANTING PRO HAC
VICE ADMISSION OF BRETT
COOPER THOMPSON**

Having considered the Motion of John B. White, Jr., on behalf of Plaintiff Greenwood
Commissioners of Public Works, to admit Brett Cooper Thompson, of Cory Watson, P.C., 2131
Magnolia Avenue South, Birmingham, Alabama 35205, *pro hac vice*, to appear on behalf of the
Plaintiff in the above captioned matter and the Verified Application for Admission *Pro Hac Vice*
in support thereof, it is hereby

ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**



Greenwood Common Pleas

**Case Caption:**    Greenwood Commissioners Of Public Works VS   Cone Mills
Receiver, Llc , defendant, et al

**Case Number:**    2024CP2400735

**Type:**    Order/Pro Hac Vice

So Ordered

S/ Frank R. Addy, Jr.

Electronically signed on 2024-09-13 12:15:36     page 2 of 2

ELECTRONICALLY FILED - 2024 Sep 16 9:38 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Sep 16 9:38 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

STATE OF SOUTH CAROLINA

COUNTY OF GREENWOOD

IN THE COURT OF COMMON PLEAS

FOR THE EIGHTH JUDICIAL CIRCUIT

GREENWOOD COMMISSIONERS OF
PUBLIC WORKS,

Plaintiff,

v.

CONE MILLS RECEIVER, LLC *et al.*,

Defendants.

CASE NO. 2024-CP-24-00735

**ORDER GRANTING PRO HAC VICE ADMISSION OF FRANK JEROME TAPLEY**

Having considered the Motion of John B. White, Jr., on behalf of Plaintiff Greenwood Commissioners of Public Works, to admit Frank Jerome Tapley, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, *pro hac vice*, to appear on behalf of the Plaintiff in the above captioned matter and the Verified Application for Admission *Pro Hac Vice* in support thereof, it is hereby

ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**

ELECTRONICALLY FILED - 2024 Sep 16 9:38 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735



Greenwood Common Pleas

**Case Caption:**    Greenwood Commissioners Of Public Works VS  Cone Mills Receiver, Llc , defendant, et al

**Case Number:**    2024CP2400735

**Type:**    Order/Pro Hac Vice

So Ordered

S/ Frank R. Addy, Jr.

Electronically signed on 2024-09-13 12:15:16    page 2 of 2

ELECTRONICALLY FILED - 2024 Sep 16 9:38 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

STATE OF SOUTH CAROLINA

COUNTY OF GREENWOOD

IN THE COURT OF COMMON PLEAS

FOR THE EIGHTH JUDICIAL CIRCUIT

GREENWOOD COMMISSIONERS OF
PUBLIC WORKS,

Plaintiff,

v.

CONE MILLS RECEIVER, LLC *et al.*,

Defendants.

CASE NO. 2024-CP-24-00735

**ORDER GRANTING PRO HAC
VICE ADMISSION OF BRETT
COOPER THOMPSON**

Having considered the Motion of John B. White, Jr., on behalf of Plaintiff Greenwood Commissioners of Public Works, to admit Brett Cooper Thompson, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, *pro hac vice*, to appear on behalf of the Plaintiff in the above captioned matter and the Verified Application for Admission *Pro Hac Vice* in support thereof, it is hereby

ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**

ELECTRONICALLY FILED - 2024 Sep 16 9:38 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735



Greenwood Common Pleas

**Case Caption:**    Greenwood Commissioners Of Public Works VS   Cone Mills
Receiver, Llc , defendant, et al

**Case Number:**    2024CP2400735

**Type:**    Order/Pro Hac Vice

So Ordered

S/ Frank R. Addy, Jr.

Electronically signed on 2024-09-13 12:15:36    page 2 of 2

Filed CP 8th Jud Cir Greenwood, SC
SEP 19 '24 PM 1:38

EXHIBIT

# VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE*
## IN THE STATE OF SOUTH CAROLINA

Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.

| Greenwood Commissioners of Public Works | 2024-CP-24-00735 | In The Court of Common Pleas Eighth Judicial Circuit |
|---|---|---|
| **Plaintiff** | Case No. | Tribunal |
| vs. | | |
| Cone Mills Receiver, LLC; Opperman Webbing, Inc.; T & S Brass and Bronze Works, Inc. | Mailing Address of Tribunal: | 528 Monument Street |
| **Defendant** | | Greenwood, SC 29646 |

Comes now  Frank Jerome Tapley                          , applicant herein, and respectfully represents the following:

1.  Applicant resides at:

▮▮▮▮▮▮
Street Address

| ▮▮▮▮▮ | ▮▮▮▮▮ | ▮▮▮▮▮ |
|---|---|---|
| City | County | State | Zip Code |

▮▮▮▮▮
Telephone

2.  Applicant is an attorney and a member of the law firm of (or practices law under the name of)
Cory Watson, P.C.                                                              , with offices at

2131 Magnolia Avenue South
**Street Address**

| Birmingham | Jefferson | Alabama | 35205 |
|---|---|---|---|
| City | County | State | Zip Code |
| 205-328-2200 | 205-370-1116 | 205-324-7896 | jtapley@corywatson.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

3.  Applicant has been retained personally or as a member of the above-named law firm by
Greenwood Commissioners of Public Works                                to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

4.  Since    September 26  of  2003                        , Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of Alabama                            where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

5. List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
|---|---|
| Alabama Supreme Court | 9/26/2003 |
| Florida Supreme Court | 4/25/2006 |
| Tennessee Supreme Court | 2/17/2022 |
| United States District Court Northern District of Alabama | 10/22/2003 |
| United States District Court Middle District of Alabama | 10/22/2003 |
| United States District Court Southern District of Alabama | 10/22/2003 |
| Please see the attachment for remaining court admission information. | |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

Yes

6. Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency? If yes, give particulars, e.g., jurisdiction, court date.

No

7. Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked? If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

No

8. Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked? If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

No

9. Please be aware that local counsel must be Rule 403 certified. Local counsel of record associated

with Applicant in this case is _John B. White, Jr._ of the _John B. White, Jr., P.A._ law firm, which has offices at:

291 S. Pine Street/ P.O. Box 2465 (29304)

**Street Address**

| Spartanburg | Spartanburg | South Carolina | 29305 |
|---|---|---|---|
| City | County | State | Zip Code |
| 864-594-5988 | 864-590-8701 | 864-594-5870 | jwhite@johnbwhitelaw.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

5996
_____
South Carolina Bar Number
(You must provide Bar Number)

     10.    Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

| | | | | |
|---|---|---|---|---|
| Yes - Woodruff Roebuck Water District v. AFL Telecommunications, LLC et al | Active | 7/10/2024 | Marghretta Shisko | Granted |
| Yes - Grand Strand Water & Sewer District v. Burlington Industries, Inc | Active | 8/22/2024 | John B. White | Pending |

     11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

| |
|---|
| Yes |

     12. Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

     DATED this _____22nd_____ day of August _____, 20 _24_____

_J. Jerome Jayly_
APPLICANT

*Page 3 of 4*

## VERIFICATION

STATE OF SOUTH CAROLINA    )

COUNTY OF JEFFERSON    )

I,    Frank Jerome Tapley    , do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true. I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice. Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding. Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

APPLICANT/AFFIANT

Subscribed and sworn to before me this ___22nd___ day of ___August___, 20 __24__

_____
(Notary Signature)

Notary Public for the State of ___Alabama___

My Commission Expires: ___9/13/2024___

## LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this ___26th___ day of ___August___, 20 __24__

_____
LOCAL COUNSEL OF RECORD

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this ___26th___ day of ___August___, 20 __24__

_____

*Page 4 of 4*

**ATTACHMENT TO PRO HAC VICE APPLICATION OF FRANK JEROME TAPLEY**

| Court | Date Admitted: |
|---|---|
| USDC Northern District of Florida | 12/16/2005 |
| USDC Middle District of Florida | 6/13/2007 |
| USDC Southern District of Indiana | 12/16/2011 |
| US Court of Appeals for the 9th Circuit | 12/30/2011 |
| USDC Southern District of Florida | 4/18/2012 |
| USDC Western District of Wisconsin | 5/24/2013 |
| US Court of Appeals for the 5th Circuit | 6/30/2015 |
| US Court of Appeals for the 11th Circuit | 8/23/2017 |
| US Eastern District of Arkansas | 11/11/2019 |
| US Western District of Arkansas | 11/11/2019 |
| US Court of Appeals for the 6th Circuit | 5/13/2021 |
| USDC Western District of Tennessee | 2/15/2023 |
| United States Supreme Court | 3/20/2023 |
| USDC Northern District of Ohio | 4/13/2023 |
| USDC Eastern District of Tennessee | 5/25/2023 |

# The Supreme Court of Alabama



## Certificate Of Admission

I, Megan B. Rhodebeck, Clerk of the Supreme Court of Alabama, do hereby certify that _____ **Frank Jerome Tapley** _____ was duly and legally admitted to practice law by the Supreme Court of Alabama on _____ **September 26, 2003** _____ and is now an attorney in good standing at the Bar of this Court, as shown by the records of said Court on file in this office.

I further certify that the Supreme Court of Alabama is the highest court of record in this State.

Done on _____ **July 1, 2024** _____ with the seal of the Supreme Court of Alabama attached.



Megan B. Rhodebeck

Megan B. Rhodebeck
Clerk of the Supreme Court of Alabama

Filed CP 8th Jud Cir Greenwood, SC
SEP 19 '24 PM 1:37

# EXHIBIT

# VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE*
# IN THE STATE OF SOUTH CAROLINA

**Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.**

Greenwood Commissioners of Public Works,
**Plaintiff**

vs.

Cone Mills Receiver, LLC; Opperman Webbing, Inc.; T&S Brass and Bronze Works, Inc.;
**Defendant**

2024-CP-24-00735
**Case No.**

In The Court of Common Pleas Eighth Judicial Circuit
**Tribunal**

Mailing Address of Tribunal:

528 Monument Street
Greenwood, SC 29646

Comes now  Brett Cooper Thompson                              , applicant herein, and respectfully represents the following:

1.  Applicant resides at:

████████████

**Street Address**

████████        ██████         ██████              ██████

**City**              **County**           **State**                   **Zip Code**

████████

**Telephone**

2.  Applicant is an attorney and a member of the law firm of (or practices law under the name of)

Cory Watson, P.C.                                                                         , with offices at

2131 Magnolia Avenue South

**Street Address**

Birmingham              Jefferson              Alabama              35205

**City**              **County**              **State**              **Zip Code**

205-328-2200              615-870-8952              205-324-7896              bthompson@corywatson.com

**Primary Telephone**      **Cell Phone**        **Fax Number**        **Email Address**

3.  Applicant has been retained personally or as a member of the above-named law firm by

Greenwood Commissioners of Public Works                                     to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

4.  Since   September 30  of  2011                                   , Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of Alabama                              where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

5. List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
|---|---|
| Alabama Supreme Court | 9/30/2011 |
| United States District Court Northern District of Alabama | 10/19/2011 |
| United States District Court Middle District of Alabama | 10/19/2011 |
| United States District Court Southern District of Alabama | 3/7/2018 |
| | |
| | |
| | |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

Yes

6. Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency? If yes, give particulars, e.g., jurisdiction, court date.

No

7. Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked? If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

No

8. Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked? If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

No

9. Please be aware that local counsel must be Rule 403 certified. Local counsel of record associated

with Applicant in this case is John B. White, Jr. of the John B. White, Jr., P.A.

law firm, which has offices at:

291 S. Pine Street/ P.O. Box 2465 (29304)

Street Address

| Spartanburg | Spartanburg | South Carolina | 29304 |
|---|---|---|---|
| City | County | State | Zip Code |
| 864-594-5988 | 864-706-8701 | 864-594-5870 | jwhite@johnbwhitelaw.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

*Page 2 of 4*

5996
_____
South Carolina Bar Number
(You must provide Bar Number)

    10.   Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

| | | | | |
|---|---|---|---|---|
| Yes - Woodruff Roebuck Water District v. AFL Telecommunications, LLC et al | Active | 7/15/2024 | John B. White | Granted |
| Yes - Grand Strand Water & Sewer Authority v. Burlington Industries, Inc. | Active | 8/22/2024 | John B. White | Pending |

    11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

| |
|---|
| Yes |

    12. Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this _____22nd_____ day of _____August_____, 20 _24___

_____
APPLICANT

*Page 3 of 4*

## VERIFICATION

STATE OF SOUTH CAROLINA             )

COUNTY OF JEFFERSON             )

I,      Brett Cooper Thompson      , do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true. I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice. Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding. Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

_____
APPLICANT/AFFIANT

Subscribed and sworn to before me this 22nd day of August , 2024

_____
(Notary Signature)

Notary Public for the State of alabama

My Commission Expires: 9/15/2024

## LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this 26th day of August , 20 24

_____
LOCAL COUNSEL OF RECORD

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this _____ day of August , 20 24

_____

# The Supreme Court of Alabama



## Certificate Of Admission

I, Megan B. Rhodebeck, Clerk of the Supreme Court of Alabama, do hereby certify that _____ Brett Cooper Thompson _____ was duly and legally admitted to practice law by the Supreme Court of Alabama on _____ September 30, 2011 _____ and is now an attorney in good standing at the Bar of this Court, as shown by the records of said Court on file in this office.

I further certify that the Supreme Court of Alabama is the highest court of record in this State.

Done on _____ July 1, 2024 _____ with the seal of the Supreme Court of Alabama attached.



Megan B. Rhodebeck

Megan B. Rhodebeck
Clerk of the Supreme Court of Alabama

ELECTRONICALLY FILED - 2024 Sep 20 3:38 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | **)** | **IN THE COURT OF COMMON PLEAS** |
| | **)** | |
| **COUNTY OF GREENWOOD** | **)** | **EIGHTH JUDICIAL CIRCUIT** |
| | **)** | |
| | **)** | |
| GREENWOOD COMMISSIONERS OF PUBLIC WORKS, | **)** | C.A. No. 2024-CP-24-00735 |
| | **)** | |
| *Plaintiff,* | **)** | |
| | **)** | |
| v. | **)** | |
| | **)** | |
| CONE MILLS RECEIVER, LLC; CRYOVAC, INC.; CRYOVAC, LLC; FIRSTSOURCE WORLDWIDE, LLC; FITESA SIMPSONVILLE, INC.; MILLIKEN & COMPANY; OPPERMAN WEBBING, INC.; T&S BRASS AND BRONZE WORKS, INC.; UNICHEM SPECIALTY CHEMICALS, LLC, | **)** **)** **)** **)** **)** **)** **)** **)** | **ANSWER OF CONE MILLS RECEIVER, LLC** |
| | **)** | |
| *Defendants.* | **)** | |

NOW COMES Cone Mills Receiver, LLC ("CMR"), and for its Answer to the Complaint of Plaintiff Greenwood Commissioners of Public Works ("GCPW"), states the following:

## STATEMENT OF THE CASE

1.　　For its Answer to paragraph 1 of the Complaint, CMR admits this is a purported civil action to address contamination of the Reedy River, but CMR denies that it is a result of "ongoing contamination" caused by CMR. CMR also denies all remaining allegations of paragraph 1 of the Complaint to the extent they pertain to CMR.

2.　　CMR denies the allegations of Paragraph 2 of the Complaint.

ELECTRONICALLY FILED - 2024 Sep 20 3:38 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

3.      CMR lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 3 of the Complaint and, therefore, denies same.

4.      CMR denies all allegations of paragraph 4 of the Complaint to the extent they pertain to CMR.

5.      CMR denies all allegations of paragraph 5 of the Complaint to the extent they pertain to CMR.

6.      CMR denies all allegations of paragraph 6 of the Complaint to the extent they pertain to CMR.

7.      CMR denies all allegations of paragraph 7 of the Complaint to the extent they pertain to CMR.

## DISCLAIMER

8.      Paragraph 8 of the Complaint contains disclaimers only, and does not require an answer.  To the extent that Paragraph 8 requires an answer, CMR denies all allegations of paragraph 8 of the Complaint to the extent they pertain to CMR.

9.      Paragraph 9 of the Complaint contains disclaimers only, and does not require an answer.  To the extent that Paragraph 9 requires an answer, CMR denies all allegations of paragraph 8 of the Complaint to the extent they pertain to CMR.

## JURISDICTION AND VENUE

10.      Upon information and belief, CMR admits this Honorable Court has subject matter jurisdiction over this action.

11.      Upon information and belief, CMR admits this Honorable Court has personal jurisdiction over CMR.

12.      Upon information and belief, CMR admits that venue is proper in this Honorable Court.

**PARTIES**

13.    Upon information and belief, CMR admits Paragraph 13.

14.    CMR lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 14 of the Complaint and, therefore, denies same.

15.    CMR lacks knowledge or information sufficient to form a belief as to the truth of the allegations of paragraph 15 of the Complaint and, therefore, denies same.

16.    CMR admits that it is the court-appointed receiver for American Fast Print (US) v. American Fast Print Limited (U.S.) (d/b/a U.S. Finishing), Duke Energy Corporation (f/k/a Duke Power Company), and Piper Properties Of Greenville, LLC, Civil Action No. 6:04-23349-13, U.S. District Court, District of South Carolina, Greenville Division.  CMR denies all remaining allegations of paragraph 16 of the Complaint to the extent they pertain to CMR.

17.    CMR is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraphs 17 through 23 of the Complaint and, therefore, denies same.

**FACTUAL ALLEGATIONS**

18.    CMR admits the allegations of Paragraphs 24 through 44 of the Complaint.

19.    CMR is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraphs 45 through 47 of the Complaint and, therefore, denies same.

20.    For its answer to Paragraph 48, CMR admits that it is the court-appointed receiver for American Fast Print (US) and that, as receiver, it owns a former textile mill in Greenville County on banks of the Reedy River, but denies all remaining allegations of paragraph 48 of the Complaint to the extent they pertain to CMR.

21.    CMR is without knowledge or information sufficient to form a belief as to the truth of the allegations of paragraphs 49 through 52 of the Complaint and, therefore, denies same.

22.    CMR denies the allegations of paragraphs 53 through 56 of the Complaint.

3

ELECTRONICALLY FILED - 2024 Sep 20 3:38 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Sep 20 3:38 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

## FIRST CAUSE OF ACTION

### Private Nuisance

23.     CMR realleges and re-avers the foregoing as fully as if repeated verbatim.

24.     CMR denies the allegations of Paragraphs 57 through 68 of the Complaint to the extent they pertain to CMR.

## SECOND CAUSE OF ACTION

### Public Nuisance

25.     CMR realleges and re-avers the foregoing as fully as if repeated verbatim.

26.     CMR denies the allegations of Paragraphs 69 through 80 of the Complaint to the extent they pertain to CMR.

## THIRD CAUSE OF ACTION

### Trespass

27.     CMR realleges and re-avers the foregoing as fully as if repeated verbatim.

28.     CMR denies the allegations of Paragraphs 81 through 89 of the Complaint to the extent they pertain to CMR.

## FOURTH CAUSE OF ACTION

### Negligence, Gross Negligence, and/or Recklessness

29.     CMR realleges and re-avers the foregoing as fully as if repeated verbatim.

30.     CMR denies the allegations of Paragraphs 90 through 95 of the Complaint to the extent they pertain to CMR.

## DEFENSES

1.     The Complaint fails to state a claim upon which relief can be granted as to CMR.

2.     The Complaint is barred by the applicable statute of limitations.

4

ELECTRONICALLY FILED - 2024 Sep 20 3:38 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

3.    The Complaint is barred by the doctrine of laches.

4.    The Complaint is barred by the doctrines of waiver and estoppel.

5.    The Complaint is barred as to CMR as a matter of law.  In the Court's order appointing the receiver in this case, the Honorable G. Ross Anderson, Jr. wrote the following: "Except for an act of gross negligence or willful misconduct, the Receiver and all persons employed by him shall not be liable for any loss or damage incurred by American Fast Print or any other person by reason of any act performed or omitted to be performed by them in connection with the discharge of their duties and responsibilities in this matter."  Therefore, the Complaint as to CMR must be dismissed.

WHEREFORE, having stated its Answer and Defenses, CMR respectfully requests that the Court:

1. Enter a judgment in favor of CMR and dismiss CMR as a Defendant as to all claims, including requests for injunctive and monetary relief and damages of any and all kinds, and award CMR its costs and expenses, including attorneys' fees;

2. Award CMR all further relief the Court deems just and equitable.

This 20th day of September 2024.

Respectfully submitted,

s/ Kelly D.H. Lowry

Kelly D. H. Lowry, Esq. Bar. No. 12462
Law Firm of Lowry and Associates, LLC
753 E. Main St., Suite 7
Spartanburg, South Carolina 29302
864.921.8915
kelly@lowryandassociates.com

Attorney for Defendant
Cone Mills Receiver, LLC

Spartanburg, South Carolina

5

ELECTRONICALLY FILED - 2024 Sep 30 3:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | EIGHTH JUDICIAL CIRCUIT |
| COUNTY OF GREENWOOD | ) | |
| | ) | |
| Greenwood Commissioners of Public Works, | ) | C.A. No. 2024-CP-24-00735 |
| | ) | |
| | ) | |
| Plaintiff, | ) | **T&S Brass and Bronze Works, Inc.'s Answer** |
| | ) | **to Plaintiff's Amended Complaint** |
| vs. | ) | |
| | ) | |
| Cone Mills Receiver, LLC; Cryovac, Inc.; | ) | |
| Cryovac, LLC; FirstSource Worldwide, | ) | |
| LLC; Fitesa Simpsonville, Inc.; Milliken | ) | |
| & Company; Opperman Webbing, Inc.; | ) | |
| T&S Brass and Bronze Works, Inc.; | ) | |
| Unichem Specialty Chemicals, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendant T&S Brass and Bronze Works, Inc. ("T&S Brass") hereby submits its Answer to Plaintiff's Amended Complaint ("Complaint").

### GENERAL DENIAL

T&S Brass expressly denies each and every allegation in the Complaint, except those specifically admitted herein.

### FOR A FIRST DEFENSE

### Statement of the Case[1]

1.    Responding to Paragraph 1 of the Complaint, T&S Brass denies all allegations set forth in that paragraph that relate to T&S Brass or purport to allege liability against T&S Brass. As to the remaining allegations set forth in Paragraph 1 of the Complaint with regards to the nature

---

[1] The headers used in this Answer are for ease of reference and correspond to the headers set forth in Plaintiff's Amended Complaint.  They do not constitute an admission by T&S Brass as to the validity of Plaintiff's causes of action.

1

ELECTRONICALLY FILED - 2024 Sep 30 3:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

of the action brought by Plaintiff, Defendant craves references to the allegations set forth in the Complaint and denies any allegations inconsistent therewith.

2.      Responding to Paragraph 2 of the Complaint as it relates to T&S Brass, T&S Brass at this time is without knowledge or information sufficient to form a belief as to the truth of the allegations related to whether T&S Brass has discharged products in the past that contained or degraded to the substances identified by Plaintiff as PFAS, and therefore denies same.  With regards to the allegation that T&S Brass continues to discharge products that contain or degrade to the substances identified by Plaintiff as PFAS, T&S denies those allegations, upon information and belief.  As to the remaining allegations set forth in Paragraph 2 of the Complaint which are addressed to other Defendants, T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies same.

3.      Upon information and belief, Defendant admits the allegations set forth in Paragraph 3 of the Complaint.

4.      Responding to Paragraph 4 of the Complaint as it relates to T&S Brass, Plaintiff's use of the phrase "use products" and term "industrial processes" are not defined and susceptible of multiple interpretations; therefore, at this present time, and without a definition for the phrase "use products" and term "industrial processes," T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations and denies same.  Further responding to Paragraph 4 of the Complaint, T&S Brass specifically denies that its industrial facility discharges wastewater directly to surface waters  As to the remaining allegations set forth in Paragraph 4 of the Complaint which are addressed to other Defendants, T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies same.

ELECTRONICALLY FILED - 2024 Sep 30 3:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

5.	T&S Brass denies the allegations and legal conclusions set forth in Paragraph 5 of the Complaint.

6.	T&S Brass denies the allegations and legal conclusions set forth in Paragraph 6 of the Complaint.

7.	T&S Brass denies the allegations and legal conclusions set forth in Paragraph 7 of the Complaint and denies Plaintiff is entitled to the relief sought therein.

### Disclaimer

8.	Responding to Paragraph 8 of the Complaint, T&S Brass craves reference to the allegations set forth in the Complaint and denies any allegations inconsistent therewith.

9.	Responding to Paragraph 9 of the Complaint, T&S Brass craves reference to the allegations set forth in the Complaint and denies any allegations inconsistent therewith.

### Jurisdiction and Venue

10.	Paragraph 10 of the Complaint purports to state legal conclusions to which no response is required.  However, to the extent a response is required, T&S Brass does not contest the Court's subject matter jurisdiction over this action.

11.	Paragraph 11 of the Complaint purports to state legal conclusions to which no response is required.  However, to the extent a response is required, T&S Brass does not contest this Court's personal jurisdiction over T&S Brass.

12.	Paragraph 12 of the Complaint purports to state legal conclusions to which no response is required.  However, to the extent a response is required, T&S Brass does not contest venue in Greenwood County.

3

ELECTRONICALLY FILED - 2024 Sep 30 3:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**Parties**

13.     Upon information and belief, T&S Brass admits the allegations set forth in Paragraph 13 of the Complaint.

14.     Upon information and belief, T&S Brass admits the allegations set forth in Paragraph 14 of the Complaint.

15.     T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 15 of the Complaint, and therefore denies same.

16.     T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 16 of the Complaint, and therefore denies same.

17.     T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 17 of the Complaint, and therefore denies same.

18.     T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 18 of the Complaint, and therefore denies same.

19.     T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 19 of the Complaint, and therefore denies same.

20.     T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 20 of the Complaint, and therefore denies same.

21.     T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 21 of the Complaint, and therefore denies same.

22.     Responding to Paragraph 22 of the Complaint, T&S Brass admits that it is a Delaware corporation with its headquarters located in South Carolina and maintains an industrial facility located at 2 Saddleback Cove, Travelers Rest, South Carolina.  Further responding to Paragraph 22 of the Complaint, Plaintiff's use of the term "manufacture" is not defined and

4

ELECTRONICALLY FILED - 2024 Sep 30 3:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

susceptible of multiple interpretations when used in this context; therefore, at this present time, and without a definition for the term "manufacture," T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations and denies same.  Further responding to Paragraph 22 of the Complaint, T&S Brass only admits that it discharges its industrial wastewater to the Mauldin Road WWTP; however, upon information and belief, T&S Brass denies that its current industrial wastewater discharge contains or degrades to the substances identified by Plaintiff as PFAS.  With respect to the remaining allegations set forth in Paragraph 22 of the Complaint related to the capabilities of the Mauldin Road WWTP to remove PFAS,  T&S Brass is without knowledge or information sufficient to form a belief as to the truth of those allegations and denies same.

23.    T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 23 of the Complaint, and therefore denies same.

### Factual Allegations

24.    T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 24 of the Complaint, and therefore denies same.

25.    T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 25 of the Complaint, and therefore denies same.

26.    T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 26 of the Complaint, and therefore denies same.

27.    T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 27 of the Complaint, and therefore denies same.

28.    T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 28 of the Complaint, and therefore denies same.

ELECTRONICALLY FILED - 2024 Sep 30 3:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

29.     T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 29 of the Complaint, and therefore denies same.

30.     T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 30 of the Complaint, and therefore denies same.

31.     T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 31 of the Complaint, and therefore denies same.

32.     T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 32 of the Complaint, and therefore denies same.

33.     Responding to Paragraph 33 of the Complaint, T&S Brass craves reference to the EPA provisional drinking water health advisories referenced therein and denies any allegations inconsistent therewith.

34.     Responding to Paragraph 34 of the Complaint, T&S Brass craves reference to the EPA health advisories referenced therein and denies any allegations inconsistent therewith.

35.     Responding to Paragraph 35 of the Complaint, T&S Brass craves reference to the EPA health advisories referenced therein and denies any allegations inconsistent therewith.

36.     Responding to Paragraph 36 of the Complaint, T&S Brass craves reference to the EPA health advisories referenced therein and denies any allegations inconsistent therewith.

37.     Responding to Paragraph 37 of the Complaint, T&S Brass craves reference to the EPA health advisories referenced therein and denies any allegations inconsistent therewith.

38.     Responding to Paragraph 38 of the Complaint, T&S Brass craves reference to the EPA proposed MCLs and MCLGs referenced therein and denies any allegations inconsistent therewith.

ELECTRONICALLY FILED - 2024 Sep 30 3:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

39.    Responding to Paragraph 39 of the Complaint, T&S Brass craves reference to the EPA proposed MCLs and MCLGs referenced therein and denies any allegations inconsistent therewith.

40.    Responding to Paragraph 40 of the Complaint, T&S Brass craves reference to the EPA proposed MCLs and MCLGs referenced therein and denies any allegations inconsistent therewith.

41.    Responding to Paragraph 41 of the Complaint, T&S Brass craves reference to the EPA news release referenced therein and denies any allegations inconsistent therewith.

42.    Responding to Paragraph 42 of the Complaint, T&S Brass craves reference to the EPA regulation referenced therein and denies any allegations inconsistent therewith.

43.    Responding to Paragraph 43 of the Complaint, T&S Brass craves reference to the EPA regulation referenced therein and denies any allegations inconsistent therewith.

44.    Responding to Paragraph 44 of the Complaint, T&S Brass craves reference to the EPA regulation referenced therein and denies any allegations inconsistent therewith.

45.    T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 45 of the Complaint, and therefore denies same.

46.    T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 46 of the Complaint, and therefore denies same.

47.    T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 47 of the Complaint, and therefore denies same.

48.    Responding to Paragraph 48 of the Complaint as it relates to T&S Brass, only admits that it is the owner and operator of a manufacturing plant, but denies its facility is located near Greenwood County.  Further responding to Paragraph 48 of the Complaint, Plaintiff's use of

ELECTRONICALLY FILED - 2024 Sep 30 3:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

the terms "utilize products," "industrial processes," and "precursors" are not defined and susceptible of multiple interpretations in this context; therefore, at this present time, and without a definition for the terms discussed above, T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations containing these terms and therefore denies same.  As to the remaining allegations set forth in Paragraph 48 of the Complaint which are addressed to other Defendants, T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations contained in this paragraph and therefore denies same.

49.     T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 49 of the Complaint, and therefore denies same. Further responding to Paragraph 49 of the Complaint, T&S Brass specifically denies Plaintiff has been damaged in the way it describes.

50.     T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 50 of the Complaint, and therefore denies same. Further responding to Paragraph 50 of the Complaint, T&S Brass specifically denies Plaintiff has been damaged in the way it describes.

51.     T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 51 of the Complaint, and therefore denies same. Further responding to Paragraph 51 of the Complaint, T&S Brass specifically denies Plaintiff has been damaged in the way it describes.

52.     T&S Brass denies the allegations set forth in Paragraph 52 of the Complaint.

53.     T&S Brass denies the allegations set forth in Paragraph 53 of the Complaint.

54.     T&S Brass denies the allegations and legal conclusions set forth in Paragraph 54 of the Complaint.

ELECTRONICALLY FILED - 2024 Sep 30 3:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

55. T&S Brass denies the allegations and legal conclusions set forth in Paragraph 55 of the Complaint.

56. T&S Brass denies the allegations set forth in Paragraph 56 of the Complaint.

**Plaintiff's First Cause of Action**
**Private Nuisance**

57. T&S Brass incorporates all prior responses to the Complaint by reference as if fully set forth herein.

58. Upon information and belief, T&S Brass admits the allegations set forth in Paragraph 58 of the Complaint.

59. T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 59 of the Complaint, and therefore denies same.

60. T&S Brass denies the allegations and legal conclusions set forth in Paragraph 60 of the Complaint.

61. T&S Brass denies the allegations set forth in Paragraph 61 of the Complaint.

62. T&S Brass denies the allegations and legal conclusions set forth in Paragraph 62 of the Complaint.

63. T&S Brass denies the allegations and legal conclusions set forth in Paragraph 63 of the Complaint.

64. T&S Brass denies the allegations and legal conclusions set forth in Paragraph 64 of the Complaint.

65. T&S Brass denies the allegations and legal conclusions set forth in Paragraph 65 of the Complaint and denies Plaintiff is entitled to injunctive relief as set forth therein.

66. T&S Brass denies the allegations and legal conclusions set forth in Paragraph 66 of the Complaint and denies Plaintiff is entitled to injunctive relief as set forth therein.

9

67.     T&S Brass denies the allegations set forth in Paragraph 67 of the Complaint, including subparts (a) and (b).

68.     T&S Brass denies the allegations and legal conclusions set forth in Paragraph 68 of the Complaint and denies Plaintiff is entitled to the relief sought therein.

### Plaintiff's Second Cause of Action
### Public Nuisance

69.     T&S Brass incorporates all prior responses to the Complaint by reference as if fully set forth herein.

70.     Upon information and belief, T&S Brass admits the allegations set forth in Paragraph 70 of the Complaint.

71.     T&S Brass is without knowledge or information sufficient to form a belief as to the truth of the allegations set forth in Paragraph 71 of the Complaint, and therefore denies same.

72.     Responding to Paragraph 72 of the Complaint, T&S Brass does not disagree that Plaintiffs' customers have an expectation to potable water that is reasonably pure and safe for their use; however, T&S Brass denies the remaining allegations and legal conclusions set forth in Paragraph 72 of the Complaint.

73.     T&S Brass denies the allegations and legal conclusions set forth in Paragraph 73 of the Complaint.

74.     T&S Brass denies the allegations and legal conclusions set forth in Paragraph 74 of the Complaint.

75.     T&S Brass denies the allegations and legal conclusions set forth in Paragraph 75 of the Complaint.

76.     T&S Brass denies the allegations and legal conclusions set forth in Paragraph 76 of the Complaint.

10

ELECTRONICALLY FILED - 2024 Sep 30 3:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Sep 30 3:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

77.     T&S Brass denies the allegations and legal conclusions set forth in Paragraph 77 of the Complaint and denies Plaintiff is entitled to injunctive relief as set forth therein.

78.     T&S Brass denies the allegations and legal conclusions set forth in Paragraph 78 of the Complaint.

79.     T&S Brass denies the allegations set forth in Paragraph 79 of the Complaint, including subparts (a) and (b).

80.     T&S Brass denies the allegations and legal conclusions set forth in Paragraph 68 of the Complaint and denies Plaintiff is entitled to the relief sought therein.

**Plaintiff's Third Cause of Action**
**Trespass**

81.     T&S Brass incorporates all prior responses to the Complaint by reference as if fully set forth herein.

82.     T&S Brass denies the allegations set forth in Paragraph 82 of the Complaint.

83.     T&S Brass denies the allegations set forth in Paragraph 83 of the Complaint, including subparts (a)–(d).

84.     T&S Brass denies the allegations and legal conclusions set forth in Paragraph 84 of the Complaint.

85.     T&S Brass denies the allegations and legal conclusions set forth in Paragraph 85 of the Complaint.

86.     T&S Brass denies the allegations and legal conclusions set forth in Paragraph 86 of the Complaint.

87.     T&S Brass denies the allegations and legal conclusions set forth in Paragraph 87 of the Complaint.

ELECTRONICALLY FILED - 2024 Sep 30 3:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

88.     T&S Brass denies the allegations and legal conclusions set forth in Paragraph 88 of the Complaint.

89.     T&S Brass denies the allegations and legal conclusions set forth in Paragraph 89 of the Complaint and denies Plaintiff is entitled to the relief sought therein.

### Plaintiff's Fourth Cause of Action
### Negligence, Gross Negligence, and/or Recklessness

90.     T&S Brass incorporates all prior responses to the Complaint by reference as if fully set forth herein.

91.     T&S Brass denies the allegations and legal conclusions set forth in Paragraph 91 of the Complaint.

92.     T&S Brass denies the allegations and legal conclusion set forth in Paragraph 92 of the Complaint.

93.     T&S Brass denies the allegations and legal conclusions set forth in Paragraph 93 of the Complaint.

94.     T&S Brass denies the allegations and legal conclusions set forth in Paragraph 94 of the Complaint.

95.     T&S Brass denies the allegations and legal conclusions set forth in Paragraph 95 of the Complaint and denies Plaintiff is entitled to the relief sought therein.

### Plaintiff's Prayer for Relief

96.     Responding to the unnumbered paragraph beginning with WHEREFORE, T&S Brass denies Plaintiff is entitled to the relief sought therein, including subparts (a)–(h).

ELECTRONICALLY FILED - 2024 Sep 30 3:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

## AFFIRMATIVE DEFENSES

### For a Second Defense
### (License)

97.     T&S Brass's actions have at all times been pursuant to express permits and directives of various state and federal regulatory agencies with which T&S Brass has at all relevant times and parameters been fully compliant.  Accordingly, T&S Brass pleads license as an affirmative defense to Plaintiff's claims.

### For a Third Defense
### (Failure to State a Cause of Action)

98.     Plaintiff has failed to state facts sufficient to constitute a cause of action and the Complaint should be dismissed pursuant to Rule 12(b)(6) of the South Carolina Rules of Civile Procedure.

### For a Fourth Defense
### (Ripeness)

99.     Plaintiff's claims are not ripe for adjudication and should be dismissed for presenting a contingent, hypothetical, or abstract dispute.  Plaintiff alleges that it will be required to incur costs at some future date when the Environmental Protection Agency will require it to upgrade its systems to treat PFAS.  Until these costs are incurred, Plaintiff's cannot recover.

100.    Plaintiff's claims are premature to the extent that neither the State nor United States Environmental Protection Agency have set final water quality standards, maximum contaminant levels, acceptable soil cleanup levels, or other regulatory standards that are necessary to evaluate whether natural resources have been injured.

ELECTRONICALLY FILED - 2024 Sep 30 3:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**For a Fifth Defense
(Lack of Standing)**

101.    Plaintiff also lacks standing to assert, in whole or in part, under the United States Constitution, the Constitution of South Carolina, state and federal statutes, and common law to bring the claims set forth in the Complaint.

102.    Plaintiff lacks standing to bring the claims set forth in the Complaint under both the public trust doctrine and *parens patriae* doctrine, because the property claimed to be affected is not held in the public trust and/or is not subject to the *parens patriae* doctrine.

103.    Plaintiff lacks standing to bring the claims set forth in the Complaint under both the public trust doctrine and *parens patriae* doctrine, because it does not have exclusive jurisdiction over the resources at issue, or only has partial jurisdiction over such resources and has failed to join other necessary trustees in this action.

104.    Plaintiff lacks standing to bring an action for trespass because Plaintiff has no ownership over and is not entitled to exclusive possession of various property and water bodies referenced in the Complaint, and because Plaintiff cannot establish unreasonable or substantial damage to the resource.

**For a Sixth Defense
(No Cognizable Injury)**

105.    Plaintiff has not demonstrated or pled a legally cognizable injury in the Complaint that is capable of redress.

**For a Seventh Defense
(Speculative Damages)**

106.    Further, Plaintiff's claims for alleged injuries and damages are barred, in whole or in part, because the claims for damages are speculative and conjectural.

ELECTRONICALLY FILED - 2024 Sep 30 3:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**For an Eighth Defense**
**(Statute of Limitations/Repose)**

107.　Plaintiff's claims are barred, in whole or in part, by the applicable statues of limitations or repose.

**For a Ninth Defense**
**(Failure to Name an Indispensable Party)**

108.　Plaintiff has failed to name all necessary and indispensable parties in its action.

**For a Tenth Defense**
**(No Duty)**

109.　Plaintiff's claims are barred, in whole or in part, because T&S Brass does not owe a legal duty to Plaintiff or, if it owed such a duty, did not breach and/or fully discharged that duty.

**For an Eleventh Defense**
**(Exercise of Due Care)**

110.　Plaintiff's claims are barred, in whole or in part, because, at all relevant times, T&S Brass exercised due care with respect to its activities and took reasonable precautions against foreseeable acts or omissions of others.

**For a Twelfth Defense**
**(No Proximate Cause)**

111.　Plaintiff's claims are barred, in whole or in part, because none of the alleged acts or omissions of T&S Brass proximately caused the purported injuries and damages allegedly sustained by Plaintiff.

**For a Thirteenth Defense**
**(Intervening Acts)**

112.　Upon information and belief, Plaintiff's injuries, damages, or losses, if any, were directly and proximately caused by the intervening acts, superseding acts, and conduct of others,

15

ELECTRONICALLY FILED - 2024 Sep 30 3:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

including Plaintiff, over which T&S Brass had no control, thereby precluding any recover against T&S Brass.

**For a Fourteenth Defense**
**(Comparative Fault)**

113.    Even assuming T&S Brass was negligent, careless, or reckless in any respect, and that any such conduct on its part operated as a proximate cause of Plaintiff's injuries or damages, all of which are expressly denied, Plaintiff's comparative negligence, carelessness, or recklessness contributed to the cause of Plaintiff's alleged damages.  For that reason, T&S Brass is not liable to Plaintiff in any sum whatsoever, and/or to the extent that a jury finds Plaintiff at fault for less than fifty percent (50%), Plaintiff's recovery should be reduced by that percentage amount.

**For a Fifteenth Defense**
**(Punitive Damages)**

114.    Plaintiff's claims for punitive damages are violative of both the United States Constitution and the South Carolina Constitution, and Defendants plead that sections 15-32-530 *et seq.*, of the South Carolina Code provide a cap to punitive damages potentially available in this matter.

115.    Plaintiff also fails to state any basis upon which punitive damages are recoverable against Defendants and, accordingly, Plaintiff's prayer for such damages should be dismissed and/or stricken from the claims pursuant to Rule 12(b)(6) and/or 12(f) of the South Carolina Rules of Civil Procedure.

116.    Pursuant to S.C. Code Ann. §15-32-520, any proceeding to determine punitive damages should be bifurcated from any trial to determine liability and compensatory damages.

ELECTRONICALLY FILED - 2024 Sep 30 3:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**For a Sixteenth Defense**
**(Plaintiff's Own Conduct)**

117.    Any damages suffered by Plaintiff, which such damages are expressly denied, are the direct and proximate result of Plaintiff's own conduct, and his recovery should be barred or, alternatively, reduced in proportion to the same degree as to Plaintiff's comparative fault.

**For a  Seventeenth Defense**
**(Failure to Mitigate)**

118.    Plaintiff has failed to mitigate its damages as required by law and such failure bars Plaintiff's recovery, in whole or in part, against T&S Brass.

**For an Eighteenth Defense**
**(Set-Off)**

119.    T&S Brass is entitled to a set-off and/or credit of any monies or proceeds received by or on behalf of Plaintiff as a  result of the claims alleged in the Complaint, regardless of the source of such monies, prior to any dismissal of or judgment in this matter.

**For a Nineteenth Defense**
**(Lack of Control)**

120.    Plaintiff's claims are barred, in whole or in part, because T&S Brass did not own, operate, or otherwise control the facilities described in the Complaint at the time that PFAS is alleged to have migrated out of those facilities.

**For a Twentieth Defense**
**(Lack of Traceability)**

121.    Plaintiff's claims are barred, in whole or in part, to the extent Plaintiff cannot establish its alleged injuries were caused by exposure to PFAS from any conduct attributable to T&S Brass.

ELECTRONICALLY FILED - 2024 Sep 30 3:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**For a Twenty-First Defense**
**(Lack of Scientific Evidence)**

122.    Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff cannot establish that PFAS has been reliably established through scientific means, to be capable of causing Plaintiff's alleged injuries.

123.    Plaintiff's claims are barred, in whole or in part, to the extent that Plaintiff cannot establish that its customers were exposed to sufficient concentrations or amount of PFAS, and/or for sufficient duration, which has been reliably established, through scientific means, to be capable of causing alleged injuries.

**For a Twenty-Second Defense**
**(Lack of Foreseeability)**

124.    Any damages Plaintiff may have suffered (which are expressly denied) were not reasonably foreseeable by T&S Brass at the time of the conduct alleged.

**For a Twenty-Third Defense**
**(Unjust Enrichment)**

125.    Plaintiff's claims against T&S Brass are barred by the doctrines of unjust enrichment in that Plaintiff seeks to recover costs or damages for construction, operation, and maintenance of public water supply systems after Plaintiff sought and obtained a permit to secure, treat, and distribute public water supplies and for which it received funding from its customers, State, Local, and Federal sources, including but not limited to funding to specifically address unexpected contamination in water supplies under the Emergency Response Plans of the Safe Drinking Water Act, 42 U.S.C. 300f to 300j.

18

ELECTRONICALLY FILED - 2024 Sep 30 3:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**For a Twenty-Fourth Defense**
**(Preemption or Preclusion by State or Federal Law)**

126.    Plaintiff's claims are pre-empted or otherwise precluded by State and Federal law to the extent Plaintiffs seek recovery of costs or damages for contamination of water supplies, the enforcement of which is vested exclusively in State and Federal agencies pursuant to State and Federal statutes, including but not limited to the Safe Drinking Water Act, 42 U.S.C. 300f to 300j and the South Carolina Hazardous Waste Management Act, S.C. Code Ann. § 44-56-10 *et seq*.

**For a Twenty-Fifth Defense**
**(State of the Art)**

127.    Plaintiff's claims are barred, in whole or in part, because T&S Brass neither knew, nor should have known, that any of the substances to which Plaintiff or Plaintiff's property was allegedly exposed were hazardous or constituted a reasonable foreseeable risk of physical harm by virtue of the prevailing state of the medical, scientific, technical, and/or industrial knowledge available to T&S Brass at all times relevant to the claims or causes of action asserted by Plaintiff.

128.    Plaintiff's claims are barred, in whole or in part, because the alleged acts or omissions by T&S Brass, throughout the relevant and material time period, conformed to the then-existing custom and practice, and T&S Brass exercised due care and acted in accordance with and/or complied with available technological, medical, scientific, and industrial "state-of-the-art" practice, and/or applicable laws, regulations, standards, and orders.

129.    Plaintiff's claims are barred in whole or in part under the bulk supplier, component part supplier, sophisticated-purchaser, sophisticated-user, sophisticated intermediary, and/or knowledgeable-user doctrines or other similar or related doctrines available under applicable law.

19

ELECTRONICALLY FILED - 2024 Sep 30 3:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**For a Twenty-Sixth Defense**
**(Separation of Power)**

130.    Some or all of Plaintiff's claims are not amenable to judicial resolution because of the primary jurisdiction doctrine. *Texas v. Pacific Railway Co. v. Abilene Cotton Oil Co.*, 204 U.S. 426 (1907).

131.    The relief sought is, in whole or in part, within the particular expertise of and is being addressed by federal and state governments, and their relevant agencies, and thus the Court should decline to exercise jurisdiction over these matters pursuant to the doctrine of primary jurisdiction, abstention, and or the doctrine of separation of powers.

**For a Twenty-Seventh Defense**
**(Open and Obvious Conditions)**

132.    The claims and/or damages alleged in the Complaint are barred, in whole or in part, under the doctrine of open and obvious conditions.

**For a Twenty-Eighth Defense**
**(Voluntary Exposure)**

133.    The claims and/or damages alleged in the Complaint are barred, in whole or in part, under the doctrine of voluntary exposure.

**For a Twenty-Ninth Defense**
**(Coming to the Nuisance)**

134.    The claims and/or damages alleged in the Complaint are barred, in whole or in part, under the doctrine of coming to the nuisance.

**For a Thirtieth Defense**
**(Assumption of the Risk)**

135.    The claims and/or damages alleged in the Complaint are barred, in whole or in part, under the doctrine of assumption of risk.

ELECTRONICALLY FILED - 2024 Sep 30 3:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**For a Thirty-First Defense**
**(Election of Remedies)**

136.    Plaintiff's claims are barred, in whole or in part, by the doctrine of election of remedies.

**For a Thirty-Second Defense**
**(Public Necessity)**

137.    Plaintiff's claims are or may be barred, in whole or in part, because of consent, public necessity, private necessity and/or privilege.

**For a Thirty-Third Defense**
**(Compliance with Law)**

138.    T&S Brass is not responsible or liable for any acts or omissions undertaken by or at the direction of any governmental authority or agency, including without limitation, acts or omissions made in accordance with applicable statutes, regulations, permits, and industry standards.

**For a Thirty-Fourth Defense**
**(Equitable Defenses)**

139.    Plaintiff's claims are barred, in whole or in part, by the doctrines of laches, waiver, res judicata, estoppel, ratification, and unclean hands.

140.    Plaintiff's Complaint is barred, in whole or in part, by the doctrines of acquiescence, consent, justification, accord and satisfaction, ratification, settlement, or release.

**For a Thirty-Fifth Defense**
**( CERCLA)**

141.    Plaintiff's alleged claims are preempted or barred by the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA"), 42 U.S.C. § 9601, *et seq*. and the South Carolina Hazardous Waste Management Action, S.C. Code Ann. 44-56-10 *et seq.* to the extent such claims include, encompass or relate to environmental conditions or natural

21

ELECTRONICALLY FILED - 2024 Sep 30 3:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

resource damages or losses at any past, present or future facilities, sites, properties, locations or other areas listed on the United States Environmental Protection Agency's National Priority List (Superfund sites), or from which discharges or releases of materials have otherwise come to be located emanating from such facilities, sites, properties, locations or areas.

**For a Thirty-Sixth Defense**
**(Failure to Exhaust Administrative Remedies)**

142.    Plaintiff's claims are barred because it failed to exhaust administrative remedies.

**For a Thirty-Seventh Defense**
**(Proportionate Share)**

143.    Plaintiff is not entitled to recover from T&S Brass more than T&S Brass's fair, equitable, and proportionate share, if any, of the costs and damages sought by Plaintiff or to otherwise recover from T&S Brass more than the amount of such relief, if any, for which T&S Brass is liable.

**For a Thirty-Eighth Defense**
**(Retroactive Application of Law/Ex Post Facto Doctrine)**

144.    Plaintiff's claims are barred, in whole or in part, to the extent they seek to impose retroactive liability.

145.    T&S Brass may not be held liable under retroactive theories not requiring proof of fault or causation.

**For a Thirty-Ninth Defense**
**(Adequate Remedy at Law)**

146.    All claims for injunctive relief in Plaintiff's Complaint are barred because Plaintiff has adequate remedies at law, to the extent its claims are provable.

22

ELECTRONICALLY FILED - 2024 Sep 30 3:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**For a  Fortieth Defense**
**(Necessary Expenses)**

147.    Plaintiff's claims are barred to the extent that they seek to recover costs, damages, and expenses including, but not limited to, response, assessment, remediation cleanup and/or removal costs that Plaintiff incurred improperly, or that are not related to natural resource restoration or replacement damages.

**For a Forty-First Defense**
**(Double Recovery)**

148.    The damages sought by Plaintiff, if awarded, should be reduced by any amounts it recovers from any other sources and Plaintiff is barred from any form of double recovery regardless of the nature or source of such recovery.

**For a Forty-Second Defense**
**(40 C.F.R. § 403.5(a)(2))**

149.    Plaintiff's claims are barred, in whole or in part, because T&S Brass did not know or have reason to know that its wastewater discharge, alone or in conjunction with a discharge or discharges from other sources, would cause pass through or interference, as contemplated by 40 C.F.R. § 403.5(a)(2).

**For a Forty-Third Defense**
**(Municipal Cost Recovery Rule)**

150.    Plaintiff's claims are barred, in whole or in part, by the municipal cost recovery rule or the free public services doctrine.  *See United States v. Standard Oil of California*, 332 U.S. 301 (1947).

**For a Forty-Fourth Defense**
**(Incorporation)**

151.    T&S Brass asserts and incorporates herein any affirmative defenses asserted or otherwise raised by other defendants in this action to Plaintiff's Complaint.

23

ELECTRONICALLY FILED - 2024 Sep 30 3:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**For a Forty-Fifth Defense**
**(Reservation)**

152.    T&S Brass has not completed its investigation of Plaintiff's allegations.  T&S Brass intends to act as best it can to inform itself of the pertinent facts and circumstances surrounding the allegations contained in Plaintiff's Complaint.  Thus, T&S Brass hereby gives notice of its intent to assert any further affirmative defenses that they may learn to be supported by facts and law, including but not limited to, that this action is barred in whole or in any part by any applicable statute, contract, release, covenant, or by the doctrine of laches.  T&S Brass reserve the right to amend this Answer to assert any such defenses.

**WHEREFORE**, having fully answered the Amended Complaint, T&S Brass prays that the Complaint be dismissed with prejudice, that T&S Brass be awarded its attorneys' fees and costs associated with defending this action, and for such other and further relief as the Court may deem just and proper.

**[signature on following page]**

ELECTRONICALLY FILED - 2024 Sep 30 3:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**WILLIAMS MULLEN**

By: s/John G. Tamasitis
Richard H. Willis (SC Bar No. 6159)
Ethan R. Ware (SC Bar No. 7990)
John G. Tamasitis (SC Bar No. 101875)
1230 Main Street, Suite 330
Columbia, SC 29201
Tel. 803.567.4615
Fax: 803.567.4601
*rwillis@williamsmullen.com*
*eware@williamsmullen.com*
*jtamasitis@williamsmullen.com*


*Counsel for Defendant T&S Brass and Bronze Works, Inc.*

September 30, 2024
Columbia, South Carolina

25

ELECTRONICALLY FILED - 2024 Sep 30 3:06 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | EIGHTH JUDICIAL CIRCUIT |
| COUNTY OF GREENWOOD | ) | |
| | ) | |
| Greenwood Commissioners of Public Works, | ) | CASE NO.: 2024-CP-24-00735 |
| | ) | |
| | ) | |
| Plaintiff, | ) | **T&S Brass and Bronze Works, Inc.'s Motion** |
| | ) | **to Dismiss Plaintiff's Complaint Pursuant to** |
| vs. | ) | **Rule 12(b)(6), SCRCP** |
| | ) | |
| Cone Mills Receiver, LLC; Cryovac, Inc.; Cryovac, LLC; FirstSource Worldwide, LLC; Fitesa Simpsonville, Inc.; Milliken & Company; Opperman Webbing, Inc.; T&S Brass and Bronze Works, Inc.; Unichem Specialty Chemicals, LLC, | ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

Defendant T&S Brass and Bronze Works, Inc. ("T&S Brass") hereby moves, pursuant to Rules 12(b)(1) and 12(b)(6) of the South Carolina Rules of Civil Procedure, to dismiss Plaintiff's claims against T&S Brass set forth in Plaintiff's Amended Complaint.

**BACKGROUND**

Plaintiff filed its Amended Complaint against T&S Brass and various co-defendants asserting causes of action for negligence, continuing nuisance, public nuisance, and trespass related to alleged "ongoing contamination of the Reedy River, Saluda River, Lake Greenwood, and Plaintiff's property." (Am. Compl. ¶ 1). Plaintiff alleges T&S Brass, along with other co-defendants, discharged and continue to unlawfully discharge products that contain or degrade to certain toxic per- and polyfluoroalkyl substances ("PFAS") into the above-referenced waterways. (*Id*. at ¶ 2).

As alleged, defendants discharge their industrial wastewater to certain publicly owned wastewater treatment plants ("WWTP"), pursuant to permits issued by the WWTPs; the WWTPs

1

then treat the wastewater pursuant to permits issued by the South Carolina Department of Environmental Services ("DES") in accordance with state and federal regulations. (*See id*. at ¶¶ 2–5). After treatment, wastewater is discharged by the WTTPs to the Reedy River (in the case of T&S Brass) and travels downstream to Plaintiff's water intakes on Lake Greenwood and, according to the Complaint, allegedly contaminates both Plaintiff's real property and the domestic water supply for nearly 23,500 customers in Greenwood and Abbeville Counties. (*Id*. at ¶ 2). Plaintiff claims that it has suffered past, present, and future losses to the use and enjoyment of certain property interests and has experienced physical trespass and been damaged by water contaminated with concentrations of PFAS, which if distributed to its customers using the current wastewater supply technology, would contain PFAS at levels EPA has deemed to be unsafe. (*Id*. at ¶ 5).

Although not explicitly stated in the Amended Complaint, Plaintiff's claims appear founded on an assertion of property rights related to the W.R. Wise Water Treatment Facility (a surface water treatment plant) and its water treatment and distribution system, as well as Plaintiff's conditional right to withdraw water from Lake Greenwood to provide potable water to the public after appropriate treatment. (*Id*. at ¶¶ 3, 14, 54).

<u>**GROUNDS FOR THE MOTION**</u>

As set forth in detail below, and as will be addressed in a separate memorandum of law in support of this Motion, the Amended Complaint fails to state facts sufficient to constitute a cause of action on multiple grounds.

ELECTRONICALLY FILED - 2024 Sep 30 3:06 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

2

ELECTRONICALLY FILED - 2024 Sep 30 3:06 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**I.     Plaintiff's Amended Complaint and Common Law Claims Fail to State a Justiciable Controversy Capable of Judicial Redress.**

As a threshold matter, Plaintiff fails to present a justiciable controversy. The common law causes of action set forth in the Amended Complaint are not ripe for adjudication, and Plaintiff does not have standing to assert these claims.

**II.    The Municipal Cost Recovery Rule (or "Free Public Services Doctrine) Precludes the Speculative Damages Plaintiff Seeks.**

Plaintiff is a governmental, public entity that is duly authorized to provide "potable water and additional public utility services to residents of Greenwood and Abbeville Counties." (Am. Compl. ¶ 13 (citing S.C. Code Ann. § 5-31-210)). Under the municipal cost recovery rule, also known as the "free public services doctrine," public expenditures made in the performance of governmental functions, like those sought by Plaintiff to upgrade its SWTP, are not recoverable in tort. *See United States v. Standard Oil Co. of California*, 332 U.S. 301 (1947).

**III.   Plaintiff's Claims Against T&S Brass are Misplaced and Plaintiff Failed to Join an Indispensable Party.**

Plaintiff's claims against T&S Brass are also misplaced. T&S Brass does not discharge its industrial wastewater to the Reedy River, as Plaintiff acknowledges in the Complaint. (Am. Compl. ¶ 49). Rather, the injuries Plaintiff attributes to T&S Brass arise from the alleged discharge of PFAS by the Mauldin Road WWTP ("Mauldin WWTP") in Greenville, South Carolina. Pursuant to a permit from Mauldin WWTP and as mandated by DES regulations, T&S Brass discharges its industrial wastewater to the Mauldin WWTP. In accordance with the federal Clean Water Act, Mauldin WWTP, a third party, treats the wastewater to further state water quality standards (which are based on MCLs set by the EPA), then discharges the water into the Reedy River upstream of Lake Greenwood and Plaintiff's water intakes. (Am. Compl. ¶ 22). T&S Brass

3

ELECTRONICALLY FILED - 2024 Sep 30 3:06 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

has no control over the Mauldin WWTP's operations or discharges, which are subject to strict requirements in permits issued by DES and the EPA.

Plaintiff has chosen not to sue Mauldin WWTP, an indispensable party under Rule 19, SCRCP. South Carolina law does not allow Plaintiff to sue T&S Brass for the conduct of Mauldin WWTP. Accordingly, Plaintiff's Amended Complaint should be dismissed on this separate ground.

**IV.     Plaintiff's Claim for Trespass Fails Due to an Incurable Defect of Law.**

The facts and issues presented in the Amended Complaint cannot support a claim for trespass under South Carolina law. First, South Carolina follows the traditional rule that there must be "an invasion by a physical, tangible thing for a trespass to exist." *Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 145, 747 S.E.2d 468, 476 (2013). Plaintiff does not allege that PFAS can be seen, felt, or otherwise perceived in the water, and therefore, its trespass claim fails to satisfy the requirement of physical invasion as a matter of law. Plaintiff's trespass claim also fails because Plaintiff does not have an exclusive right of possession with respect to the allegedly contaminated water. Additionally, Plaintiff concedes that the alleged trespass of PFAS-contaminated water only occurs as a result of Plaintiff's own actions: when Plaintiff turns on its water pumps. (Am. Compl. ¶ 85). This does not constitute an actionable trespass under South Carolina law.

**V.     Plaintiff's Fails to State a Cause of Action for Nuisance.**

Plaintiff's claims for nuisance (both private and public) fail as a matter of law, because T&S Brass cannot be liable to Plaintiff for delivering alleged contamination to a WWTP when Plaintiff's allegations of nuisance against T&S Brass arise solely from the Mauldin WWTP's

4

discharges, and the alleged contamination of a public water body cannot be the basis of a private nuisance claim.

**VI.     Plaintiff's Complaint Fails to State a Cause of Action for Negligence against T&S Brass.**

Plaintiff's claim for negligence fails because (1) there is no duty under the law that flows from T&S Brass to Plaintiff; (2) Plaintiff has assumed the risk, and the duty, of treating the water and complying with applicable drinking water standards; and (3) Plaintiff has not yet suffered any legally cognizable damages.

**VII.     In the Alternative, the Court Should Stay this Action and Refer the Issue to the Department of Environmental Services.**

In the alternative, the Court should stay this action upon referral to DES on the grounds of primary jurisdiction.

<u>**CONCLUSION**</u>

For the reasons set forth above, and as will be more fully described in a Memorandum of Law filed in support of this Motion, Plaintiff's claims against T&S Brass fail to state claims upon which relief can be granted and T&S Brass is entitled to judgment as a matter of law.  This Motion is based upon the pleadings in this action, the South Carolina Rules of Civil Procedure, all applicable statutory and common law, any Memorandum of Law to be filed in connection herewith, and additional arguments as may be submitted to the Court in support hereof.

**[signature on following page]**

5

ELECTRONICALLY FILED - 2024 Sep 30 3:06 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Sep 30 3:06 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**WILLIAMS MULLEN**

By: s/John G. Tamasitis
Richard H. Willis (SC Bar No. 6159)
Ethan R. Ware (SC Bar No. 7990)
John G. Tamasitis (SC Bar No. 101875)
1230 Main Street, Suite 330
Columbia, SC 29201
Tel. 803.567.4615
Fax: 803.567.4601
*rwillis@williamsmullen.com*
*eware@williamsmullen.com*
*jtamasitis@williamsmullen.com*

*Counsel for Defendant T&S Brass and Bronze Works, Inc.*

September 30, 2024
Columbia, South Carolina

6

ELECTRONICALLY FILED - 2024 Oct 22 5:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF GREENWOOD** | ) | **EIGHTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| **GREENWOOD COMMISSIONERS OF** | ) | **C.A. No.:  2024-CP-24-00735** |
| **PUBLIC WORKS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CONE MILLS RECEIVER, LLC;** | ) | |
| **CRYOVAC, INC.; CRYOVAC, LLC;** | ) | **DEFENDANT OPPERMANN** |
| **FIRSTSOURCE WORLDWIDE, LLC;** | ) | **WEBBING, INC.'S MEMORANDUM** |
| **FITESA SIMPSONVILLE, INC.;** | ) | **OF LAW IN SUPPORT OF MOTION** |
| **MILLIKEN & COMPANY; OPPERMANN** | ) | **TO DISMISS PLAINTIFF'S** |
| **WEBBING, INC.; T&S BRASS AND** | ) | **AMENDED COMPLAINT** |
| **BRONZE WORKS, INC.; UNICHEM** | ) | |
| **SPECIALTY CHEMICALS, LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

Defendant Oppermann Webbing, Inc. ("Oppermann"), by and through its undersigned counsel, and pursuant to Rules 8(a), 12(b)(1), and 12(b)(6) of the South Carolina Rules of Civil Procedure, hereby submits its Memorandum of Law in Support of its Motion to Dismiss all claims asserted against Oppermann in the Amended Complaint filed by Plaintiff Greenwood Commissioners of Public Works (the "Plaintiff"), respectfully stating as follows:

## I.     INTRODUCTION

Plaintiff's Amended Complaint (the "Complaint") should be dismissed for multiple reasons.  At the outset, this dispute is not ripe for judicial review.  Rather, the Plaintiff, which is a water utility that "provides potable water to residents of Greenwood and Abbeville Counties," bases its claims on newly-promulgated drinking water standards for certain per- and polyfluoroalkyl substances ("PFAS") that do not go into effect (and that Plaintiff does not have to comply with) until 2029.  Moreover, even assuming these standards go into effect in 2029 as

55332445 v1

ELECTRONICALLY FILED - 2024 Oct 22 5:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

currently written (they are at present being challenged in federal court on multiple grounds), it is unknown what measures, if any, Plaintiff will ultimately have to undertake in order to meet them. By contrast, what is clear under the Complaint is that the new rule includes a three (3) year initial testing phase that has only just begun, and that Plaintiff does not allege that it has incurred any costs whatsoever (or taken any action at all for that matter) as a result of the new rule or the allegedly PFAS-contaminated water that the rule concerns. Instead, Plaintiff's Complaint seeks to recover potential *future* expenses that it *might* incur in connection with its acquisition, installation, and operation of a new water treatment system, which are inherently conjectural and contingent on what may or may not occur over the next several years. Accordingly, Plaintiff's case is not ripe for adjudication and should be dismissed for this reason alone.

In addition to the premature nature of Plaintiff's claims, Plaintiff's claims against Oppermann also fail for other reasons. For one thing, Plaintiff's claims against Oppermann are entirely misdirected, as the alleged harm that Plaintiff ascribes to Oppermann arises from the alleged discharge of PFAS-contaminated wastewater by "certain wastewater treatment plants ('WWTPs') located upstream of Plaintiff's water intakes" on Lake Greenwood. These WWTPs include the Piedmont Regional WWTP, a third party to this litigation. According to the Complaint, Oppermann — a customer of the Piedmont Regional WWTP — disposes of its wastewater by delivering it to the Piedmont Regional WWTP for treatment, which the Piedmont Regional WWTP thereafter "discharges into the Saluda River upstream of Lake Greenwood and Plaintiff's water intakes." However, Oppermann does not control (or have any ability to control) the operations of the Piedmont Regional WWTP, let alone the specific discharges of allegedly contaminated wastewater into the Saluda River on which Plaintiff bases its claims. South Carolina law simply does not impose liability under such circumstances, and Plaintiff's claims must again be dismissed.

55332445 v1

2

Finally, Plaintiff's claims against Oppermann should also be dismissed for several additional reasons. In particular, Plaintiff's private nuisance claim fails because the alleged contamination of the Saluda River and Lake Greenwood affects the general public, which as a matter of law does not support a claim for private nuisance. Plaintiff's trespass claim likewise fails, as PFAS molecules constitute "intangible" matter that only enter Plaintiff's property as a result of its own voluntary actions. Lastly, Plaintiff's negligence claim fails as well, as Oppermann does not owe a legal duty to the Plaintiff, nor does Plaintiff allege that it has incurred any physical injury or property damage because of such negligence.

For all of these reasons, and as shown in greater detail below, Plaintiff's claims against Oppermann fail as a matter of law, and should therefore be dismissed.

## II.     ARGUMENT AND CITATION OF AUTHORITY

### A.     Plaintiff's claims are not ripe for adjudication and should be dismissed.

"A threshold inquiry for any court is a determination of justiciability, i.e., whether the litigation presents an active case or controversy." *Peoples Fed. Sav. & Loan Ass'n of S.C. v. Res. Plan. Corp.*, 358 S.C. 460, 477, 596 S.E.2d 51, 60 (2004) (quoting *Lennon v. S.C. Coastal Council*, 330 S.C. 414, 415, 498 S.E.2d 906, 906 (Ct. App. 1998)). Justiciability encompasses several doctrines, including an assessment of whether the plaintiff's claims are ripe for adjudication. *See James v. Anne's Inc.*, 390 S.C. 188, 193, 701 S.E.2d 730, 732 (2010) (citing *Jackson v. State*, 331 S.C. 486, 490 n.2, 489 S.E.2d 915, 917 n.2 (1997)). Where, as here, a claim presents only "a contingent, hypothetical or abstract dispute," the claim is not ripe for adjudication and must be dismissed. *See Pee Dee Elec. Co-op., Inc. v. Carolina Power & Light Co.*, 279 S.C. 64, 66, 301 S.E.2d 761, 762 (1983); *see also Peoples Fed. Sav. & Loan Ass'n of S.C.*, 358 S.C. at 477, 596 S.E.2d at 60 ("A justiciable controversy is a real and substantial controversy which is ripe and appropriate for judicial determination, as distinguished from a contingent, hypothetical or abstract

ELECTRONICALLY FILED - 2024 Oct 22 5:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Oct 22 5:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

dispute.") (citation omitted).[1]  *See also Carolina Care Plan, Inc. v. United HealthCare Servs., Inc.*, 361 S.C. 544, 557, 606 S.E.2d 752, 759 (2004) (affirming dismissal of complaint where claims were contingent in nature and therefore not yet ripe for adjudication).[2]

In this case, Plaintiff's allegations demonstrate that it has not yet suffered any legally cognizable injury due to PFAS, and in fact that it might never suffer such injury.  Indeed, while the U.S. Environmental Protection Agency's PFAS drinking water standards ("maximum contaminant levels" or "MCLs") became final in April 2024, (Compl. ¶ 42), it has not yet been determined how, if at all, the rule will impact the Plaintiff or its ability to provide acceptable drinking water.  Notably, the Plaintiff will not be required to comply with the MCLs until April 26, 2029.  (*Id.* ¶ 44).  Prior to the MCL compliance date, there is a three-year "initial monitoring" period that runs through April 26, 2027.  (*Id.*); *see also* PFAS National Primary Drinking Water Regulation, 89 Fed. Reg. 32,532, 32,633 (Apr. 26, 2024) (codified at 40 CFR Parts 141 and 142).

Plaintiff does not allege any facts demonstrating that, at this time, it is doing anything other than waiting to see if and when it will have to take action to comply with the 2029 MCLs.  In fact, Plaintiff has not alleged that it has incurred any costs or expenses whatsoever due to the presence

---

[1] *See also Wild Virginia v. Council on Env't Quality*, 56 F.4th 281, 294 (4th Cir. 2022) ("A claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact 'remains wholly speculative.'") (citation omitted); *South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019) ("[A] plaintiff's claim is not ripe for judicial review 'if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (quoting *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 270 (4th Cir. 2013))).

[2] *See also Kiawah Prop. Owners Grp. v. Pub. Serv. Comm'n of S.C.*, 357 S.C. 232, 242-43, 593 S.E.2d 148, 154 (2004) (finding "it is patent there is no present, justiciable controversy" where plaintiffs "assert only that the loan provisions may have some negative impact in the future" on water utility's customers, because "'a contingent, hypothetical or abstract dispute' . . . is simply insufficient to warrant this Court's review"); *McClanahan v. Richland Cnty. Council*, 350 S.C. 433, 441, 567 S.E.2d 240, 244 (2002) (agreeing property owner's claim based on adoption of land use plan that had not yet been implemented "is not justiciable because it is not ripe for review"); *see also, e.g.*, *Tracy v. Tracy*, 384 S.C. 91, 100, 682 S.E.2d 14, 18 (Ct. App. 2009) (determining case not ripe for review where appellant not yet exposed to liability due to appellee's conduct).

55332445 v1

ELECTRONICALLY FILED - 2024 Oct 22 5:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

of PFAS in its source water.  Rather, it is seeking "expenses associated with *future* acquisition, installation, and operation of required treatment technologies."  (*See* Compl. ¶ 73 (emphasis added)).  Nothing in the Complaint indicates that Plaintiff's operations have changed at all from the period before the MCLs were finalized in April or as a result of PFAS in Lake Greenwood.

This status quo may continue indefinitely.  Plaintiff's testing during the initial monitoring period may indicate that Plaintiff will not be required to make any capital investments to remain in compliance with applicable regulations.  It is further uncertain whether the MCLs will remain valid law by the time they would actually apply to Plaintiff.  For instance, in June 2024, three sets of plaintiffs filed challenges to the EPA's PFAS rule in actions currently pending before the D.C. Circuit Court of Appeals. *See* Petition for Review, *The Chemours Co. v. EPA*, No. 24-1192 (D.C. Cir. June 10, 2024), *available at* https://www.epa.gov/system/files/documents/2024-06/chemours-v.-epa_d.c.cir_.pdf; Petition for Review, *Nat'l Assoc. of Mfrs. v. EPA*, No. 24-1191 (D.C. Cir. June 10, 2024), *available at* https://www.fbm.com/content/uploads/2024/06/24-1191_Documents.pdf; Petition for Review, *Am. Water Works Assoc. v. EPA*, No. 24-1188 (D.C. Cir. June 7, 2024), *available at* https://www.awwa.org/Portals/0/AWWA/Government/062124Insiders/AWWA-v-EPA-No-1188-DC-Cir-Filed-Petition.pdf.  The changes to the MCLs that could result from these cases (or for other reasons) preclude Plaintiff's claims from being ripe at this time.  *See Jowers v. S.C. Dep't of Health & Env't Control*, 423 S.C. 343, 364, 815 S.E.2d 446, 457 (2018) (finding action was not ripe because the plaintiff's claim "depends on there being no changes to the law regarding surface water withdrawals").  Because of these numerous contingencies and the resulting uncertainty, the facts alleged by Plaintiff demonstrate, at most, "the mere threat of potential injury," which is "too contingent or remote to support present adjudication."  *Waters v. S.C. Land Res. Conservation Comm'n*, 321 S.C. 219, 228, 467 S.E.2d 913, 918 (1996) (quoting *Thrifty Rent-*

ELECTRONICALLY FILED - 2024 Oct 22 5:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

*A-Car Sys., Inc. v. Thrifty Auto Sales of Charleston, Inc.*, 849 F. Supp. 1083, 1086 (D.S.C. 1991)).

Thus, for this reason alone, Plaintiff's claims are not ripe for adjudication and should be dismissed.

**B.     Plaintiff's individual claims against Oppermann each fail as a matter of law.**

In addition to Plaintiff's failure to assert a justiciable dispute that is ripe for adjudication,

each of Plaintiff's claims against Oppermann are legally deficient, and should again be dismissed.

### 1.     *Plaintiff cannot state a valid claim for nuisance against Oppermann because Oppermann does not control the source of the alleged nuisance.*

Pursuant to black letter South Carolina law, Oppermann cannot be held liable to the

Plaintiff based upon its alleged disposal of industrial wastewater at the Piedmont Regional WWTP.

Rather, nuisance law is primarily a mechanism for resolving "conflicting interests of landowners,"

and to effect a "balancing of the[ir] correlative rights." *See DeBorde v. St. Michael & All Angels*

*Episcopal Church*, 272 S.C. 490, 502, 252 S.E.2d 876, 882 (1979); *Winget v. Winn-Dixie Stores,*

*Inc.*, 242 S.C. 152, 159, 130 S.E.2d 363, 367 (1963); *see also O'Cain v. O'Cain*, 322 S.C. 551,

560, 473 S.E.2d 460, 465 (Ct. App. 1996) (discussing purpose of law of nuisance). For that reason,

the South Carolina Supreme Court has made clear that "one who has no control over property at

the time of the alleged nuisance cannot be held liable therefor." *Clark v. Greenville Cnty.*, 313

S.C. 205, 210, 437 S.E.2d 117, 119 (1993). As such, in the absence of allegations evidencing

control, a nuisance claim fails and must be dismissed. *See id.*; *see also Weatherford v. E.I. Dupont*

*de Neumours & Co.*, No. 4:22-cv-1427, 2023 WL 11015357, at *6 (D.S.C. Sept. 27, 2023)

(concluding that because "Plaintiffs have not alleged Defendants had control over the PFAS once

they were sold to the textile plants," the Defendants could not be held liable for the PFAS and

therefore "Defendants' motion to dismiss is granted as to Plaintiffs' nuisance cause of action").[3]

---

[3] *See also, e.g.*, *Long v. O'Reilly's Auto. Stores, Inc.*, No. 6:12-cv-901, 2013 WL 12148122, at *4 (D.S.C. Mar. 7, 2013) (dismissing nuisance claim against defendants who had no control over property that was source of water that discharged onto and damaged the plaintiff's property).

ELECTRONICALLY FILED - 2024 Oct 22 5:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

The South Carolina Supreme Court's decision in *Clark v. Greenwood County* is directly on point. In that case, the plaintiffs were property owners who alleged that their properties had been contaminated by hazardous chemical waste that had been disposed of at a nearby landfill. *See* 313 S.C. at 206-07, 437 S.E.2d at 118. As a result, the property owners filed suit against five corporate defendants that had used the landfill to dispose of such waste. *Id.* at 207, 437 S.E.2d at 118. The trial court ruled that because the corporate respondents did not own or control the landfill, "no action for private nuisance could be maintained against the corporate respondents." *Id.* at 209, 437 S.E.2d at 119. On appeal, the South Carolina Supreme Court affirmed, explaining that "[t]he only issue we need address is whether one must own or have control of the property allegedly used as a nuisance"; on that issue, the court ruled that such control was indeed a prerequisite to any action for nuisance: "[W]e now hold one who has no control over property at the time of the alleged nuisance cannot be held liable therefor." *Id.* at 209-10, 437 S.E.2d at 119. Thus, because "appellants neither alleged nor produced any evidence the corporate respondents had control over the landfill or the hazardous waste once it was deposited at the landfill," the court concluded that "the trial judge correctly ruled the corporate respondents could not be liable for nuisance because they had no control over the property allegedly used as a nuisance." *Id.* at 210, 437 S.E.2d at 119.

Here, Plaintiff's Complaint alleges that "the Piedmont Regional WWTP discharges water [containing PFAS] into the Saluda River upstream of Lake Greenwood," and that "[t]hese PFAS and their precursors flow downstream to Plaintiff's water intakes on Lake Greenwood, damaging Plaintiff's property and contaminating its water source." (*See* Compl. ¶ 51). However, just like the plaintiffs in *Greenwood County*, the Plaintiff's only allegation in this case against Oppermann is that "Oppermann's facility discharges industrial wastewater [containing PFAS] to the Piedmont Regional WWTP." (*See id.* ¶ 21). In other words, Plaintiff's allegations confirm it is the discharge

ELECTRONICALLY FILED - 2024 Oct 22 5:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

of water by the Piedmont Regional WWTP that is allegedly "damaging Plaintiff's property and contaminating its water source," and that Oppermann's conduct is limited to its disposal of wastewater at the Piedmont Regional WWTP, which occurs prior to (and entirely separate and apart from) any discharge by the Piedmont Regional WWTP.  (*See id.* ¶¶ 21, 51, 57-80).  Thus, because Oppermann had no control the Piedmont Regional WWTP, it "had no control over the property allegedly used as a nuisance."  *See Greenwood Cnty.*, 313 S.C. at 210, 437 S.E.2d at 119. Accordingly, Plaintiff's private and public nuisance claims against Oppermann both fail as a matter of law,[4] and Counts 1 and 2 of Plaintiff's Complaint must be dismissed.

### 2. *Plaintiff's allegations of contamination of the Saluda River and Lake Greenwood fail to state an actionable claim for private nuisance.*

Next, Plaintiff's private nuisance claim against Oppermann should also be dismissed for the additional reason that the alleged contamination of a public water body cannot form the basis of a claim for private nuisance.  Indeed, "[a] private nuisance affects only one person or a determinate number of persons," whereas "[a] nuisance is public because of the danger to the public which might have been created."  *See Baltzeger v. Carolina Midland Ry. Co.*, 54 S.C. 242, 248, 32 S.E. 358, 360 (1899); *Home Sales, Inc. v. City of N. Myrtle Beach*, 299 S.C. 70, 81, 382 S.E.2d 463, 469 (Ct. App. 1989) ("A nuisance is public because of the danger to the public which might have been created.  It is private only because the individual as distinguished from the public has been or may be injured."); *see also Charleston Dev. Co. v. Alami*, 433 S.C. 533, 547-48, 860 S.E.2d 687, 695 (Ct. App. 2021) ("'A private nuisance is anything done to the hurt or annoyance of the lands, tenements, or hereditaments of another.  It produces damage to but one or two persons,

---

[4] Because "[t]he difference between a public nuisance and a private nuisance does not consist in any difference in the nature or character of the thing or activity itself," *see Home Sales, Inc. v. City of N. Myrtle Beach*, 299 S.C. 70, 81, 382 S.E.2d 463, 469 (Ct. App. 1989), Oppermann's lack of control over the Piedmont Regional WWTP is fatal to both of Plaintiff's nuisance claims.

and cannot be said to be public.'") (citations omitted); *accord Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 96-97 (4th Cir. 2011) ("If the only interest that is invaded is an interest shared equally by members of the public, then the alleged nuisance is public in nature. Such a circumstance is precisely the situation presented here, because DuPont's allegedly tortious conduct interfered with the general public's access to clean drinking water. . . . We therefore conclude . . . that when a release of pollutants directly affects a municipal water supply and does not interfere with any private water source, such as a well drilled on private property, the presence of the pollutants in the public water supply will not support a private nuisance claim.") (citations omitted).[5]

Plaintiff's Complaint makes clear that its claims against Oppermann are based on the alleged contamination of the Saluda River (the discharge point for the Piedmont Regional WWTP) and Lake Greenwood (the location of Plaintiff's water intakes). (*See* Compl. ¶ 21 (alleging that "Opperman's facility discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to the Piedmont Regional WWTP . . . which it discharges into the Saluda River upstream of Lake Greenwood and Plaintiff's water intakes"); *see also id.* ¶¶ 2-5, 45-48, 51, 59-60, 62, 64, 66, 72-74, 78). However, Plaintiff is just one of the hundreds of riparian landowners with property located along the more than 40-mile stretch between the Piedmont Regional WWTP and Plaintiff's water intakes on Lake Greenwood. (*See id.* ¶¶ 45-46); *see generally* GIS Parcel Map at Pl.'s Water Intakes and Surrounding Area, https://www.greenwoodsc.gov/greenwoodjs/

---

[5] *See also, e.g.*, *Priselac v. Chemours Co.*, No. 7:20-cv-190, 2022 WL 909406, at *5 (E.D.N.C. Mar. 28, 2022) ("[E]ven though defendants' alleged contamination of the Cape Fear River and the surrounding air, soil, and groundwater negatively affects Priselac's use and enjoyment of her private property, the interest affected is a public interest. . . . Priselac alleges the invasion of a public, not a private, interest and thus fails to state a private nuisance claim."); *Barker v. Naik*, No. 2:17-cv-4387, 2018 WL 3824376, at *3 (S.D.W. Va. Aug. 10, 2018) ("[T]he interference alleged . . . is the contamination of the public air. Accordingly, the alleged interference is an interference with a public right, and Plaintiffs have not made any showing of a private nuisance. As such, the Court must **GRANT** Defendants' motion to dismiss as to Plaintiffs' claim of private nuisance.").

ELECTRONICALLY FILED - 2024 Oct 22 5:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

(select Magnifying Glass Icon for "Quick Search"; then type "6888-674-166"; then select Magnifying Glass Icon for "Search").[6]  Plaintiff's nuisance claim therefore involves an alleged nuisance that is "public in nature," which "will not support a private nuisance claim."  *See Rhodes*, 636 F.3d at 96-97.  As such, Plaintiff's private nuisance claim in Count 1 should be dismissed.

### 3.     *Plaintiff fails to state a valid claim for trespass under South Carolina law.*

#### a.     PFAS are "intangible" particles that cannot support a trespass claim.

The South Carolina Supreme Court has definitively held that South Carolina follows "the traditional dimensional test and only recognizes intrusions by physical, tangible things as capable of constituting a trespass."  *Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 152, 747 S.E.2d 468, 480 (2013).  To constitute a physical and sufficiently tangible intrusion, the interference must be "with the right to exclusive possession," as opposed to "merely interfer[ing] with the right to use and enjoyment."  *Id.* at 151, 747 S.E.2d at 480.  Thus, intrusions by "microscopic particulates" or similarly intangible "infiltration[s] of contaminants onto a plaintiff's property" — while in some cases potentially could give rise to a claim for nuisance — do not constitute an actionable trespass under South Carolina law.  *See id.* at 144-52, 747 S.E.2d at 476-80.

Notably, in adhering to the traditional rule that requires "an invasion by a physical, tangible thing for a trespass to exist," the South Carolina Supreme Court recognized that "the dimensional test is an imperfect rule" that "does not comport with modern science's understanding of matter and the relationship between matter and energy."  *Id.* at 150, 747 S.E.2d at 479.  Nevertheless, the court held that South Carolina's traditional rule remained "superior" to the rules formulated by "a

---

[6] Courts may take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  S.C. R. Evid. 201(b).  "[G]eographical information is especially appropriate for judicial notice."  *See Prioleau v. Wallace*, No. 5:24-cv-1171, 2024 WL 3416605, at *1 n.2 (D.S.C. May 24, 2024), *adopted by* 2024 WL 3412324 (D.S.C. July 15, 2024) (quoting *United States v. Johnson*, 726 F.2d 1018, 1021 (4th Cir. 1984)).

55332445 v1                                    10

ELECTRONICALLY FILED - 2024 Oct 22 5:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

divergent line of decisions," as the traditional rule does not require the adoption of an uncertain "substantiality requirement," but instead "possesses the virtues of clarity, ease of implementation, and ability to serve as a guide for future conduct," thus "yield[ing] a stable rule as to what rises to the level of a trespass." *Id.* at 146, 149-51, 747 S.E.2d at 477, 479-80.  The court further explained that the dimensional test preserves "the distinction between trespass and nuisance," whereas "the divergent view would transform trespass into nuisance," thereby "leav[ing] property owners with less, rather than more, protection of their property rights." *Id.* at 151-52, 747 S.E.2d at 480.

By retaining the traditional rule, the South Carolina Supreme Court expressly rejected "divergent" cases in Oregon and Alabama, which had held that intrusions of "fluoride particles" and "sulfoxide emissions" were sufficient to constitute a trespass despite their "intangible nature." *Id.* at 146-49, 747 S.E.2d at 477-78 (rejecting *Martin v. Reynolds Metals Co.*, 221 Or. 86, 342 P.2d 790 (1959), which involved "fluoride particles," and *Borland v. Sanders Lead Co.*, 369 So. 2d 523 (Ala. 1979), which involved "lead and sulfoxide emissions").[7]  Instead, the *Babb* court followed the Michigan Court of Appeals' decision in *Adams v. Cleveland-Cliffs Iron Co.*, wherein the court concluded that dust is "not actionable in trespass" because "dust, along with other forms of airborne particulate, does not normally present itself as a significant physical intrusion," but instead "become[s] a part of the ambient circumstances of th[e] space" on which it settles. *See id.* at 149-50, 747 S.E.2d at 479; *see also* 237 Mich. App. 51, 67-70, 602 N.W.2d 215, 222-24 (1999).

In this case, Plaintiff's trespass claim is based on the alleged contamination from PFAS molecules, which are precisely the kind of "intangible matter" that the South Carolina Supreme

---

[7] The South Carolina Supreme Court's rejection of *Martin v. Reynolds Metals Co.* is particularly instructive, as the *Babb* court rejected the ruling in *Martin* that an intrusion of "fluoride particles" could constitute an actionable trespass, as fluoride is chemically related to and derived from fluorine, just like PFAS. *See* 405 S.C. at 146-50, 747 S.E.2d at 477-79; (*see* Compl. ¶¶ 24-26 (stating PFAS are per- and polyfluoroalkyl substances made through "carbon-fluorine bonds")).

55332445 v1    11

Court held "are insufficient to constitute a trespass." *See Babb*, 405 S.C. at 144-52, 747 S.E.2d at 476-80. Indeed, Plaintiff's own Complaint demonstrates that PFAS molecules are microscopic particles — measured, if at all, in the parts per ***trillion*** — that cannot be visibly seen, felt, or otherwise perceived in water or any other medium. (*See* Compl. ¶¶ 33-34, 36-37, 39-40, 43). Moreover, the damages that Plaintiff alleges from the PFAS contamination are not to its "right to the exclusive, peaceable possession of [its] property," but are based on the alleged "losses to the use and enjoyment of its property rights," and the alleged "interference with Plaintiff's right to use and enjoy its property," which are remedied through (if by anything) a claim for nuisance, not trespass. (*See id.* ¶¶ 5, 53, 55); *see also Babb*, 405 S.C. at 139, 149-52, 747 S.E.2d at 473, 479-80 (citation omitted).[8] For these reasons, Plaintiff's allegations do not state an actionable claim for trespass under South Carolina law, and Count 3 of Plaintiff's Complaint should be dismissed.

        b.        Plaintiff's trespass claim based on the alleged contamination of the Saluda River and Lake Greenwood fails for other reasons.

Plaintiff's trespass claim should also be dismissed for other reasons. For one thing, the claim fails because Plaintiff does not sufficiently allege a physical invasion of Plaintiff's property. As the South Carolina Supreme Court has made clear, trespass protects only the "right to ***exclusive*** possession." *See Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 150-51, 747 S.E.2d 468, 479-80 (2013) (emphasis added); *see also Charleston Joint Venture v. McPherson*, 308 S.C. 145, 153,

---

[8] *See also City of Lake Elmo v. 3M Co.*, 237 F. Supp. 3d 877, 888 (D. Minn. 2017) ("The Complaint alleges . . . that 3M trespassed upon Lake Elmo's property 'by contaminating it with PFCs and thereby preventing the City from using the groundwater within the aquifer that flows underneath the property.' As alleged, Lake Elmo is complaining of an invasion of the right to <u>use and enjoy</u> its land, rather than to <u>exclusively possess</u> its land. Accordingly, Lake Elmo's claim is one for nuisance, not trespass. Because Lake Elmo does not allege that 3M prevented it from possessing the groundwater, the trespass claim fails. The motion to dismiss is granted for this claim.") (citations omitted); *Barnes v. Birds Eye Foods, Inc.*, No. 1:10-CV-541, 2011 WL 13362363, at *6 (W.D. Mich. Sept. 26, 2011) (granting motion to dismiss trespass claim because "migrating groundwater interferes with the landowner's interest in use and enjoyment of the property . . . not his interest in excluding others from the property [as] is vindicated by a trespass action").

55332445 v1                    12

417 S.E.2d 544, 549 (1992) (same). Here, however, Plaintiff does not hold an exclusive right to the water from the Saluda River or Lake Greenwood, only a riparian right of reasonable use. *See White v. Whitney Mfg. Co.*, 60 S.C. 254, 265, 38 S.E. 456, 460 (1901) (holding it is a "well-settled rule of law" that while a riparian owner has "an equal right to the use of the water which flows in the stream adjacent to his lands . . . [h]e has no property in the water itself, but a simple usufruct").

Although Plaintiff alleges that PFAS contamination is present on property that Plaintiff owns, "including its land, SWTP, and related buildings, improvements, and equipment that make up its water treatment and distribution system," Plaintiff concedes that this alleged contamination only occurs as a result of Plaintiff's own actions, i.e. when Plaintiff turns on its water pumps and the "water pumps are active." (*See* Compl. ¶¶ 85, 87). Such allegations do not constitute an actionable trespass under South Carolina law, as instead "there must be an affirmative act" by the defendant, and "the invasion of the land must be intentional." *See Snow v. City of Columbia*, 305 S.C. 544, 553, 409 S.E.2d 797, 802 (Ct. App. 1991). Importantly, an act is only "intentional" if "done with knowledge that it will to a substantial certainty result in the entry of the foreign matter" on the plaintiff's land. *Sales v. S.C. Dep't of Transp.*, No. 2014-000582, 2016 WL 3607225, at *2 (S.C. Ct. App. June 30, 2016) (quoting Restatement (Second) of Torts § 158 cmt. i (1965)). Here, there could be no "substantial certainty" that PFAS would enter Plaintiff's property, as such entry could not have occurred absent Plaintiff's intervening activation of its water pumps. Plaintiff also cannot show an "unauthorized entry" of PFAS on "property in its exclusive possession," as Plaintiff made its own voluntary decision to activate the water pumps and draw in water from a public waterway, which is likewise fatal to Plaintiff's trespass claim. *See Ravan v. Greenville Cnty.*, 315 S.C. 447, 464, 434 S.E.2d 296, 306 (Ct. App. 1993) ("The essence of trespass is the unauthorized entry onto the land of another.").

55332445 v1

13

ELECTRONICALLY FILED - 2024 Oct 22 5:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Simply put, courts have considered allegations similar to the Plaintiff's here, and have in turn held that a drinking water utility cannot state a cause of action for trespass when it voluntarily draws PFAS-contaminated water from a public water source. *See, e.g.*, *Utilities. Bd. of Tuskegee v. 3M Co.*, No. 2:22-cv-420, 2023 WL 1870912, at *16 (M.D. Ala. Feb. 9, 2023) ("Trespass . . . requires an invasion of property in plaintiff's exclusive possession. As alleged, the facts here do not sound in trespass because, unlike other indirect trespasses, Defendants' PFAS did not cross onto UBT's boundary line by a natural process. Rather, UBT pulls the water onto its property through an intake system from a public waterway (over which UBT does not have exclusive possession). Accordingly, there is no invasion onto UBT's property. . . . UBT's indirect trespass claims fail . . . for want of an invasion of property in its exclusive possession because UBT itself pulled the water onto its property from a public water source . . . .") (internal citation omitted). This Court should do the same, and Count 3 of Plaintiff's Complaint should again be dismissed.

### 4. *Plaintiff's negligence claim against Oppermann fails as a matter of law.*

#### a.     Oppermann does not owe a legal duty of care to the Plaintiff.

It is well-settled under South Carolina law that "[a]n essential element in a negligence action is 'the existence of a legal duty of care owed by the defendant to the plaintiff.'" *Shaw v. Psychemedics Corp.*, 426 S.C. 194, 197, 826 S.E.2d 281, 282 (2019) (quoting *Oblachinski v. Reynolds*, 391 S.C. 557, 561, 706 S.E.2d 844, 845-46 (2011)). "If there is no duty, then the defendant in a negligence action is entitled to judgment as a matter of law." *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 135-36, 638 S.E.2d 650, 656 (2006) (citing *Steinke v. S.C. Dep't of Labor, Licensing & Regulation*, 336 S.C. 373, 387, 520 S.E.2d 142, 149 (1999)); *see also McCullough v. Goodrich & Pennington Mortg. Fund, Inc.*, 373 S.C. 43, 47, 644 S.E.2d 43, 46 (2007) ("In order for liability to attach based on a theory of negligence, the parties must have a relationship recognized by law as providing the foundation for a duty to prevent an injury." (citing

ELECTRONICALLY FILED - 2024 Oct 22 5:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Oct 22 5:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

*Huggins v. Citibank, N.A.*, 355 S.C. 329, 333, 585 S.E.2d 275, 277 (2003))). Notably, "[a]n affirmative legal duty may be created by statute, a contractual relationship, status, property interest, or some other special circumstance." *McPherson v. CSX Transportation, Inc.*, No. 4:16-cv-2725, 2017 WL 1135291, at *2 (D.S.C. Mar. 27, 2017) (citing *Madison ex rel. Bryant*, 371 S.C. at 136, 638 S.E.2d at 656-57). "However, South Carolina courts 'will not extend the concept of a legal duty of care in tort liability beyond reasonable limits,'" and without more, "[f]oreseeability of injury, in and of itself, does not give rise to a duty." *Shaw*, 426 S.C. at 198, 826 S.E.2d at 283 (quoting *McCullough*, 373 S.C. at 48, 644 S.E.2d at 46); *Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co.*, 355 S.C. 614, 618, 586 S.E.2d 586, 588 (2003).

Here, Plaintiff does not allege any facts that suggest the existence of a relationship between it and Oppermann sufficient to establish a legal duty of care. Indeed, Plaintiff does not allege any duty "created by statute, a contractual relationship, status, property interest, or some other special circumstance," but instead alleges only that the "Defendants have a duty to use due care in the handling, use, and disposal of products containing or degrading to [PFAS] to avoid causing an unreasonable risk of harm to others." (*See* Compl. ¶ 91). However, South Carolina does not recognize or impose such a broad and oversimplified duty of care. Just the opposite, as under South Carolina law, "one who has no control owes no duty." *See Miller v. City of Camden*, 329 S.C. 310, 314, 494 S.E.2d 813, 815 (1997) (citing *Clark v. Greenville Cnty.*, 313 S.C. 205, 209, 437 S.E.2d 117, 119 (1993)); *see also Ellis v. Tall Ships Charleston, LLC*, 593 F. Supp. 3d 253, 268 (D.S.C. 2022) ("Under South Carolina law, there is no general duty to control the conduct of another or to warn a third person or potential victim of danger." (quoting *Faile v. S.C. Dep't of Juv. Just.*, 350 S.C. 315, 334, 566 S.E.2d 536, 546 (2002))). Accordingly, in disposing of wastewater at the Piedmont Regional WWTP, Oppermann had no duty to ensure that the Piedmont

ELECTRONICALLY FILED - 2024 Oct 22 5:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Regional WWTP would treat the wastewater in a way that avoids any risk of harm to third parties, and therefore owed no duty to the Plaintiff. *See, e.g.*, *Oulla v. Velazques*, 427 S.C. 428, 444, 831 S.E.2d 450, 458 (Ct. App. 2019) (finding that sod manufacturer that placed sod pallets on truck trailer that later fell from trailer leading to accident and injury to motorist did not owe legal duty to motorist to ensure pallets were properly secured). As a result of the absence of any duty, Plaintiff's negligence claim against Oppermann in Count 4 of the Complaint should be dismissed.

b.     Plaintiff's alleged damages are not recoverable under negligence.

Finally, Plaintiff's negligence claim against Oppermann also fails as a matter of law because Plaintiff alleges no facts that would establish the element of damages. "Generally, under South Carolina law, the damages element [for a negligence claim] requires a plaintiff to establish physical injury or property damage." *Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 153, 747 S.E.2d 468, 481 (2013). As explained above, Plaintiff does not own the water in the Saluda River or Lake Greenwood, but merely has a conditional right to use it. *See White v. Whitney Mfg. Co.*, 60 S.C. 254, 265, 38 S.E. 456, 460 (1901). The Complaint includes unexplained and conclusory allegations of damage or injury to Plaintiff's property, (*see, e.g.*, Compl. ¶¶ 51, 55, 94 (alleging unspecified "past, present, and future injury to property," and unnamed damages and "losses resulting from injury to its property")), but does not allege any facts showing that anything other than water from a public waterway has or could have been damaged by PFAS. Instead, the Complaint reveals that Plaintiff's alleged damages are only (contingent) losses in property *value*, along with (potential) increases in future operating costs. Such allegations of damages do not implicate or suggest the kind of "physical injury or property damage" that is recoverable on a claim for negligence. *See Gray v. S. Facilities, Inc.*, 256 S.C. 558, 183 S.E.2d 438 (1971) *Gray v. S. Facilities, Inc.*, 256 S.C. 558, 566-71, 183 S.E.2d 438, 442-44 (1971) (finding property owner could not recover for diminution of the value of his property resulting from oil fire in adjacent

55332445 v1                                     16

ELECTRONICALLY FILED - 2024 Oct 22 5:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

river that did not cause physical damage to his property).  Thus, for this reason as well, Plaintiff's

negligence claim fails as a matter of law and should be dismissed.

### III.    CONCLUSION

For all of the foregoing reasons, Oppermann's Motion to Dismiss should be granted, and

all of the claims that Plaintiff has asserted against Oppermann should be dismissed.

Respectfully submitted,

s/ *Paul D. Harrill*
Paul Harrill (S.C. Bar No. 15268)
BURR & FORMAN LLP
1221 Main Street, Suite 1800 (29201)
P.O. Box 11390
Columbia, South Carolina 29211
Telephone:  (803) 799-9800
Facsimile:  (803) 753-3278
E-mail:  PHarrill@burr.com

Rik S. Tozzi (PHV Admission to be filed)
Ryan J. Hebson (PHV Admission to be filed)
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama  35203
Telephone:  (205) 251-3000
Facsimile:  (205) 458-5100
E-mail:  rtozzi@burr.com
E-mail:  rhebson@burr.com

Counsel for Defendant
OPPERMANN WEBBING, INC.

October 22, 2024
Columbia, South Carolina

55332445 v1                                    17

ELECTRONICALLY FILED - 2024 Oct 22 5:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF GREENWOOD** | ) | **EIGHTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| **GREENWOOD COMMISSIONERS OF PUBLIC WORKS,** | ) | **C.A. No.:  2024-CP-24-00735** |
| | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CONE MILLS RECEIVER, LLC; CRYOVAC, INC.; CRYOVAC, LLC; FIRSTSOURCE WORLDWIDE, LLC; FITESA SIMPSONVILLE, INC.; MILLIKEN & COMPANY; OPPERMANN WEBBING, INC.; T&S BRASS AND BRONZE WORKS, INC.; UNICHEM SPECIALTY CHEMICALS, LLC,** | ) ) ) ) ) ) ) ) ) ) | **DEFENDANT OPPERMANN WEBBING, INC.'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |
| | ) | |
| **Defendants.** | ) ) | |

Defendant Oppermann Webbing, Inc. ("Oppermann"), by and through its undersigned counsel, and pursuant to Rules 8(a), 12(b)(1), and 12(b)(6) of the South Carolina Rules of Civil Procedure, hereby moves the Court to dismiss all claims asserted against Oppermann in the Amended Complaint filed by Plaintiff Greenwood Commissioners of Public Works.  A separate Memorandum of Law in support of this Motion is being submitted contemporaneously herewith.

Respectfully submitted,

s/ *Paul D. Harrill*

Paul Harrill (S.C. Bar No. 15268)
BURR & FORMAN LLP
1221 Main Street, Suite 1800 (29201)
P.O. Box 11390
Columbia, South Carolina 29211
Telephone:  (803) 799-9800
Facsimile:  (803) 753-3278
E-mail:  PHarrill@burr.com

55332871 v1

Rik S. Tozzi (PHV Admission to be filed)
Ryan J. Hebson (PHV Admission to be filed)
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama  35203
Telephone:  (205) 251-3000
Facsimile:  (205) 458-5100
E-mail:  rtozzi@burr.com
E-mail:  rhebson@burr.com

Counsel for Defendant
OPPERMANN WEBBING, INC.

October 22, 2024
Columbia, South Carolina

ELECTRONICALLY FILED - 2024 Oct 22 5:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

STATE OF SOUTH CAROLINA ) IN THE COURT OF COMMON PLEAS

COUNTY OF GREENWOOD ) EIGHTH JUDICIAL CIRCUIT

)
)
)
GREENWOOD COMMISSIONERS OF ) C.A. No. 2024-CP-24-00735
PUBLIC WORKS, )
)
)
*Plaintiff,* )
)
v. )
)
CONE MILLS RECEIVER, LLC; )
CRYOVAC, INC.; CRYOVAC, LLC; ) **ACCEPTANCE OF SERVICE ON**
FIRSTSOURCE WORLDWIDE, LLC; ) **BEHALF OF MILLIKEN &**
FITESA SIMPSONVILLE, INC.; ) **COMPANY**
MILLIKEN & COMPANY; OPPERMAN )
WEBBING, INC.; T&S BRASS AND )
BRONZE WORKS, INC.; and UNICHEM )
SPECIALTY CHEMICALS, LLC, )
)
*Defendants.* )
)

Pursuant to Rule 4(j), SCRCP, I hereby accept and acknowledge service and my receipt via email of the Amended Summons and Amended Complaint in the above captioned matter on behalf of Defendant Milliken & Company, effective this 22ᵈ day of October, 2024.

Jameson B. Carroll
Carroll & Weiss LLP
2870 Peachtree Rd. NW, Ste. 193
Atlanta, GA 30305-2918
404-514-5061
jcarroll@carrollweiss.com

ELECTRONICALLY FILED - 2024 Oct 23 11:30 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Oct 23 3:21 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF GREENWOOD | ) | FOR THE EIGHTH JUDICIAL CIRCUIT |
| | ) | |
| Greenwood Commissioners of Public Works, | ) | |
| | ) | |
| | ) | CA No.: 2024-CP-24-00735 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **PROOF OF SERVICE** |
| | ) | |
| Cone Mills Receiver, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Please see attached Proof of Service of Amended Summons and Amended Complaint and Plaintiff's First Interrogatories and Requests for Production to FirstSource Worldwide, LLC upon FirstSource Worldwide, LLC.

**JOHN B. WHITE, JR., PA**

BY: _s/ John B. White, Jr._____
    John B. White, Jr., SC Bar No. 05996
    Marghretta H. Shisko, SC Bar No. 100106
    Griffin L. Lynch, SC Bar No. 72518
    Christopher R. Jones, SC Bar No. 101265
    PO Box 2465 (29304)
    291 S. Pine Street
    Spartanburg, South Carolina 29302
    Office: (864) 594-5988
    jwhite@johnbwhitelaw.com
    mshisko@johnbwhitelaw.com
    glynch@johnbwhitelaw.com
    cjones@johnbwhitelaw.com

    Attorneys for Plaintiff

Spartanburg, SC
October 23, 2024

ELECTRONICALLY FILED - 2024 Oct 23 3:21 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

FirstSource Worldwide, LLC
c/o Caroline M. Clark, Registered Agent
1524 S. Commercial Street
Neenah, WI 54956

9590 9402 8365 3156 8097 85

2. Article Number (Transfer from service label)

7020 0640 0001 2195 5369

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature
X *Deirdre Cook*    ☐ Agent
                    ☐ Addressee

B. Received by (Printed Name)    C. Date of Delivery
*Deirdre Cook*    10/15/24

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☒ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ Insured Mail
☐ Mail Restricted Delivery

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Signature Confirmation™
☒ Signature Confirmation Restricted Delivery

Domestic Return Receipt

ELECTRONICALLY FILED - 2024 Oct 23 3:21 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF GREENWOOD | ) | FOR THE EIGHTH JUDICIAL CIRCUIT |
| | ) | |
| Greenwood Commissioners of Public Works, | ) | |
| | ) | CA No.: 2024-CP-24-00735 |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **PROOF OF SERVICE** |
| | ) | |
| Cone Mills Receiver, LLC, et al., | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Please see attached Proof of Service of Amended Summons and Amended Complaint and

Plaintiff's First Interrogatories and Requests for Production to Unichem Specialty Chemicals, LLC

upon Unichem Specialty Chemicals, LLC.

**JOHN B. WHITE, JR., PA**

BY:     _s/ John B. White, Jr._
        John B. White, Jr., SC Bar No. 05996
        Marghretta H. Shisko, SC Bar No. 100106
        Griffin L. Lynch, SC Bar No. 72518
        Christopher R. Jones, SC Bar No. 101265
        PO Box 2465 (29304)
        291 S. Pine Street
        Spartanburg, South Carolina 29302
        Office: (864) 594-5988
        jwhite@johnbwhitelaw.com
        mshisko@johnbwhitelaw.com
        glynch@johnbwhitelaw.com
        cjones@johnbwhitelaw.com

        Attorneys for Plaintiff

Spartanburg, SC
October 23, 2024

ELECTRONICALLY FILED - 2024 Oct 23 3:21 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**SENDER: COMPLETE THIS SECTION**

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Unichem Specialty Chemicals, LLC
c/o Corporation Service Company
508 Meeting Street
W. Columbia, SC 29169

9590 9402 8365 3156 8047 66

2. Article Number (Transfer from service label)

7020 0xx3 0001 2195 5390

PS Form 3811, July 2020 PSN 7530-02-000-9053

**COMPLETE THIS SECTION ON DELIVERY**

A. Signature

X

☐ Agent
☐ Addressee

B. Received by (Printed Name)    *Daniele Kriz*    C. Date of Delivery

15 Oct 2024

Daniele Kriz

D. Is delivery address different from item 1?    ☐ Yes
If YES, enter delivery address below:    ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☑ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ____ Mail
☐ ____ Mail Restricted Delivery (over $500)

☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☑ Signature Confirmation™
☑ Signature Confirmation Restricted Delivery

Domestic Return Receipt

ELECTRONICALLY FILED - 2024 Oct 25 5:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF GREENWOOD** | ) | **EIGHTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| GREENWOOD COMMISSIONERS OF PUBLIC WORKS, | ) | C.A. No. 2024-CP-24-000735 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONE MILLS RECEIVER, LLC; CRYOVAC, INC.; CRYOVAC, LLC; FIRSTSOURCE WORLDWIDE LLC; FITESA SIMPSONVILLE, INC.; MILLIKEN & COMPANY; OPPERMAN WEBBING, INC.; T&S BRASS AND BRONZE WORKS, INC.; UNICHEM SPECIALTY CHEMICALS, LLC, | ) ) ) ) ) ) ) ) ) | **ACCEPTANCE OF SERVICE** |
| | ) | |
| Defendants. | ) | |

THIS IS TO CERTIFY THAT, I, Jennifer H. Thiem, have acknowledged and accepted service of the filed Amended Summons & Amended Complaint, from Marghretta Shisko, attorney for the Plaintiff, on behalf of Defendants Cryovac, Inc. and Cryovac, LLC, on this 25th day of October 2024, pursuant to Rule 4, SCRCP, with no further service on these Defendants being necessary.

**K&L GATES, LLP**

By:     /s/ Jennifer H. Thiem
        Jennifer H. Thiem (SC Bar #73739)
        134 Meeting Street, Suite 500
        Charleston, SC 29401
        Telephone:  843.579.5600
        Facsimile:  843.579.5601
        jennifer.thiem@klgates.com

        *Attorneys for Cryovac, Inc. and Cryovac, LLC*

ELECTRONICALLY FILED - 2024 Nov 06 5:22 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

STATE OF SOUTH CAROLINA

COUNTY OF GREENWOOD

IN THE COURT OF COMMON PLEAS

FOR THE EIGHTH JUDICIAL CIRCUIT

GREENWOOD COMMISSIONERS OF
PUBLIC WORKS,

Plaintiff,

v.

CONE MILLS RECEIVER, LLC *et al.*,

Defendants.

CASE NO. 2024-CP-24-00735

**ORDER GRANTING PRO HAC
VICE ADMISSION OF HANNAH
CORY CALDWELL**

Having considered the Motion of Marghretta H. Shisko, on behalf of Plaintiff Greenwood
Commissioners of Public Works, to admit Hannah Cory Caldwell, of Cory Watson, P.C., 2131
Magnolia Avenue South, Birmingham, Alabama 35205, *pro hac vice*, to appear on behalf of the
Plaintiff in the above captioned matter and the Verified Application for Admission *Pro Hac Vice*
in support thereof, it is hereby

ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**

ELECTRONICALLY FILED - 2024 Nov 06 5:22 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735



Greenwood Common Pleas

**Case Caption:**    Greenwood Commissioners Of Public Works VS   Cone Mills
Receiver, Llc , defendant, et al

**Case Number:**    2024CP2400735

**Type:**    Order/Pro Hac Vice


So Ordered

S/ Frank R. Addy, Jr.


Electronically signed on 2024-11-06 15:51:03    page 2 of 2

ELECTRONICALLY FILED - 2024 Nov 06 2:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

STATE OF SOUTH CAROLINA

COUNTY OF GREENWOOD

IN THE COURT OF COMMON PLEAS

FOR THE EIGHTH JUDICIAL CIRCUIT

GREENWOOD COMMISSIONERS OF
PUBLIC WORKS,

Plaintiff,

v.

CONE MILLS RECEIVER, LLC *et al.*,

Defendants.

CASE NO. 2024-CP-24-00735

**MOTION FOR PRO HAC VICE
ADMISSION OF HANNAH CORY
CALDWELL**

The undersigned local counsel hereby moves, together with the attached Application and Affidavit, that Hannah Cory Caldwell of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, be admitted *pro hac vice* in the above captioned matter. As local counsel I understand that:

1. I will personally sign each pleading, motion, discovery procedure, or other document that I serve or file in this court.

2. All pleadings and other documents that I file in this case will contain my name, firm name, address, and phone number and those of my associate counsel admitted *pro hac vice*; and service of all pleadings and notices as required shall be sufficient if served upon me, and it is my responsibility to serve my associate counsel admitted *pro hac vice*.

3. Unless excused by the court, I will be present at all pretrial conferences, hearings, and trials and may attend discovery proceedings. I will be prepared to actively participate, if necessary.

4. Undersigned counsel hereby certifies that they contacted counsel of record regarding Ms. Caldwell's admission and received no objection.

Ms. Caldwell is a member in good standing with her local bar association, and the Verified

1

Application for Admission *Pro Hac Vice* in the State of South Carolina setting forth the necessary

information required by Rule 404(d), SCACR, is attached to and incorporated into this motion.

Dated: November 6, 2024

RESPECTFULLY SUBMITTED,

**JOHN B. WHITE JR., PA**

By: *s /Marghretta H. Shisko*
John B. White, Jr. (SC Bar No. 5996)
Marghretta H. Shisko (SC Bar No. 100106)
Griffin L. Lynch (SC Bar No. 72518)
Christopher R. Jones (SC Bar No. 101265)
291 S. Pine Street
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
glynch@johnbwhitelaw.com
cjones@johnbwhitelaw.com

*Attorneys for Plaintiff*

2

ELECTRONICALLY FILED - 2024 Nov 06 2:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

# EXHIBIT

ELECTRONICALLY FILED - 2024 Nov 06 2:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

# VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE* IN THE STATE OF SOUTH CAROLINA

**Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.**

Greenwood Commissioners of Public Works,

Plaintiff

vs.

Cone Mills Receiver, LLC; Opperman Webbing, Inc.; T&S Brass and Bronze Works, Inc.;

Defendant

2024-CP-24-00735

Case No.

In The Court of Common Pleas Eighth Judicial Circuit

Tribunal

Mailing Address of Tribunal:

528 Monument Street

Greenwood, SC 29646

Comes now __Hannah Cory Caldwell__, applicant herein, and respectfully represents the following:

1. Applicant resides at:

▮▮▮▮▮▮▮

Street Address

▮▮▮▮    ▮▮▮▮    ▮▮▮▮    ▮▮▮▮

City          County          State          Zip Code

▮▮▮▮▮

Telephone

2. Applicant is an attorney and a member of the law firm of (or practices law under the name of)

Cory Watson, P.C. , with offices at

2131 Magnolia Avenue South

Street Address

| Birmingham | Jefferson | Alabama | 35205 |
|---|---|---|---|
| City | County | State | Zip Code |
| 205-328-2200 | ▮▮▮▮ | 205-324-7896 | hcaldwell@corywatson.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

3. Applicant has been retained personally or as a member of the above-named law firm by

Greenwood Commissioners of Public Works to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

4. Since __September 19th__ of __2019__, Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of __Alabama__ where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

ELECTRONICALLY FILED - 2024 Nov 06 2:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

5. List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
|---|---|
| Alabama Supreme Court | 9/19/2019 |
| United States District Court Northern District of Alabama | 10/24/2019 |
| United States District Court Southern District of Alabama | 10/24/2019 |
| United States District Court Middle District of Alabama | 10/24/2019 |
| Alabama state courts | 10/24/2019 |
| | |
| | |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

Yes

6. Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency? If yes, give particulars, e.g., jurisdiction, court date.

No

7. Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked? If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

No

8. Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked? If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

No

9. Please be aware that local counsel must be Rule 403 certified. Local counsel of record associated

with Applicant in this case is __Marghretta H. Shisko__ of the __John B. White, Jr., P.A.__

law firm, which has offices at:

291 S. Pine Street/ P.O. Box 2465 (29304)

Street Address

| Spartanburg | Spartanburg | South Carolina | 29302 |
|---|---|---|---|
| City | County | State | Zip Code |
| 864-594-5988 | 864-590-3907 | 864-594-5870 | mshisko@johnbwhitelaw.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

ELECTRONICALLY FILED - 2024 Nov 06 2:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

100106
_____
South Carolina Bar Number
(You must provide Bar Number)

     10.    Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

| No |
|----|

     11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

| Yes |
|-----|

     12.  Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this ___18th___ day of __October__ , 20 _24_

_____
APPLICANT

ELECTRONICALLY FILED - 2024 Nov 06 2:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Nov 06 2:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

# VERIFICATION

STATE OF  ALABAMA                    )

COUNTY OF  JEFFERSON                 )

I,        Hannah Cory Caldwell                        , do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true.  I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice.  Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding.  Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

_____
APPLICANT/AFFIANT

Subscribed and sworn to before me this ___18th___ day of _October_ , 20 _24_

_____
(Notary Signature)

Notary Public for the State of  _Alabama_
My Commission Expires: _June 24, 2028_

## LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this ___23rd___ day of _October_ , 20 _24_

_____
LOCAL COUNSEL OF RECORD

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this ___23rd___ day of _October_ , 20 _24_

_____

*Page 4 of 4*

# The Supreme Court of Alabama



## Certificate Of Admission

I, Megan B. Rhodebeck, Clerk of the Supreme Court of Alabama, do hereby certify that _____ Hannah Cory Caldwell _____ was duly and legally admitted to practice law by the Supreme Court of Alabama on _____ September 19, 2019 _____ and is now an attorney in good standing at the Bar of this Court, as shown by the records of said Court on file in this office.

I further certify that the Supreme Court of Alabama is the highest court of record in this State.

Done on _____ October 15, 2024 _____ with the seal of the Supreme Court of Alabama attached.



Megan B. Rhodebeck
Megan B. Rhodebeck
Clerk of the Supreme Court of Alabama

ELECTRONICALLY FILED - 2024 Nov 06 2:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Nov 06 5:22 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF GREENWOOD | FOR THE EIGHTH JUDICIAL CIRCUIT |

GREENWOOD COMMISSIONERS OF
PUBLIC WORKS,

CASE NO. 2024-CP-24-00735

Plaintiff,

v.

CONE MILLS RECEIVER, LLC *et al.*,

**ORDER GRANTING PRO HAC
VICE ADMISSION OF HANNAH
CORY CALDWELL**

Defendants.

Having considered the Motion of Marghretta H. Shisko, on behalf of Plaintiff Greenwood Commissioners of Public Works, to admit Hannah Cory Caldwell, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, *pro hac vice*, to appear on behalf of the Plaintiff in the above captioned matter and the Verified Application for Admission *Pro Hac Vice* in support thereof, it is hereby

ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**

ELECTRONICALLY FILED - 2024 Nov 06 5:22 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735



Greenwood Common Pleas

**Case Caption:**     Greenwood Commissioners Of Public Works VS   Cone Mills
                      Receiver, Llc , defendant, et al

**Case Number:**      2024CP2400735

**Type:**             Order/Pro Hac Vice


So Ordered

S/ Frank R. Addy, Jr.


Electronically signed on 2024-11-06 15:51:03     page 2 of 2

ELECTRONICALLY FILED - 2024 Nov 06 2:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

STATE OF SOUTH CAROLINA

COUNTY OF GREENWOOD

IN THE COURT OF COMMON PLEAS

FOR THE EIGHTH JUDICIAL CIRCUIT

GREENWOOD COMMISSIONERS OF
PUBLIC WORKS,

Plaintiff,

v.

CONE MILLS RECEIVER, LLC *et al.*,

Defendants.

CASE NO. 2024-CP-24-00735

**MOTION FOR PRO HAC VICE
ADMISSION OF HANNAH CORY
CALDWELL**

The undersigned local counsel hereby moves, together with the attached Application and Affidavit, that Hannah Cory Caldwell of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, be admitted *pro hac vice* in the above captioned matter. As local counsel I understand that:

1. I will personally sign each pleading, motion, discovery procedure, or other document that I serve or file in this court.

2. All pleadings and other documents that I file in this case will contain my name, firm name, address, and phone number and those of my associate counsel admitted *pro hac vice*; and service of all pleadings and notices as required shall be sufficient if served upon me, and it is my responsibility to serve my associate counsel admitted *pro hac vice*.

3. Unless excused by the court, I will be present at all pretrial conferences, hearings, and trials and may attend discovery proceedings. I will be prepared to actively participate, if necessary.

4. Undersigned counsel hereby certifies that they contacted counsel of record regarding Ms. Caldwell's admission and received no objection.

Ms. Caldwell is a member in good standing with her local bar association, and the Verified

1

Application for Admission *Pro Hac Vice* in the State of South Carolina setting forth the necessary

information required by Rule 404(d), SCACR, is attached to and incorporated into this motion.

    Dated: November 6, 2024

RESPECTFULLY SUBMITTED,

**JOHN B. WHITE JR., PA**

By: *s /Marghretta H. Shisko*
John B. White, Jr. (SC Bar No. 5996)
Marghretta H. Shisko (SC Bar No. 100106)
Griffin L. Lynch (SC Bar No. 72518)
Christopher R. Jones (SC Bar No. 101265)
291 S. Pine Street
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
glynch@johnbwhitelaw.com
cjones@johnbwhitelaw.com

*Attorneys for Plaintiff*

ELECTRONICALLY FILED - 2024 Nov 06 2:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

2

# EXHIBIT

ELECTRONICALLY FILED - 2024 Nov 06 2:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

## VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE* IN THE STATE OF SOUTH CAROLINA

**Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.**

Greenwood Commissioners of Public Works,

Plaintiff

vs.

Cone Mills Receiver, LLC; Opperman Webbing, Inc.; T&S Brass and Bronze Works, Inc.;

Defendant

Case No. 2024-CP-24-00735

Tribunal: In The Court of Common Pleas Eighth Judicial Circuit

Mailing Address of Tribunal: 528 Monument Street
Greenwood, SC 29646

Comes now Hannah Cory Caldwell , applicant herein, and respectfully represents the following:

1. Applicant resides at:

Street Address [redacted]

City [redacted]   County [redacted]   State [redacted]   Zip Code [redacted]

Telephone [redacted]

2. Applicant is an attorney and a member of the law firm of (or practices law under the name of) Cory Watson, P.C. , with offices at

Street Address 2131 Magnolia Avenue South

City Birmingham   County Jefferson   State Alabama   Zip Code 35205

Primary Telephone 205-328-2200   Cell Phone [redacted]   Fax Number 205-324-7896   Email Address hcaldwell@corywatson.com

3. Applicant has been retained personally or as a member of the above-named law firm by Greenwood Commissioners of Public Works to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

4. Since September 19th of 2019 , Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of Alabama where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

ELECTRONICALLY FILED - 2024 Nov 06 2:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

5.    List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
|---|---|
| Alabama Supreme Court | 9/19/2019 |
| United States District Court Northern District of Alabama | 10/24/2019 |
| United States District Court Southern District of Alabama | 10/24/2019 |
| United States District Court Middle District of Alabama | 10/24/2019 |
| Alabama state courts | 10/24/2019 |
| | |
| | |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

> Yes

6.    Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency?  If yes, give particulars, e.g., jurisdiction, court date.

> No

7.    Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked?  If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

> No

8.    Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked?  If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

> No

9.    Please be aware that local counsel must be Rule 403 certified.  Local counsel of record associated

with Applicant in this case is  Marghretta H. Shisko  of the  John B. White, Jr., P.A.

law firm, which has offices at:

291 S. Pine Street/ P.O. Box 2465 (29304)
_____
Street Address

| Spartanburg | Spartanburg | South Carolina | 29304 |
|---|---|---|---|
| City | County | State | Zip Code |
| 864-594-5988 | 864-590-3907 | 864-594-5870 | mshisko@johnbwhitelaw.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

*Page 2 of 4*

ELECTRONICALLY FILED - 2024 Nov 06 2:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

100106
_____
South Carolina Bar Number
(You must provide Bar Number)

10.     Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

| No |
|---|

11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

| Yes |
|---|

12.  Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this ___18th___ day of __October__, 20 __24__

_Harly C. Caldwell_
APPLICANT

ELECTRONICALLY FILED - 2024 Nov 06 2:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Nov 06 2:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

# VERIFICATION

STATE OF _ALABAMA_ )

COUNTY OF _JEFFERSON_ )

I, _Hannah Cory Caldwell_ , do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true. I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice. Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding. Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

_____
APPLICANT/AFFIANT

Subscribed and sworn to before me this _18th_ day of _October_ , 20 _24_

_____
(Notary Signature)

Notary Public for the State of _Alabama_

My Commission Expires: _June 24, 2028_

# LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this _23rd_ day of _October_ , 20 _24_

_____
LOCAL COUNSEL OF RECORD

# CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this _23rd_ day of _October_ , 20 _24_

_____

*Page 4 of 4*

ELECTRONICALLY FILED - 2024 Nov 06 2:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

# The Supreme Court of Alabama



## Certificate Of Admission

I, Megan B. Rhodebeck, Clerk of the Supreme Court of Alabama, do hereby certify that _____ Hannah Cory Caldwell _____ was duly and legally admitted to practice law by the Supreme Court of Alabama on _____ September 19, 2019 _____ and is now an attorney in good standing at the Bar of this Court, as shown by the records of said Court on file in this office.

I further certify that the Supreme Court of Alabama is the highest court of record in this State.

Done on _____ October 15, 2024 _____ with the seal of the Supreme Court of Alabama attached.



Megan B. Rhodebeck
Megan B. Rhodebeck
Clerk of the Supreme Court of Alabama

ELECTRONICALLY FILED - 2024 Nov 07 2:28 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

STATE OF SOUTH CAROLINA )    IN THE COURT OF COMMON PLEAS
)
COUNTY OF GREENWOOD )    FOR THE EIGHTH JUDICIAL CIRCUIT
)
Greenwood Commissioners of )
Public Works, )    CA No.: 2024-CP-24-00735
Plaintiff, )
)
v. )    **PROOF OF SERVICE**
)
Cone Mills Receiver, LLC, et al., )
)
Defendants. )
)

Plaintiff Greenwood Commissioners of Public Works ("Plaintiff") served Plaintiff's Amended Summons and Amended Complaint and Plaintiff's First Interrogatories and Requests for Production on Defendant Fitesa Simpsonville, Inc. ("Fitesa") via certified mail, restricted delivery, mailed on October 22, 2024, from Spartanburg, SC to Fitesa's headquarters at 840 SE Main Street, Simpsonville, SC 29681. The date of delivery was October 24, 2024, as shown on the attached signed USPS Return Receipt Card and USPS Tracking Results.

*/s/ John B. White, Jr.*
John B. White, Jr., SC Bar No. 05996
Marghretta H. Shisko, SC Bar No. 100106
Griffin L. Lynch, SC Bar No. 72518
Christopher R. Jones, SC Bar No. 101265
JOHN B. WHITE, JR., PA
PO Box 2465 (29304)
291 S. Pine Street
Spartanburg, South Carolina 29302
Office: (864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
glynch@johnbwhitelaw.com
cjones@johnbwhitelaw.com

Attorneys for Plaintiff

Spartanburg, SC
November 7, 2024

ELECTRONICALLY FILED - 2024 Nov 07 2:28 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Greenwood

**SENDER:** *COMPLETE THIS SECTION*

- Complete items 1, 2, and 3.
- Print your name and address on the reverse so that we can return the card to you.
- Attach this card to the back of the mailpiece, or on the front if space permits.

1. Article Addressed to:

Fitesa Simpsonville, Inc.
840 SE Main Street
Simpsonville, SC 29681

9590 9402 8365 3156 8047 80

2. Article Number *(Transfer from service label)*

7020 0640 0001 2195 5475

*COMPLETE THIS SECTION ON DELIVERY*

A. Signature
X _____  ☐ Agent  ☐ Addressee

B. Received by *(Printed Name)*   C. Date of Delivery

D. Is delivery address different from item 1?  ☐ Yes
   If YES, enter delivery address below:  ☐ No

3. Service Type
☐ Adult Signature
☐ Adult Signature Restricted Delivery
☐ Certified Mail®
☒ Certified Mail Restricted Delivery
☐ Collect on Delivery
☐ Collect on Delivery Restricted Delivery
☐ ...Mail
☐ ...Mail Restricted Delivery (over $500)
☐ Priority Mail Express®
☐ Registered Mail™
☐ Registered Mail Restricted Delivery
☒ Signature Confirmation™
☐ Signature Confirmation Restricted Delivery

PS Form 3811, July 2020 PSN 7530-02-000-9053          Domestic Return Receipt

Tracking Number Copied

# USPS Tracking®

FAQs >

Remove ✕

Tracking Number:

## 70200640000121955475

Copy          Add to Informed Delivery (https://informeddelivery.usps.com/)

### Latest Update

Your item was delivered to an individual at the address at 8:29 am on October 24, 2024 in SIMPSONVILLE, SC 29681.

**Get More Out of USPS Tracking:**

USPS Tracking Plus®

### Delivered

**Delivered, Left with Individual**
SIMPSONVILLE, SC 29681
October 24, 2024, 8:29 am

**See All Tracking History**

**What Do USPS Tracking Statuses Mean?** (https://faq.usps.com/s/article/Where-is-my-package)

| | |
|---|---|
| Text & Email Updates | ⌄ |
| USPS Tracking Plus® | ⌄ |
| Product Information | ⌄ |

See Less ⌃

Track Another Package

Enter tracking or barcode numbers

## Need More Help?

Contact USPS Tracking support for further assistance.

**FAQs**

ELECTRONICALLY FILED - 2024 Nov 07 2:28 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Feedback

ELECTRONICALLY FILED - 2024 Nov 14 3:21 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | |
|---|---|
| **STATE OF SOUTH CAROLINA** ) | **IN THE COURT OF COMMON PLEAS** |
| ) | **EIGHTH JUDICIAL CIRCUIT** |
| **COUNTY OF GREENWOOD** ) | |
| ) | |
| Greenwood Commissioners of Public ) | CASE NO.: 2024-CP-24-00735 |
| Works, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | **T&S BRASS AND BRONZE WORKS, INC.'S** |
| ) | **MOTION FOR PROTECTIVE ORDER TO** |
| Cone Mills Receiver, LLC; Cryovac, ) | **STAY DISCOVERY PENDING RESOLUTION** |
| Inc.; Cryovac, LLC; FirstSource ) | **OF MOTION TO DISMISS** |
| Worldwide, LLC; Fitesa Simpsonville, ) | |
| Inc.; Milliken & Company; Opperman ) | |
| Webbing, Inc.; T&S Brass and Bronze ) | |
| Works, Inc.; Unichem Specialty ) | |
| Chemicals, LLC, ) | |
| ) | |
| Defendants. ) | |
| ) | |

Defendant T&S Brass and Bronze Works, Inc. ("T&S Brass") hereby moves, pursuant to Rule 26(c), SCRCP, for an order staying discovery during the pendency of T&S Brass's Motion to Dismiss, filed September 30, 2024 ("Motion to Dismiss"). Specifically, T&S Brass seeks protection from Plaintiff Laurens County Water and Sewer Commission's (the "Plaintiff") First Interrogatories and Requests for Production to T&S Brass (the "Discovery Requests"), which were served on October 18, 2024, after the Motion to Dismiss was filed.

## BACKGROUND

On July 16, 2024, Plaintiff initiated this lawsuit, seeking recovery from the above-captioned Defendants on the grounds that Defendants' alleged discharges of per- and/or poly-fluoroalkyl ("PFAS") compounds *may* require Plaintiff to install new technology to meet anticipated EPA standards relating to PFAS. The EPA standards on which Plaintiff's case is built do not go into effect, if ever, until 2029.

1

ELECTRONICALLY FILED - 2024 Nov 14 3:21 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

On August 23, 2024, Plaintiff filed an Amended Complaint maintaining substantially the same allegations but adding new parties as defendants ("Complaint").  The Complaint asserts causes of action against T&S Brass and various co-defendants for negligence, continuing nuisance, public nuisance, and trespass, which are all related to alleged "ongoing contamination of the Reedy River, Saluda River, Lake Greenwood, and Plaintiff's property."  (Am. Compl. ¶ 1).  Plaintiff also alleges T&S Brass, along with other co-defendants, discharged and continue to unlawfully discharge products that contain or degrade to PFAS into the above-referenced waterways.  (*Id*. at ¶ 2).

On September 30, 2024, T&S Brass filed its Answer and a Motion to Dismiss pursuant to Rule 12(b)(6).  The Motion to Dismiss seeks the dismissal of Plaintiff's Complaint on several important and threshold legal grounds, including Plaintiff's lack of standing and the absence of a justiciable controversy.  A ruling on T&S Brass's Motion requires no discovery and may be decided on the face of the allegations in the Amended Complaint.

As set forth in the Motion to Dismiss, Plaintiff's claims are speculative, unripe for judicial determination, and fail to meet standing or justiciability requirements.  The Motion to Dismiss also sets forth grounds for dismissal based on the municipal cost recovery rule, failure to join an indispensable party, and incurable pleading defects related to each of Plaintiff's causes of action. The Court has not set a date for the hearing on the Motion to Dismiss.

On October 18, 2024, Plaintiff served the Discovery Requests on T&S Brass. To avoid complex and burdensome discovery which may be made moot by an Order dismissing this case, counsel for T&S Brass requested Plaintiff agree to stay discovery pending resolution of T&S Brass's Motion to Dismiss on October 22, 2024.  During a phone conference between counsel on October 31, 2024, Plaintiff indicated an unwillingness to agree to stay discovery pending

ELECTRONICALLY FILED - 2024 Nov 14 3:21 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

resolution of the Motion to Dismiss.  On November 9, 2024, T&S Brass's undersigned counsel communicated an offer to answer limited interrogatories in exchange for a stay as to the other discovery requests.  Counsel for Plaintiff declined this offer on November 12, 2024.  T&S Brass now moves for a protective order to stay all discovery until its Motion to Dismiss can be heard and decided.

**<u>GROUNDS FOR MOTION</u>**

Rule 26(c), SCRCP, provides trial courts with broad authority to "make *any* order which justice requires to protect a party . . . from . . . undue burden by expense, including one or more of the following: (1) that the discovery not be had; [or] (2) that the discovery may be had only on specified terms and conditions, including a designation of the time or place[.]"  (emphasis added).

Rule 26(c), SCRCP, is the same as "the language of Federal Rule 26(c)."  Note to Rule 26(c), SCRCP.  Where the language of the South Carolina Rules of Civil Procedure "is substantially similar" to that of the federal rules, "out Court[s] look for guidance to cases interpreting the federal rules." *Maybank v. BB&T Corp.*, 416 S.C. 541, 565, 787 S.E.2d 498, 510 (2016).

Federal courts considering Fed. R. Civ. P. Rule 26(c) have consistently held that "[a] protective order under Rule 26(c) to stay discovery pending determination of a dispositive motion is an appropriate exercise of the court's discretion." *Tilley v. U.S.*, 270 F. Supp. 2d 731, 734 (M.D. N.C. 2003), *aff'd*, 85 F. App'x 333 (4th Cir. 2004) (citations omitted); *see e.g., Chavous v. District of Columbia Financial Resp. and Mgmt. Asst. Auth.*, 201 F.R.D. 1, 2 (D.D.C.2001); *Simpson v. Specialty Retail Concepts, Inc.*, 121 F.R.D. 261, 263 (M.D.N.C.1988).  "The court should not, however, stay discovery which is necessary to gather facts in defense of the motion." *Tilley*, 270 F. Supp. 2d at 734 (citations omitted).

The purpose of Rule 12(b)(6) is important to a court's consideration of whether to stay discovery. According to the United States Supreme Court, a Rule 12(b)(6) motion, by "operating on the assumption that the factual allegations in the complaint are true, streamlines litigation by dispensing with needless discovery and factfinding." *Neitzke v. Williams*, 490 U.S. 319, 327 (1989). Additionally, the Third, Sixth, and Nineth Circuits maintain "[t]he purpose of [Fed R. Civ. P. Rule] 12(b)(6) is to enable defendants to challenge the legal sufficiency of complaints without subjecting themselves to discovery." *Rutman Wine Co. v. E. & J. Gallo Winery*, 829 F.2d 729, 738 (9th Cir. 1987); *see also Mann v. Brenner,* 375 F. App'x 232, 239 (3d Cir. 2010); *Yuhasz v. Brush Wellman, Inc*., 341 F.3d 559, 566 (6th Cir. 2003).

Such a conclusion tracks South Carolina jurisprudence and comports with common sense. When a motion to dismiss pursuant to Rule 12(b)(6) is pending before the court, there is no need to gather facts in defense of the motion, as a court's determination is based solely on the four-corners of the complaint. *Gressette v. S.C. Elec. & Gas Co.*, 370 S.C. 377, 378–79, 635 S.E.2d 538, 538 (2006) ("A motion to dismiss pursuant to Rule 12(b)(6) must be based solely on the allegations set forth in the complaint and we must presume all well-pled facts to be true.").

Here, the criteria are met to warrant a stay on discovery. As discussed above, the Motion to Dismiss is a dispositive motion and is currently pending determination before the Court. Because the Motion to Dismiss is brought under Rule 12(b)(6), SCRCP, the Court's determination will be based on the four corners of the Complaint. Therefore, any defense Plaintiff may have to the Motion to Dismiss will not come from facts gathered in discovery, but rather will be based on the pleadings and the sufficiency of the allegations. Accordingly, responses to the Discovery Requests would not assist the Plaintiff or this Court in evaluating the legal issues raised in the Motion to Dismiss. *See Tilley,* 270 F. Supp. 2d at 734–35.

4

ELECTRONICALLY FILED - 2024 Nov 14 3:21 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

None of the items or information sought in the Discovery Requests address the deficiencies of Plaintiff's Complaint or the issues raised in the Motion to Dismiss. Instead, Plaintiff's Discovery Requests appear focused primarily on identifying other potential defendants, not addressing issues raised in the Motion to Dismiss. For example, the Interrogatories seek identification of manufacturers and vendors that sold substances containing PFAS, while Request for Production Number 1 seeks documents related to the same.

The cost related to locating, reviewing, and producing the documents and information sought by the Discovery Requests is expected to be highly burdensome. Plaintiff seeks numerous categories of email correspondence and product labels, many of which will likely produce nothing but irrelevant results. However, T&S Brass will still be faced with absorbing the costs and attorneys' fees associated with locating and reviewing the information. Such expense is not necessary until a decision is made on the Motion to Dismiss. Accordingly, the situation presented here constitutes "undue burden by expense" as considered by Rule 26(c), SCRCP, and discovery must be stayed.

## CONCLUSION

For the reasons set forth above, T&S Brass respectfully requests this Court enter an order staying discovery and protecting T&S Brass from responding to the Discovery Requests until a ruling is entered on the Motion to Dismiss. This Motion is based upon the pleadings in this action, the Discovery Requests in this action, the South Carolina Rules of Civil Procedure, all applicable statutory and common law, any Memorandum of Law that may be filed in connection herewith, and additional arguments as may be submitted to the Court in support hereof.

5

ELECTRONICALLY FILED - 2024 Nov 14 3:21 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Undersigned counsel certifies that they have communicated, orally and in writing, with opposing counsel and has attempted in good faith to resolve the matter prior to filing the Motion, as required by Rule 11, SCRCP, to no avail.

**WILLIAMS MULLEN**

By: s /John G. Tamasitis
Richard H. Willis (SC Bar No.: 6159)
rwillis@williamsmullen.com
Ethan R. Ware (SC Bar No.: 7990)
eware@williamsmullen.com
John G. Tamasitis (SC Bar No.: 101875)
jtamasitis@williamsmullen.com
1230 Main Street, Suite 330
Columbia, SC 29201
Tel.:   803.567.4615
Fax:   803.567.4601

*Counsel for Defendant T&S Brass and Bronze Works, Inc.*

November 14, 2024

Columbia, South Carolina

ELECTRONICALLY FILED - 2024 Nov 14 3:21 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Nov 22 4:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | |
|---|---|
| **STATE OF SOUTH CAROLINA** | **IN THE COURT OF COMMON PLEAS** |
| **COUNTY OF GREENWOOD** | **EIGHTH JUDICIAL CIRCUIT** |
| **GREENWOOD COMMISSIONERS OF PUBLIC WORKS,** | **C.A. No.:  2024-CP-24-00735** |
| **Plaintiff,** | |
| **v.** | |
| **CONE MILLS RECEIVER, LLC; CRYOVAC, INC.; CRYOVAC, LLC; FIRSTSOURCE WORLDWIDE, LLC; FITESA SIMPSONVILLE, INC.; MILLIKEN & COMPANY; OPPERMANN WEBBING, INC.; T&S BRASS AND BRONZE WORKS, INC.; UNICHEM SPECIALTY CHEMICALS, LLC,** | **DEFENDANT OPPERMANN WEBBING, INC.'S MOTION FOR PROTECTIVE ORDER TO STAY DISCOVERY PENDING THE RESOLUTION OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |
| **Defendants.** | |

Defendant Oppermann Webbing, Inc. ("Oppermann"), by and through its undersigned counsel, and pursuant to Rule 26(c) SCRCP, hereby moves the Court for a protective order to stay discovery served by Plaintiff Greenwood Commissioners of Public Works (the "Plaintiff") pending the Court's resolution of Oppermann's Motion to Dismiss.  Specifically, Oppermann moves to stay its obligation to respond to Plaintiff's First Interrogatories and Requests for Production to Oppermann (the "Discovery Requests"), which were served by Plaintiff on October 18, 2024, until after the resolution of Oppermann's Motion to Dismiss, as the Discovery Requests are simply not relevant to the Motion, and if the Motion is granted, the Discovery Requests will be moot.  In support of this Motion for Protective Order, Oppermann respectfully states as follows:

## I.     <u>INTRODUCTION AND BACKGROUND</u>

In response to Plaintiff's Amended Complaint (the "Complaint"), Oppermann filed a Motion to Dismiss (the "Motion") and a Memorandum of Law in Support of Motion to Dismiss

(the "Memo. of Law"), and in connection therewith has moved to dismiss all claims asserted by Plaintiff pursuant to Rules 8(a), 12(b)(1), and 12(b)(6) of the South Carolina Rules of Civil Procedure. The Motion is based on a number of different grounds. For one thing, Plaintiff's case is not ripe for adjudication, both because Plaintiff's claims all rely upon newly-promulgated drinking water standards for certain per- and polyfluoroalkyl substances ("PFAS") that do not go into effect (and that Plaintiff does not have to comply with) until 2029, and because Plaintiff does not allege that it has incurred any costs (or taken any action at all) as a result of the new rule or the allegedly PFAS-contaminated water that the rule concerns. (*See* Oppermann's Memo. of Law at pp. 1-6). In addition, Plaintiff's individual claims also fail for other reasons, including because Oppermann does not control the source of the alleged nuisance at issue for purposes of Plaintiff's private and public nuisance claims, Plaintiff's private nuisance claim also fails because it is based on the alleged contamination of a public water body, and because Plaintiff's allegations (for several reasons) simply do not state valid causes of action for trespass and negligence under South Carolina law. (*See id.* at pp. 6-17). Yet, despite the litany of reasons for which Plaintiff's claims against Oppermann should be dismissed, it remains that none of these reasons rely on matters outside the pleadings, and instead all are based on the allegations within the four corners of Plaintiff's Complaint alone. Without question, this Court has broad discretion and inherent power under Rule 26(c), SCRCP, to enter a protective order staying discovery until the Court rules upon Oppermann's pending Motion to Dismiss, and the Court should exercise that authority here. Accordingly, Oppermann's Motion for Protective Order should be granted.

## II.     ARGUMENT AND CITATION OF AUTHORITY

As the United States Supreme Court long ago made clear, "the power to stay proceedings is incidental to the power inherent in every court to control the disposition of the causes on its

ELECTRONICALLY FILED - 2024 Nov 22 4:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

docket with economy of time and effort for itself, for counsel, and for litigants." *Landis v. N. Am. Co.*, 299 U.S. 248, 254 (1936); *see also Clinton v. Jones*, 520 U.S. 681, 706 (1997) (noting that a "[d]istrict [c]ourt has broad discretion to stay proceedings as an incident to its power to control its own docket") (citation omitted).  This discretion plainly extends to discovery, as under Rule 26(c), SCRCP, the Court, "for good cause shown . . . may make any order which justice requires to protect a party or person from . . . undue burden by expense, including one or more of the following:  (1) that the discovery not be had; [and] (2) that the discovery be had only on specified terms and conditions, including a designation of the time or place."  Rule 26(c), SCRCP.

Notably, state and federal courts alike,[1] both within and outside of South Carolina, have time and again recognized the broad discretion that trial courts have to stay discovery pending the resolution of a Rule 12 motion to dismiss, and have furthermore emphasized it is appropriate to exercise that discretion when the discovery at issue is irrelevant to the motion.  *See Burks v. Rushton*, No. 3:08-cv-3025, 2009 WL 10703167, at \*1 (D.S.C. June 8, 2009) ("Defendants request that discovery be stayed until after the Court rules on their motion to dismiss in order to avoid requiring them to unnecessarily expend time and incur expenses in responding to Plaintiff's discovery requests. . . . Requiring Defendants to answer Plaintiff's discovery requests at this time would be unduly burdensome.  Here, the motion to dismiss has the potential to dispose of the case . . . without the need for discovery such that it is within the court's discretion to stay discovery pending resolution of the dispositive motion . . . .") (citations omitted); *Williams v. New Century*

---

[1] The South Carolina Supreme Court has recognized that in construing the South Carolina Rules of Civil Procedure, trial courts should "look[] for guidance to cases interpreting the federal rules." *See Maybank v. BB&T Corp.*, 416 S.C. 541, 565, 787 S.E.2d 498, 510 (2016) ("In construing the South Carolina Rules of Civil Procedure, our Court looks for guidance to cases interpreting the federal rules."); *Gardner v. Newsome Chevrolet-Buick, Inc.*, 304 S.C. 328, 330, 404 S.E.2d 200, 201 (1991) ("Since our Rules of Procedure are based on the Federal Rules, where there is no South Carolina law, we look to the construction placed on the Federal Rules of Civil Procedure.").

ELECTRONICALLY FILED - 2024 Nov 22 4:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Nov 22 4:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

*Investigations, Inc.*, No. 2005-UP-237, 2005 WL 7083703, at *2 (S.C. Ct. App. Apr. 6, 2005) (rejecting argument that discovery should have been allowed despite pending motion to dismiss "[b]ecause a dismissal pursuant to Rule 12(b)(6), SCRCP, is based solely on the allegations within the four corners of the complaint," and thus "further discovery is not necessary").[2]

Absent a stay of discovery in this case, there is no dispute that Oppermann will be required to devote substantial time and resources responding to Plaintiff's Discovery Requests. At the same time, it also cannot be disputed that Plaintiff's Discovery Requests to Oppermann have no relevance whatsoever to the resolution of Oppermann's pending Motion to Dismiss, as Oppermann's Rule 12(b) Motion is based solely on the allegations of Plaintiff's Complaint. Thus, if the Court ultimately grants Oppermann's Motion to Dismiss, the time and resources expended by it to respond to Plaintiff's Discovery Requests will have been unnecessary. Accordingly, to protect Oppermann from "undue burden by expense," Rule 26(c), SCRCP, and thereby "secure the just, speedy, and inexpensive determination" of this action, Rule 1, SCRCP, the Court should temporarily stay discovery in this case pending the resolution of Oppermann's Motion to Dismiss.

### III.     CONCLUSION

For all of the foregoing reasons, Oppermann's Motion for Protective Order should be granted, and all discovery requests served on Oppermann in connection with this case, including

---

[2] *See also Cuyler v. Dep't of Army*, No. 3:08-cv-3261, 2009 WL 1749604, at *8 (D.S.C. June 22, 2009) (agreeing that the plaintiff's discovery to the defendant should be stayed pending the court's ruling on the defendant's Rule 12(b)(1) and Rule 12(b)(6) motion to dismiss); *Tilley v. United States*, 270 F. Supp. 2d 731, 734 (M.D.N.C. 2003), (entering protective order to stay discovery pending resolution of motion to dismiss because "the discovery requested by the [plaintiffs] is not relevant to the opposition of the motion"), *aff'd by* 85 F. App'x 333 (4th Cir. 2004); *see also, e.g.*, *See Gettings v. Building Laborers Local 310 Fringe Benefits Fund*, 349 F.3d 300, 304 (6th Cir. 2003) (emphasizing that "[l]imitations on pretrial discovery are appropriate where claims may be dismissed 'based on legal determinations that could not have been altered by any further discovery'" (quoting *Muzquiz v. W.A. Foote Mem'l Hosp., Inc.*, 70 F.3d 422, 430 (6th Cir. 1995))).

55904885 v1                                      4

ELECTRONICALLY FILED - 2024 Nov 22 4:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Plaintiff's First Interrogatories and Requests for Production, should be stayed pending the Court's resolution of Oppermann's previously-filed Motion to Dismiss Plaintiff's Amended Complaint.

Pursuant to Rule 11(a) of the South Carolina Rules of Civil Procedure, counsel for Oppermann hereby certifies and affirms that they have attempted in good faith to communicate in writing with opposing counsel in order to resolve the matter contained in this Motion for Protective Order, and that to date such attempts have been unsuccessful.

Respectfully submitted,

*s/ Paul D. Harrill*
Paul D. Harrill (S.C. Bar No. 15268)
BURR & FORMAN LLP
1221 Main Street, Suite 1800 (29201)
P.O. Box 11390
Columbia, South Carolina 29211
Telephone:  (803) 799-9800
Facsimile:  (803) 753-3278
E-mail:   PHarrill@burr.com

Rik S. Tozzi (PHV Admission to be filed)
Ryan J. Hebson (PHV Admission to be filed)
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama  35203
Telephone:  (205) 251-3000
Facsimile:  (205) 458-5100
E-mail:   rtozzi@burr.com
E-mail:   rhebson@burr.com

Counsel for Defendant
OPPERMANN WEBBING, INC.

November 22, 2024
Columbia, South Carolina

55904885 v1                                    5

ELECTRONICALLY FILED - 2024 Nov 25 4:57 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF GREENWOOD | ) | EIGHTH JUDICIAL CIRCUIT |
| | ) | |
| | ) | |
| GREENWOOD COMMISSIONERS OF PUBLIC WORKS, | ) | C.A. No. 2024-CP-24-00735 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONE MILLS RECEIVER, LLC; CRYOVAC, INC.; CRYOVAC, LLC; FIRSTSOURCE WORLDWIDE, LLC; FITESA SIMPSONVILLE, INC.; MILLIKEN & COMPANY; OPPERMANN WEBBING, INC.; T&S BRASS AND BRONZE WORKS, INC.; UNICHEM SPECIALTY CHEMICALS, LLC, | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## MILLIKEN & COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendant MILLIKEN & COMPANY ("Milliken"), pursuant to Rules 8(a), 12(b)(1), and 12(b)(6) of the South Carolina Rules of Civil Procedure, hereby submits its Memorandum of Law in Support of its Motion to Dismiss all claims asserted against it in Plaintiff's Amended Complaint, respectfully stating as follows:

### INTRODUCTION

All the causes of action against Milliken in plaintiff's Amended Complaint arise from the allegations in a single paragraph: that Milliken used per- and polyfluoroalkyl chemicals (known as "PFAS") at its former Judson Mill in Greenville; that Milliken discharged those chemicals to a wastewater treatment facility; that the facility did not treat the wastewater properly, and that

PFAS flowed into plaintiff's water intakes. (Plaintiff also alleges the mill site is "contaminated" with PFAS, which also makes its way to plaintiff's intakes.) Plaintiff contends it will have to upgrade its facilities to remove PFAS to meet new U.S. Environmental Protection Agency ("EPA") standards set to take effect in 2029, and demands Milliken and its codefendants foot the bill.

Setting aside the question of whether Milliken ever actually used any products that contained or degraded to PFAS at Judson[1] – and plaintiff does not identify a specific product ever manufactured there that used PFAS, which is typically applied to certain finished products, not raw yarn – plaintiff's Amended Complaint does not state a claim against Milliken. Based on the allegations in the Amended Complaint itself, plaintiff's claims fail for a number of reasons:

1. **The claims are not ripe.** Plaintiff contends it will be required to acquire, install, and operate a new water treatment system in the future, but the Amended Complaint itself acknowledges it is currently testing its water to determine whether and to what extent it is over the proposed and pending future limit – if that limit survives court challenges and the change in presidential administrations. At this point, whether plaintiff will need to undertake any remedial work is in question.

2. **The statute of limitations bars plaintiff's claims.** As plaintiff itself alleges, Milliken has not owned the facility at issue since at least 2015. The statute of limitations for any "damage to real property" is three years.

---

[1] In fact, the Judson mill never used chemistries containing or degrading to PFAS in its operations. Milliken intends to file a summary judgment motion on that basis shortly, providing the undisputed evidence no PFAS allegedly present in plaintiff's water supply could have come from Judson.

2

ELECTRONICALLY FILED - 2024 Nov 25 4:57 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Nov 25 4:57 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

3. **Milliken did not control the discharge at issue.** Plaintiff itself admits the Judson plant (which ceased operations in 2015) discharged its water to a third-party wastewater treatment facility on Mauldin Road in Greenville, and there is no allegation Milliken violated any permit or regulation in doing so. It was the Mauldin Road facility that is alleged to have discharged PFAS into the Reedy River upstream from plaintiff's intake. It is the operator of that facility, not Milliken, who would be liable for any failure to remove PFAS from its discharge, and for discharging them in a manner that could impact plaintiff. For that reason, Milliken did not owe plaintiff a duty of care to support a negligence claim and its actions cannot form the basis for a nuisance claim.

4. **An alleged contamination of public waters is not a private nuisance.** South Carolina law does not permit a claim for private nuisance for an act that affects the general public.

5. **Voluntary acceptance of intangible matter cannot be a trespass.** Plaintiff's trespass claim fails for two reasons: PFAS molecules constitute "intangible" matter, and plaintiff brought any PFAS onto its property by its own actions.

For all those reasons, plaintiff's claims fail as a matter of law and should be dismissed.

## ARGUMENT AND CITATION TO AUTHORITY

### A. PLAINTIFF'S CLAIMS ARE NOT RIPE FOR ADJUDICATION

**1. A claim is not ripe for adjudication until there is a cognizable injury.**

"A threshold inquiry for any court is a determination of justiciability, i.e., whether the litigation presents an active case or controversy." *Peoples Fed. Sav. & Loan Ass'n of S.C. v. Res. Plan. Corp.*, 358 S.C. 460, 477, 596 S.E.2d 51, 60 (2004) (quoting *Lennon v. S.C. Coastal*

3

ELECTRONICALLY FILED - 2024 Nov 25 4:57 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

*Council,* 330 S.C. 414, 415, 498 S.E.2d 906, 906 (S.C. App. 1998)). Justiciability includes whether the plaintiff's claims are ripe for adjudication. *See James v. Anne's Inc.*, 390 S.C. 188, 193, 701 S.E.2d 730, 732 (2010) (citing *Jackson v. State*, 331 S.C. 486, 490 n.2, 489 S.E.2d 915, 917 n.2 (1997)). Where, as here, a claim presents only "a contingent, hypothetical or abstract dispute," the claim is not ripe for adjudication and must be dismissed. *See Pee Dee Elec. Co-op., Inc. v. Carolina Power & Light Co.*, 279 S.C. 64, 66, 301 S.E.2d 761, 762 (1983); *see also Peoples Fed. Sav. & Loan Ass'n of S.C.*, 358 S.C. at 477, 596 S.E.2d at 60 ("A justiciable controversy is a real and substantial controversy which is ripe and appropriate for judicial determination, as distinguished from a contingent, hypothetical or abstract dispute.") (citation omitted).[2] *See also Carolina Care Plan, Inc. v. United HealthCare Servs., Inc.*, 361 S.C. 544, 557, 606 S.E.2d 752, 759 (2004) (affirming dismissal of complaint where claims were contingent in nature and therefore not yet ripe for adjudication).[3]

### 2. Plaintiff has not shown it will need to act to meet new EPA standards.

In this case, plaintiff's own allegations demonstrate it has not yet suffered any legally cognizable injury due to PFAS, and in fact it might never suffer such injury. Indeed, while

---

[2] *See also Wild Virginia v. Council on Env't Quality*, 56 F.4th 281, 294 (4th Cir. 2022) (claim is unripe if "plaintiff has not yet suffered injury and any future impact 'remains wholly speculative.'") (citation omitted); *South Carolina v. U.S.*, 912 F.3d 720, 730 (4th Cir. 2019) (claim unripe "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (quoting *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 270 (4th Cir. 2013))).

[3] *See also Kiawah Prop. Owners Grp. v. Pub. Serv. Comm'n of S.C.*, 357 S.C. 232, 242-43, 593 S.E.2d 148, 154 (2004) (no justiciable controversy where plaintiffs "assert only that the loan provisions may have some negative impact in the future" on water utility's customers); *McClanahan v. Richland Cnty. Council*, 350 S.C. 433, 441, 567 S.E.2d 240, 244 (2002) (property owner's claim based on adoption of land use plan not yet implemented is unripe); *see also, e.g.*, *Tracy v. Tracy*, 384 S.C. 91, 100, 682 S.E.2d 14, 18 (S.C. App. 2009) (determining case not ripe for review where appellant not yet exposed to liability due to appellee's conduct).

4

ELECTRONICALLY FILED - 2024 Nov 25 4:57 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

EPA's standards for "maximum contaminant levels" ("MCLs") of PFAS became final in April 2024 (Compl. ¶ 42), it has not yet been determined how, if at all, the rule will impact the plaintiff or its ability to provide acceptable drinking water. Most importantly, plaintiff will not be required to comply with the newly developed MCLs until at least April 26, 2029. (*Id.* ¶ 44). Prior to that date is a three-year "initial monitoring" period that runs through April 26, 2027. (*Id.*; *see also* PFAS Nat'l Primary Drinking Water Reg., 89 Fed. Reg. 32,532, 32,633 (Apr. 26, 2024) (codified at 40 CFR Parts 141 and 142)).

Plaintiff does not allege any facts demonstrating it is required to take action of any sort to comply with the 2029 MCLs. In fact, plaintiff has not alleged that it has incurred any costs or expenses whatsoever due to the presence of PFAS in its source water. Rather, it is seeking "expenses associated with ***future*** acquisition, installation, and operation of required treatment technologies." (Am. Compl. ¶ 73 (emphasis added)). Nothing in the Amended Complaint indicates plaintiff has changed its operations either since EPA finalized the MCLs in April or as a result of any PFAS in Lake Greenwood.

### 3. The standards at issue may never go into effect.

This status quo may continue indefinitely. Plaintiff's testing during the initial monitoring period may indicate plaintiff will not be required to make any capital investments to remain in compliance with applicable regulations. And that assumes the MCLs go into effect at all: In June 2024, three sets of plaintiffs filed challenges to the EPA's PFAS rule in actions currently pending before the D.C. Circuit Court of Appeals. *See* Pet. for Rev., *The Chemours Co. v. EPA*, No. 24-1192 (D.C. Cir. June 10, 2024)[4]; Pet. for Rev, *Nat'l Assoc. of Mfrs. v. EPA*, No. 24-1191 (D.C.

---

[4] Available at https://www.epa.gov/system/files/documents/2024-06/chemours- v.-epa_d.c.cir_.pdf.

ELECTRONICALLY FILED - 2024 Nov 25 4:57 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Cir. June 10, 2024)[5]; Pet. for Rev, *Am. Water Works Assoc. v. EPA*, No. 24-1188 (D.C. Cir. June 7, 2024).[6] Changes to the MCLs that could result from these cases may also affect the extent to which plaintiff must take any action to comply, if at all; and the MCLs could simply be changed or eliminated entirely based on differing priorities of the incoming Trump Administration.[7] Either precludes plaintiff's claims from being ripe at this time. *See Jowers v. S.C. Dep't of Health & Env't Control*, 423 S.C. 343, 364, 815 S.E.2d 446, 457 (2018) (finding action was not ripe because claim "depends on there being no changes to the law regarding surface water withdrawals"). Because of these numerous contingencies and the resulting uncertainty, the facts alleged by plaintiff demonstrate at most "the mere threat of potential injury," which is "too contingent or remote to support present adjudication." *Waters v. S.C. Land Res. Cons. Comm'n*, 321 S.C. 219, 228, 467 S.E.2d 913, 918 (1996) (quoting *Thrifty Rent-A-Car Sys., Inc. v. Thrifty Auto Sales of Charleston, Inc*., 849 F. Supp. 1083, 1086 (D.S.C. 1991)). For this reason alone, plaintiff's claims are not ripe for adjudication and should be dismissed.

### B.  THE STATUTE OF LIMITATIONS BARS PLAINTIFF'S CLAIMS BECAUSE MILLIKEN'S PLANT CLOSED IN 2015

#### 1.  Milliken could not have harmed plaintiff within the statutory period.

Under S.C. Code § 15-3-530(3), any action alleging injury to land – or, in the language of the statute, "an action for trespass upon or damage to real property," must be brought within three years. Plaintiff filed its original Complaint on July 10, 2024 and its Amended Complaint, which first named Milliken as a defendant, on August 23, 2024. The Amended Complaint alleges

---

[5] Available at https://www.fbm.com/content/uploads/2024/06/24-1191_Documents.pdf.
[6] Available at https://www.awwa.org/Portals/0/AWWA/Government/062124Insiders/AWWA-v-EPA-No-1188-DC-Cir-Filed-Petition.pdf.
[7] *See, e.g.,* https://www.usatoday.com/story/news/investigations/2024/11/08/water-activists-worried-about-trump-presidency/76110402007/.

Milliken owned the Judson Mill – the site that forms the basis of all plaintiff's claims against Milliken – "between approximately 1960 and 2015."

Based on plaintiff's own allegations, then, plaintiff's claim is outside the statute of limitations and must be dismissed. More than eight years[8] have elapsed since plaintiff claims Milliken last operated the mill, well outside the statutory period. Milliken could not have taken any action to harm plaintiff within the statutory period. There is no exception to Section 15-3-530 that allows plaintiff's claims to survive.

### 2. The nuisance and trespass alleged by plaintiff is not continuing because it is not abatable.

Despite any efforts in the Amended Complaint to characterize it as such, plaintiff does not allege a "continuing nuisance" or "continuing trespass" under South Carolina law as to Milliken. Despite the nomenclature, the key difference between a "continuing" and "permanent" nuisance or trespass is not just whether it is expected to continue; it is whether it is abatable. *See Silvester v. Spring Valley Country Club*, 344 S.C. 280, 286-87, 543 S.E.2d 563 (S.C. App. 2001). "A nuisance is continuing *if abatement is reasonably and practicably possible*." *Id*. at 287 (citing 58 Am. Jur.2d *Nuisances* § 29 (1989)) (emphasis added). A building encroaching on a plaintiff's land will continue to trespass permanently, but it is not a "permanent" nuisance because it cannot simply be abated. *Id*. at 286.

Here, abatement is not possible. Milliken does not own the property from which plaintiff alleges the nuisance originated, and has not for a half-dozen years. Any alleged PFAS discharged in its wastewater left its property at least eight years ago. Nor can Milliken take any action to

---

[8] Milliken closed the mill in 2015 but did not sell the property until October 2017, but even if one uses the later date (though the mill was not operating and not discharging wastewater), more than six years have passed since Milliken exercised any ownership or control over the property. That is still twice as long as the statutory period.

ELECTRONICALLY FILED - 2024 Nov 25 4:57 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Nov 25 4:57 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

address the "contaminat[ion] with these PFAS and their precursors that migrate to Brushy Creek and the Reedy River via groundwater migration and stormwater discharges," (Am. Compl. ¶ 20), because it has no control over the land plaintiff alleges is contaminated. *See McCurley v. S.C. State Hwy. Dept.*, 256 S.C. 332, 182 S.E.2d 299 (S.C. 1971) (trespass abatable because state landowner was able to install new culvert under street). To the extent plaintiff argues "abatement" consists of funding plaintiff's efforts to remove PFAS from its own property, that is not abatement – that is simply compensating a plaintiff for its alleged injury.

The South Carolina Court of Appeals made this clear in its decision in *Hedgepath v. American Tel. & Tel. Co.* In *Hedgepath*, property owners sued, among others, the former owner of a copper reclamation facility for alleged pollution on their land. 348 S.C. 340, 349-50, 559 S.E.2d 327 (S.C. App. 2001). The suit was filed just over three years after one defendant ceased operations in preparation for the sale to another entity, meaning the last polluting event attributable to that defendant must have occurred more than three years before commencement of the action. *Id*. at 358-59. The trial court concluded there was no evidence of any injuries to any plaintiff caused by the former owner within the statutory period and granted summary judgment. *Id*. at 359. The Court of Appeals affirmed. *Id*.

### C.  PLAINTIFF'S NEGLIGENCE CLAIM FAILS FOR A LACK OF DUTY

#### 1. A duty requires a relationship between the parties, not mere foreseeability of injury.

It is well-settled in South Carolina (and everywhere) that an "essential element in a negligence action is 'the existence of a legal duty of care owed by the defendant to the plaintiff.'" *Shaw v. Psychemedics Corp.*, 426 S.C. 194, 197, 826 S.E.2d 281, 282 (2019) (quoting *Oblachinski v. Reynolds*, 391 S.C. 557, 561, 706 S.E.2d 844, 845-46 (2011)). "If there is no duty, then the defendant in a negligence action is entitled to judgment as a matter of law." *Madison ex*

8

*rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 135-36, 638 S.E.2d 650, 656 (2006) (citing *Steinke v. S.C. Dep't of Labor, Licensing & Regulation*, 336 S.C. 373, 387, 520 S.E.2d 142, 149 (1999)). "An affirmative legal duty may be created by statute, a contractual relationship, status, property interest, or some other special circumstance." *McPherson v. CSX Transp., Inc.*, No. 4:16-cv-2725, 2017 WL 1135291, at *2 (D.S.C. Mar. 27, 2017) (citing *Madison ex rel. Bryant*, 371 S.C. at 136, 638 S.E.2d at 656-57). "However, South Carolina courts 'will not extend the concept of a legal duty of care in tort liability beyond reasonable limits,'" and without more, "[f]oreseeability of injury, in and of itself, does not give rise to a duty." *Shaw*, 426 S.C. at 198, 826 S.E.2d at 283 (quoting *McCullough*, 373 S.C. at 48, 644 S.E.2d at 46); *Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co.*, 355 S.C. 614, 618, 586 S.E.2d 586, 588 (2003).

### 2.    Milliken does not owe a legal duty of care to the plaintiff.

Here, plaintiff does not allege any facts that suggest the existence of a relationship between it and Milliken sufficient to establish a legal duty of care. Plaintiff does not allege any duty "created by statute, a contractual relationship, status, property interest, or some other special circumstance," but instead alleges only that the "Defendants have a duty to use due care in the handling, use, and disposal of products containing or degrading to [PFAS] to avoid causing an unreasonable risk of harm to others." (*See* Am. Compl. ¶ 91). But South Carolina does not recognize or impose such a broad and oversimplified duty of care. Just the opposite, because under South Carolina law, "***one who has no control owes no duty***." *Miller v. City of Camden*, 329 S.C. 310, 314, 494 S.E.2d 813, 815 (1997) (citing *Clark v. Greenville Cnty.*, 313 S.C. 205, 209, 437 S.E.2d 117, 119 (1993) (emphasis added)); *see also Ellis v. Tall Ships Charleston, LLC*, 593 F. Supp. 3d 253, 268 (D.S.C. 2022) ("Under South Carolina law, there is no general duty to control the conduct of another or to warn a third person or potential victim of danger." (quoting *Faile v. S.C. Dep't of Juv. Just.*, 350 S.C. 315, 334, 566 S.E.2d 536, 546 (2002)).

9

ELECTRONICALLY FILED - 2024 Nov 25 4:57 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Accordingly, in disposing of wastewater at the Mauldin Road WWTP, Milliken had no duty to ensure that the Mauldin Road WWTP would treat the wastewater in a way that avoids any risk of harm to third parties, and therefore owed no duty to the plaintiff. *See, e.g.*, *Oulla v. Velazques*, 427 S.C. 428, 444, 831 S.E.2d 450, 458 (S.C. App. 2019) (sod manufacturer that placed pallets on truck trailer that later fell, leading to accident, did not owe legal duty to injured motorist to ensure pallets were properly secured). As a result of the absence of any duty, plaintiff's Fourth Cause of Action in the Amended Complaint should be dismissed.

### D.  MILLIKEN IS ENTITLED TO DISMISSAL OF BOTH NUISANCE CLAIMS

**1.  Milliken cannot be liable for nuisance because it lacked control over the property directly responsible for the alleged nuisance.**

**a.  Control is an essential element of nuisance.**

Under black letter South Carolina law, Milliken cannot be held liable to plaintiff under a nuisance theory based upon its alleged disposal of industrial wastewater at the Mauldin Road WWTP. Rather, nuisance law is primarily a mechanism for resolving "conflicting interests of landowners," and to effect a "balancing of the[ir] correlative rights." *See DeBorde v. St. Michael & All Angels Episcopal Church*, 272 S.C. 490, 502, 252 S.E.2d 876, 882 (1979); *Winget v. Winn-Dixie Stores, Inc.*, 242 S.C. 152, 159, 130 S.E.2d 363, 367 (1963). For that reason, the South Carolina Supreme Court has made clear that "one who has no control over property at the time of the alleged nuisance cannot be held liable therefor." *Clark v. Greenville Cnty.*, 313 S.C. 205, 210, 437 S.E.2d 117, 119 (1993). As such, in the absence of allegations evidencing control, a nuisance claim fails and must be dismissed. *See id.*; *see also Weatherford v. E.I. Dupont de Neumours & Co.*, No. 4:22-cv-1427, 2023 WL 11015357, at *6 (D.S.C. Sept. 27, 2023) (dismissing nuisance claim because "Plaintiffs have not alleged Defendants had control over the PFAS once they were sold to the textile plants").

10

ELECTRONICALLY FILED - 2024 Nov 25 4:57 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**b. The Supreme Court has already ruled defendants cannot be liable for delivering waste to landowner who allegedly causes nuisance.**

The South Carolina Supreme Court's decision in *Clark v. Greenwood County* is directly on point. In that case, the plaintiffs were property owners who alleged their properties had been contaminated by hazardous chemical waste disposed of at a nearby landfill. *See* 313 S.C. at 206-07, 437 S.E.2d at 118. As a result, the property owners filed suit against five corporations that had used the landfill. *Id.* at 207, 118. The trial court ruled that because the corporate respondents did not own or control the landfill, "no action for private nuisance could be maintained against the corporate respondents." *Id.* at 209, 119. On appeal, the Supreme Court affirmed, explaining that "[t]he only issue we need address is whether one must own or have control of the property allegedly used as a nuisance"; and held control was indeed a prerequisite to any action for nuisance: "[W]e now hold one who has no control over property at the time of the alleged nuisance cannot be held liable therefor." *Id.* at 209-10, 119. Thus, because "appellants neither alleged nor produced any evidence the corporate respondents had control over the landfill or the hazardous waste once it was deposited at the landfill," the court concluded that "the trial judge correctly ruled the corporate respondents could not be liable for nuisance because they had no control over the property allegedly used as a nuisance." *Id.* at 210, 119.

Here, plaintiff's Amended Complaint alleges *the Mauldin Road WWTP* – not Milliken – "discharged into the Reedy River upstream of Lake Greenwood and Plaintiff's water intakes." (Am. Compl. ¶ 20). Just like in *Greenwood County*, the allegation in this case is that Milliken discharged wastewater *to* the Mauldin Road WWTP, which occurs prior to (and entirely separate and apart from) any discharge *by* the Mauldin Road WWTP.[9] (*See id.* ¶¶ 20, 83). Because

---

[9] Plaintiff attempts to dodge the impact of *Greenwood County* by tacking on an allegation Milliken "did not remediate Judson Mill upon its closure, and the site remains contaminated with these PFAS," and those PFAS somehow end up 60 miles away at the W.R. Wise Water

11

ELECTRONICALLY FILED - 2024 Nov 25 4:57 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Milliken had no control over the Mauldin Road WWTP, it "had no control over the property allegedly used as a nuisance." *See Greenwood Cnty.*, 313 S.C. at 210, 437 S.E.2d at 119. Accordingly, plaintiff's private and public nuisance claims against Milliken – the First and Second Causes of Action – both fail as a matter of law and must be dismissed.

**2.    Plaintiff's private nuisance claim also fails because plaintiff alleges an injury to the public at large.**

Plaintiff's private nuisance claim against Milliken should also be dismissed because the alleged contamination of a public water body cannot form the basis of a claim for private nuisance. "A private nuisance affects only one person or a determinate number of persons," whereas a "nuisance is public because of the danger to the public which might have been created." *See Baltzeger v. Carolina Midland Ry. Co.*, 54 S.C. 242, 248, 32 S.E. 358, 360 (1899); *Home Sales, Inc. v. City of N. Myrtle Beach*, 299 S.C. 70, 81, 382 S.E.2d 463, 469 (S.C. App. 1989) ("A nuisance is public because of the danger to the public which might have been created. It is private only because the individual as distinguished from the public has been or may be injured."); *see also Charleston Dev. Co. v. Alami*, 433 S.C. 533, 547-48, 860 S.E.2d 687, 695 (S.C. App. 2021) (a private nuisance "produces damage to but one or two persons, and cannot be said to be public."); *accord Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 96-97 (4th Cir. 2011) ("when a release of pollutants directly affects a municipal water supply and does not

---

Treatment Facility operated by plaintiff. (Am. Compl. ¶ 20.) This allegation fails for two reasons. First, plaintiff acknowledges Milliken has not owned the site for several years (*id*.), and the statute of limitations bars that claim. *See infra*. Second, in South Carolina, a nuisance is "a substantial and unreasonable interference with the plaintiff's use and enjoyment of his land." *FOC Lawshe Ltd. P'ship v. Int'l Paper Co.*, 574 S.E.2d 228, 231 (S.C. App. 2002). Regardless of the magnitude of plaintiff's alleged harm due to the conduct of all defendants together, nothing in the Amended Complaint suggests the alleged presence of chemicals miles away interferes with plaintiff's use of its land in a "substantial and unreasonable" manner.

ELECTRONICALLY FILED - 2024 Nov 25 4:57 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

interfere with any private water source, such as a well drilled on private property, the presence of the pollutants in the public water supply will not support a private nuisance claim.").

Plaintiff's Amended Complaint makes clear its claims against Milliken are based on the alleged contamination of Lake Greenwood, the location of plaintiff's water intakes. (Am. Compl. ¶ 20.) Plaintiff's nuisance claim therefore involves an alleged nuisance that is "public in nature," which "will not support a private nuisance claim." *See Rhodes*, 636 F.3d at 96-97. For this additional reason, the First Cause of Action for private nuisance should be dismissed.

### E. MICROSCOPIC PARTICLES BROUGHT IN VOLUNTARILY CANNOT FORM THE BASIS OF A TRESPASS CLAIM

#### 1. South Carolina follows the traditional rule that a trespass requires "an invasion by a physical, tangible thing."

The Supreme Court has definitively stated South Carolina follows the traditional rule that "only recognizes intrusions by physical, tangible things as capable of constituting a trespass." *Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 152, 747 S.E.2d 468, 480 (2013). Under the traditional rule, the interference must be "with the right to exclusive possession," as opposed to "merely interfer[ing] with the right to use and enjoyment." *Id.* at 151, 747 S.E.2d at 480. Thus, intrusions by "microscopic particulates" or similarly intangible "infiltration[s] of contaminants onto a plaintiff's property" – while potentially giving rise to a nuisance claim – do not constitute an actionable trespass under South Carolina law. *Id.* at 144-52, 476-80.

In adhering to the traditional rule that requires "an invasion by a physical, tangible thing," the Supreme Court recognized it was "an imperfect rule" that may not incorporate the pure scientific definition of matter. *Id.* at 150, 479. Nevertheless, the court held the traditional rule remained "superior" to the alternate rules which require the adoption of an uncertain "substantiality requirement," because it "possesses the virtues of clarity, ease of implementation, and ability to serve as a guide for future conduct" that will "yield a stable rule as to what rises to

13

the level of a trespass." *Id.* at 149-51, 479-80. The Court further explained that the traditional rule preserves "the distinction between trespass and nuisance," whereas "the divergent view would transform trespass into nuisance," thereby "leav[ing] property owners with less, rather than more, protection of their property rights." *Id.* at 151-52, 480.

By retaining the traditional rule, the Supreme Court expressly rejected "divergent" cases in Oregon and Alabama, which held intrusions of "fluoride particles" and "sulfoxide emissions" respectively were sufficient to constitute a trespass despite their "intangible nature." *Id.* at 146-49, 747 S.E.2d at 477-78 (rejecting *Martin v. Reynolds Metals Co.*, 342 P.2d 790 (1959) and *Borland v. Sanders Lead Co.*, 369 So. 2d 523 (Ala. 1979)). Instead, the Court followed the Michigan Court of Appeals' decision in *Adams v. Cleveland-Cliffs Iron Co.* that concluded dust is "not actionable in trespass" because "dust, along with other forms of airborne particulate, does not normally present itself as a significant physical intrusion," but instead "become[s] a part of the ambient circumstances of th[e] space" on which it settles. *See Babb,* 405 S.C. at 149-50, 747 S.E.2d at 479; *see also* 237 Mich. App. 51, 67-70, 602 N.W.2d 215, 222-24 (1999).

### 2. Plaintiff alleges trespass only by "intangible matter."

In this case, plaintiff's trespass claim is based on the alleged contamination from PFAS molecules, which are precisely the kind of "intangible matter" the Supreme Court held "are insufficient to constitute a trespass." *See Babb*, 405 S.C. at 144-52, 747 S.E.2d at 476-80. Indeed, plaintiff's own Amended Complaint demonstrates PFAS molecules are microscopic particles — measured, if at all, in the parts per ***trillion*** – that cannot be visibly seen, felt, or otherwise perceived in water or any other medium. (*See* Am. Compl. ¶¶ 33-34, 36-37, 39-40, 43). Moreover, the damages plaintiff alleges from the PFAS contamination are not to its right to the exclusive possession of its property but are based on the alleged "losses to the use and enjoyment of its property rights" (*id*. ¶ 5) and the alleged "interference with Plaintiff's right to use and enjoy

14

ELECTRONICALLY FILED - 2024 Nov 25 4:57 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Nov 25 4:57 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

its property" (*id*. ¶ 55), which can be remedied only through a claim for nuisance, not trespass. *Babb*, 405 S.C. at 139, 149-52, 747 S.E.2d at 473, 479-80.  For these reasons, plaintiff's allegations do not state an actionable claim for trespass under South Carolina law, and its Third Cause of Action should be dismissed.

### 3.    Plaintiff does not enjoy exclusive possession of the water from Lake Greenwood or the Saluda River.

Plaintiff's trespass claim also fails for other reasons. First, plaintiff does not sufficiently allege a physical invasion of its property. As the South Carolina Supreme Court has made clear, trespass protects only the "right to *exclusive* possession." *See Babb*, 405 S.C. at 150-51, 747 S.E.2d at 479- 80 (2013) (emphasis added). Here, plaintiff does not hold an exclusive right to the water from the Saluda River or Lake Greenwood, only a riparian right of reasonable use. *See White v. Whitney Mfg. Co.*, 60 S.C. 254, 265, 38 S.E. 456, 460 (1901) (it is a "well-settled rule of law" that while a riparian owner has "an equal right to the use of the water which flows in the stream adjacent to his lands . . . [h]e has no property in the water itself, but a simple usufruct").

### 4.    Any PFAS allegedly on plaintiff's property was drawn there by plaintiff's own actions.

Second, though plaintiff alleges PFAS contamination is present on its property, it concedes this alleged contamination only occurs as a result of its own actions, when plaintiff turns on its water pumps to draw water from Lake Greenwood. (Am. Compl. ¶¶ 85, 87). That does not constitute an actionable trespass under South Carolina law, which must be based on "an affirmative act" by the defendant, and "the invasion of the land must be intentional." *Snow v. City of Columbia*, 305 S.C. 544, 553, 409 S.E.2d 797, 802 (S.C. App. 1991). An act is only intentional if "done with knowledge that it will to a substantial certainty result in the entry of the foreign matter" on the plaintiff's land. *Sales v. S.C. Dep't of Transp.*, No. 2014-000582, 2016 WL 3607225, at *2 (S.C. App. June 30, 2016) (quoting Restatement (Second) of Torts § 158

15

cmt. i (1965)). Here, there could be no "substantial certainty" PFAS would enter plaintiff's property, because it can only occur when plaintiff affirmatively acts to activate of its water pumps. Plaintiff's affirmative action to pump water onto its property is the third additional reason its trespass claim fails: any PFAS allegedly enters its property through its own voluntary decision. *See Ravan v. Greenville Cnty.*, 315 S.C. 447, 464, 434 S.E.2d 296, 306 (S.C. App. 1993) ("The essence of trespass is the unauthorized entry onto the land of another."). *See also Util. Bd. of Tuskegee v. 3M Co.*, No. 2:22-cv-420, 2023 WL 1870912, at *16 (M.D. Ala. Feb. 9, 2023) (dismissing similar trespass claim asserted by water system because "unlike other indirect trespasses, Defendants' PFAS did not cross onto UBT's boundary line by a natural process. Rather, UBT pulls the water onto its property through an intake system from a public waterway (over which UBT does not have exclusive possession)"). Just as it was in that case, plaintiff's Third Cause of Action should be dismissed.

## CONCLUSION

Even if Milliken had ever used PFAS at the mill at issue – which it did not – plaintiff's claims against Milliken fail for several reasons: They are not ripe because it is uncertain whether it will ever suffer the injury alleged. They are barred by the statute of limitations because it has been several years since Milliken owned or operated the mill. And even if the claims were valid despite those proscriptions, each claim would fail because they are not supported by South Carolina law. Milliken's motion should be granted and all claims against it dismissed.

Respectfully submitted, this 25th day of November, 2024.

{signature page follows}

16

ELECTRONICALLY FILED - 2024 Nov 25 4:57 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

s/Rachael L. Anna
Rachael L. Anna (SC Bar No. 100486)
Rita Bolt Barker (SC Bar No. 77600)
WYCHE, PA
200 East Broad Street, Suite 400
Greenville, SC 29601-3512
Tel: (864) 242-8200
Fax: (864) 235-8900
ranna@wyche.com
rbarker@wyche.com

-and-

Jameson B. Carroll (*pro hac vice* forthcoming)
Michael Weiss (*pro hac vice* forthcoming)
CARROLL & WEISS LLP
2870 Peachtree Rd NW, Suite 193
Atlanta, GA 30305-2918
Tel: (404) 514-5061
jcarroll@carrollweiss.com
mweiss@carrollweiss.com

**Attorneys for Defendant Milliken & Company**

ELECTRONICALLY FILED - 2024 Nov 25 4:57 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

17

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF GREENWOOD** | ) | **EIGHTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| GREENWOOD COMMISSIONERS OF PUBLIC WORKS, | ) | C.A. No. 2024-CP-24-000735 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONE MILLS RECEIVER, LLC; CRYOVAC, INC.; CRYOVAC, LLC; FIRSTSOURCE WORLDWIDE LLC; FITESA SIMPSONVILLE, INC.; MILLIKEN & COMPANY; OPPERMAN WEBBING, INC.; T&S BRASS AND BRONZE WORKS, INC.; UNICHEM SPECIALTY CHEMICALS, LLC, | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF CRYOVAC, INC., AND CRYOVAC, LLC'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendants Cryovac, Inc., and Cryovac, LLC (together, "Cryovac"), submit the instant memorandum of law in support of their motion to dismiss Plaintiff Greenwood Commissioners of Public Works' ("Plaintiff" or "Greenwood") claims against Cryovac in Plaintiff's Amended Complaint in their entirety.

**INTRODUCTION**

This lawsuit is premised on the possibility that, more than four years from now, Plaintiff may be required to comply with regulations limiting the amount of per- and polyfluoroalkyl substances ("PFAS") in the drinking water Plaintiff provides to its customers. Because the *current* levels of PFAS in Plaintiff's drinking water allegedly would not comply with the regulation's

1

future requirements, Plaintiff filed suit against Cryovac and other defendants with facilities located upstream of the body of water where Plaintiff draws water for its customers, Lake Greenwood, contending they are responsible for the PFAS in Plaintiff's water. No justiciable controversy exists, however, because the claims are not ripe. Plaintiff's claims are based on the potential threat of injury that *might* occur more than four years from now if the regulations remain in place unchanged and the water Plaintiff draws from Lake Greenwood *at that time* continues to contain levels of PFAS that exceed the regulatory limits. The threat of a potential future injury contingent on future events does not present a justiciable controversy, and the Amended Complaint must be dismissed.

Even if the claims were ripe (which they are not), the Amended Complaint nevertheless should be dismissed because it fails to state a claim. All four claims Plaintiff asserts – private and public nuisance, trespass, and negligence – require Plaintiff to establish that the PFAS that allegedly exists in Cryovac's wastewater is the same PFAS that Plaintiff allegedly found in its drinking water. But Plaintiff's own allegations rebut this essential premise. Plaintiff alleges PFAS is "pervasive" and "persisten[t] in the environment," and that certain PFAS remain in the environment from decades of use. It alleges PFAS leaches from the soil to groundwater and is highly mobile and water soluble, making surface water vulnerable to contamination. Plaintiff provides no factual allegations establishing how or why PFAS allegedly discharged from Cryovac's facilities is the same PFAS Plaintiff allegedly found in the water it drew from Lake Greenwood, as opposed to the "persistent" and "pervasive" PFAS that has allegedly existed in the environment for "decades" and leaches from soil to groundwater and, ultimately, surface water. Plaintiff's conclusory allegations fail to satisfy South Carolina's pleading requirements, and the Complaint should be dismissed.

2

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

The private and public nuisance claims also fail because, based on the facts alleged in the Amended Complaint, Cryovac did not have control over the instrumentality alleged to have cause the nuisance as required to state a claim. Plaintiff alleges Cryovac discharges wastewater containing PFAS to a separate wastewater treatment plant, the Lower Reedy WWTP. After the Lower Reedy WWTP treats the water, it discharges the water to the Reedy River upstream of Lake Greenwood. After the water reaches Lake Greenwood, Plaintiff voluntarily draws the water onto its property through its water intakes. The nuisance claims cannot stand, because Cryovac's wastewater was discharged to the Lower Reedy WWTP, and Cryovac had no control over the wastewater, Lower Reedy WWTP's treatment of the wastewater, or Lower Reedy WWTP's discharge of the wastewater downstream. The public nuisance claim also fails because Plaintiff failed to allege an injury that is separate and distinct from the alleged injury to the public – water allegedly contaminated with PFAS. Without a separate injury, Plaintiff cannot state a claim for public nuisance.

The trespass claim also fails for two reasons. First, trespass requires the unauthorized entry onto Plaintiff's land, but Plaintiff here voluntarily drew the allegedly contaminated water from Lake Greenwood onto its property through its water intakes. Second, trespass requires an invasion by a physical, tangible thing, and the South Carolina Supreme Court held in *Babb v. Lee County Landfill SC, LLC*, that molecules and microscopic particles do <u>not</u> constitute tangible items for purposes of a trespass claim. No claim for trespass can stand.

Lastly, Plaintiff's negligence claim fails because Plaintiff does not and cannot plead that Cryovac owes Plaintiff a duty of care. The Lower Reedy WWTP has control over the wastewater when it is discharged to the Reedy River – not Cryovac. Under well-established law, a party does not owe a duty of care to control a third party or warn another of a third-party's conduct. As such,

3

the negligence claim fails.

For these reasons and as more fully set forth below, Cryovac respectfully requests that the Court dismiss the Amended Complaint with prejudice.

**FACTUAL ALLEGATIONS IN AMENDED COMPLAINT**

Plaintiff alleges that it owns property in Greenwood County on Lake Greenwood where it operates the W.R. Wise Water Treatment Facility, a surface water treatment plant ("SWTP"). (Am. Compl. ¶ 3). Plaintiff alleges that it provides potable water to residents of Greenwood and Abbeville Counites. (*Id.*). Plaintiff "operates water intakes on Lake Greenwood, from which it draws raw water for treatment in the SWTP before distribution to its customers." (*Id.* ¶ 3). Plaintiff alleges that the water it draws from Lake Greenwood contains PFAS. (*Id.* ¶ 2).

Plaintiff alleges that PFAS is "pervasive in industrial, commercial, and consumer products" and "persisten[t] in the environment." (*Id.* ¶ 25). It contends that, "[d]ue to their persistent nature, PFOA and PFOS remain in the environment from decades of legacy industrial use." (*Id.* ¶ 31). The Amended Complaint further alleges that PFAS are "colloquially termed 'forever chemicals,' as terminal PFAS have no known environmental breakdown mechanism . . . ." (*Id.* ¶ 25). Plaintiff lays out the alleged reach of PFAS, contending "PFAS leach from soil to groundwater and are highly mobile and water soluble, making groundwater and surface water particularly vulnerable to contamination." (*Id.* ¶ 29).

Plaintiff alleges that the defendants operate facilities upstream from Lake Greenwood and are responsible for PFAS found in the water Plaintiff draws from Lake Greenwood. (*Id.* ¶ 4). Plaintiff concedes that the defendants do not discharge wastewater directly onto Plaintiff's property or even into Lake Greenwood. (*Id.*). Rather, Plaintiff alleges that the defendants discharge wastewater to "certain wastewater treatment plants ('WWTPs') located upstream of

4

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Plaintiff's water intakes." (*Id.* ¶ 4). With respect to Cryovac, Plaintiff alleges that Cryovac uses products at its upstream facility that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals, and that Cryovac discharges industrial wastewater contaminated with PFAS to the Lower Reedy WWTP. (*Id.*). Plaintiff alleges that the wastewater treatment processes at the Lower Reedy WWTP cannot adequately remove the PFAS that is allegedly present in the water entering the WWTP. (*Id.* ¶¶ 5, 17). After the wastewater is treated by the Lower Reedy WWTP (albeit insufficiently, according to Plaintiff), the Lower Reedy WWTP discharges the water into the Reedy River upstream of Lake Greenwood. (*Id.*). After the treated wastewater reaches Lake Greenwood, Plaintiff draws the water onto its property through its water intakes. (*Id.* ¶¶ 3, 4, 17, 50).

Plaintiff alleges that the water it draws from Lake Greenwood contains levels of PFAS that exceed the maximum contaminant levels ("MCL") set forth in the EPA's newly enacted regulations for drinking water in the National Primary Drinking Water Regulation ("NPDWR"). (*Id.* ¶¶ 53-54). The NPDWR establishes MCLs for six types of PFAS in drinking water: PFOA, PFOS, PFHxS, PFNA, HFPO-DA and PFAS mixtures containing at least two or more of PFHxS, PFNA, HFPO-DA, and PFBS. *See* 40 CFR 141.900, *et seq.* Compliance with the MCLs is not required until April 26, 2029. 40 CFR 141.900(b)(4). (*See also* Am. Compl. ¶ 44).

Based on the foregoing allegations, Plaintiff asserts the following claims against Cryovac: (1) private nuisance, (2) public nuisance, (3) trespass, and (4) negligence, gross negligence, and/or recklessness.

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

## ARGUMENT

**I.      Plaintiff's Amended Complaint must be dismissed because Plaintiff's claims are not ripe.**

A court is "obligated to inquire in every action whether a justiciable controversy exists in a matter." *In the Matter of Luckabaugh*, 351 S.C. 122, 146 (2002). A court is empowered to decide only a "real and substantial controversy which is ripe and appropriate for judicial determination, as distinguished from a contingent, hypothetical or abstract dispute." *Colleton Cnty. Taxpayers Ass'n v. Sch. Dist. of Colleton Cnty.*, 371 S.C. 224, 242 (2006) (quoting *Pee Dee Elec. Co–Op, Inc. v. Carolina Power & Light Co.,* 279 S.C. 64, 66 (1983)). The alleged injury must be "actual or imminent." *Sea Pines Ass'n for Prot. of Wildlife, Inc. v. S.C. Dep't of Nat. Res.*, 345 S.C. 594, 602 (2001). "It is not enough that a threat of possible injury currently exists; the mere threat of potential injury is too contingent or remote to support present adjudication." *Waters v. S.C. Land Res. Conservation Comm'n*, 321 S.C. 219, 228 (1996). In other words, "[a]n argument is not ripe if it is contingent on future events." *Encore Tech. Grp., LLC v. Trask*, 436 S.C. 289, 309 (Ct. App. 2021). Additionally, an issue that is "hypothetical, or abstract" is not ripe for review. *Colleton Cnty. Taxpayers Ass'n*, 371 S.C. at 242. *See also Waters*, 321 S.C. at 227 ("A justiciable controversy is a real and substantial controversy which is ripe and appropriate for judicial determination, as distinguished from a contingent, hypothetical or abstract dispute.").

Here, Plaintiff's claims are not ripe. As Plaintiff recognizes, the EPA is not requiring compliance with the PFAS MCLs until *2029*. (*Id.* ¶¶ 38, 42, 44). Plaintiff does not allege that it will be unable to comply with regulations *over four years* from now or that it has or is incurring any costs or expenses due to the alleged contamination. (*Id.* ¶ 54). Instead, Plaintiff demands that the Cryovac and the other defendants fund the *future* acquisition, installation, and operation of wastewater treatment technology that can remove the PFAS from Plaintiff's water so that Plaintiff

6

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

can comply with the EPA's regulations *in the future.* (*See* Am. Compl. at Prayer for Relief). Plaintiff's inability to comply with the MCLs over four years from now is contingent on multiple factors, none of which are certain to occur. In fact, the validity of the MCLs themselves being challenged by multiple parties in the Court of Appeals for the D.C. Circuit, and, depending on the outcome of these and any other suits that may be filed (and the impact of the incoming administration), Plaintiff may never need to comply with the MCLs or the MCLs may be modified such that Plaintiff will be able to comply without any changes to its treatment facility. *See Am. Water Works Assoc. v. U.S. EPA*, Case No. 24-1188; *Nat'l Assoc. of Manufacturers, et al. v. U.S. EPA*, Case No. 24-1191; *The Chemours Company FC, LLC v. U.S. EPA*, Case No. 24-1192.

At best, Plaintiff has alleged a potential threat of injury more than four years in the future. That is not enough. *See Waters*, 321 S.C. at 228 ("It is not enough that a threat of possible injury currently exists; the mere threat of potential injury is too contingent or remote to support present adjudication."). Because Plaintiff's claims are not ripe, Cryovac respectfully requests that the Court dismiss Plaintiff's Amended Complaint.

## II.    The Amended Complaint also fails to state a claim for relief.

In addition to failing for lack of ripeness, Plaintiff's claims fail to state a claim and should be dismissed pursuant to Rule 12(b)(6). A defendant may move to dismiss a complaint for "failure to state facts sufficient to constitute a cause of action." Rule 12(b)(6), SCRCP. "That standard requires the Court to construe the complaint in a light most favorable to the nonmovant and determine if the facts alleged and the inferences reasonably deducible from the pleadings would entitle the plaintiff to relief on any theory of the case." *Rydde v. Morris*, 675 S.E.2d 431, 433 (2009) (internal quotation marks omitted). The complaint must identify "the facts showing that the pleader is entitled to relief," Rule 8(a)(2), SCRCP, and mere conclusory allegations are

7

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

insufficient.  *See Jones v. Gilstrap*, 343 S.E.2d 646, 648 (Ct. App. 1986).

As set forth below, Plaintiff's Amended Complaint fails to state a claim for relief and should be dismissed.

### A.     Plaintiff does not allege sufficient facts to establish a fundamental element of its claims: that PFAS allegedly discharged by Cryovac is in the water Plaintiff draws from Lake Greenwood.

The fundamental premise of Plaintiff's Amended Complaint is that PFAS allegedly discharged by Cryovac (and the other defendants) appears in the water Plaintiff draws in through its water intake system.  (Am. Compl. ¶ 5).  Thus, for each and every claim, Plaintiff must allege sufficient facts to establish this basic point: that the PFAS allegedly discharged by Cryovac is the same PFAS that is allegedly present in the water Plaintiff draws from Lake Greenwood.  Plaintiff, however, has not pled sufficient facts to establish this fundamental point.

Plaintiff alleges that PFAS is ubiquitous and environmentally persistent.  It alleges that PFAS is "pervasive in industrial, commercial, and consumer products" and "persisten[t] in the environment."  (Am. Compl. ¶ 25).  It contends that, "[d]ue to their persistent nature, PFOA and PFOS remain in the environment from decades of legacy industrial use."  (*Id.* ¶ 31).  The Amended Complaint further alleges that PFAS are "colloquially termed 'forever chemicals,' as terminal PFAS have no known environmental breakdown mechanism . . . ."  (*Id.* ¶ 25).  Plaintiff lays out the alleged reach of PFAS, contending "PFAS leach from soil to groundwater and are highly mobile and water soluble, making groundwater and surface water particularly vulnerable to contamination."  (*Id.* ¶ 29).

At the same time, Plaintiff provides no factual allegations establishing how or why PFAS allegedly discharged from Cryovac's facilities is the same PFAS Plaintiff allegedly found in the water it drew from Lake Greenwood, as opposed to the "persistent" and "pervasive" PFAS that

8

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

has allegedly existed in the environment for "decades" and leaches from soil to groundwater and, ultimately, surface water.  (*See generally id.*).  Plaintiff's own allegations show that the Amended Complaint contains unsupported legal conclusions that Cryovac is responsible for the PFAS in the water Plaintiff draws from Lake Greenwood.  Plaintiff simply has not pled enough to state a claim.

Instead, Plaintiff makes the same generic and conclusory allegation against each defendant: that the defendant used or uses "products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals" at its facility and then "discharges industrial wastewater contaminated with products that contain or degrade to these PFAS" to an upstream WWTP.  (*Id.* ¶¶ 17-23).  Plaintiff alleges that the rivers where the defendants allegedly discharge wastewater-containing PFAS "flow southeast through Greenville, South Carolina and, from there, feed Lake Greenwood roughly *35 miles downstream*."  (*Id.* ¶ 45 (emphasis added)).  Plaintiff makes no factual allegations to plausibly contend that – even assuming it to be true that Cryovac discharged PFAS in its wastewater – the PFAS Plaintiff found at its site is the PFAS discharged by Cryovac.[1] In fact, the allegations in the Amended Complaint show that there is no basis for the conclusory leap made by Plaintiff.

Without more, Plaintiff fails to meet even the minimal pleading requirements, and the Amended Complaint should be dismissed.

---

[1] Plaintiff's Amended Complaint also ignores the multitude of other potential sources for the PFAS in the water drawn from Lake Greenwood, including **rainwater**.  (*See* "PFAS 'forever chemicals' found in Florida rain, study says," *South Florida Sun Sentinel*, Nov. 11, 2024, *available at* https://www.msn.com/en-us/news/us/pfas-forever-chemicals-found-in-florida-rain-study-says/ar-AA1tUCIC?apiversion=v2&noservercache=1&domshim=1&renderwebcomponents=1&wcseo=1&batchservertelemetry=1&noservertelemetry=1 (reporting on study finding 21 types of PFAS in South Florida's rainwater and noting that "[s]ometimes the specific PFAS compounds matched local sources, but in the dry season (October through May), there was a spike in PFAS that likely came from distant regions of the U.S.").

**B.     Plaintiff's claims for private and public nuisance fail as a matter of law.**

**1.  Both nuisance claims fail because Cryovac did not have control over the instrumentality alleged to have caused the nuisance.**

Under South Carolina law, an action for private or public nuisance requires a plaintiff to demonstrate that the defendant had control over the instrumentality alleged to have caused the nuisance "at the time of the alleged nuisance." *See, e.g.*, *Clark v. Greenville Cnty.*, 313 S.C. 205, 210 (1993) (holding that "one who has no control over property at the time of the alleged nuisance cannot be held liable therefor"); *FOC Lawshe Ltd. P'ship v. Int'l Paper Co.*, 574 S.E.2d 228, 231 (Ct. App. 2002) (same).  Conversely, "one who has no control over property at the time of the alleged nuisance cannot be held liable therefor."  *Clark*, 313 S.C. at 210; *see also id.* at 210 (a nuisance is "that class of wrongs that arises from the unreasonable, unwarrantable, or unlawful use by a person *of his own property, personal or real*" (emphasis added)).

Based on the allegations in the Amended Complaint, Cryovac did not have control over the allegedly contaminated water at the time the alleged nuisance occurred.  According to Plaintiff, Cryovac's wastewater is discharged first to the Lower Reedy WWTP.  (Am. Compl. ¶ 17).  Then, after the wastewater is treated by the Lower Reedy WWTP, the Lower Reedy WWTP – *not* Cryovac – discharges the water into the Reedy River.  (*Id.*).  At some point after the treated wastewater reaches Lake Greenwood, Plaintiff draws the water onto its property through its water intakes.  (*Id.* ¶¶ 3, 4, 17, 50).  Plaintiff's claims, to the extent it has any, should be directed to the Lower Reedy WWTP and not Cryovac, and the private and public nuisance claims against Cryovac should be dismissed.

**2.  The public nuisance claim also fails because Plaintiff's alleged injury is no different from that suffered by the public.**

A public nuisance can be asserted typically only by the State to remedy harms suffered by the public generally.  *Carnival Corp. v. Historic Ansonborough Neighborhood Ass'n*, 407 S.C. 67,

10

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

78 (2014). A private citizen generally cannot bring a suit to abate a public nuisance and must rely on the State to assert the claim. *Id.* The one exception to this rule allows a private entity to bring a suit for a public nuisance only if it suffered a "special injury." *Id.* The special injury must be an "individual or specific damage in addition to that suffered by the public," *id.*, and "is satisfied only by injury to the individual's real or personal property." *Overcash v. S.C. Elec. & Gas Co.*, 364 S.C. 569, 575 (2005).

Plaintiff pleads no facts alleging that it has suffered any unique injury that is not suffered by the public at large, and it does not allege injury to its own real or personal property. Plaintiff alleges that its special injury is "the inability to provide potable water to customers without concentrations of PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals deemed unsafe by EPA . . . ." (Am. Compl. ¶ 73). This alleged injury is no different than the injury allegedly suffered by the public at large – the alleged contamination of water with PFAS. (*See id.* ¶ 53). Also, although Plaintiff alleges that it has "lost use of its property," it does not identify an injury to its own personal or real property. (*Id.*). As such, Plaintiff's claim for public nuisance fails as a matter of law and should be dismissed.

> **C.    Plaintiff cannot state a claim for trespass as a matter of law.**
>
> **1.  The trespass claim fails because Plaintiff voluntarily caused the allegedly contaminated water to enter its property.**

"The essence of trespass is the unauthorized entry onto the land of another." *Ravan v. Greenville County*, 315 S.C. 447, 464 (Ct. App. 1993). Thus, to state a claim for trespass, Plaintiff must plead facts establishing "an invasion (a) which interfered with the right of exclusive possession of the land, and (b) which was a direct result of some act committed by the defendant." *Graham v. Town of Latta*, 417 S.C. 164, 192-93 (Ct. App. 2016) (internal quotation omitted). It requires an "intentional invasion" of the plaintiff's property by the defendant: "[T]here must be an

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

affirmative act, the invasion of the land must be intentional, and the harm caused must be the direct result of that invasion." *Snow v. City of Columbia*, 305 S.C. 544, 553 (Ct. App. 1991).

Here, Plaintiff alleges that it voluntarily draws the allegedly contaminated water onto its property through its water intakes. (Am. Compl. ¶¶ 3, 4, 17, 50). *Plaintiff itself authorized the entry of the water onto its property*. (*Id.* ¶¶ 3, 4, 17, 50). Plaintiff also does not allege that Cryovac discharges its wastewater directly onto Plaintiff's property. (*Id.* ¶ 17). The Amended Complaint is clear that Cryovac's wastewater is discharged first to the Lower Reedy WWTP. (*Id.* ¶ 17). Then, after the wastewater is treated by the Lower Reedy WWTP, it discharges into the Reedy River upstream of Lake Greenwood. (*Id.*). After the treated wastewater reaches Lake Greenwood, **Plaintiff** draws the water onto its property through its water intakes. (Id. ¶¶ 3, 4, 17, 50). Without Plaintiff's own actions causing the water to enter its property, the water would not enter Plaintiff's property. There is no "unauthorized entry" onto Plaintiff's land and, thus, there is no trespass, and the claim should be dismissed. *Ravan*, 315 S.C. at 464.

### 2. The trespass claim also fails because there has been no invasion by a physical, tangible thing.

In South Carolina, there must be "an invasion by a physical, tangible thing for a trespass to exist." *Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 145 (2013). To be sufficiently "tangible," the invasion must "interfere with the right to exclusive possession" and not "merely interfere with the right to use and enjoyment." *Id.* at 151. In *Babb*, the South Carolina Supreme Court adopted the "dimensional test" for determining whether a trespass has occurred. *Id.* Pursuant to the dimensional test, "a trespass only exists where the invasion of land occurs through a physical, tangible object." *Id.* at 145. In reaching this conclusion, our Supreme Court rejected the line of cases that refused to apply the dimensional test and instead permitted recovery based on the nature of the interest harmed. *Id.* at 146. The seminal case, rejected by *Babb*, that eschewed

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

the dimensional test was *Martin v. Reynolds Metals Co.*, 342 P.2d 790 (Or. 1959). In *Martin*, the plaintiffs asserted a trespass claim against an aluminum smelter for fluoride gases and microscopic particulates allegedly emitted by the smelter that traveled through the air and settled on the plaintiffs' property. *Babb*, 405 S.C. at 146 (citing *Martin*, 342 P.2d at 791). The court in *Martin* dispensed with the dimensional test and held that "the intrusion of fluoride was a trespass despite its intangible nature," and, "while the fluoride particles were individually minute and invisible, each particle that entered the plaintiffs' property was a physical intrusion, and but for their size, would undoubtedly give rise to a trespass action." *Id.* at 147 (citing *Martin*, 342 P.2d at 791). *Babb* also rejected the decision in *Borland v. Sanders Lead Co., Inc.*, 369 So.2d 523 (Ala.1979), where the Alabama court refused to apply the dimensional test and found a trespass was pled "where the plaintiffs sued a lead smelter for lead and sulfoxide emissions they alleged settled on and damaged their property." *Babb*, 405 S.C. at 478.

Here, the PFAS molecules in the water that Plaintiff draws onto its property are not tangible, physical objects as required to state a claim for trespass under the dimensional test. *See Babb*, 405 S.C. at 478. They are chemical molecules measured in parts per trillion. (Am. Compl. ¶¶ 30-40). Plaintiff does not allege that PFAS can be seen or felt in the water it pulls onto its property; rather, Plaintiff only allegedly detected PFAS in its water after performing tests on samples of water. (*Id.* ¶¶ 47-51). PFAS is the equivalent of the fluoride particles in *Martin* and the lead and sulfur emissions in *Borland*, neither of which are tangible, physical objects capable of invading property as necessary to state a claim for trespass under the dimensional rule mandated by *Babb*. As such, Plaintiff's claim for trespass fails as a matter of law and must be dismissed.

**D.    Plaintiff's negligence claim fails because Cryovac does not owe a duty to Plaintiff.**

"An essential element in a cause of action for negligence is the existence of a legal

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

duty of care owed by the defendant to the plaintiff." *Huggins v. Citibank, N.A.*, 355 S.C. 329, 332 (2003). "If there is no duty, then the defendant in a negligence action is entitled to a judgment as a matter of law." *Madison ex Rel. v. Babcock*, 371 S.C. 123, 135-36 (2006). Under South Carolina law, "there is no general duty to control the conduct of another or to warn a third person or potential victim of danger." *Id.* at 136. Additionally, one who does not have control over the use of property does not have a duty of care not to harm others by its use. *Miller v. City of Camden*, 329 S.C. 310, 314 (1997).

Here, the facts Plaintiff alleges do not establish that Cryovac owes a duty of care to Plaintiff. As set forth above, Plaintiff alleges that Cryovac discharged its wastewater to the Lower Reedy WWTP. (Am. Compl. ¶ 17). Lower Reedy WWTP then has control over the wastewater and treats the water before discharging it further downstream to the Reedy River. (*Id.*). As with Plaintiff's nuisance claim, Plaintiff's negligence claim, to the extent it has one, should be directed to the Lower Reedy WWTP and not Cryovac, and the negligence claim against Cryovac should be dismissed.

## CONCLUSION

For the foregoing reasons, Cryovac respectfully requests that the Court grant their motion to dismiss Plaintiff's Amended Complaint with prejudice.

K&L GATES, LLP

*/s/ Jennifer H. Thiem*
Jennifer H. Thiem (SC Bar #73739)
134 Meeting Street, Suite 500
Charleston, SC 29401
Telephone: 843.579.5600
Facsimile: 843.579.5601
jennifer.thiem@klgates.com

*Attorneys for Cryovac, Inc. and Cryovac, LLC*

14

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF GREENWOOD** | ) | **EIGHTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| GREENWOOD COMMISSIONERS OF PUBLIC WORKS, | ) | C.A. No. 2024-CP-24-000735 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONE MILLS RECEIVER, LLC; CRYOVAC, INC.; CRYOVAC, LLC; FIRSTSOURCE WORLDWIDE LLC; FITESA SIMPSONVILLE, INC.; MILLIKEN & COMPANY; OPPERMAN WEBBING, INC.; T&S BRASS AND BRONZE WORKS, INC.; UNICHEM SPECIALTY CHEMICALS, LLC, | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## CRYOVAC, INC., AND CRYOVAC, LLC'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT

Defendants Cryovac, Inc., and Cryovac, LLC (together, "Cryovac" or "Defendants"), by their undersigned attorneys and pursuant to Rules 12(b)(6) and 12(b)(1) of the South Carolina Rules of Civil Procedure, respectfully submit this Motion to Dismiss Plaintiff's Amended Complaint. This Court should dismiss Plaintiff's Amended Complaint with prejudice for the reasons set forth in the Memorandum of Law in Support of Defendants' Motion to Dismiss Plaintiff's Amended Complaint, filed together with this Motion.

*Signature Block on Following Page.*

1

Respectfully submitted,

**K&L GATES, LLP**

*/s/ Jennifer H. Thiem*
Jennifer H. Thiem (SC Bar #73739)
134 Meeting Street, Suite 500
Charleston, SC 29401
Telephone:  843.579.5600
Facsimile:  843.579.5601
jennifer.thiem@klgates.com

*Attorneys for Cryovac, Inc. and Cryovac, LLC*

Dated: December 9, 2024

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

2

ELECTRONICALLY FILED - 2024 Dec 11 12:33 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF GREENWOOD** | ) | **EIGHTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| GREENWOOD COMMISSIONERS OF PUBLIC WORKS, | ) | C.A. No. 2024-CP-24-000735 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONE MILLS RECEIVER, LLC; CRYOVAC, INC.; CRYOVAC, LLC; FIRSTSOURCE WORLDWIDE LLC; FITESA SIMPSONVILLE, INC.; MILLIKEN & COMPANY; OPPERMAN WEBBING, INC.; T&S BRASS AND BRONZE WORKS, INC.; UNICHEM SPECIALTY CHEMICALS, LLC, | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## DEFENDANTS CRYOVAC, INC. AND CRYOVAC, LLC'S MOTION TO JOIN

Defendants Cryovac, Inc. and Cryovac, LLC (the "Cryovac Defendants") hereby move to join in all arguments and requests for relief set forth in Opperman Webbing, Inc.'s Motion for Protective Order to Stay Discovery Pending the Resolution of Its Motion to Dismiss Plaintiff's Amended Complaint ("Opperman's Motion") and Defendant T&S Brass and Bronze Works, Inc.'s Motion for Protective Order to Stay Discovery Pending Resolution of Motion to Dismiss ("T&S's Motion" and together with Opperman's Motion, "Pending Motions for Protective Order"). The Cryovac Defendants have reviewed the Pending Motions for Protective Order and determined that they would raise the same arguments as T&S's Motion and Opperman's Motion. In the interests of judicial economy, and to avoid redundant briefing on the issues before the Court in the Pending Motions for Protective Order, the Cryovac Defendants hereby adopt and join the Pending Motions

ELECTRONICALLY FILED - 2024 Dec 11 12:33 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

for Protective Order as if filed on behalf of the Cryovac Defendants. Accordingly, the Cryovac Defendants respectfully request that this Court consider the Pending Motions for Protective Order as if filed by the Cryovac Defendants and enter an Order in their favor consistent with the relief sought therein.

## CERTIFICATION

The undersigned certifies that, pursuant to Rule 11 of the South Carolina Rules of Civil Procedure, she has attempted in good faith in writing to resolve the matters contained in this Motion, and that to date such attempts have been unsuccessful.

**K&L GATES, LLP**

*/s/ Jennifer H. Thiem*
Jennifer H. Thiem (SC Bar #73739)
134 Meeting Street, Suite 500
Charleston, SC 29401
Telephone:  843.579.5600
Facsimile:  843.579.5601
jennifer.thiem@klgates.com

*Attorneys for Cryovac, Inc. and Cryovac, LLC*

ELECTRONICALLY FILED - 2024 Dec 11 5:01 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735



| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF GREENWOOD | ) | EIGHTH JUDICIAL CIRCUIT |
| | ) | |
| | ) | |
| GREENWOOD COMMISSIONERS OF PUBLIC WORKS, | ) | C.A. No.: 2024-CP-24-00735 |
| | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONE MILLS RECEIVER, LLC; CRYOVAC, INC.; CRYOVAC, LLC; FIRSTSOURCE WORLDWIDE, LLC; FITESA SIMPSONVILLE, INC.; MILLIKEN & COMPANY; OPPERMANN WEBBING, INC.; T&S BRASS AND BRONZE WORKS, INC.; UNICHEM SPECIALTY CHEMICALS, LLC, | ) ) ) ) ) ) ) ) ) ) | DEFENDANT FIRST SOURCE WORLDWIDE, LLC'S MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendant First Source Worldwide, LLC ("First Source"), by and through its undersigned counsel, and pursuant to Rules 8(a), 12(b)(1), and 12(b)(6) of the South Carolina Rules of Civil Procedure, hereby submits its Memorandum of Law in Support of its Motion to Dismiss all claims asserted against First Source in the Amended Complaint filed by Plaintiff Greenwood Commissioners of Public Works (the "Plaintiff"), respectfully stating as follows:

## I.    INTRODUCTION

Plaintiff's Amended Complaint (the "Complaint") should be dismissed for multiple reasons. At the outset, this dispute is not ripe for judicial review. Rather, the Plaintiff, which is a water utility that "provides potable water to residents of Greenwood and Abbeville Counties," bases its claims on newly-promulgated drinking water standards for certain per- and polyfluoroalkyl substances ("PFAS") that do not go into effect (and that Plaintiff does not have to comply with) until 2029. Moreover, even assuming these standards go into effect in 2029 as

56029023 v1

ELECTRONICALLY FILED - 2024 Dec 11 5:01 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

currently written (they are at present being challenged in federal court on multiple grounds), it is unknown what measures, if any, Plaintiff will ultimately have to undertake in order to meet them. By contrast, what is clear under the Complaint is that the new rule includes a three (3) year initial testing phase that has only just begun, and that Plaintiff does not allege that it has incurred any costs whatsoever (or taken any action at all for that matter) as a result of the new rule or the allegedly PFAS-contaminated water that the rule concerns. Instead, Plaintiff's Complaint seeks to recover potential *future* expenses that it *might* incur in connection with its acquisition, installation, and operation of a new water treatment system, which are inherently conjectural and contingent on what may or may not occur over the next several years. Accordingly, Plaintiff's case is not ripe for adjudication and should be dismissed for this reason alone.

In addition to the premature nature of Plaintiff's claims, Plaintiff's claims against First Source also fail for other reasons. For one thing, Plaintiff's claims against First Source are entirely misdirected, as the alleged harm that Plaintiff ascribes to First Source arises from the alleged discharge of PFAS-contaminated wastewater by "certain wastewater treatment plants ('WWTPs') located upstream of Plaintiff's water intakes" on Lake Greenwood. These WWTPs include the Lower Reedy WWTP, a third party to this litigation. According to the Complaint, First Source — a customer of the Lower Reedy WWTP — disposes of its wastewater by delivering it to the Lower Reedy WWTP for treatment, which the Lower Reedy WWTP thereafter "discharges into the Reedy River upstream of Lake Greenwood and Plaintiff's water intakes." However, First Source does not control (or have any ability to control) the operations of the Lower Reedy WWTP, let alone the specific discharges of allegedly contaminated wastewater into the Reedy River on which Plaintiff bases its claims. South Carolina law simply does not impose liability under such circumstances, and Plaintiff's claims must again be dismissed.

56029023 v1

2

Finally, Plaintiff's claims against First Source should also be dismissed for several additional reasons. In particular, Plaintiff's private nuisance claim fails because the alleged contamination of the Reedy River and Lake Greenwood affects the general public, which as a matter of law does not support a claim for private nuisance. Plaintiff's trespass claim likewise fails, as PFAS molecules constitute "intangible" matter that only enter Plaintiff's property as a result of its own voluntary actions. Lastly, Plaintiff's negligence claim fails as well, as First Source does not owe a legal duty to the Plaintiff, nor does Plaintiff allege that it has incurred any physical injury or property damage because of such negligence.

For all of these reasons, and as shown in greater detail below, Plaintiff's claims against First Source fail as a matter of law, and should therefore be dismissed.

## II.     ARGUMENT AND CITATION OF AUTHORITY

### A.     Plaintiff's claims are not ripe for adjudication and should be dismissed.

"A threshold inquiry for any court is a determination of justiciability, i.e., whether the litigation presents an active case or controversy." *Peoples Fed. Sav. & Loan Ass'n of S.C. v. Res. Plan. Corp.*, 358 S.C. 460, 477, 596 S.E.2d 51, 60 (2004) (quoting *Lennon v. S.C. Coastal Council,* 330 S.C. 414, 415, 498 S.E.2d 906, 906 (Ct. App. 1998)). Justiciability encompasses several doctrines, including an assessment of whether the plaintiff's claims are ripe for adjudication. *See James v. Anne's Inc.*, 390 S.C. 188, 193, 701 S.E.2d 730, 732 (2010) (citing *Jackson v. State*, 331 S.C. 486, 490 n.2, 489 S.E.2d 915, 917 n.2 (1997)). Where, as here, a claim presents only "a contingent, hypothetical or abstract dispute," the claim is not ripe for adjudication and must be dismissed. *See Pee Dee Elec. Co-op., Inc. v. Carolina Power & Light Co.*, 279 S.C. 64, 66, 301 S.E.2d 761, 762 (1983); *see also Peoples Fed. Sav. & Loan Ass'n of S.C.*, 358 S.C. at 477, 596 S.E.2d at 60 ("A justiciable controversy is a real and substantial controversy which is ripe and appropriate for judicial determination, as distinguished from a contingent, hypothetical or abstract

ELECTRONICALLY FILED - 2024 Dec 11 5:01 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Dec 11 5:01 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

dispute.") (citation omitted).[1]  *See also Carolina Care Plan, Inc. v. United HealthCare Servs., Inc.*, 361 S.C. 544, 557, 606 S.E.2d 752, 759 (2004) (affirming dismissal of complaint where claims were contingent in nature and therefore not yet ripe for adjudication).[2]

In this case, Plaintiff's allegations demonstrate that it has not yet suffered any legally cognizable injury due to PFAS, and in fact that it might never suffer such injury.  Indeed, while the U.S. Environmental Protection Agency's PFAS drinking water standards ("maximum contaminant levels" or "MCLs") became final in April 2024, (Compl. ¶ 42), it has not yet been determined how, if at all, the rule will impact the Plaintiff or its ability to provide acceptable drinking water.  Notably, the Plaintiff will not be required to comply with the MCLs until April 26, 2029.  (*Id.* ¶ 44).  Prior to the MCL compliance date, there is a three-year "initial monitoring" period that runs through April 26, 2027.  (*Id.*); *see also* PFAS National Primary Drinking Water Regulation, 89 Fed. Reg. 32,532, 32,633 (Apr. 26, 2024) (codified at 40 CFR Parts 141 and 142).

Plaintiff does not allege any facts demonstrating that, at this time, it is doing anything other than waiting to see if and when it will have to take action to comply with the 2029 MCLs.  In fact, Plaintiff has not alleged that it has incurred any costs or expenses whatsoever due to the presence

---

[1] *See also Wild Virginia v. Council on Env't Quality*, 56 F.4th 281, 294 (4th Cir. 2022) ("A claim should be dismissed as unripe if the plaintiff has not yet suffered injury and any future impact 'remains wholly speculative.'") (citation omitted); *South Carolina v. United States*, 912 F.3d 720, 730 (4th Cir. 2019) ("[A] plaintiff's claim is not ripe for judicial review 'if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all.'" (quoting *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 270 (4th Cir. 2013))).

[2] *See also Kiawah Prop. Owners Grp. v. Pub. Serv. Comm'n of S.C.*, 357 S.C. 232, 242-43, 593 S.E.2d 148, 154 (2004) (finding "it is patent there is no present, justiciable controversy" where plaintiffs "assert only that the loan provisions may have some negative impact in the future" on water utility's customers, because "'a contingent, hypothetical or abstract dispute' . . . is simply insufficient to warrant this Court's review"); *McClanahan v. Richland Cnty. Council*, 350 S.C. 433, 441, 567 S.E.2d 240, 244 (2002) (agreeing property owner's claim based on adoption of land use plan that had not yet been implemented "is not justiciable because it is not ripe for review"); *see also, e.g.*, *Tracy v. Tracy*, 384 S.C. 91, 100, 682 S.E.2d 14, 18 (Ct. App. 2009) (determining case not ripe for review where appellant not yet exposed to liability due to appellee's conduct).

of PFAS in its source water. Rather, it is seeking "expenses associated with *future* acquisition, installation, and operation of required treatment technologies." (*See* Compl. ¶ 73 (emphasis added)). Nothing in the Complaint indicates that Plaintiff's operations have changed at all from the period before the MCLs were finalized in April or as a result of PFAS in Lake Greenwood.

This status quo may continue indefinitely. Plaintiff's testing during the initial monitoring period may indicate that Plaintiff will not be required to make any capital investments to remain in compliance with applicable regulations. It is further uncertain whether the MCLs will remain valid law by the time they would actually apply to Plaintiff. For instance, in June 2024, three sets of plaintiffs filed challenges to the EPA's PFAS rule in actions currently pending before the D.C. Circuit Court of Appeals. *See* Petition for Review, *The Chemours Co. v. EPA*, No. 24-1192 (D.C. Cir. June 10, 2024), *available at* https://www.epa.gov/system/files/documents/2024-06/chemours-v.-epa_d.c.cir_.pdf; Petition for Review, *Nat'l Assoc. of Mfrs. v. EPA*, No. 24-1191 (D.C. Cir. June 10, 2024), *available at* https://www.fbm.com/content/uploads/2024/06/24-1191_Documents.pdf; Petition for Review, *Am. Water Works Assoc. v. EPA*, No. 24-1188 (D.C. Cir. June 7, 2024), *available at* https://www.awwa.org/Portals/0/AWWA/Government/062124Insiders/AWWA-v-EPA-No-1188-DC-Cir-Filed-Petition.pdf. The changes to the MCLs that could result from these cases (or for other reasons) preclude Plaintiff's claims from being ripe at this time. *See Jowers v. S.C. Dep't of Health & Env't Control*, 423 S.C. 343, 364, 815 S.E.2d 446, 457 (2018) (finding action was not ripe because the plaintiff's claim "depends on there being no changes to the law regarding surface water withdrawals"). Because of these numerous contingencies and the resulting uncertainty, the facts alleged by Plaintiff demonstrate, at most, "the mere threat of potential injury," which is "too contingent or remote to support present adjudication." *Waters v. S.C. Land Res. Conservation Comm'n*, 321 S.C. 219, 228, 467 S.E.2d 913, 918 (1996) (quoting *Thrifty Rent-*

ELECTRONICALLY FILED - 2024 Dec 11 5:01 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Dec 11 5:01 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

*A-Car Sys., Inc. v. Thrifty Auto Sales of Charleston, Inc.*, 849 F. Supp. 1083, 1086 (D.S.C. 1991)).

Thus, for this reason alone, Plaintiff's claims are not ripe for adjudication and should be dismissed.

### B.    **Plaintiff's individual claims against First Source each fail as a matter of law.**

In addition to Plaintiff's failure to assert a justiciable dispute that is ripe for adjudication, each of Plaintiff's claims against First Source are legally deficient, and should again be dismissed.

#### 1.    *Plaintiff cannot state a valid claim for nuisance against First Source because First Source does not control the source of the alleged nuisance.*

Pursuant to black letter South Carolina law, First Source cannot be held liable to the Plaintiff based upon its alleged disposal of industrial wastewater at the Lower Reedy WWTP. Rather, nuisance law is primarily a mechanism for resolving "conflicting interests of landowners," and to effect a "balancing of the[ir] correlative rights." *See DeBorde v. St. Michael & All Angels Episcopal Church*, 272 S.C. 490, 502, 252 S.E.2d 876, 882 (1979); *Winget v. Winn-Dixie Stores, Inc.*, 242 S.C. 152, 159, 130 S.E.2d 363, 367 (1963); *see also O'Cain v. O'Cain*, 322 S.C. 551, 560, 473 S.E.2d 460, 465 (Ct. App. 1996) (discussing purpose of law of nuisance). For that reason, the South Carolina Supreme Court has made clear that "one who has no control over property at the time of the alleged nuisance cannot be held liable therefor." *Clark v. Greenville Cnty.*, 313 S.C. 205, 210, 437 S.E.2d 117, 119 (1993). As such, in the absence of allegations evidencing control, a nuisance claim fails and must be dismissed. *See id.*; *see also Weatherford v. E.I. Dupont de Neumours & Co.*, No. 4:22-cv-1427, 2023 WL 11015357, at *6 (D.S.C. Sept. 27, 2023) (concluding that because "Plaintiffs have not alleged Defendants had control over the PFAS once they were sold to the textile plants," the Defendants could not be held liable for the PFAS and therefore "Defendants' motion to dismiss is granted as to Plaintiffs' nuisance cause of action").[3]

---

[3] *See also, e.g.*, *Long v. O'Reilly's Auto. Stores, Inc.*, No. 6:12-cv-901, 2013 WL 12148122, at *4 (D.S.C. Mar. 7, 2013) (dismissing nuisance claim against defendants who had no control over property that was source of water that discharged onto and damaged the plaintiff's property).

The South Carolina Supreme Court's decision in *Clark v. Greenwood County* is directly on point. In that case, the plaintiffs were property owners who alleged that their properties had been contaminated by hazardous chemical waste that had been disposed of at a nearby landfill. *See* 313 S.C. at 206-07, 437 S.E.2d at 118. As a result, the property owners filed suit against five corporate defendants that had used the landfill to dispose of such waste. *Id.* at 207, 437 S.E.2d at 118. The trial court ruled that because the corporate respondents did not own or control the landfill, "no action for private nuisance could be maintained against the corporate respondents." *Id.* at 209, 437 S.E.2d at 119. On appeal, the South Carolina Supreme Court affirmed, explaining that "[t]he only issue we need address is whether one must own or have control of the property allegedly used as a nuisance"; on that issue, the court ruled that such control was indeed a prerequisite to any action for nuisance: "[W]e now hold one who has no control over property at the time of the alleged nuisance cannot be held liable therefor." *Id.* at 209-10, 437 S.E.2d at 119. Thus, because "appellants neither alleged nor produced any evidence the corporate respondents had control over the landfill or the hazardous waste once it was deposited at the landfill," the court concluded that "the trial judge correctly ruled the corporate respondents could not be liable for nuisance because they had no control over the property allegedly used as a nuisance." *Id.* at 210, 437 S.E.2d at 119.

Here, Plaintiff's Complaint alleges that "the Lower Reedy WWTP discharges water [containing PFAS] into the Reedy River upstream of Lake Greenwood," and that "[t]hese PFAS and their precursors flow downstream to Plaintiff's water intakes on Lake Greenwood, damaging Plaintiff's property and contaminating its water source." (*See* Compl. ¶ 50). However, just like the plaintiffs in *Greenwood County*, the Plaintiff's only allegation in this case against First Source is that "First Source's facility discharges industrial wastewater [containing PFAS] to the Lower Reedy WWTP." (*See id.* ¶ 18). In other words, Plaintiff's allegations confirm it is the discharge

ELECTRONICALLY FILED - 2024 Dec 11 5:01 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

of water by the Lower Reedy WWTP that is allegedly "damaging Plaintiff's property and contaminating its water source," and that First Source's conduct is limited to its disposal of wastewater at the Lower Reedy WWTP, which occurs prior to (and entirely separate and apart from) any discharge by the Lower Reedy WWTP. (*See id.* ¶¶ 18, 50, 57-80). Thus, because First Source had no control over the Lower Reedy WWTP, it "had no control over the property allegedly used as a nuisance." *See Greenwood Cnty.*, 313 S.C. at 210, 437 S.E.2d at 119. Accordingly, Plaintiff's private and public nuisance claims against First Source both fail as a matter of law,[4] and Counts 1 and 2 of Plaintiff's Complaint must be dismissed.

> **2.      *Plaintiff's allegations of contamination of the Reedy River and Lake Greenwood fail to state an actionable claim for private nuisance.***

Next, Plaintiff's private nuisance claim against First Source should also be dismissed for the additional reason that the alleged contamination of a public water body cannot form the basis of a claim for private nuisance. Indeed, "[a] private nuisance affects only one person or a determinate number of persons," whereas "[a] nuisance is public because of the danger to the public which might have been created." *See Baltzeger v. Carolina Midland Ry. Co.*, 54 S.C. 242, 248, 32 S.E. 358, 360 (1899); *Home Sales, Inc. v. City of N. Myrtle Beach*, 299 S.C. 70, 81, 382 S.E.2d 463, 469 (Ct. App. 1989) ("A nuisance is public because of the danger to the public which might have been created. It is private only because the individual as distinguished from the public has been or may be injured."); *see also Charleston Dev. Co. v. Alami*, 433 S.C. 533, 547-48, 860 S.E.2d 687, 695 (Ct. App. 2021) ("'A private nuisance is anything done to the hurt or annoyance of the lands, tenements, or hereditaments of another. It produces damage to but one or two persons,

---

[4] Because "[t]he difference between a public nuisance and a private nuisance does not consist in any difference in the nature or character of the thing or activity itself," *see Home Sales, Inc. v. City of N. Myrtle Beach*, 299 S.C. 70, 81, 382 S.E.2d 463, 469 (Ct. App. 1989), First Source's lack of control over the Lower Reedy WWTP is fatal to both of Plaintiff's nuisance claims.

ELECTRONICALLY FILED - 2024 Dec 11 5:01 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Dec 11 5:01 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

and cannot be said to be public.'") (citations omitted); *accord Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 96-97 (4th Cir. 2011) ("If the only interest that is invaded is an interest shared equally by members of the public, then the alleged nuisance is public in nature. Such a circumstance is precisely the situation presented here, because DuPont's allegedly tortious conduct interfered with the general public's access to clean drinking water. . . . We therefore conclude . . . that when a release of pollutants directly affects a municipal water supply and does not interfere with any private water source, such as a well drilled on private property, the presence of the pollutants in the public water supply will not support a private nuisance claim.") (citations omitted).[5]

Plaintiff's Complaint makes clear that its claims against First Source are based on the alleged contamination of the Reedy River (the discharge point for the Lower Reedy WWTP) and Lake Greenwood (the location of Plaintiff's water intakes). (*See* Compl. ¶ 18 (alleging that "First Source's facility discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to the Lower Reedy WWTP . . . which it discharges into the Reedy River upstream of Lake Greenwood and Plaintiff's water intakes"); *see also id.* ¶¶ 2-5, 45-48, 50, 59-60, 62, 64, 66, 72-74, 78). However, Plaintiff is just one of the hundreds of riparian landowners with property located along the more than 40-mile stretch between the Lower Reedy WWTP and Plaintiff's water intakes on Lake Greenwood. (*See id.* ¶¶ 45-46); *see generally* GIS Parcel Map at Pl.'s Water Intakes and Surrounding Area, https://www.greenwoodsc.gov/greenwoodjs/ (select

---

[5] *See also, e.g.*, *Priselac v. Chemours Co.*, No. 7:20-cv-190, 2022 WL 909406, at *5 (E.D.N.C. Mar. 28, 2022) ("[E]ven though defendants' alleged contamination of the Cape Fear River and the surrounding air, soil, and groundwater negatively affects Priselac's use and enjoyment of her private property, the interest affected is a public interest. . . . Priselac alleges the invasion of a public, not a private, interest and thus fails to state a private nuisance claim."); *Barker v. Naik*, No. 2:17-cv-4387, 2018 WL 3824376, at *3 (S.D.W. Va. Aug. 10, 2018) ("[T]he interference alleged . . . is the contamination of the public air. Accordingly, the alleged interference is an interference with a public right, and Plaintiffs have not made any showing of a private nuisance. As such, the Court must **GRANT** Defendants' motion to dismiss as to Plaintiffs' claim of private nuisance.").

ELECTRONICALLY FILED - 2024 Dec 11 5:01 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Magnifying Glass Icon for "Quick Search"; then type "6888-674-166"; then select Magnifying Glass Icon for "Search").[6]  Plaintiff's nuisance claim therefore involves an alleged nuisance that is "public in nature," which "will not support a private nuisance claim."  *See Rhodes*, 636 F.3d at 96-97.  As such, Plaintiff's private nuisance claim in Count 1 should be dismissed.

> ### 3.     *Plaintiff fails to state a valid claim for trespass under South Carolina law.*
>
> #### a.     PFAS are "intangible" particles that cannot support a trespass claim.

The South Carolina Supreme Court has definitively held that South Carolina follows "the traditional dimensional test and only recognizes intrusions by physical, tangible things as capable of constituting a trespass."  *Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 152, 747 S.E.2d 468, 480 (2013).  To constitute a physical and sufficiently tangible intrusion, the interference must be "with the right to exclusive possession," as opposed to "merely interfer[ing] with the right to use and enjoyment."  *Id.* at 151, 747 S.E.2d at 480.  Thus, intrusions by "microscopic particulates" or similarly intangible "infiltration[s] of contaminants onto a plaintiff's property" — while in some cases potentially could give rise to a claim for nuisance — do not constitute an actionable trespass under South Carolina law.  *See id.* at 144-52, 747 S.E.2d at 476-80.

Notably, in adhering to the traditional rule that requires "an invasion by a physical, tangible thing for a trespass to exist," the South Carolina Supreme Court recognized that "the dimensional test is an imperfect rule" that "does not comport with modern science's understanding of matter and the relationship between matter and energy."  *Id.* at 150, 747 S.E.2d at 479.  Nevertheless, the court held that South Carolina's traditional rule remained "superior" to the rules formulated by "a

---

[6] Courts may take judicial notice of facts "capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned."  S.C. R. Evid. 201(b).  "[G]eographical information is especially appropriate for judicial notice."  *See Prioleau v. Wallace*, No. 5:24-cv-1171, 2024 WL 3416605, at *1 n.2 (D.S.C. May 24, 2024), *adopted by* 2024 WL 3412324 (D.S.C. July 15, 2024) (quoting *United States v. Johnson*, 726 F.2d 1018, 1021 (4th Cir. 1984)).

ELECTRONICALLY FILED - 2024 Dec 11 5:01 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

divergent line of decisions," as the traditional rule does not require the adoption of an uncertain "substantiality requirement," but instead "possesses the virtues of clarity, ease of implementation, and ability to serve as a guide for future conduct," thus "yield[ing] a stable rule as to what rises to the level of a trespass." *Id.* at 146, 149-51, 747 S.E.2d at 477, 479-80.  The court further explained that the dimensional test preserves "the distinction between trespass and nuisance," whereas "the divergent view would transform trespass into nuisance," thereby "leav[ing] property owners with less, rather than more, protection of their property rights." *Id.* at 151-52, 747 S.E.2d at 480.

By retaining the traditional rule, the South Carolina Supreme Court expressly rejected "divergent" cases in Oregon and Alabama, which had held that intrusions of "fluoride particles" and "sulfoxide emissions" were sufficient to constitute a trespass despite their "intangible nature." *Id.* at 146-49, 747 S.E.2d at 477-78 (rejecting *Martin v. Reynolds Metals Co.*, 221 Or. 86, 342 P.2d 790 (1959), which involved "fluoride particles," and *Borland v. Sanders Lead Co.*, 369 So. 2d 523 (Ala. 1979), which involved "lead and sulfoxide emissions").[7]  Instead, the *Babb* court followed the Michigan Court of Appeals' decision in *Adams v. Cleveland-Cliffs Iron Co.*, wherein the court concluded that dust is "not actionable in trespass" because "dust, along with other forms of airborne particulate, does not normally present itself as a significant physical intrusion," but instead "become[s] a part of the ambient circumstances of th[e] space" on which it settles. *See id.* at 149-50, 747 S.E.2d at 479; *see also* 237 Mich. App. 51, 67-70, 602 N.W.2d 215, 222-24 (1999).

In this case, Plaintiff's trespass claim is based on the alleged contamination from PFAS molecules, which are precisely the kind of "intangible matter" that the South Carolina Supreme

---

[7] The South Carolina Supreme Court's rejection of *Martin v. Reynolds Metals Co.* is particularly instructive, as the *Babb* court rejected the ruling in *Martin* that an intrusion of "fluoride particles" could constitute an actionable trespass, as fluoride is chemically related to and derived from fluorine, just like PFAS. *See* 405 S.C. at 146-50, 747 S.E.2d at 477-79; (*see* Compl. ¶¶ 24-26 (stating PFAS are per- and polyfluoroalkyl substances made through "carbon-fluorine bonds")).

56029023 v1                                         11

ELECTRONICALLY FILED - 2024 Dec 11 5:01 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Court held "are insufficient to constitute a trespass." *See Babb*, 405 S.C. at 144-52, 747 S.E.2d at 476-80. Indeed, Plaintiff's own Complaint demonstrates that PFAS molecules are microscopic particles — measured, if at all, in the parts per *trillion* — that cannot be visibly seen, felt, or otherwise perceived in water or any other medium. (*See* Compl. ¶¶ 33-34, 36-37, 39-40, 43). Moreover, the damages that Plaintiff alleges from the PFAS contamination are not to its "right to the exclusive, peaceable possession of [its] property," but are based on the alleged "losses to the use and enjoyment of its property rights," and the alleged "interference with Plaintiff's right to use and enjoy its property," which are remedied through (if by anything) a claim for nuisance, not trespass. (*See id.* ¶¶ 5, 53, 55); *see also Babb*, 405 S.C. at 139, 149-52, 747 S.E.2d at 473, 479-80 (citation omitted).[8] For these reasons, Plaintiff's allegations do not state an actionable claim for trespass under South Carolina law, and Count 3 of Plaintiff's Complaint should be dismissed.

        b.       <u>Plaintiff's trespass claim based on the alleged contamination of the Reedy River and Lake Greenwood fails for other reasons.</u>

Plaintiff's trespass claim should also be dismissed for other reasons. For one thing, the claim fails because Plaintiff does not sufficiently allege a physical invasion of Plaintiff's property. As the South Carolina Supreme Court has made clear, trespass protects only the "right to *exclusive* possession." *See Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 150-51, 747 S.E.2d 468, 479-80 (2013) (emphasis added); *see also Charleston Joint Venture v. McPherson*, 308 S.C. 145, 153,

---

[8] *See also City of Lake Elmo v. 3M Co.*, 237 F. Supp. 3d 877, 888 (D. Minn. 2017) ("The Complaint alleges . . . that 3M trespassed upon Lake Elmo's property 'by contaminating it with PFCs and thereby preventing the City from using the groundwater within the aquifer that flows underneath the property.' As alleged, Lake Elmo is complaining of an invasion of the right to <u>use and enjoy</u> its land, rather than to <u>exclusively possess</u> its land. Accordingly, Lake Elmo's claim is one for nuisance, not trespass. Because Lake Elmo does not allege that 3M prevented it from possessing the groundwater, the trespass claim fails. The motion to dismiss is granted for this claim.") (citations omitted); *Barnes v. Birds Eye Foods, Inc.*, No. 1:10-CV-541, 2011 WL 13362363, at *6 (W.D. Mich. Sept. 26, 2011) (granting motion to dismiss trespass claim because "migrating groundwater interferes with the landowner's interest in use and enjoyment of the property . . . not his interest in excluding others from the property [as] is vindicated by a trespass action").

ELECTRONICALLY FILED - 2024 Dec 11 5:01 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

417 S.E.2d 544, 549 (1992) (same). Here, however, Plaintiff does not hold an exclusive right to the water from the Reedy River or Lake Greenwood, only a riparian right of reasonable use. *See White v. Whitney Mfg. Co.*, 60 S.C. 254, 265, 38 S.E. 456, 460 (1901) (holding it is a "well-settled rule of law" that while a riparian owner has "an equal right to the use of the water which flows in the stream adjacent to his lands . . . [h]e has no property in the water itself, but a simple usufruct").

Although Plaintiff alleges that PFAS contamination is present on property that Plaintiff owns, "including its land, SWTP, and related buildings, improvements, and equipment that make up its water treatment and distribution system," Plaintiff concedes that this alleged contamination only occurs as a result of Plaintiff's own actions, i.e. when Plaintiff turns on its water pumps and the "water pumps are active." (*See* Compl. ¶¶ 85, 87). Such allegations do not constitute an actionable trespass under South Carolina law, as instead "there must be an affirmative act" by the defendant, and "the invasion of the land must be intentional." *See Snow v. City of Columbia*, 305 S.C. 544, 553, 409 S.E.2d 797, 802 (Ct. App. 1991). Importantly, an act is only "intentional" if "done with knowledge that it will to a substantial certainty result in the entry of the foreign matter" on the plaintiff's land. *Sales v. S.C. Dep't of Transp.*, No. 2014-000582, 2016 WL 3607225, at *2 (S.C. Ct. App. June 30, 2016) (quoting Restatement (Second) of Torts § 158 cmt. i (1965)). Here, there could be no "substantial certainty" that PFAS would enter Plaintiff's property, as such entry could not have occurred absent Plaintiff's intervening activation of its water pumps. Plaintiff also cannot show an "unauthorized entry" of PFAS on "property in its exclusive possession," as Plaintiff made its own voluntary decision to activate the water pumps and draw in water from a public waterway, which is likewise fatal to Plaintiff's trespass claim. *See Ravan v. Greenville Cnty.*, 315 S.C. 447, 464, 434 S.E.2d 296, 306 (Ct. App. 1993) ("The essence of trespass is the unauthorized entry onto the land of another.").

ELECTRONICALLY FILED - 2024 Dec 11 5:01 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Simply put, courts have considered allegations similar to the Plaintiff's here, and have in turn held that a drinking water utility cannot state a cause of action for trespass when it voluntarily draws PFAS-contaminated water from a public water source. *See, e.g.*, *Utilities. Bd. of Tuskegee v. 3M Co.*, No. 2:22-cv-420, 2023 WL 1870912, at *16 (M.D. Ala. Feb. 9, 2023) ("Trespass . . . requires an invasion of property in plaintiff's exclusive possession. As alleged, the facts here do not sound in trespass because, unlike other indirect trespasses, Defendants' PFAS did not cross onto UBT's boundary line by a natural process. Rather, UBT pulls the water onto its property through an intake system from a public waterway (over which UBT does not have exclusive possession). Accordingly, there is no invasion onto UBT's property. . . . UBT's indirect trespass claims fail . . . for want of an invasion of property in its exclusive possession because UBT itself pulled the water onto its property from a public water source . . . .") (internal citation omitted). This Court should do the same, and Count 3 of Plaintiff's Complaint should again be dismissed.

### 4. *Plaintiff's negligence claim against First Source fails as a matter of law.*

#### a. First Source does not owe a legal duty of care to the Plaintiff.

It is well-settled under South Carolina law that "[a]n essential element in a negligence action is 'the existence of a legal duty of care owed by the defendant to the plaintiff.'" *Shaw v. Psychemedics Corp.*, 426 S.C. 194, 197, 826 S.E.2d 281, 282 (2019) (quoting *Oblachinski v. Reynolds*, 391 S.C. 557, 561, 706 S.E.2d 844, 845-46 (2011)). "If there is no duty, then the defendant in a negligence action is entitled to judgment as a matter of law." *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 135-36, 638 S.E.2d 650, 656 (2006) (citing *Steinke v. S.C. Dep't of Labor, Licensing & Regulation*, 336 S.C. 373, 387, 520 S.E.2d 142, 149 (1999)); *see also McCullough v. Goodrich & Pennington Mortg. Fund, Inc.*, 373 S.C. 43, 47, 644 S.E.2d 43, 46 (2007) ("In order for liability to attach based on a theory of negligence, the parties must have a relationship recognized by law as providing the foundation for a duty to prevent an injury." (citing

56029023 v1

14

*Huggins v. Citibank, N.A.*, 355 S.C. 329, 333, 585 S.E.2d 275, 277 (2003))).  Notably, "[a]n affirmative legal duty may be created by statute, a contractual relationship, status, property interest, or some other special circumstance." *McPherson v. CSX Transportation, Inc.*, No. 4:16-cv-2725, 2017 WL 1135291, at *2 (D.S.C. Mar. 27, 2017) (citing *Madison ex rel. Bryant*, 371 S.C. at 136, 638 S.E.2d at 656-57).  "However, South Carolina courts 'will not extend the concept of a legal duty of care in tort liability beyond reasonable limits,'" and without more, "[f]oreseeability of injury, in and of itself, does not give rise to a duty." *Shaw*, 426 S.C. at 198, 826 S.E.2d at 283 (quoting *McCullough*, 373 S.C. at 48, 644 S.E.2d at 46); *Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co.*, 355 S.C. 614, 618, 586 S.E.2d 586, 588 (2003).

Here, Plaintiff does not allege any facts that suggest the existence of a relationship between it and First Source sufficient to establish a legal duty of care.  Indeed, Plaintiff does not allege any duty "created by statute, a contractual relationship, status, property interest, or some other special circumstance," but instead alleges only that the "Defendants have a duty to use due care in the handling, use, and disposal of products containing or degrading to [PFAS] to avoid causing an unreasonable risk of harm to others."  (*See* Compl. ¶ 91).  However, South Carolina does not recognize or impose such a broad and oversimplified duty of care.  Just the opposite, as under South Carolina law, "one who has no control owes no duty." *See Miller v. City of Camden*, 329 S.C. 310, 314, 494 S.E.2d 813, 815 (1997) (citing *Clark v. Greenville Cnty.*, 313 S.C. 205, 209, 437 S.E.2d 117, 119 (1993)); *see also Ellis v. Tall Ships Charleston, LLC*, 593 F. Supp. 3d 253, 268 (D.S.C. 2022) ("Under South Carolina law, there is no general duty to control the conduct of another or to warn a third person or potential victim of danger." (quoting *Faile v. S.C. Dep't of Juv. Just.*, 350 S.C. 315, 334, 566 S.E.2d 536, 546 (2002))).  Accordingly, in disposing of wastewater at the Lower Reedy WWTP, First Source had no duty to ensure that the Lower Reedy

ELECTRONICALLY FILED - 2024 Dec 11 5:01 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Dec 11 5:01 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

WWTP would treat the wastewater in a way that avoids any risk of harm to third parties, and therefore owed no duty to the Plaintiff. *See, e.g.*, *Oulla v. Velazques*, 427 S.C. 428, 444, 831 S.E.2d 450, 458 (Ct. App. 2019) (finding that sod manufacturer that placed sod pallets on truck trailer that later fell from trailer leading to accident and injury to motorist did not owe legal duty to motorist to ensure pallets were properly secured). As a result of the absence of any duty, Plaintiff's negligence claim against First Source in Count 4 of the Complaint should be dismissed.

> b.     <u>Plaintiff's alleged damages are not recoverable under negligence</u>.

Finally, Plaintiff's negligence claim against First Source also fails as a matter of law because Plaintiff alleges no facts that would establish the element of damages. "Generally, under South Carolina law, the damages element [for a negligence claim] requires a plaintiff to establish physical injury or property damage." *Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 153, 747 S.E.2d 468, 481 (2013). As explained above, Plaintiff does not own the water in the Reedy River or Lake Greenwood, but merely has a conditional right to use it. *See White v. Whitney Mfg. Co.*, 60 S.C. 254, 265, 38 S.E. 456, 460 (1901). The Complaint includes unexplained and conclusory allegations of damage or injury to Plaintiff's property, (*see, e.g.*, Compl. ¶¶ 50, 55, 94 (alleging unspecified "past, present, and future injury to property," and unnamed damages and "losses resulting from injury to its property")), but does not allege any facts showing that anything other than water from a public waterway has or could have been damaged by PFAS. Instead, the Complaint reveals that Plaintiff's alleged damages are only (contingent) losses in property ***value***, along with (potential) increases in future operating costs. Such allegations of damages do not implicate or suggest the kind of "physical injury or property damage" that is recoverable on a claim for negligence. *See Gray v. S. Facilities, Inc.*, 256 S.C. 558, 183 S.E.2d 438 (1971) *Gray v. S. Facilities, Inc.*, 256 S.C. 558, 566-71, 183 S.E.2d 438, 442-44 (1971) (finding property owner could not recover for diminution of the value of his property resulting from oil fire in adjacent

river that did not cause physical damage to his property).  Thus, for this reason as well, Plaintiff's

negligence claim fails as a matter of law and should be dismissed.

### III.     CONCLUSION

For all of the foregoing reasons, First Source's Motion to Dismiss should be granted, and

all of the claims that Plaintiff has asserted against First Source should be dismissed.

Respectfully submitted,


 *s/ Paul D. Harrill*
Paul D. Harrill (S.C. Bar No. 15268)
BURR & FORMAN LLP
1221 Main Street, Suite 1800 (29201)
P.O. Box 11390
Columbia, South Carolina 29211
Telephone:  (803) 799-9800
Facsimile:  (803) 753-3278
E-mail:   PHarrill@burr.com

Rik S. Tozzi (PHV Admission to be filed)
Ryan J. Hebson (PHV Admission to be filed)
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama  35203
Telephone:  (205) 251-3000
Facsimile:  (205) 458-5100
E-mail:   rtozzi@burr.com
E-mail:   rhebson@burr.com

Counsel for Defendant
FIRST SOURCE WORLDWIDE, LLC

December 11, 2024
Columbia, South Carolina

56029023 v1

17

ELECTRONICALLY FILED - 2024 Dec 11 5:01 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Dec 11 5:01 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF GREENWOOD** | ) | **EIGHTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| **GREENWOOD COMMISSIONERS OF PUBLIC WORKS,** | ) | **C.A. No.: 2024-CP-24-00735** |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CONE MILLS RECEIVER, LLC; CRYOVAC, INC.; CRYOVAC, LLC; FIRSTSOURCE WORLDWIDE, LLC; FITESA SIMPSONVILLE, INC.; MILLIKEN & COMPANY; OPPERMANN WEBBING, INC.; T&S BRASS AND BRONZE WORKS, INC.; UNICHEM SPECIALTY CHEMICALS, LLC,** | ) ) ) ) ) ) ) ) ) | **DEFENDANT FIRST SOURCE WORLDWIDE, LLC'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT** |
| | ) | |
| **Defendants.** | ) ) | |

Defendant First Source Worldwide, LLC ("First Source"), by and through its undersigned counsel, and pursuant to Rules 8(a), 12(b)(1), and 12(b)(6) of the South Carolina Rules of Civil Procedure, hereby moves the Court to dismiss all claims asserted against First Source in the Amended Complaint filed by Plaintiff Greenwood Commissioners of Public Works. A separate Memorandum of Law in support of this Motion is being submitted contemporaneously herewith.

Respectfully submitted,

*s/ Paul D. Harrill*

Paul D. Harrill (S.C. Bar No. 15268)
BURR & FORMAN LLP
1221 Main Street, Suite 1800 (29201)
P.O. Box 11390
Columbia, South Carolina 29211
Telephone: (803) 799-9800
Facsimile: (803) 753-3278
E-mail: PHarrill@burr.com

56029228 v1

ELECTRONICALLY FILED - 2024 Dec 11 5:01 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Rik S. Tozzi (PHV Admission to be filed)
Ryan J. Hebson (PHV Admission to be filed)
BURR & FORMAN LLP
420 North 20th Street, Suite 3400
Birmingham, Alabama  35203
Telephone:  (205) 251-3000
Facsimile:  (205) 458-5100
E-mail:  rtozzi@burr.com
E-mail:  rhebson@burr.com

Counsel for Defendant
FIRST SOURCE WORLDWIDE, LLC

December 11, 2024
Columbia, South Carolina

56029228 v1

2

ELECTRONICALLY FILED - 2024 Dec 20 3:22 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | |
|---|---|
| **STATE OF SOUTH CAROLINA** | **IN THE COURT OF COMMON PLEAS** |
| **COUNTY OF GREENWOOD** | **EIGHTH JUDICIAL CIRCUIT** |

| | |
|---|---|
| GREENWOOD COMMISSIONERS OF PUBLIC WORKS, | C.A. No. 2024-CP-24-00735 |
| *Plaintiff,* | |
| v. | |
| CONE MILLS RECEIVER, LLC; CRYOVAC, INC.; CRYOVAC, LLC; FIRSTSOURCE WORLDWIDE, LLC; FITESA SIMPSONVILLE, INC.; MILLIKEN & COMPANY; OPPERMAN WEBBING, INC.; T&S BRASS AND BRONZE WORKS, INC.; UNICHEM SPECIALTY CHEMICALS, LLC, | **DEFENDANT FITESA SIMPSONVILLE, INC.'S MOTION TO DISMISS** |
| *Defendants.* | |

PLEASE TAKE NOTICE that Defendant Fitesa Simpsonville, Inc. ("Fitesa"), hereby moves, by and through its undersigned counsel, pursuant to Rule 12(b)(1) and Rule 12(b)(6) of the South Carolina Rules of Civil Procedure for an Order dismissing all of Plaintiff's claims against Fitesa that are set forth in Plaintiff's Amended Complaint. This Motion is based on the pleadings, any memoranda or affidavits submitted, controlling law and such other and further material as the Court may deem appropriate. The grounds for this Motion include, among others, that:

1.    The claims are not ripe.

2.    Fitesa does not control the wastewater discharge that is the alleged source of the alleged nuisance.

3.    The alleged contamination of public waters is not a private nuisance.

4.    Fitesa cannot be negligent because it does not owe a duty to Plaintiff.

5.    Voluntary acceptance of intangible matter cannot be a trespass.

PPAB 11804958v1

ELECTRONICALLY FILED - 2024 Dec 20 3:22 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

WHEREFORE, Fitesa respectfully requests that the Court: (1) enter an Order dismissing all of Plaintiff's claims against Fitesa under Rule 12(b)(1) of the South Carolina Rules of Civil Procedure for lack of subject matter jurisdiction and Rule 12(b)(6) for failure to state a claim; (2) award Fitesa its attorneys' fees, costs and expenses incurred in defense hereof; and (3) grant such other and further relief in favor of Fitesa as the Court may deem just and proper.

Respectfully submitted, this 20th day of December, 2024.

/s/ *Robert H. Jordan*
Robert H. Jordan
SC State Bar No. 13612
PARKER POE ADAMS & BERNSTEIN LLP
850 Morrison Drive, Suite 400
Charleston, South Carolina 29403
Phone: 843-727-2650
E-mail: robertjordan@parkerpoe.com

Kevin A. Dunlap
SC State Bar No. 13081
Parker Poe Adams & Bernstein LLP
110 East Court Street, Suite 200
Greenville, SC 29601
Telephone: (864) 577-6370
Email: kevindunlap@parkerpoe.com

Steven D. Weber
S.C. State Bar No. 16917
PARKER POE ADAMS & BERNSTEIN LLP
620 South Tryon St., Ste. 800
Charlotte, North Carolina 28202
Tel.: (704) 372-9000
Email: steveweber@parkerpoe.com

*Attorneys for Defendant Fitesa Simpsonville, Inc.*

ELECTRONICALLY FILED - 2024 Dec 20 3:36 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF GREENWOOD | ) | FOR THE EIGHTH JUDICIAL CIRCUIT |
| | ) | |
| GREENWOOD COMMISSIONERS OF PUBLIC WORKS, | ) | CA No. 2024-CP-00735 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **UNICHEM SPECIALTY CHEMICALS,** |
| CONE MILLS RECEIVER, LLC; | ) | **LLC'S MOTION TO DISMISS THE** |
| CRYOVAC, INC.; CRYOVAC, LLC; | ) | **AMENDED COMPLAINT** |
| FIRSTSOURCE WORLDWIDE, LLC; | ) | |
| FITESA SIMPSONVILLE, INC.; | ) | |
| MILLIKEN & COMPANY; OPPERMAN | ) | |
| WEBBING, INC.; T&S BRASS AND | ) | |
| BRONZE WORKS, INC.; UNICHEM | ) | |
| SPECIALTY CHEMICALS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendant Unichem Specialty Chemicals, LLC ("Unichem"), by and through its undersigned attorneys, hereby moves this honorable Court for an Order dismissing Plaintiff Greenwood Commissioners of Public Works' Amended Complaint. This Motion is made on the grounds that Plaintiff has failed to identify a justiciable controversy, failed to allege facts sufficient to constitute a cause of action, and failed to otherwise plead a viable claim against Unichem. For these reasons, as described below and more fully in the supporting memorandum to be filed in accordance with the Court's anticipated briefing schedule, the Amended Complaint should be dismissed:

## I.     THE AMENDED COMPLAINT FAILS TO PRESENT A JUSTICIABLE CONTROVERSY.

Plaintiff lacks standing and has not identified a controversy that is ripe for the Court's review. "Our courts will not address the merits of any case unless it presents a justiciable

1

ELECTRONICALLY FILED - 2024 Dec 20 3:36 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

controversy." *Jowers v. S.C. Dep't Health & Env'l Control*, 423 S.C. 343, 353, 815 S.E.2d 446, 451 (2018). "Justiciability encompasses ripeness and standing." *Id.* (quoting *James v. Anne's Inc.*, 390 S.C. 188, 193, 701 S.E.2d 730, 732 (2010)) (cleaned up). "To meet the 'stringent' test for standing, 'the plaintiff must have suffered an "injury in fact"—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not "conjectural" or "hypothetical."'" *Id.* (quoting *Sea Pines Ass'n for Prot. of Wildlife, Inc. v. S.C. Dep't Nat. Res.*, 345 S.C. 600, 601, 550 S.E.2d 287, 291 (2001)). The South Carolina Supreme Court has "explained ripeness by defining what is not ripe, stating 'an issue that is contingent, hypothetical, or abstract is not ripe for judicial review.'" *Id.* (quoting *Colleton Cnty. Taxpayers Ass'n v. Sch. Dist. of Colleton Cnty.*, 371 S.C. 224, 242, 638 S.E.2d 685, 694 (2006)).

The Complaint does not set forth a justiciable controversy. Plaintiff concedes that the U.S. Environmental Protection Agency's ("EPA") new maximum contaminant levels ("MCLs") for particular per- and polyfluoroalkyl substances ("PFAS") will not be enforced until 2029, and that its earliest reporting and monitoring obligations will not begin until 2027. *See* Am. Compl. ¶ 44. Plaintiff has not alleged any injury beyond potential future costs that it may possibly incur at some undetermined future date. Because Plaintiff has not, and cannot, identify an injury in fact, it lacks standing to pursue the asserted claims. Likewise, the issues presented are conjectural, hypothetical in nature, and dependent on future events and, thus, not ripe for review. Accordingly, the Amended Complaint should be dismissed because there is no active case or controversy.

## II. ADDITIONALLY, OR AS AN ALTERNATIVE GROUND FOR DISMISSAL, PLAINTIFF HAS NOT ALLEGED FACTS SUFFICIENT TO CONSTITUTE A CAUSE OF ACTION.

In the Amended Complaint, Plaintiff asserts claims for private nuisance, public nuisance, trespass, and negligence. Each cause of action fails and should be dismissed pursuant to Rule

ELECTRONICALLY FILED - 2024 Dec 20 3:36 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

12(b)(6) of the South Carolina Rules of Civil Procedure. A complaint should be dismissed when, even accepting as true the well-plead allegations, "the facts alleged and inferences reasonably deducible from the pleadings" do not "entitle the plaintiff to relief on any theory of the case." *Rydde v. Morris*, 381 S.C. 643, 646, 675 S.E.2d 431, 433 (2009) (quoting *Williams v. Condon*, 347 S.C. 227, 233, 553 S.E.2d 496, 499 (Ct. App. 2001)).

**A. Plaintiff Relies on Unreasonable Inferences and Unsupported Conclusions as the Basis for Every Claim Against Unichem.**

As an initial matter, Plaintiff has not alleged facts reasonably leading to the conclusion that Unichem contributed to the alleged contamination of the water Plaintiff draws from Lake Greenwood. Each of Plaintiff's claims against Unichem rely on the assumption that the chemicals found in Lake Greenwood are present there as a result of the conduct of Unichem. Plaintiff alleges that Unichem "uses products that contain or degrade" to certain PFAS, discharged water containing those chemicals to an industrial wastewater treatment plant, which then treated the water and discharged it into the Reedy River more than 50 miles from Plaintiff's water intakes. Am. Compl. ¶¶ 23, 49. Plaintiff explains at length that PFAS is "pervasive in industrial, commercial, and consumer products," "persisten[t] in the environment," is "highly mobile and water soluble," and "remain[s] in the environment from decades of legacy industrial use." *Id.* at ¶¶ 25, 29, 31. Yet, Plaintiff provides no facts reasonably inferring that the PFAS contamination it complains of is the same PFAS allegedly used by Unichem and not the product of some other third-party, or that any PFAS allegedly used by Unichem migrated more than 50 miles to Plaintiff's intakes. Plaintiff's speculative connection between Unichem's activities and its own water intake is particularly weak considering that Unichem has only owned the facility at issue since August 2021. Without these vital allegations, the Amended Complaint cannot establish *any* cause of action against Unichem and should be dismissed.

3

ELECTRONICALLY FILED - 2024 Dec 20 3:36 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**B. Plaintiff Cannot Maintain a Claim for Private or Public Nuisance for the Alleged Contamination.**

Whether pursuing a claim for private or public nuisance, Plaintiff must, as part of its *prima facie* case, establish that Unichem controlled the instrumentality alleged to have caused the nuisance at the time of the alleged nuisance. Here, the Amended Complaint establishes that Unichem discharged to the Mauldin Road Waste Water Treatment Plant ("WWTP"), which controlled the treatment and discharge of water into the Reedy River, not Unichem. *See* Am. Compl. ¶¶ 23, 49. Thus, Plaintiff's claims are not appropriately directed at Unichem.

Additionally, Plaintiff's cause of action for private nuisance fails because, as shown by its own allegations, the alleged nuisance (contamination of Lake Greenwood) affects the general public. *See* Am. Compl. ¶¶ 49–51; *see also id.* at p. 17 ("Defendants have harmed Plaintiff and Plaintiff's Community"). A private nuisance, in contrast, "is anything done to the hurt or annoyance of the lands, tenements, or hereditaments of another. It produces damage to but one or two persons, and cannot be said to be public." *Charleston Dev. Co. v. Alami*, 433 S.C. 533, 547–48, 860 S.E.2d 687 (Ct. App. 2021) (quoting *Deason v. Southern Ry. Co.*, 142 S.C. 328, 334, 140 S.E. 575, 577 (1927)).

On the other hand, although the alleged nuisance allegedly affects the general public, South Carolina does not permit a private citizen to bring a claim based on public nuisance. Such a claim is permitted only where a plaintiff can demonstrate a "special" or "particularized" injury. *See Carnival Corp. v. Historic Ansonborough Neighborhood Ass'n*, 407 S.C. 67, 78, 753 S.E.2d 846, 852 (2014). A special injury must be an "individual or specific damage in addition to that suffered by the public." *Id.* Here, Plaintiff has not alleged a special injury that differs from the injury experience by general public and other riparian rights holders along the Reedy River and Lake Greenwood. Moreover, as discussed below in Subsection III.D, Plaintiff has not alleged that

4

ELECTRONICALLY FILED - 2024 Dec 20 3:36 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Unichem nor the Maudlin Road WWTP violated any laws, regulations, or guidelines. Thus, its claim for public nuisance cannot be maintained. *See Home Sales, Inc. v. City of N. Myrtle Beach*, 299 S.C. 70, 81, 382 S.E.2d 463, 469 (Ct. App. 1989) ("Nothing is a public nuisance which the law itself authorizes.").

## C. Plaintiff Cannot Maintain a Cause of Action for Trespass Because it has Not Alleged an Affirmative Act or the Requisite Intent as to Unichem.

First, South Carolina requires that there by "an invasion by a physical, tangible thing for a trespass to exist." *Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 145, 747 S.E.2d 468, 476 (2013). Plaintiff's claims are based entirely on the alleged invasion by an intangible substance, chemicals detectible only by lab testing. Accordingly, this is not the type of alleged injury recoverable under a trespass claim.

Additionally, "[t]o constitute an actionable trespass . . . there must be [1] an affirmative act, [2] the invasion of the land must be intentional, and [3] the harm caused must be the direct result of that invasion." *Snow v. City of Columbia*, 305 S.C. 544, 553, 409 S.E.2d 797, 802 (Ct. App. 1991). As discussed above, the Amended Complaint does not allege that Unichem affirmatively or intentionally discharged water onto Plaintiff's property. Any PFAS-contaminated water was first treated by the Mauldin Road WWTP, as it is required to do, and then lawfully discharged the water into the Reedy River before it could have reached Lake Greenwood. *See* Am. Compl. ¶ 49. Moreover, Plaintiff has not identified any unauthorized entry onto its property. Instead, Plaintiff voluntarily draws the allegedly contaminated water into its property through its water intakes. *See id.* at ¶ 85. Finally, Plaintiff's trespass claim also fails to identify any interest in property protected by trespass law, which protects only the "right to exclusive possession." *See Babb*, 405 S.C. at 150–51, 747 S.E.2d at 479–80. Here, Plaintiff holds only riparian right of

reasonable use and does not enjoy exclusive right to the water from Reedy River and Lake Greenwood.

**D. Plaintiff's Negligence Claim Fails to Identify a Recognized Duty of Care as well as Any Breach of Such Duty.**

"An essential element in a negligence action is "the existence of a legal duty of care owed by the defendant to the plaintiff." *Shaw v. Psychemedics Corp.*, 426 S.C. 194, 197, 826 S.E.2d 281, 282 (2019) (quoting *Oblachinski v. Reynolds*, 391 S.C. 557, 561, 706 S.E.2d 844, 845–46 (2011)). Plaintiff has simply not identified any legally cognizable duty of care, nor that Unichem could have foreseen that any of its actions could impact Plaintiff. *See Madison v. Babcock*, 371 S.C. 123, 135–36, 638 S.E.2d 650, 656 (2006) ("Under South Carolina law, there is no general duty to control the conduct of another or to warn a third person or potential victim of danger."). Furthermore, even if Plaintiff could identify a duty of care, it cannot demonstrate that Unichem breached such a duty in the few short years it has owned the facility at issue, nor that such breach caused the alleged injury, especially in light of the fact that Unichem discharged to the Mauldin Road WWTP for the water to be treated. Plaintiff details the gradual evolution of PFAS regulation. *See* Am. Compl. ¶¶ 33–43. However, it has not alleged, beyond conclusory assertions, the identity of any specific duty that Unichem to Plaintiffs, nor that Unichem breached any such duty by acting with a lack of due care or that it failed to comply with laws, regulations, or generally accepted practices related to safe handling of PFAS. Additionally, as discussed above in Subsection II.A, Plaintiffs have not provided sufficient factual allegations supporting a *reasonable* inference that Unichem's alleged discharge actually or proximately caused any of the alleged injuries.

ELECTRONICALLY FILED - 2024 Dec 20 3:36 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

### III.   PLAINTIFF'S CLAIMS ARE BARRED BY THE FREE PUBLIC SERVICE DOCTRINE.

Plaintiff is a governmental, special purpose entity that is duly authorized to provide "potable water to residents of Greenwood." Am. Compl. ¶ 13 (citing S.C. Code Ann. § 6-11-1610). Under the municipal cost recovery rule, also known as the "free public services doctrine," public expenditures made in the performance of governmental functions, like those speculative and undefinable costs sought by Plaintiff to upgrade its surface water treatment plant ("SWTP"), are not recoverable in tort. *See United States v. Standard Oil Co. of Cal.*, 332 U.S. 301 (1947).

### IV.   IN THE ALTERNATIVE, THE COURT MAY HOLD THIS ACTION IN ABEYANCE.

In the alternative, if the claims against Unichem are not dismissed in their entirety, the Court should hold the action in abeyance until the MCLs are enforced and/or Plaintiff has established a treatment plan.

### CONCLUSION

For the foregoing reasons, and as will be more fully discussed in a memorandum of law to be filed in accordance with any briefing schedule set by this Court, Unichem respectfully requests that the Court grant its motion to dismiss Plaintiff's Amended Complaint.

[Signature on following page]

7

ELECTRONICALLY FILED - 2024 Dec 20 3:36 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Dec 20 3:36 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

WOMBLE BOND DICKINSON (US) LLP

*s/ James E. Weatherholtz*

James E. Weatherholtz, S.C. Bar No. 16872
Andrea L. McDonald, S.C. Bar No. 105308
5 Exchange St.
P.O. Box 999 [29402]
Charleston, SC  29401
843-722-3400
James.Weatherholtz@wbd-us.com
Andi.McDonald@wbd-us.com

*Attorneys for Defendant Unichem Specialty Chemicals, Inc.*

Charleston, South Carolina
December 20, 2024

8

ELECTRONICALLY FILED - 2024 Dec 20 1:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF GREENWOOD | ) | EIGHTH JUDICIAL CIRCUIT |
| | ) | |
| | ) | |
| GREENWOOD COMMISSIONERS OF PUBLIC WORKS, | ) | C.A. No. 2024-CP-24-000735 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONE MILLS RECEIVER, LLC; CRYOVAC, INC.; CRYOVAC, LLC; FIRSTSOURCE WORLDWIDE LLC; FITESA SIMPSONVILLE, INC.; MILLIKEN & COMPANY; OPPERMAN WEBBING, INC.; T&S BRASS AND BRONZE WORKS, INC.; UNICHEM SPECIALTY CHEMICALS, LLC, | ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

### DEFENDANTS CYROVAC, INC. AND CRYOVAC, LLC'S
### MOTION FOR ADMISSION PRO HAC VICE FOR LOLY G. TOR

Defendants Cryovac, Inc. and Cryovac, LLC, by and through their undersigned counsel, hereby move this Court, pursuant to Rule 404, SCACR, for an Order admitting *pro hac vice* Loly G. Tor, for purposes of this action, in association with Jennifer H. Thiem of K&L Gates LLP, who is an active member in good standing of the South Carolina Bar.

1.      Loly G. Tor is in good standing of the Bar of the State of New Jersey as indicated in Ms. Tor's Verified Application for Admission *pro hac vice* submitted herewith, and is a member of K&L Gates LLP, One Newark Center, 10th Floor, Newark, New Jersey 07102.

2.      Loly G. Tor is handling this matter in association with Jennifer H. Thiem, who is a member of the law firm of K&L Gates LLP, 134 Meeting Street, Suite 500, Charleston, SC 29401, a member in good standing with the South Carolina Bar (S.C. Bar #73739), and a resident of Charleston, South Carolina.

321630483.1

3.    This Motion is based on the pleadings herein and the Verified Application for Admission *Pro Hac Vice* of Loly G. Tor, a copy of which is attached as Exhibit A, and has been served on the South Carolina Supreme Court Office of Bar Admissions along with a $250.00 check made payable to the South Carolina Supreme Court, pursuant to Rule 404 of the South Carolina Appellate Court Rules.

## **CERTIFICATION**

The undersigned certifies that, pursuant to Rule 11 of the South Carolina Rules of Civil Procedure, her office has conferred with counsel for Plaintiff, and counsel for Plaintiff has not objected to this Motion.

K&L GATES LLP


By:  /s/ *Jennifer H. Thiem*
    Jennifer H. Thiem, SC Bar No. 73739
    E-Mail Address: jennifer.thiem@klgates.com
    134 Meeting Street, Suite 500
    Charleston, SC 29401
    Telephone: (843) 579-5600
    Facsimile: (843) 579-5601

    *Attorneys for Cryovac, Inc. and Cryovac, LLC*

December 20, 2024
Charleston, South Carolina

2

321630483.1

ELECTRONICALLY FILED - 2024 Dec 20 1:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

# Exhibit A

ELECTRONICALLY FILED - 2024 Dec 20 1:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Dec 20 1:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

# VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE*
# IN THE STATE OF SOUTH CAROLINA

**Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.**

Greenwood Commissioners of Public Works

**Plaintiff**

VS. Cone Mills Receiver, LLC; Cryovac, Inc.; Cryovac, LLC; Firstsource Worldwide LLC; Fitesa Simpsonville, Inc.; Milliken & Company; Opperman Webbing, Inc.; T&S Brass and Bronze Works, Inc.; Unichem Specialty Chemicals, LLC

**Defendant**

Case No. 2024-CP-24-000735

Mailing Address of Tribunal:

Greenwood County, South Carolina Court of Common Pleas

Tribunal: Greenwood County Courthouse, 528 Monument Street

Greenwood, SC 29646

Comes now ___Loly G. Tor___, applicant herein, and respectfully represents the following:

1. Applicant resides at:

___27 Tatum Dr.___
Street Address

| Middletown | Monmouth | NJ | 07748 |
|---|---|---|---|
| City | County | State | Zip Code |

___973-809-0296___
Telephone

2. Applicant is an attorney and a member of the law firm of (or practices law under the name of)

K&L Gates LLP, with offices at

One Newark Center, 10th Floor
Street Address

| Newark | Essex | New Jersey | 07102 |
|---|---|---|---|
| City | County | State | Zip Code |
| (973) 848-4026 | (973) 809 0296 | (973) 848-4001 | loly.tor@klgates.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

3. Applicant has been retained personally or as a member of the above-named law firm by Cryovac, Inc. and Cryovac, LLC to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

4. Since ___December 17___ of ___2004___, Applicant has been, and presently is, a member in good standing of the bar of the highest court of the the State of New Jersey where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the State of New Jersey where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

5. List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
|---|---|
| District Court of NJ | November 1, 2005 |
| District Court for the Eastern District of NY | September 25, 2009 |
| District Court for the Northern District of NY | December 14, 2017 |
| District Court for the Southern District of NY | March 25, 2008 |
| District Court for the Western District of Pennsylvania | November 18, 2019 |
| Court of Appeals for the Third Circuit | June 13, 2014 |
| Court of Appeals for the Fourth Circuit | February 23, 2016 |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

| Yes |
|---|

6. Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency? If yes, give particulars, e.g., jurisdiction, court date.

| No |
|---|

7. Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked? If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

| No |
|---|

8. Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked? If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

| No |
|---|

9. Please be aware that local counsel must be Rule 403 certified. Local counsel of record associated

with Applicant in this case is ___Jennifer Thiem___ of the ___K&L Gates LLP___

law firm, which has offices at:

134 Meeting Street, Suite 500
_____
Street Address

| Charleston | Charleston | South Carolina | 29401 |
|---|---|---|---|
| City | County | State | Zip Code |
| (843) 579-5638 | (843) 819-2425 | (843) 579-5601 | jennifer.thiem@klgates.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

ELECTRONICALLY FILED - 2024 Dec 20 1:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

73739
_____
South Carolina Bar Number
(You must provide Bar Number)

     10.    Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

| No |
|----|

     11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

| Yes |
|-----|

     12.  Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this _____17th_____ day of _____December_____, 20 _24_

_____
APPLICANT

ELECTRONICALLY FILED - 2024 Dec 20 1:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Dec 20 1:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

## VERIFICATION

STATE OF  NEW JERSEY        )

COUNTY OF  ESSEX           )

I,  Loly G. Tor do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true.  I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice. Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding.  Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

_____
APPLICANT/AFFIANT

Subscribed and sworn to before me this ___17th___ day of ___December___, 20 24 ___

_____
(Notary Signature)

Notary Public for the State of ___New Jersey___
My Commission Expires: 8/19/2026

JOCELYN I. RODRIGUEZ
Notary Public, State of New Jersey
I.D. No. 50044299
Qualified in Essex County
Commission Expires Aug. 19, 2026

## LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this ___18th___ day of ___December___, 20 24 ___

_____
LOCAL COUNSEL OF RECORD

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this ___18th___ day of ___DECEMBER___, 2024 ___

_____

*Page 4 of 4*

Additional Admissions

| Court: | Date Admitted: |
|---|---|
| U.S. Supreme Court | January 14, 2019 |
| New Jersey | December 17, 2004 |
| New York | December 7, 2005 |
| Pennsylvania | July 3, 2017 |
| | |
| | |
| | |
| | |

ELECTRONICALLY FILED - 2024 Dec 20 1:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

# Supreme Court of New Jersey



# Certificate of Good Standing

*This is to certify that* **LOLY GARCIA TOR**
*(No.* **017012004** *) was constituted and appointed an Attorney at Law of New Jersey on* **December 17, 2004** *and, as such, has been admitted to practice before the Supreme Court and all other courts of this State as an Attorney at Law, according to its laws, rules, and customs.*

*I further certify that as of this date, the above-named is an Attorney at Law in Good Standing. For the purpose of this Certificate, an attorney is in "Good Standing" if the Court's records reflect that the attorney: 1) is current with all assessments imposed as a part of the filing of the annual Attorney Registration Statement, including, but not limited to, all obligations to the New Jersey Lawyers' Fund for Client Protection; 2) is not suspended or disbarred from the practice of law; 3) has not resigned from the Bar of this State; and 4) has not been transferred to Disability Inactive status pursuant to Rule 1:20-12.*

*Please note that this Certificate does not constitute confirmation of an attorney's satisfaction of the administrative requirements of Rule 1:21-1(a) for eligibility to practice law in this State.*

*In testimony whereof, I have hereunto set my hand and affixed the Seal of the Supreme Court, at Trenton, this 11th day of December, 2024.*



*Clerk of the Supreme Court*

ELECTRONICALLY FILED - 2024 Dec 20 1:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Jan 06 6:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF GREENWOOD** | ) | **EIGHTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| GREENWOOD COMMISSIONERS OF PUBLIC WORKS, | ) | C.A. No. 2024-CP-24-000735 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONE MILLS RECEIVER, LLC; CRYOVAC, INC.; CRYOVAC, LLC; FIRSTSOURCE WORLDWIDE LLC; FITESA SIMPSONVILLE, INC.; MILLIKEN & COMPANY; OPPERMAN WEBBING, INC.; T&S BRASS AND BRONZE WORKS, INC.; UNICHEM SPECIALTY CHEMICALS, LLC, | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |

## PROPOSED ORDER GRANTING PRO HAC VICE ADMISSION

WHEREAS Defendants Cryovac, Inc. and Cryovac, LLC by and through their counsel, have moved this court to admit Loly G. Tor *pro hac vice* in this Court in the above-captioned case; and

WHEREAS Loly G. Tor's Verified Application for Admission has been submitted to the South Carolina Supreme Court Office of Bar Admissions with the $250 filing fee;

IT IS ORDERED that Loly G. Tor be admitted to practice in this Court for purposes of representing the Defendants Cryovac, Inc. and Cryovac, LLC in the above-captioned case.

IT IS SO ORDERED this ____ day of _____, 2025.

_____
The Honorable Grace Gilchrist Knie

ELECTRONICALLY FILED - 2025 Jan 06 6:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735



Greenwood Common Pleas

**Case Caption:**     Greenwood Commissioners Of Public Works VS   Cone Mills
                      Receiver, Llc , defendant, et al

**Case Number:**     2024CP2400735

**Type:**            Order/Pro Hac Vice


IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760


Electronically signed on 2025-01-06 15:27:50     page 2 of 2

ELECTRONICALLY FILED - 2024 Dec 26 10:21 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF GREENWOOD | ) | FOR THE EIGHTH JUDICIAL CIRCUIT |
| | ) | |
| GREENWOOD COMMISSIONERS OF PUBLIC WORKS, | ) ) | CA No. 2024-CP-00735 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | **UNICHEM SPECIALTY CHEMICALS,** |
| CONE MILLS RECEIVER, LLC; | ) | **LLC'S MOTION FOR PROTECTIVE** |
| CRYOVAC, INC.; CRYOVAC, LLC; | ) | **ORDER AND TO STAY DISCOVERY** |
| FIRSTSOURCE WORLDWIDE, LLC; | ) | |
| FITESA SIMPSONVILLE, INC.; | ) | |
| MILLIKEN & COMPANY; OPPERMAN | ) | |
| WEBBING, INC.; T&S BRASS AND | ) | |
| BRONZE WORKS, INC.; UNICHEM | ) | |
| SPECIALTY CHEMICALS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendant Unichem Specialty Chemicals, LLC ("Unichem"), by and through its undersigned attorneys, hereby joins the arguments and requests for relief as set forth in the pending motions for protective order identified below and moves this honorable Court for an Order staying discovery and protecting Unichem from responding to discovery requests until a ruling is entered on its Motion to Dismiss.

On or about October 15, 2024, Plaintiff served its Amended Complaint and First Interrogatories and Requests for Production on Unichem. By email on October 29, 2024, counsel for Unichem requested an extension to investigate the allegations in the Amended Complaint. Plaintiff agreed to extend Unichem's deadline to respond to the Amended Complaint until December 20, 2024 and Unichem's deadline to respond to discovery until January 15, 2025.

On December 20, 2024, Unichem filed its Motion to Dismiss the Amended Complaint, raising numerous grounds for complete dismissal of all claims against it. In order to avoid complex

1

and burdensome discovery, which may be rendered moot by an Order granting Unichem's pending Motion to Dismiss, counsel for Unichem requested that Plaintiff agree to stay discovery pending resolution of Unichem's Motion or until further guidance is received from the Court during the status conference scheduled for January 22, 2025. Plaintiff declined to agree to stay discovery.

Accordingly, Unichem moves to join the arguments and requests for relief set forth in Opperman Webbing, Inc.'s Motion for Protective Order to Stay Discovery Pending the Resolution of Its Motion to Dismiss Plaintiff's Amended Complaint ("Opperman's Motion") and Defendant T&S Brass and Bronze Works, Inc.'s Motion for Protective Order to Stay Discovery Pending Resolution of Motion to Dismiss ("T&S's Motion" and together with Opperman's Motion, "Pending Motions for Protective Order'). Unichem has reviewed the Pending Motions for Protective Order and determined that Unichem would raise the same arguments. In the interest of judicial economy, and to avoid potential redundancy on the issue before the Court in the Pending Motions for Protective Order, Unichem hereby adopts and joins the Pending Motions for Protective Order as if filed on behalf of Unichem. Accordingly, Unichem respectfully requests that this Court consider the Pending Motions for Protective Order as if filed by Unichem and enter an Order in its favor consistent with the relief sought therein.

SIGNATURE PAGE FOLLOWS

2

ELECTRONICALLY FILED - 2024 Dec 26 10:21 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Dec 26 10:21 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

WOMBLE BOND DICKINSON (US) LLP

*s/ James E. Weatherholtz*

_____
James E. Weatherholtz, S.C. Bar No. 16872
Andrea L. McDonald, S.C. Bar No. 105308
5 Exchange St.
P.O. Box 999 [29402]
Charleston, SC  29401
843-722-3400
James.Weatherholtz@wbd-us.com
Andi.McDonald@wbd-us.com

*Attorneys for Defendant Unichem Specialty Chemicals, LLC*

Charleston, South Carolina
December 26, 2024

3

ELECTRONICALLY FILED - 2025 Jan 03 1:07 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF GREENWOOD** | ) | **EIGHTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| GREENWOOD COMMISSIONERS OF | ) | C.A. No. 2024-CP-24-000735 |
| PUBLIC WORKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONE MILLS RECEIVER, LLC; | ) | |
| CRYOVAC, INC.; CRYOVAC, LLC; | ) | |
| FIRSTSOURCE WORLDWIDE LLC; | ) | |
| FITESA SIMPSONVILLE, INC.; | ) | |
| MILLIKEN & COMPANY; OPPERMAN | ) | |
| WEBBING, INC.; T&S BRASS AND | ) | |
| BRONZE WORKS, INC.; UNICHEM | ) | |
| SPECIALTY CHEMICALS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## PROPOSED ORDER GRANTING PRO HAC VICE ADMISSION

WHEREAS Defendants Cryovac, Inc. and Cryovac, LLC by and through their counsel, have moved this court to admit Loly G. Tor *pro hac vice* in this Court in the above-captioned case; and

WHEREAS Loly G. Tor's Verified Application for Admission has been submitted to the South Carolina Supreme Court Office of Bar Admissions with the $250 filing fee;

IT IS ORDERED that Loly G. Tor be admitted to practice in this Court for purposes of representing the Defendants Cryovac, Inc. and Cryovac, LLC in the above-captioned case.

IT IS SO ORDERED this ____ day of _____, 2024.

_____
The Honorable Frank R. Addy, Jr.

ELECTRONICALLY FILED - 2025 Jan 03 1:07 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735



Greenwood Common Pleas

**Case Caption:**   Greenwood Commissioners Of Public Works VS   Cone Mills
Receiver, Llc , defendant, et al
**Case Number:**   2024CP2400735

**Type:**   Order/Pro Hac Vice

So Ordered

S/ Frank R. Addy, Jr.

Electronically signed on 2025-01-03 12:06:16     page 2 of 2

ELECTRONICALLY FILED - 2025 Jan 06 2:18 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF GREENWOOD** | ) | **EIGHTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| **GREENWOOD COMMISSIONERS** | ) | **C.A. No. 2024-CP-24-00735** |
| **OF PUBLIC WORKS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CONE MILLS RECEIVER, LLC;** | ) | |
| **CRYOVAC, INC.; CRYOVAC, LLC;** | ) | |
| **FIRSTSOURCE WORLDWIDE, LLC;** | ) | |
| **FITESA SIMPSONVILLE, INC.;** | ) | |
| **MILLIKEN & COMPANY;** | ) | |
| **OPPERMANN WEBBING, INC.; T&S** | ) | |
| **BRASS AND BRONZE WORKS, INC.;** | ) | |
| **UNICHEM SPECIALTY CHEMICALS,** | ) | |
| **LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### DEFENDANT MILLIKEN & COMPANY'S
### MOTION FOR ADMISSION PRO HAC VICE FOR MICHAEL WEISS

Defendant Milliken & Company, by and through their undersigned counsel, hereby move this Court, pursuant to Rule 404, SCAR, for an Order admitting *pro hac vice* Michael Weiss, for purposes of this action, in association with Rachael L. Anna of Wyche, PA, who is an active member in good standing of the South Carolina Bar.

1.      Michael Weiss is in good standing with the Bar of the State of Georgia as indicated in Mr. Weiss's Verified Application for Admission *Pro Hac Vice* submitted herewith, and is a member of Carrol & Weiss LLP, 2870 Peachtree Rd NW, Suite 193, Atlanta, GA 30305-2918.

2.      Michael Weiss is handling this matter in association with Rachael L. Anna, who is a member of the firm of Wyche, PA, 200 East Broad Street, Suite 400, Greenville, SC 29601-3512, a member in good standing with the South Carolina Bar (SC Bar No. 100486), and a resident of Greenville, South Carolina.

3.      This Motion is based on the pleadings herein and the Verified Application for Admission *Pro Hac Vice* of Michael Weiss, a copy of which is attached as Exhibit A, and has been served on the South Carolina Supreme Court Office of Bar Admissions along with a $250.00 check made payable to the South Carolina Supreme Court, pursuant to Rule 404 of the South Carolina Appellate Court Rules.

## CERTIFICATION

The undersigned certifies that, pursuant to Rule 11 of the South Carolina Rules of Civil Procedure, her office has conferred with counsel for Plaintiff, and counsel for Plaintiff has not objected to this Motion.

{signature page follows}

ELECTRONICALLY FILED - 2025 Jan 06 2:18 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Jan 06 2:18 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

*s/Rachael L. Anna*
Rachael L. Anna (SC Bar No. 100486)
Rita Bolt Barker (SC Bar No. 77600)
WYCHE, PA
200 East Broad Street, Suite 400
Greenville, SC 29601-3512
Tel: (864) 242-8200
Fax: (864) 235-8900
ranna@wyche.com
rbarker@wyche.com

-and-

Jameson B. Carroll (*pro hac vice* forthcoming)
Michael Weiss (*pro hac vice* forthcoming)
CARROLL & WEISS LLP
2870 Peachtree Rd NW, Suite 193
Atlanta, GA 30305-2918
Tel: (404) 514-5061
jcarroll@carrollweiss.com
mweiss@carrollweiss.com

**Attorneys for Defendant Milliken & Company**

January 6, 2025
Greenville, South Carolina

# EXHIBIT A

(application for admission *pro hac vice*)

ELECTRONICALLY FILED - 2025 Jan 06 2:18 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

# VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE*
# IN THE STATE OF SOUTH CAROLINA

**Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.**

| Greenwood Comms. of Pub. Works | 2024-CP-24-00735 | Greenwood Common Pleas, Eighth Cir. |
|---|---|---|
| Plaintiff | Case No. | Tribunal |

vs.

Mailing Address of Tribunal:

| Cone Mills Receiver, LLC, et al. | | 528 Monument Street |
|---|---|---|
| Defendant | | Room 114 |
| | | Greenwood, SC 29646 |

Comes now _____**Michael Weiss**_____, applicant herein, and respectfully represents the following:

1. Applicant resides at:

**97 Druid Circle**
Street Address

| **Atlanta** | **Fulton** | **Georgia** | **30307** |
|---|---|---|---|
| City | County | State | Zip Code |

**404-668-4063**
Telephone

2. Applicant is an attorney and a member of the law firm of (or practices law under the name of) **Carroll & Weiss, LLP**, with offices at

**2870 Peachtree Rd. NW, Ste. 193**
Street Address

| **Atlanta** | **Fulton** | **Georgia** | **30305-2918** |
|---|---|---|---|
| City | County | State | Zip Code |
| **404-668-4063** | **404-668-4063** | **N/A** | **mweiss@Carrollweiss.com** |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

3. Applicant has been retained personally or as a member of the above-named law firm by **Milliken & Company** to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

4. Since **December** of **2003**, Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of **Georgia** where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

ELECTRONICALLY FILED - 2025 Jan 06 2:18 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

5.  List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
|---|---|
| State of Georgia | 2003 |
| Northern District of Georgia | 2003 |
| Middle District of Georgia | 2004 |
| U.S Supreme Court | 2010 |
| | |
| | |
| | |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

Yes.

6.  Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency?  If yes, give particulars, e.g., jurisdiction, court date.

NA

7.  Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked?  If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

No.

8.  Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked?  If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

NA

9.  Please be aware that local counsel must be Rule 403 certified.  Local counsel of record associated

with Applicant in this case is _____ Rachael L. Anna _____ of the _____ WYCHE, PA _____

law firm, which has offices at:

_____ 200 East Broad Street, Ste. 400 _____
Street Address

| _____ Greenville _____ | _____ Greenville _____ | _____ South Carolina _____ | _____ 29601-3512 _____ |
|---|---|---|---|
| City | County | State | Zip Code |
| _____ (864)242-8200 _____ | _____ | _____ (864)235-8900 _____ | ranna@wyche.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

ELECTRONICALLY FILED - 2025 Jan 06 2:18 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Jan 06 2:18 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

100486
_____

South Carolina Bar Number
(You must provide Bar Number)

10.    Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

| See Exhibit A. |
| --- |

11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

| Yes. |
| --- |

12.  Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this _____13th_____ day of _____December_____, 20 _24_____

_____
APPLICANT

*Page 3 of 4*

ELECTRONICALLY FILED - 2025 Jan 06 2:18 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

## VERIFICATION

STATE OF _____Georgia_____ )

COUNTY OF _____Fulton_____ )

I, _____Michael Weiss_____, do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true. I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice. Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding. Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

_____
APPLICANT/AFFIANT

Subscribed and sworn to before me this ___14th___ day of ___DECEMBER___, 20 24

_____
(Notary Signature)

Notary Public for the State of ___GEORGIA___

My Commission Expires: ___02/24/2027___

*P PATEL*
*MY COMMISSION EXPIRES*
*NOTARY PUBLIC*
*COBB COUNTY, GEORGIA*
*FEBRUARY 24, 2027*

## LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this ___17th___ day of ___December___, 20 24

_____
LOCAL COUNSEL OF RECORD

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this ___17th___ day of ___December___, 20 24

_____

Page 4 of 4



# The Supreme Court of South Carolina

## Office of Bar Admissions

PATRICIA A. HOWARD
CLERK OF COURT

KATHLEEN "TINA" BRYANT
MANAGER, OFFICE OF BAR
ADMISSIONS

POST OFFICE BOX 11330
COLUMBIA, SOUTH CAROLINA 29211
TELEPHONE: (803) 734-1317
FAX: (803) 734-0394

December 20, 2024

The Honorable Chastity Copeland
Clerk of Court
528 Monument Street
Room #114
Greenwood, SC 29646

RE:    Greenwood Commissioners of Public Works v. Cone Mills Receiver, LLC, et al.

Case No.: 2024-CP-24-00735

Dear Ms. Copeland:

I certify that the Office of Bar Admissions has received the verified application requesting Michael Weiss be admitted *pro hac vice* in the above action. The $250 filing fee for the applicant has been paid.

Sincerely,

M.J. Thames
Bar Admissions Coordinator

cc:    Michael Weiss
       Rachael L. Anna

ELECTRONICALLY FILED - 2025 Jan 06 2:18 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Jan 07 3:25 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF GREENWOOD** | ) | **EIGHTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| **GREENWOOD COMMISSIONERS** | ) | **C.A. No. 2024-CP-24-00735** |
| **OF PUBLIC WORKS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CONE MILLS RECEIVER, LLC;** | ) | |
| **CRYOVAC, INC.; CRYOVAC, LLC;** | ) | |
| **FIRSTSOURCE WORLDWIDE, LLC;** | ) | |
| **FITESA SIMPSONVILLE, INC.;** | ) | |
| **MILLIKEN & COMPANY;** | ) | |
| **OPPERMANN WEBBING, INC.; T&S** | ) | |
| **BRASS AND BRONZE WORKS, INC.;** | ) | |
| **UNICHEM SPECIALTY CHEMICALS,** | ) | |
| **LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### PROPOSED ORDER GRANTING PRO HAC VICE ADMISSION

WHEREAS Defendant Milliken & Company by and through their counsel, has moved this Court to admit Michael Weiss *pro hac vice* in this Court in the above-captioned case; and

WHEREAS Michael Weiss's Verified Application for Admission has been submitted to the South Carolina Supreme Court Office of Bar Admissions with the $250 filing fee;

IT IS ORDERED that Michael Weiss be admitted to practice in this Court for the purpose of representing the Defendant Milliken & Company in the above-captioned case.

IT IS SO ORDERD this _____ day of _____, 2025.

_____
The Honorable Grace Gilchrist Knie

ELECTRONICALLY FILED - 2025 Jan 07 3:25 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735



Greenwood Common Pleas

**Case Caption:**     Greenwood Commissioners Of Public Works VS   Cone Mills
                      Receiver, Llc , defendant, et al
**Case Number:**      2024CP2400735

**Type:**             Order/Pro Hac Vice


IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760


Electronically signed on 2025-01-07 13:13:10    page 2 of 2

ELECTRONICALLY FILED - 2025 Jan 07 3:25 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF GREENWOOD** | ) | **EIGHTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| **GREENWOOD COMMISSIONERS** | ) | **C.A. No. 2024-CP-24-00735** |
| **OF PUBLIC WORKS,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | |
| **v.** | ) | |
| | ) | |
| **CONE MILLS RECEIVER, LLC;** | ) | |
| **CRYOVAC, INC.; CRYOVAC, LLC;** | ) | |
| **FIRSTSOURCE WORLDWIDE, LLC;** | ) | |
| **FITESA SIMPSONVILLE, INC.;** | ) | |
| **MILLIKEN & COMPANY;** | ) | |
| **OPPERMANN WEBBING, INC.; T&S** | ) | |
| **BRASS AND BRONZE WORKS, INC.;** | ) | |
| **UNICHEM SPECIALTY CHEMICALS,** | ) | |
| **LLC,** | ) | |
| | ) | |
| **Defendants.** | ) | |
| | ) | |

### PROPOSED ORDER GRANTING PRO HAC VICE ADMISSION

WHEREAS Defendant Milliken & Company by and through their counsel, has moved this Court to admit Michael Weiss *pro hac vice* in this Court in the above-captioned case; and

WHEREAS Michael Weiss's Verified Application for Admission has been submitted to the South Carolina Supreme Court Office of Bar Admissions with the $250 filing fee;

IT IS ORDERED that Michael Weiss be admitted to practice in this Court for the purpose of representing the Defendant Milliken & Company in the above-captioned case.

IT IS SO ORDERD this _____ day of _____, 2025.

_____
The Honorable Grace Gilchrist Knie

ELECTRONICALLY FILED - 2025 Jan 07 3:25 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735



Greenwood Common Pleas

**Case Caption:**     Greenwood Commissioners Of Public Works VS   Cone Mills
Receiver, Llc , defendant, et al

**Case Number:**     2024CP2400735

**Type:**     Order/Pro Hac Vice

IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760

Electronically signed on 2025-01-07 13:13:10     page 2 of 2

ELECTRONICALLY FILED - 2025 Jan 17 5:36 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**STATE OF SOUTH CAROLINA**

**COUNTY OF SPARTANBURG**

**IN THE COURT OF COMMON PLEAS**

**SEVENTH JUDICIAL CIRCUIT**

Woodruff-Roebuck Water District,

Plaintiff,

v.

AFL Telecommunications, LLC *et al.*,

Defendants.

C.A. No. 2024-CP-42-02480

**STATE OF SOUTH CAROLINA**

**COUNTY OF GREENWOOD**

**IN THE COURT OF COMMON PLEAS**

**EIGHTH JUDICIAL CIRCUIT**

Greenwood Commissioners of Public Works,

Plaintiff,

v.

Cone Mills Receiver, LLC *et al.*,

Defendants.

C.A. No. 2024-CP-24-00735

**STATE OF SOUTH CAROLINA**

**COUNTY OF LAURENS**

**IN THE COURT OF COMMON PLEAS**

**EIGHTH JUDICIAL CIRCUIT**

Laurens County Water and Sewer Commission,

Plaintiff,

v.

Cone Mills Receiver LLC *et al.*,

Defendants.

C.A. No. 2024-CP-30-00734

ELECTRONICALLY FILED - 2025 Jan 17 5:36 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**STATE OF SOUTH CAROLINA**

**COUNTY OF HORRY**

**IN THE COURT OF COMMON PLEAS**

**FIFTEENTH JUDICIAL CIRCUIT**

Grand Strand Water and Sewer Authority,

Plaintiff,

v.

Aladdin Manufacturing Corporation *et al.*,

Defendants.

C.A. No. 2024-CP-26-05523

**STATE OF SOUTH CAROLINA**

**COUNTY OF FLORENCE**

**IN THE COURT OF COMMON PLEAS**

**TWELFTH JUDICIAL CIRCUIT**

City of Florence, South Carolina,

Plaintiff,

v.

Aladdin Manufacturing Corporation *et al.*,

Defendants.

C.A. No. 2024-CP-21-02844

**STATE OF SOUTH CAROLINA**

**COUNTY OF BERKELEY**

**IN THE COURT OF COMMON PLEAS**

**NINTH JUDICIAL CIRCUIT**

South Carolina Public Service Authority, a/k/a Santee Cooper, an agency of the State of South Carolina,

Plaintiff,

v.

China Jushi USA Corporation *et al.*,

Defendants.

C.A. No. 2024-CP-08-03336

ELECTRONICALLY FILED - 2025 Jan 17 5:36 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | |
|---|---|
| **STATE OF SOUTH CAROLINA** | **IN THE COURT OF COMMON PLEAS** |
| **COUNTY OF UNION** | **SIXTEENTH JUDICIAL CIRCUIT** |

City of Union, South Carolina,

              Plaintiff,

     v.

Milliken & Company *et al.*,

              Defendants.

C.A. No. 2024-CP-44-00558

| | |
|---|---|
| **STATE OF SOUTH CAROLINA** | **IN THE COURT OF COMMON PLEAS** |
| **COUNTY OF LAURENS** | **EIGHTH JUDICIAL CIRCUIT** |

City of Clinton, South Carolina,

              Plaintiff,

     v.

Fibertex Nonwovens, Inc. *et al.*,

              Defendants.

C.A. No. 2025-CP-30-00005

**PLAINTIFFS' STATUS CONFERENCE STATEMENT**

Plaintiffs in this consolidated litigation[1] are local and regional public utilities and water authorities who share a common challenge: the contamination of their water sources and properties with certain perfluoroalkyl substances ("PFAS").

---

[1] The undersigned represent Plaintiffs Woodruff-Roebuck Water District; Greenwood Commissioners of Public Works; Laurens County Water and Sewer Commission; Grand Strand Water and Sewer Authority; City of Florence, South Carolina; South Carolina Public Service Authority (Santee Cooper); City of Union, South Carolina; and City of Clinton, South Carolina. Pursuant to the Supreme Court's consolidation order, this litigation also includes additional local public utilities and water authorities.

ELECTRONICALLY FILED - 2025 Jan 17 5:36 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

The Environmental Protection Agency's recent publications mark a significant advancement in the scientific understanding of PFAS toxicity. While the EPA previously advised that PFOA and PFOS—the two most studied PFAS compounds—could be safely consumed at levels of up to 70 parts per trillion ("ppt") over a lifetime, the agency now makes clear that **no safe level exists** for consuming these chemicals. Building on this understanding, the EPA has enacted maximum contaminant levels under the Safe Drinking Water Act for PFOA, PFOS, and four additional PFAS types ("MCL PFAS"). These regulations prohibit water authorities from delivering drinking water containing MCL PFAS concentrations above these newly defined thresholds, with enforcement to begin in 2029.

However, like the vast majority of water providers, Plaintiffs rely on conventional water treatment technologies that are unable to remove PFAS. And MCL PFAS, including PFOA and PFOS, currently contaminate their drinking water, which leaves Plaintiffs' treatment plants at levels above the EPA limits. Not only does the PFAS contamination pose an obstacle to Plaintiffs' legal compliance and injure Plaintiffs' property interests—according to the EPA, it directly threatens public health and the environment. Indeed, even if Plaintiffs were subject to no regulation, the EPA's stance alone compels that Plaintiffs act to protect their own interests and those of their customers and communities.

Plaintiffs serve cities and counties across the state, providing water to over 800,000 residences and businesses. When accounting for spouses, children, employees, tenants, patients, and other individuals in these communities, the PFAS contamination problem in Plaintiffs' water supplies impacts **well over a million South Carolina residents**—approaching or exceeding 25% of the state's population.

The contamination spreads through South Carolina's rivers, lakes, and streams—surface waters that Plaintiffs are authorized to withdraw, treat, and provide to customers. It is largely driven by private industries that utilize MCL PFAS in their manufacturing processes, generating PFAS-laden wastewater. These industries discharge wastewater into local treatment plants, which process and release it into the same surface waters that Plaintiffs rely on for drinking water. Unfortunately, as at Plaintiffs' water facilities, PFAS bypass the conventional treatment systems used by wastewater treatment plants and flow unhindered into the state's surface waters. These contaminated waters then pass through Plaintiffs' water plants just as easily and into homes and businesses across the state.

Plaintiffs commenced this litigation not only to protect their own rights, but also because the PFAS contamination presents a critical public health and infrastructural challenge—a burden that neither Plaintiffs nor their customers can, or should, bear alone. Plaintiffs' surface water treatment plants require upgraded treatment technologies to provide PFAS-free water. And Plaintiffs believe that the financial burden of these upgrades should not fall on their drinking water customers and communities, who bear no responsibility for this contamination. Instead, those who caused and profited from the contamination must be held accountable to ensure this crisis is justly resolved. Plaintiffs are seeking to do so both comprehensively and urgently.

Plaintiffs have named numerous industries as defendants due to their alleged discharge of PFAS-contaminated wastewater, either directly to South Carolina surface waters or indirectly through their applicable wastewater treatment providers. Plaintiffs also anticipate adding as defendants the chemical suppliers of PFAS-discharging defendants upon receiving discovery revealing their identities. Thus, Plaintiffs anticipate that the number of parties and scope of discovery in this litigation will be significant.

ELECTRONICALLY FILED - 2025 Jan 17 5:36 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Discovery topics will include:

- The identities of the suppliers of products containing or degrading to MCL PFAS used by Defendants;

- The type and volume of PFAS-containing products supplied to and used by Defendants;

- The industrial processes employed by Defendants who use these products and cause their discharge;

- The chemical composition of the products at issue, including the mechanisms by which the MCL PFAS are present in the products;

- The fate and transport of these products—i.e., the means by which they are used, disposed of, and eventually reach surface waters, Plaintiffs' water sources, and Plaintiffs' properties;

- Defendants' historical knowledge of the chemical properties of, and the environmental and health risks posed by, these products; and

- Instructions, if any, from Defendants' chemical suppliers as to the nature of these products and their proper disposal.

Based on the experience of Plaintiffs' counsel in litigating PFAS cases involving complex topics of chemistry, industry history, and fate and transport, Plaintiffs believe that this discovery will require extensive document production, witness testimony from officers and employees of Plaintiffs and all Defendants, and property inspections.

The volume of complex matters in this case presents unique challenges in organizing and managing recurring issues—both in discovery and in substantive litigation.

Plaintiffs, therefore, make the following recommendations:

1. *Appointment of Leadership*. Leadership counsel will provide the Court with the means for efficiently contacting all parties in each case for scheduling matters, and it will aid the parties in informally resolving issues that require consent or agreement among the parties.

2. *Consolidated Case Number*. A consolidated case number provides a centralized docket for all filings concerning consolidated matters.

3. *Initial Disclosures*. Core discovery topics applicable to all cases can be covered at the outset in each case, including the following:

ELECTRONICALLY FILED - 2025 Jan 17 5:36 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Jan 17 5:36 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

    a. Sales records of products containing MCL PFAS;

    b. Identification of suppliers of MCL PFAS;

    c. Applicable insurance policies;

    d. The analytical results of any PFAS testing conducted by the responding party;

    e. Previous depositions in other cases by any party concerning PFAS; and

    f. Identification of experts.

4. *Discovery Protocols.* Standard discovery protocols inform the parties of this Court's expectations in how to approach matters that can otherwise cause delay, such as disputes and scheduling difficulties. Protocols should cover matters such as:

    a. Objections to written discovery, including the prohibition of both boilerplate and general objections, and requiring clarity as to whether the responding party is withholding responsive information based on an objection;

    b. Special interrogatories;

    c. Property inspection procedures, including scheduling and setting protocols for PFAS-sampling methods and parameters;

    d. Standard procedures for resolving discovery disputes, including meet and confer processes and resolution with the Court;

    e. Privilege logs;

    f. Document requests made to Plaintiffs via the Freedom of Information Act;

    g. Subpoenas;

    h. Production of documents and electronically stored information;

    i. Deposition scheduling and conduct; and

    j. Protective orders, including confidentiality designations for documents and testimony produced in discovery.

5. *Periodic Conferences before the Court*. Regular conferences before this Court will aid efficiencies in many ways, including dispute resolution and maintaining discovery scheduling.

6. *Consolidated Briefing*. Except for motions involving facts unique to a particular Defendant, consolidated briefing will prevent frequent repetition and bloat from overburdening the parties and the Court, while maintaining full and fair representation of the parties' views on the facts and their legal arguments.

7. *Setting Trial Dates*. Firm trial dates aid all parties in completing discovery and readying the case for resolution. Plaintiffs recommend January 2027.

Due to the volume of parties and factual complexities in these cases, Plaintiffs believe that a Case Management Order streamlining these matters as outlined above will significantly contribute to resolving this case in the most efficient and timely manner possible.

Respectfully submitted,

 */s/ John B. White. Jr.*
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

*Attorneys for Plaintiffs*

January 17, 2025

ELECTRONICALLY FILED - 2025 Jan 17 5:36 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Jan 20 12:56 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS EIGHTH JUDICIAL CIRCUIT |
| COUNTY OF GREENWOOD | ) | |
| Greenwood Commissioners of Public Works, | ) | CASE NO.: 2024-CP-24-00735 |
| Plaintiff, | ) | |
| vs. | ) | |
| Cone Mills Receiver, LLC; *et al.*, | ) | |
| Defendants. | ) | |

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS EIGHTH JUDICIAL CIRCUIT |
| COUNTY OF LAURENS | ) | |
| Laurens County Water and Sewer Commission, | ) | Civil Action No. 2024-CP-30-00734 |
| Plaintiff, | ) | |
| v. | ) | |
| Cone Mills Receiver, LLC; *et al.*, | ) | |
| Defendants. | ) | |

## DEFENDANT T&S BRASS AND BRONZE WORKS, INC.'S RESPONSE TO PLAINTIFFS' STATUS CONFERENCE STATEMENT

Defendant T&S Brass and Bronze Works, Inc. ("T&S Brass") hereby submits this response to Plaintiffs' "Status Conference Statement," which was filed with the Court on January 17, 2025 in the above-referenced cases, as well as six (6) other companion cases.[1]  The Status Conference is scheduled to be held virtually before Judge Knie on January 22, 2025.

---

[1] Plaintiff Woodruff-Roebuck Water District filed its "Statement" in *Woodruff-Roebuck Water District v. AFL Telecommunications, et al.*, C/A No. 2024-CP-42-0248, despite the fact that case has been removed to federal court.

1

While T&S Brass is willing to entertain case management suggestions and consult with Plaintiffs' counsel, consideration of these issues by the Court at this stage is premature. Plaintiffs' proposal appears to ignore the many dispositive motions that have been filed in the above-captioned cases, as well as similar motions filed in companion cases in other counties. T&S Brass respectfully suggests this Court devote its attention to adjudicating the pending dispositive motions to determine what "cases" it might be managing, if any, before dealing with Plaintiffs' proposal.

## **DISCUSSION**

Plaintiffs filed their Amended Complaints against T&S Brass and various co-defendants in the above-captioned actions asserting causes of action for negligence, continuing nuisance, public nuisance, and trespass related to alleged "ongoing contamination of the Reedy River, Saluda River, Lake Greenwood, and Plaintiff's property." Plaintiffs allege T&S Brass, along with its co-defendants, discharged and continue to unlawfully discharge products that contain or degrade to certain toxic per- and polyfluoroalkyl substances ("PFAS") into the above-referenced waterways.[2]

As drinking water providers, Plaintiffs base their claims on recent and still developing standards promulgated by the EPA related to permissible PFAS levels in drinking water. Plaintiffs acknowledge in their Amended Complaints and their "Status Conference Statement," that they are not required to comply with these new standards until **2029**.

Consequently, there is no current legal requirement for PFAS levels in drinking water distributed by Plaintiffs and may never be. Between now and **2029**, the standards may change, or may be abandoned altogether; indeed, the same EPA water standards upon which Plaintiffs base

---

[2] The Complaints filed in the above-captioned actions are virtually identical to the six (6) other companion cases filed by Plaintiffs' counsel in the counties of Spartanburg, Horry, Florence, Berkeley, and Laurens.

ELECTRONICALLY FILED - 2025 Jan 20 12:56 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Jan 20 12:56 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

their claims are the subject of on-going litigation that seeks to overturn those standards on constitutional grounds.[3]

In response to the Amended Complaints, virtually every defendant has filed Motions to Dismiss all of Plaintiffs' causes of action under Rule 12(b)(6), SCRCP.[4]  These motions are currently pending before the Court.  Although each motion asserts unique arguments with regards to Plaintiffs' substantive claims, all have one thing in common – they all argue Plaintiffs' claims are not ripe for adjudication.  Each of these motions also contend that Plaintiffs' claims for negligence, continuing nuisance, public nuisance, and trespass all fail as a matter of law.

Despite the pendency of these dispositive motions (and motions for protective orders as they relate to discovery), Plaintiffs have unilaterally asked the Court to impose a case management order that is akin to those created in the AFFF Multi-District Litigation that Plaintiffs have sought to avoid.  As is the normal protocol, when the time comes to consider a case management order, the Court should require the parties to meet and confer on a proposed consent order before submitting it for the Court's consideration.

Plaintiffs ask the Court to appoint "leadership counsel" to speak on behalf of the defendants.  Not only is there no rule in South Carolina for the imposition of this type of "counsel by committee" without consent, but it deprives individual defendants of the lawyers of their choosing.  Without consent from all counsel (including other plaintiffs' counsel that are not

---

[3] In June 2024, three separate actions were filed challenging the EPA's rule and are currently pending before the U.S. Court of Appeals for the D.C. Circuit. *See Am Water Works Assoc. v. U.S. EPA*, Case No. 24-1188; *Nat'l Assoc. of Manufacturers, et al. v. U.S. EPA*, Case No. 24-1191; *The Chemours Company FC, LLC v. U.S. EPA*, Case No. 24-1192.

[4] Undersigned counsel is also aware of other defendants that will seek to dismiss Plaintiffs' Amended Complaints in companion cases on lack of personal jurisdiction grounds.

ELECTRONICALLY FILED - 2025 Jan 20 12:56 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

signatories to the "Status Conference Statement"), the Court should reject this aspect of Plaintiffs' proposal.

Plaintiffs also ask the Court to impose extra-judicial requirements on discovery, such as requiring initial disclosures from defendants <u>only</u> (like in the AFFF MDL) and establishing one-sided protocols outside of the Rules of Civil Procedure that defendants must abide by during the course of litigation. Again, there is no provision in the rules that calls for this type of case management order without consent.

Finally, Plaintiffs ask that the Court mandate consolidated briefing for any motions not involving "facts unique to a particular Defendant." This is another similarity to the AFFF Multi-District Litigation, and it raises two concerns. First, how would the Court determine whether the facts are unique enough to a particular defendant to "allow" that defendant to file its own motion? Second, even though Plaintiffs have filed a myriad of lawsuits against multiple defendants across South Carolina, they now also want the Court to step in and ease their burden of having to respond to every dispositive or discovery motions that might get filed. Although Plaintiffs might be the "master of [their] complaint[s]," they do not also get to control how their opponents choose to defend themselves. *Damico v. Lennar Carolinas, LLC*, 437 S.C. 593, 615, 878 S.E.2d 746, 757 (2022).

Plaintiffs' "Status Conference Statement" and the requests made therein are premature at this stage in the litigation.[5] The request proposes an extra-judicial process that has no basis in South Carolina law, deprives defendants of lawyers of their own choosing, and removes any

---

[5] Indeed, some defendants in the companion cases have not even appeared in those lawsuits. Moreover, undersigned counsel is aware of at least six (6) other PFAS cases that have been filed throughout the state by another law firm that has not signed on to this "Status Conference Statement" and its proposals for a unilateral Case Management Order.

ELECTRONICALLY FILED - 2025 Jan 20 12:56 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

procedural obstacles from Plaintiffs to begin their fishing expedition to find more defendants to sue.

As a result of the concerns expressed above regarding Plaintiffs' proposal, T&S Brass respectfully requests that the Court hold any decisions as to case management in abeyance for the time being. Instead, T&S Brass asks that the Court to deal with the pending dispositive motions first to determine whether there will be any lawsuits left to administer, and establish the following at the upcoming Status Conference:

1.    Set a briefing schedule for all pending dispositive motions, which would allow ample time for both sides to file memoranda of law in support of their respective positions.

2.    Following a hearing and the Court's ruling on those dispositive motions, authorize discovery to commence pursuant to the South Carolina Rules of Civil Procedure if necessary.

3.    Instruct the parties to negotiate a <u>consent</u> case management order that is agreeable to all parties.

**WILLIAMS MULLEN**

By: s/John G. Tamasitis
Richard H. Willis (SC Bar No. 6159)
Ethan R. Ware (SC Bar No. 7990)
John G. Tamasitis (SC Bar No. 101875)
1230 Main Street, Suite 330
Columbia, SC 29201
Tel. 803.567.4615
Fax: 803.567.4601
rwillis@williamsmullen.com
eware@williamsmullen.com
jtamasitis@williamsmullen.com

*Counsel for Defendant T&S Brass and Bronze Works, Inc.*

January 20, 2025
Columbia, South Carolina

5

ELECTRONICALLY FILED - 2025 Jan 21 2:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**STATE OF SOUTH CAROLINA**

**COUNTY OF GREENWOOD**

GREENWOOD COMMISSIONERS OF PUBLIC WORKS,

*Plaintiff,*

v.

CONE MILLS RECEIVER, LLC; CRYOVAC, INC.; CRYOVAC, LLC; FIRSTSOURCE WORLDWIDE, LLC; FITESA SIMPSONVILLE, INC.; MILLIKEN & COMPANY; OPPERMAN WEBBING, INC.; T&S BRASS AND BRONZE WORKS, INC.; UNICHEM SPECIALTY CHEMICALS, LLC,

*Defendants.*

**IN THE COURT OF COMMON PLEAS**

**EIGHTH JUDICIAL CIRCUIT**

C.A. No. 2024-CP-24-00735

**DEFENDANT FITESA SIMPSONVILLE, INC.'S MOTION FOR PROTECTIVE ORDER AND STAY OF DISCOVERY**

Defendant Fitesa Simpsonville, Inc. ("Fitesa"), by and through its undersigned counsel, hereby joins the arguments and requests for relief as set forth in the pending motions for protective order identified below and respectfully moves this Court, pursuant to Rule 26(c), SCRCP, for a protective order to stay discovery served by Plaintiff Greenwood Commissioners of Public Works ("Plaintiff") pending the Court's resolution of Fitesa's Motion to Dismiss filed on December 20, 2024.

On or about October 28, 2024, Plaintiff served its Amended Complaint and First Interrogatories and Requests for Production on Fitesa.  By email on November 20, 2024, counsel for Fitesa requested an extension to respond to the Amended Complaint and discovery.  Plaintiff agreed to extend Fitesa's deadline to respond to the Amended Complaint until December 23, 2024 and Fitesa's deadline to respond to discovery until January 22, 2025.

On December 20, 2024, Fitesa filed its Motion to Dismiss the Amended Complaint raising several grounds for dismissal of all claims against it.  To avoid complex and burdensome

discovery, which may be rendered moot by an Order granting Fitesa's pending Motion to Dismiss, counsel for Fitesa requested that Plaintiff agree to stay discovery pending resolution of Fitesa's Motion to Dismiss or until further guidance is received from the Court during the status conference scheduled for January 22, 2025.  Plaintiff declined to agree to stay discovery.

Accordingly, Fitesa moves to join the arguments and requests for relief set forth in Defendant Opperman Webbing, Inc.'s Motion for Protective Order to Stay Discovery Pending the Resolution of its Motion to Dismiss Plaintiff's Amended Complaint ("Opperman Motion") and Defendant T&S Brass and Bronze Works, Inc.'s Motion for Protective Order to Stay Discovery Pending Resolution of its Motion to Dismiss ("T&S Motion").  Fitesa has reviewed the Opperman Motion and T&S Motion (together the "Pending Motions for Protective Order") and determined that Fitesa's arguments are the same.  In the interest of judicial economy and to avoid redundancy of this issue before the Court, Fitesa hereby adopts and joins the Pending Motions for Protective Order as if filed on behalf of Fitesa.  Therefore, Fitesa respectfully requests that this Court consider the Pending Motions for Protective Order as if filed by Fitesa and enter an Order to stay discovery served on Fitesa by Plaintiff pending the Court's resolution of Fitesa's Motion to Dismiss

ELECTRONICALLY FILED - 2025 Jan 21 2:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

2

Respectfully submitted, this 21st day of January, 2025.

/s/ *Robert H. Jordan*
Robert H. Jordan
SC State Bar No. 13612
PARKER POE ADAMS & BERNSTEIN LLP
850 Morrison Drive, Suite 400
Charleston, South Carolina 29403
Phone: 843-727-2650
E-mail: robertjordan@parkerpoe.com

Kevin A. Dunlap
SC State Bar No. 13081
Parker Poe Adams & Bernstein LLP
110 East Court Street, Suite 200
Greenville, SC 29601
Telephone: (864) 577-6370
Email: kevindunlap@parkerpoe.com

Steven D. Weber
S.C. State Bar No. 16917
PARKER POE ADAMS & BERNSTEIN LLP
620 South Tryon St., Ste. 800
Charlotte, North Carolina 28202
Tel.: (704) 372-9000
Email: steveweber@parkerpoe.com

*Attorneys for Defendant Fitesa Simpsonville, Inc.*

ELECTRONICALLY FILED - 2025 Jan 21 2:29 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Jan 23 4:03 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

STATE OF SOUTH CAROLINA                 )       IN THE COURT OF COMMON PLEAS
COUNTY OF SPARTANBURG                    )
                                         )
                                         )
IN RE:                                   )
                                         )               NOTICE
                                         )        OF STATUS CONFERENCE
PFAS LITIGATION                          )
COORDINATED DOCKET                       )
                                         )
                                         )
_____)

A status conference has been set in the PFAS Litigation cases for 11:00 a.m. on Friday, January 24, 2025, at the Spartanburg County Courthouse in Courtroom 6D and will be on Judge Knie's virtual courtroom.

Counsel has been notified via electronic mail.

IT IS SO ORDERED at Spartanburg, South Carolina this 23rd day of January, 2025.

_____
Honorable Grace Gilchrist Knie
Circuit Judge
S.C. PFAS Litigation

# The Supreme Court of South Carolina

RE: PFAS Litigation

## ORDER

Pursuant to the provisions of Article V, Section 4 of the South Carolina Constitution, I find that assigning a single circuit judge to dispose of all matters arising out of the PFAS litigation currently pending and to be filed in the state court system will promote the effective and expeditious disposition of this litigation through uniform rulings and will conserve the judicial resources of the parties, their counsel, and the judiciary. Therefore,

IT IS ORDERED that the Honorable Grace Gilchrist Knie be vested with exclusive jurisdiction to hear and dispose of all PFAS litigation cases. Judge Knie shall decide all pretrial motions and other pretrial matters, including appropriate scheduling deadlines and admission of counsel *pro hac vice* pursuant to Rule 404, SCACR, arising out of the PFAS cases filed in the state court system. Judge Knie shall have jurisdiction in all circuits in the state to dispose of all pretrial matters arising out of the PFAS litigation and may schedule such hearings as may be necessary at any time without regard as to whether there is a term of court scheduled.

IT IS FURTHER ORDERED that for administrative purposes and convenience, upon the filing of a new action involving PFAS litigation, the clerk of court shall notify Judge Knie, via email, of such filing within five business days. This notification shall include the case caption, including the docket number, as well as the name of the attorney or party signing the pleadings. Judge Knie shall then direct the clerk of court as to the preferred method for transmitting the pleadings and additional filings to her office.

IT IS FURTHER ORDERED that Judge Knie shall have jurisdiction to issue case management orders directing the consolidation of certain pretrial matters within the PFAS litigation.

IT IS FURTHER ORDERED that this is not a consolidation for trial purposes. At the conclusion of all pretrial matters, any party may move to have

ELECTRONICALLY FILED - 2025 Jan 23 2:01 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

trial ready cases transferred to the trial roster of the court of original jurisdiction or the court of appropriate venue for trial. Judge Knie shall preside over the trials of all PFAS cases.

This order shall remain in effect until amended or rescinded by the Chief Justice.

_____ C.J.
FOR THE COURT
John W. Kittredge
Chief Justice of South Carolina

Columbia, South Carolina
August 14, 2024

ELECTRONICALLY FILED - 2025 Jan 23 2:01 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

# The Supreme Court of South Carolina

RE:  Local PFAS Litigation

---

## ORDER

---

Pursuant to the provisions of Article V, section 4 of the South Carolina Constitution, I find that assigning a single circuit judge to dispose of all matters arising out of the PFAS litigation brought by publicly-owned water providers seeking damages within their local districts (Local PFAS Litigation) currently pending and to be filed in the state court system will promote the effective and expeditious disposition of this litigation through uniform rulings and will conserve the judicial resources of the parties, their counsel, and the judiciary.  Therefore,

IT IS ORDERED that the Honorable Grace Gilchrist Knie be vested with exclusive jurisdiction to hear and dispose of all Local PFAS Litigation cases.  Judge Knie shall decide all pretrial motions and other pretrial matters, including appropriate scheduling deadlines and admission of counsel *pro hac vice* pursuant to Rule 404, SCACR, arising out of the Local PFAS Litigation cases filed in the state court system.  Judge Knie shall have jurisdiction in all circuits in the state to dispose of all pretrial matters arising out of the Local PFAS Litigation and may schedule such hearings as may be necessary at any time without regard to whether there is a term of court scheduled.

IT IS FURTHER ORDERED that for administrative purposes and convenience, upon the filing of a new action involving Local PFAS Litigation, the clerk of court shall notify Judge Knie, via email, of such filing within five business days.  This notification shall include the case caption, including the docket number, as well as the name of the attorney or party signing the pleadings.  Judge Knie shall then direct the clerk of court as to the preferred method for transmitting the pleadings and additional filings to her office.

IT IS FURTHER ORDERED that Judge Knie shall have jurisdiction to issue case management orders directing the consolidation of certain pretrial matters within the Local PFAS Litigation.

ELECTRONICALLY FILED - 2025 Jan 23 2:01 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

IT IS FURTHER ORDERED that this is not a consolidation for trial purposes. At the conclusion of all pretrial matters, any party may move to have trial ready cases transferred to the trial roster of the court of original jurisdiction or the court of appropriate venue for trial. Judge Knie shall preside over the trials of all Local PFAS Litigation cases.

This order supersedes the PFAS Litigation Order dated August 14, 2024, and shall remain in effect until amended or rescinded by the Chief Justice.

John W. Kittredge
Chief Justice of South Carolina

Columbia, South Carolina
October __7__, 2024

ELECTRONICALLY FILED - 2025 Jan 23 2:01 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Jan 27 3:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF GREENWOOD | ) | EIGHTH JUDICIAL CIRCUIT |
| | ) | |
| | ) | |
| GREENWOOD COMMISSIONERS OF PUBLIC WORKS, | ) | C.A. No. 2024-CP-24-00735 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONE MILLS RECEIVER, LLC; CRYOVAC, INC.; CRYOVAC, LLC; FIRSTSOURCE WORLDWIDE, LLC; FITESA SIMPSONVILLE, INC.; MILLIKEN & COMPANY; OPPERMANN WEBBING, INC.; T&S BRASS AND BRONZE WORKS, INC.; UNICHEM SPECIALTY CHEMICALS, LLC, | ) ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

**DEFENDANT MILLIKEN & COMPANY'S**
**MOTION FOR ADMISSION PRO HAC VICE FOR JAMESON B. CARROLL**

Defendant Milliken & Company, by and through their undersigned counsel, hereby move this Court, pursuant to Rule 404, SCAR, for an Order admitting *pro hac vice* Jameson B. Carroll, for purposes of this action, in association with Rachael L. Anna of Wyche, PA, who is an active member in good standing of the South Carolina Bar.

1.     Jameson B. Carroll is in good standing with the Bar of the State of Georgia as indicated in Mr. Carroll's Verified Application for Admission *Pro Hac Vice* submitted herewith, and is a member of Carroll & Weiss LLP, 2870 Peachtree Rd NW, Suite 193, Atlanta, GA 30305-2918.

2.	Jameson B. Carroll is handling this matter in association with Rachael L. Anna, who is a member of the firm of Wyche, PA, 200 East Broad Street, Suite 400, Greenville, SC 29601-3512, a member in good standing with the South Carolina Bar (SC Bar No. 100486), and a resident of Greenville, South Carolina.

3.	This Motion is based on the pleadings herein and the Verified Application for Admission *Pro Hac Vice* of Jameson B. Carroll, a copy of which is attached as Exhibit A, and has been served on the South Carolina Supreme Court Office of Bar Admissions along with a $250.00 check made payable to the South Carolina Supreme Court, pursuant to Rule 404 of the South Carolina Appellate Court Rules.

## CERTIFICATION

The undersigned certifies that, pursuant to Rule 11 of the South Carolina Rules of Civil Procedure, her office has conferred with counsel for Plaintiff, and counsel for Plaintiff has not objected to this Motion.

{signature page follows}

ELECTRONICALLY FILED - 2025 Jan 27 3:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Jan 27 3:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

*s/Rachael L. Anna*

Rachael L. Anna (SC Bar No. 100486)
Rita Bolt Barker (SC Bar No. 77600)
WYCHE, PA
200 East Broad Street, Suite 400
Greenville, SC 29601-3512
Tel: (864) 242-8200
Fax: (864) 235-8900
ranna@wyche.com
rbarker@wyche.com

-and-

Jameson B. Carroll (*pro hac vice* forthcoming)
Michael Weiss (admitted *pro hac vice*)
CARROLL & WEISS LLP
2870 Peachtree Rd NW, Suite 193
Atlanta, GA 30305-2918
Tel: (404) 514-5061
jcarroll@carrollweiss.com
mweiss@carrollweiss.com

***Attorneys for Defendant Milliken & Company***

January 27, 2025
Greenville, South Carolina

# EXHIBIT A

(application for admission *pro hac vice*)

ELECTRONICALLY FILED - 2025 Jan 27 3:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

# VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE*
# IN THE STATE OF SOUTH CAROLINA

**Please type your answers in the space provided.  Provide an answer for every question asked.  In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.**

| Greenwood Comms. of Pub. Works | 2024-CP-24-00735 | Greenwood Common Pleas, Eighth Cir. |
|---|---|---|
| Plaintiff | Case No. | Tribunal |

vs.

Mailing Address of Tribunal:

| Cone Mills Receiver, LLC, et al. | | 528 Monument Street |
|---|---|---|
| Defendant | | Room 114 |
| | | Greenwood, SC 29646 |

Comes now ___Jameson B. Carroll___, applicant herein, and respectfully represents the following:

1. Applicant resides at:

__12 Camden Road__
Street Address

| Atlanta | Fulton | Georgia | 30309 |
|---|---|---|---|
| City | County | State | Zip Code |

_____
Telephone

2. Applicant is an attorney and a member of the law firm of (or practices law under the name of) **Carroll & Weiss, LLP**, with offices at

**2870 Peachtree Rd. NW, Ste. 193**
Street Address

| Atlanta | Fulton | Georgia | 30305-2918 |
|---|---|---|---|
| City | County | State | Zip Code |
| 404-514-5061 | 404-514-5061 | N/A | jcarroll@carrollweiss.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

3. Applicant has been retained personally or as a member of the above-named law firm by ___Milliken & Company___ to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

4. Since ___October 31___ of ___1991___, Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of ___Georgia___ where Applicant regularly practices law.  Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

ELECTRONICALLY FILED - 2025 Jan 27 3:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Jan 27 3:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

5. List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: | |
|---|---|---|
| State of Georgia | 1991 | |
| Northern District of Georgia | 1991 | |
| Southern District of Georgia | 2011 | |
| District of Columbia | 2011 | |
| | | |
| | | |
| | | |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

| Yes. |
|---|

6. Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency? If yes, give particulars, e.g., jurisdiction, court date.

| No. |
|---|

7. Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked? If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

| No. |
|---|

8. Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked? If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

| No. |
|---|

9. Please be aware that local counsel must be Rule 403 certified. Local counsel of record associated with Applicant in this case is _____Rachael L. Anna_____ of the _____WYCHE, PA_____

law firm, which has offices at:

_____200 East Broad Street, Ste. 400_____
Street Address

| _____Greenville_____ | _____Greenville_____ | _____South Carolina_____ | _____29601-3512_____ |
|---|---|---|---|
| City | County | State | Zip Code |
| _____(864)242-8200_____ | _____ | _____(864)235-8900_____ | _____ranna@wyche.com_____ |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

*Page 2 of 4*

ELECTRONICALLY FILED - 2025 Jan 27 3:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

100486

South Carolina Bar Number
(You must provide Bar Number)

10.     Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

> **See Exhibit A.**

11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

> **Yes.**

12. Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this _____8th_____ day of _____January_____, 20_25_

APPLICANT _____

*Page 3 of 4*

ELECTRONICALLY FILED - 2025 Jan 27 3:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

## VERIFICATION

STATE OF _____Georgia_____ )

COUNTY OF _____Fulton_____ )

I, _____Jameson B. Carroll_____, do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true. I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice. Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding. Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

_____
APPLICANT/AFFIANT

Subscribed and sworn to before me this ___9___ day of ___Jan___, 20 _2025_

_____
(Notary Signature)

Notary Public for the State of ___GA___

My Commission Expires: ___Aug 7, 2025___

## LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this ___13th___ day of ___January___, 20 _25_

_____
LOCAL COUNSEL OF RECORD

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this ___13th___ day of ___January___, 20 _25_

_____

*Page 4 of 4*

# EXHIBIT A

| CASE NAME | CASE STATUS | DATE OF APPLICATION | LOCAL COUNSEL | DISPOSITION OF APPLICATION |
|---|---|---|---|---|
| Dwaine T. Waters, *et al.* v. AGCO Corp., *et al.* 2017-CP-40-05462 | Dismissed | March 2, 2018 | M. Dawes Cooke, Jr. | Granted |
| Dianne McCullough, *et al.* v. 4520 CORP., Inc., *et al.* 2020-CP-40-01952 | Dismissed | August 14, 2020 | M. Dawes Cooke, Jr. | Granted |

ELECTRONICALLY FILED - 2025 Jan 27 3:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735



# Supreme Court
# State of Georgia

NATHAN DEAL JUDICIAL CENTER

Atlanta 30334

October 30, 2024

I hereby certify that Jameson Blaxton Carroll, Esq., was admitted on the 31st day of October, 1991, as a member of the bar of the Supreme Court of Georgia, the highest court of this State; and, since that date he has been and is now a member of this bar in good standing, as appears from the records and files in this office.

Witness my signature and the seal of this Court hereto affixed the day and year first above written.



_____, Clerk

ELECTRONICALLY FILED - 2025 Jan 27 3:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735



# The Supreme Court of South Carolina

## Office of Bar Admissions

PATRICIA A. HOWARD
CLERK OF COURT

KATHLEEN "TINA" BRYANT
MANAGER, OFFICE OF BAR
ADMISSIONS

POST OFFICE BOX 11330
COLUMBIA, SOUTH CAROLINA 29211
TELEPHONE: (803) 734-1317
FAX: (803) 734-0394

January 17, 2025

The Honorable Chastity Copeland
Clerk of Court
528 Monument Street
Room #114
Greenwood, SC 29646

RE:     Greenwood Commissioners of Public Works v. Cone Mills Receiver, LLC, et al.

Case No.:  2024-CP-24-00735

Dear Ms. Copeland:

I certify that the Office of Bar Admissions has received the verified application requesting Jameson B. Carroll be admitted *pro hac vice* in the above action. The $250 filing fee for the applicant has been paid.

Sincerely,

M.J. Thames
Bar Admissions Coordinator

cc:     Jameson B. Carroll
        Rachael L. Anna

ELECTRONICALLY FILED - 2025 Jan 27 3:46 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 06 11:26 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF GREENWOOD | ) | EIGHTH JUDICIAL CIRCUIT |
| | ) | |
| | ) | |
| GREENWOOD COMMISSIONERS OF PUBLIC WORKS, | ) | C.A. No. 2024-CP-24-00735 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONE MILLS RECEIVER, LLC; CRYOVAC, INC.; CRYOVAC, LLC; FIRSTSOURCE WORLDWIDE, LLC; FITESA SIMPSONVILLE, INC.; MILLIKEN & COMPANY; OPPERMANN WEBBING, INC.; T&S BRASS AND BRONZE WORKS, INC.; UNICHEM SPECIALTY CHEMICALS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

## PROPOSED ORDER GRANTING PRO HAC VICE ADMISSION

WHEREAS Defendant Milliken & Company by and through their counsel, has moved this Court to admit Jameson B. Carroll *pro hac vice* in this Court in the above-captioned case; and

WHEREAS Jameson B. Carroll's Verified Application for Admission has been submitted to the South Carolina Supreme Court Office of Bar Admissions with the $250 filing fee;

IT IS ORDERED that Jameson B. Carroll be admitted to practice in this Court for the purpose of representing the Defendant Milliken & Company in the above-captioned case.

IT IS SO ORDERD this ____ day of _____, 2025.

{signature page follows}

The Honorable Grace Gilchrist Knie

ELECTRONICALLY FILED - 2025 Feb 06 11:26 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 06 11:26 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735



Greenwood Common Pleas

**Case Caption:**    Greenwood Commissioners Of Public Works VS    Cone Mills
Receiver, Llc , defendant, et al

**Case Number:**    2024CP2400735

**Type:**    Order/Pro Hac Vice

IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760

Electronically signed on 2025-02-06 09:03:02    page 3 of 3

ELECTRONICALLY FILED - 2025 Jan 28 11:36 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA<br>COUNTY OF SPARTANBURG | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| | ) | |
| | ) | |
| IN RE: | ) | |
| | ) | NOTICE OF HEARING |
| | ) | |
| PFAS LITIGATION | ) | |
| COORDINATED DOCKET | ) | |
| | ) | |
| | ) | |
| _____ | ) | |

Pending motion hearings have been set in the PFAS Litigation cases (2024-CP-24-0735 <u>Greenwood Commissioners of Public Works v. Cone Mills Receiver, LLC, et. al.</u> and 2024-CP-30-0734 <u>Laurens County Water and Sewer Commission v. Cone Mills Receiver, LLC, et. al.</u>) for **9:30 a.m. on Tuesday, March 11, 2025**, at the **Spartanburg County Courthouse in Courtroom 2A** and will be on Judge Knie's virtual courtroom.

Counsel has been notified via electronic mail.

IT IS SO ORDERED at Spartanburg, South Carolina this 28th day of January, 2025.



_____
Honorable Grace Gilchrist Knie
Circuit Judge
S.C. PFAS Litigation

Page 1 of 1

ELECTRONICALLY FILED - 2025 Jan 31 12:47 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

STATE OF SOUTH CAROLINA

IN THE COURT OF COMMON PLEAS

| | |
|---|---|
| IN RE: PFAS LITIGATION COORDINATED DOCKET | |
| COUNTY OF GREENWOOD<br><br>Greenwood Commissioners of Public Works,<br><br>*Plaintiff*,<br><br>v.<br><br>Cone Mills Receiver, LLC et al.,<br><br>*Defendants*. | C.A. No. 2024-CP-24-00735 |
| COUNTY OF LAURENS<br><br>Laurens County Water and Sewer Commission,<br><br>*Plaintiff*,<br><br>v.<br><br>Cone Mills Receiver, LLC et al.,<br><br>*Defendants*. | C.A. No. 2024-CP-30-00734 |

## [PROPOSED] SCHEDULING ORDER FOR BRIEFING OF PENDING MOTIONS

Pursuant to the South Carolina Supreme Court's Order governing PFAS litigation currently pending and to be filed in the state court system, dated August 14, 2024, and as superseded by the Supreme Court's Order dated October 7, 2024, the Court hereby sets forth the following schedule for all motions pending as of the date of this Order in the above-captioned PFAS litigation cases:

1.     All memoranda of law in support of the pending motions shall be filed no later than **February 14, 2025**.

1

2.	All memoranda of law in opposition to the pending motions shall be filed no later than **February 28, 2025**.

3.	A hearing will be held on all motions pending in the above-captioned cases on **March 11, 2025** at 9:30 a.m. in Courtroom 2A at the Spartanburg County Courthouse.

**IT IS SO ORDERED**.

[JUDICIAL ELECTRONIC SIGNATURE PAGE TO FOLLOW.]

ELECTRONICALLY FILED - 2025 Jan 31 12:47 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735



Greenwood Common Pleas

**Case Caption:**     Greenwood Commissioners Of Public Works VS   Cone Mills
Receiver, Llc , defendant, et al
**Case Number:**     2024CP2400735

**Type:**     Order/Scheduling Order

IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760

Electronically signed on 2025-01-31 12:10:14     page 3 of 3

ELECTRONICALLY FILED - 2025 Jan 31 12:47 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 06 11:26 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF GREENWOOD | ) | EIGHTH JUDICIAL CIRCUIT |
| | ) | |
| | ) | |
| GREENWOOD COMMISSIONERS OF PUBLIC WORKS, | ) | C.A. No. 2024-CP-24-00735 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONE MILLS RECEIVER, LLC; CRYOVAC, INC.; CRYOVAC, LLC; FIRSTSOURCE WORLDWIDE, LLC; FITESA SIMPSONVILLE, INC.; MILLIKEN & COMPANY; OPPERMANN WEBBING, INC.; T&S BRASS AND BRONZE WORKS, INC.; UNICHEM SPECIALTY CHEMICALS, LLC, | ) ) ) ) ) ) ) ) ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

## PROPOSED ORDER GRANTING PRO HAC VICE ADMISSION

WHEREAS Defendant Milliken & Company by and through their counsel, has moved this Court to admit Jameson B. Carroll *pro hac vice* in this Court in the above-captioned case; and

WHEREAS Jameson B. Carroll's Verified Application for Admission has been submitted to the South Carolina Supreme Court Office of Bar Admissions with the $250 filing fee;

IT IS ORDERED that Jameson B. Carroll be admitted to practice in this Court for the purpose of representing the Defendant Milliken & Company in the above-captioned case.

IT IS SO ORDERD this _____ day of _____, 2025.

{signature page follows}

_____

The Honorable Grace Gilchrist Knie

ELECTRONICALLY FILED - 2025 Feb 06 11:26 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 06 11:26 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735



Greenwood Common Pleas

**Case Caption:**   Greenwood Commissioners Of Public Works VS   Cone Mills
Receiver, Llc , defendant, et al

**Case Number:**   2024CP2400735

**Type:**   Order/Pro Hac Vice

IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760

Electronically signed on 2025-02-06 09:03:02    page 3 of 3

ELECTRONICALLY FILED - 2025 Feb 14 10:52 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **IN RE: PFAS LITIGATION** | ) | **JUDGE KNIE** |
| **COORDINATED DOCKET** | ) | |
| | ) | |
| | ) | |
| COUNTY OF GREENWOOD | ) | EIGHTH JUDICIAL CIRCUIT |
| | ) | |
| | ) | |
| GREENWOOD COMMISSIONERS OF | ) | C.A. No. 2024-CP-24-000735 |
| PUBLIC WORKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONE MILLS RECEIVER, LLC; | ) | |
| CRYOVAC, INC.; CRYOVAC, LLC; | ) | |
| FIRSTSOURCE WORLDWIDE LLC; | ) | |
| FITESA SIMPSONVILLE, INC.; | ) | |
| MILLIKEN & COMPANY; OPPERMAN | ) | |
| WEBBING, INC.; T&S BRASS AND | ) | |
| BRONZE WORKS, INC.; UNICHEM | ) | |
| SPECIALTY CHEMICALS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

### CRYOVAC, INC. AND CRYOVAC, LLC'S NOTICE OF FILING: MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

Defendants Cryovac, Inc. and Cryovac, LLC ("Cryovac") refile their Memorandum of Law in Support of their Motion to Dismiss previously filed with their Motion to Dismiss on or about December 9, 2024.

*Signature Block on Following Page.*

1

ELECTRONICALLY FILED - 2025 Feb 14 10:52 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**K&L GATES, LLP**

*/s/ Jennifer H. Thiem*
Jennifer H. Thiem (SC Bar #73739)
134 Meeting Street, Suite 500
Charleston, SC 29401
Telephone:  843.579.5600
Facsimile:  843.579.5601
jennifer.thiem@klgates.com

Loly G. Tor (admitted Pro Hac Vice)
K&L GATES, LLP
One Newark Center, 10th Floor
Newark, NJ  07102
Telephone:  973.848.4026
Fax: 973.848.4001
loly.tor@klgates.com

*Attorney for Cryovac, Inc. and Cryovac, LLC*

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735
ELECTRONICALLY FILED - 2025 Feb 14 10:52 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF GREENWOOD** | ) | **EIGHTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| GREENWOOD COMMISSIONERS OF | ) | C.A. No. 2024-CP-24-000735 |
| PUBLIC WORKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONE MILLS RECEIVER, LLC; | ) | |
| CRYOVAC, INC.; CRYOVAC, LLC; | ) | |
| FIRSTSOURCE WORLDWIDE LLC; | ) | |
| FITESA SIMPSONVILLE, INC.; | ) | |
| MILLIKEN & COMPANY; OPPERMAN | ) | |
| WEBBING, INC.; T&S BRASS AND | ) | |
| BRONZE WORKS, INC.; UNICHEM | ) | |
| SPECIALTY CHEMICALS, LLC, | ) | |
| | ) | |
| Defendants. | ) | |

**MEMORANDUM OF LAW IN SUPPORT OF CRYOVAC, INC., AND CRYOVAC, LLC'S MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT**

Defendants Cryovac, Inc., and Cryovac, LLC (together, "Cryovac"), submit the instant memorandum of law in support of their motion to dismiss Plaintiff Greenwood Commissioners of Public Works' ("Plaintiff" or "Greenwood") claims against Cryovac in Plaintiff's Amended Complaint in their entirety.

**INTRODUCTION**

This lawsuit is premised on the possibility that, more than four years from now, Plaintiff may be required to comply with regulations limiting the amount of per- and polyfluoroalkyl substances ("PFAS") in the drinking water Plaintiff provides to its customers. Because the *current* levels of PFAS in Plaintiff's drinking water allegedly would not comply with the regulation's

1

future requirements, Plaintiff filed suit against Cryovac and other defendants with facilities located upstream of the body of water where Plaintiff draws water for its customers, Lake Greenwood, contending they are responsible for the PFAS in Plaintiff's water. No justiciable controversy exists, however, because the claims are not ripe. Plaintiff's claims are based on the potential threat of injury that *might* occur more than four years from now if the regulations remain in place unchanged and the water Plaintiff draws from Lake Greenwood *at that time* continues to contain levels of PFAS that exceed the regulatory limits. The threat of a potential future injury contingent on future events does not present a justiciable controversy, and the Amended Complaint must be dismissed.

Even if the claims were ripe (which they are not), the Amended Complaint nevertheless should be dismissed because it fails to state a claim. All four claims Plaintiff asserts – private and public nuisance, trespass, and negligence – require Plaintiff to establish that the PFAS that allegedly exists in Cryovac's wastewater is the same PFAS that Plaintiff allegedly found in its drinking water. But Plaintiff's own allegations rebut this essential premise. Plaintiff alleges PFAS is "pervasive" and "persisten[t] in the environment," and that certain PFAS remain in the environment from decades of use. It alleges PFAS leaches from the soil to groundwater and is highly mobile and water soluble, making surface water vulnerable to contamination. Plaintiff provides no factual allegations establishing how or why PFAS allegedly discharged from Cryovac's facilities is the same PFAS Plaintiff allegedly found in the water it drew from Lake Greenwood, as opposed to the "persistent" and "pervasive" PFAS that has allegedly existed in the environment for "decades" and leaches from soil to groundwater and, ultimately, surface water. Plaintiff's conclusory allegations fail to satisfy South Carolina's pleading requirements, and the Complaint should be dismissed.

2

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735
ELECTRONICALLY FILED - 2025 Feb 14 10:52 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

The private and public nuisance claims also fail because, based on the facts alleged in the Amended Complaint, Cryovac did not have control over the instrumentality alleged to have cause the nuisance as required to state a claim. Plaintiff alleges Cryovac discharges wastewater containing PFAS to a separate wastewater treatment plant, the Lower Reedy WWTP. After the Lower Reedy WWTP treats the water, it discharges the water to the Reedy River upstream of Lake Greenwood. After the water reaches Lake Greenwood, Plaintiff voluntarily draws the water onto its property through its water intakes. The nuisance claims cannot stand, because Cryovac's wastewater was discharged to the Lower Reedy WWTP, and Cryovac had no control over the wastewater, Lower Reedy WWTP's treatment of the wastewater, or Lower Reedy WWTP's discharge of the wastewater downstream. The public nuisance claim also fails because Plaintiff failed to allege an injury that is separate and distinct from the alleged injury to the public – water allegedly contaminated with PFAS. Without a separate injury, Plaintiff cannot state a claim for public nuisance.

The trespass claim also fails for two reasons. First, trespass requires the unauthorized entry onto Plaintiff's land, but Plaintiff here voluntarily drew the allegedly contaminated water from Lake Greenwood onto its property through its water intakes. Second, trespass requires an invasion by a physical, tangible thing, and the South Carolina Supreme Court held in *Babb v. Lee County Landfill SC, LLC*, that molecules and microscopic particles do <u>not</u> constitute tangible items for purposes of a trespass claim. No claim for trespass can stand.

Lastly, Plaintiff's negligence claim fails because Plaintiff does not and cannot plead that Cryovac owes Plaintiff a duty of care. The Lower Reedy WWTP has control over the wastewater when it is discharged to the Reedy River – not Cryovac. Under well-established law, a party does not owe a duty of care to control a third party or warn another of a third-party's conduct. As such,

3

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735
ELECTRONICALLY FILED - 2025 Feb 14 10:52 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

the negligence claim fails.

For these reasons and as more fully set forth below, Cryovac respectfully requests that the Court dismiss the Amended Complaint with prejudice.

**FACTUAL ALLEGATIONS IN AMENDED COMPLAINT**

Plaintiff alleges that it owns property in Greenwood County on Lake Greenwood where it operates the W.R. Wise Water Treatment Facility, a surface water treatment plant ("SWTP"). (Am. Compl. ¶ 3). Plaintiff alleges that it provides potable water to residents of Greenwood and Abbeville Counites. (*Id.*). Plaintiff "operates water intakes on Lake Greenwood, from which it draws raw water for treatment in the SWTP before distribution to its customers." (*Id.* ¶ 3). Plaintiff alleges that the water it draws from Lake Greenwood contains PFAS. (*Id.* ¶ 2).

Plaintiff alleges that PFAS is "pervasive in industrial, commercial, and consumer products" and "persisten[t] in the environment." (*Id.* ¶ 25). It contends that, "[d]ue to their persistent nature, PFOA and PFOS remain in the environment from decades of legacy industrial use." (*Id.* ¶ 31). The Amended Complaint further alleges that PFAS are "colloquially termed 'forever chemicals,' as terminal PFAS have no known environmental breakdown mechanism . . . ." (*Id.* ¶ 25). Plaintiff lays out the alleged reach of PFAS, contending "PFAS leach from soil to groundwater and are highly mobile and water soluble, making groundwater and surface water particularly vulnerable to contamination." (*Id.* ¶ 29).

Plaintiff alleges that the defendants operate facilities upstream from Lake Greenwood and are responsible for PFAS found in the water Plaintiff draws from Lake Greenwood. (*Id.* ¶ 4). Plaintiff concedes that the defendants do not discharge wastewater directly onto Plaintiff's property or even into Lake Greenwood. (*Id.*). Rather, Plaintiff alleges that the defendants discharge wastewater to "certain wastewater treatment plants ('WWTPs') located upstream of

4

Plaintiff's water intakes." (*Id.* ¶ 4). With respect to Cryovac, Plaintiff alleges that Cryovac uses products at its upstream facility that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals, and that Cryovac discharges industrial wastewater contaminated with PFAS to the Lower Reedy WWTP. (*Id.*). Plaintiff alleges that the wastewater treatment processes at the Lower Reedy WWTP cannot adequately remove the PFAS that is allegedly present in the water entering the WWTP. (*Id.* ¶¶ 5, 17). After the wastewater is treated by the Lower Reedy WWTP (albeit insufficiently, according to Plaintiff), the Lower Reedy WWTP discharges the water into the Reedy River upstream of Lake Greenwood. (*Id.*). After the treated wastewater reaches Lake Greenwood, Plaintiff draws the water onto its property through its water intakes. (*Id.* ¶¶ 3, 4, 17, 50).

Plaintiff alleges that the water it draws from Lake Greenwood contains levels of PFAS that exceed the maximum contaminant levels ("MCL") set forth in the EPA's newly enacted regulations for drinking water in the National Primary Drinking Water Regulation ("NPDWR"). (*Id.* ¶¶ 53-54). The NPDWR establishes MCLs for six types of PFAS in drinking water: PFOA, PFOS, PFHxS, PFNA, HFPO-DA and PFAS mixtures containing at least two or more of PFHxS, PFNA, HFPO-DA, and PFBS. *See* 40 CFR 141.900, *et seq.* Compliance with the MCLs is not required until April 26, 2029. 40 CFR 141.900(b)(4). (*See also* Am. Compl. ¶ 44).

Based on the foregoing allegations, Plaintiff asserts the following claims against Cryovac: (1) private nuisance, (2) public nuisance, (3) trespass, and (4) negligence, gross negligence, and/or recklessness.

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735
ELECTRONICALLY FILED - 2025 Feb 14 10:52 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735
ELECTRONICALLY FILED - 2025 Feb 14 10:52 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

## ARGUMENT

### I.   Plaintiff's Amended Complaint must be dismissed because Plaintiff's claims are not ripe.

A court is "obligated to inquire in every action whether a justiciable controversy exists in a matter." *In the Matter of Luckabaugh*, 351 S.C. 122, 146 (2002).  A court is empowered to decide only a "real and substantial controversy which is ripe and appropriate for judicial determination, as distinguished from a contingent, hypothetical or abstract dispute." *Colleton Cnty. Taxpayers Ass'n v. Sch. Dist. of Colleton Cnty.*, 371 S.C. 224, 242 (2006) (quoting *Pee Dee Elec. Co–Op, Inc. v. Carolina Power & Light Co.,* 279 S.C. 64, 66 (1983)).  The alleged injury must be "actual or imminent." *Sea Pines Ass'n for Prot. of Wildlife, Inc. v. S.C. Dep't of Nat. Res.*, 345 S.C. 594, 602 (2001).  "It is not enough that a threat of possible injury currently exists; the mere threat of potential injury is too contingent or remote to support present adjudication." *Waters v. S.C. Land Res. Conservation Comm'n*, 321 S.C. 219, 228 (1996).  In other words, "[a]n argument is not ripe if it is contingent on future events." *Encore Tech. Grp., LLC v. Trask*, 436 S.C. 289, 309 (Ct. App. 2021).  Additionally, an issue that is "hypothetical, or abstract" is not ripe for review. *Colleton Cnty. Taxpayers Ass'n*, 371 S.C. at 242.  *See also Waters*, 321 S.C. at 227 ("A justiciable controversy is a real and substantial controversy which is ripe and appropriate for judicial determination, as distinguished from a contingent, hypothetical or abstract dispute.").

Here, Plaintiff's claims are not ripe.  As Plaintiff recognizes, the EPA is not requiring compliance with the PFAS MCLs until *2029*.  (*Id.* ¶¶ 38, 42, 44).  Plaintiff does not allege that it will be unable to comply with regulations *over four years* from now or that it has or is incurring any costs or expenses due to the alleged contamination.  (*Id.* ¶ 54).  Instead, Plaintiff demands that the Cryovac and the other defendants fund the *future* acquisition, installation, and operation of wastewater treatment technology that can remove the PFAS from Plaintiff's water so that Plaintiff

6

can comply with the EPA's regulations *in the future*. (*See* Am. Compl. at Prayer for Relief). Plaintiff's inability to comply with the MCLs over four years from now is contingent on multiple factors, none of which are certain to occur. In fact, the validity of the MCLs themselves being challenged by multiple parties in the Court of Appeals for the D.C. Circuit, and, depending on the outcome of these and any other suits that may be filed (and the impact of the incoming administration), Plaintiff may never need to comply with the MCLs or the MCLs may be modified such that Plaintiff will be able to comply without any changes to its treatment facility. *See Am. Water Works Assoc. v. U.S. EPA*, Case No. 24-1188; *Nat'l Assoc. of Manufacturers, et al. v. U.S. EPA*, Case No. 24-1191; *The Chemours Company FC, LLC v. U.S. EPA*, Case No. 24-1192.

At best, Plaintiff has alleged a potential threat of injury more than four years in the future. That is not enough. *See Waters*, 321 S.C. at 228 ("It is not enough that a threat of possible injury currently exists; the mere threat of potential injury is too contingent or remote to support present adjudication."). Because Plaintiff's claims are not ripe, Cryovac respectfully requests that the Court dismiss Plaintiff's Amended Complaint.

## II.    The Amended Complaint also fails to state a claim for relief.

In addition to failing for lack of ripeness, Plaintiff's claims fail to state a claim and should be dismissed pursuant to Rule 12(b)(6). A defendant may move to dismiss a complaint for "failure to state facts sufficient to constitute a cause of action." Rule 12(b)(6), SCRCP. "That standard requires the Court to construe the complaint in a light most favorable to the nonmovant and determine if the facts alleged and the inferences reasonably deducible from the pleadings would entitle the plaintiff to relief on any theory of the case." *Rydde v. Morris*, 675 S.E.2d 431, 433 (2009) (internal quotation marks omitted). The complaint must identify "the facts showing that the pleader is entitled to relief," Rule 8(a)(2), SCRCP, and mere conclusory allegations are

7

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735
ELECTRONICALLY FILED - 2025 Feb 14 10:52 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

insufficient.  *See Jones v. Gilstrap*, 343 S.E.2d 646, 648 (Ct. App. 1986).

As set forth below, Plaintiff's Amended Complaint fails to state a claim for relief and should be dismissed.

### A. Plaintiff does not allege sufficient facts to establish a fundamental element of its claims: that PFAS allegedly discharged by Cryovac is in the water Plaintiff draws from Lake Greenwood.

The fundamental premise of Plaintiff's Amended Complaint is that PFAS allegedly discharged by Cryovac (and the other defendants) appears in the water Plaintiff draws in through its water intake system.  (Am. Compl. ¶ 5).  Thus, for each and every claim, Plaintiff must allege sufficient facts to establish this basic point: that the PFAS allegedly discharged by Cryovac is the same PFAS that is allegedly present in the water Plaintiff draws from Lake Greenwood.  Plaintiff, however, has not pled sufficient facts to establish this fundamental point.

Plaintiff alleges that PFAS is ubiquitous and environmentally persistent.  It alleges that PFAS is "pervasive in industrial, commercial, and consumer products" and "persisten[t] in the environment."  (Am. Compl. ¶ 25).  It contends that, "[d]ue to their persistent nature, PFOA and PFOS remain in the environment from decades of legacy industrial use."  (*Id.* ¶ 31).  The Amended Complaint further alleges that PFAS are "colloquially termed 'forever chemicals,' as terminal PFAS have no known environmental breakdown mechanism . . . ."  (*Id.* ¶ 25).  Plaintiff lays out the alleged reach of PFAS, contending "PFAS leach from soil to groundwater and are highly mobile and water soluble, making groundwater and surface water particularly vulnerable to contamination."  (*Id.* ¶ 29).

At the same time, Plaintiff provides no factual allegations establishing how or why PFAS allegedly discharged from Cryovac's facilities is the same PFAS Plaintiff allegedly found in the water it drew from Lake Greenwood, as opposed to the "persistent" and "pervasive" PFAS that

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735
ELECTRONICALLY FILED - 2025 Feb 14 10:52 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

has allegedly existed in the environment for "decades" and leaches from soil to groundwater and, ultimately, surface water. (*See generally id.*). Plaintiff's own allegations show that the Amended Complaint contains unsupported legal conclusions that Cryovac is responsible for the PFAS in the water Plaintiff draws from Lake Greenwood. Plaintiff simply has not pled enough to state a claim.

Instead, Plaintiff makes the same generic and conclusory allegation against each defendant: that the defendant used or uses "products that contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals" at its facility and then "discharges industrial wastewater contaminated with products that contain or degrade to these PFAS" to an upstream WWTP. (*Id.* ¶¶ 17-23). Plaintiff alleges that the rivers where the defendants allegedly discharge wastewater-containing PFAS "flow southeast through Greenville, South Carolina and, from there, feed Lake Greenwood roughly *35 miles downstream.*" (*Id.* ¶ 45 (emphasis added)). Plaintiff makes no factual allegations to plausibly contend that – even assuming it to be true that Cryovac discharged PFAS in its wastewater – the PFAS Plaintiff found at its site is the PFAS discharged by Cryovac.[1] In fact, the allegations in the Amended Complaint show that there is no basis for the conclusory leap made by Plaintiff.

Without more, Plaintiff fails to meet even the minimal pleading requirements, and the Amended Complaint should be dismissed.

---

[1] Plaintiff's Amended Complaint also ignores the multitude of other potential sources for the PFAS in the water drawn from Lake Greenwood, including ***rainwater***. (*See* "PFAS 'forever chemicals' found in Florida rain, study says," *South Florida Sun Sentinel*, Nov. 11, 2024, *available at* https://www.msn.com/en-us/news/us/pfas-forever-chemicals-found-in-florida-rain-study-says/ar-AA1tUCIC?apiversion=v2&noservercache=1&domshim=1&renderwebcomponents=1&wcseo=1&batchservertelemetry=1&noservertelemetry=1 (reporting on study finding 21 types of PFAS in South Florida's rainwater and noting that "[s]ometimes the specific PFAS compounds matched local sources, but in the dry season (October through May), there was a spike in PFAS that likely came from distant regions of the U.S.").

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735
ELECTRONICALLY FILED - 2025 Feb 14 10:52 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735
ELECTRONICALLY FILED - 2025 Feb 14 10:52 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**B.    Plaintiff's claims for private and public nuisance fail as a matter of law.**

**1.    Both nuisance claims fail because Cryovac did not have control over the instrumentality alleged to have caused the nuisance.**

Under South Carolina law, an action for private or public nuisance requires a plaintiff to demonstrate that the defendant had control over the instrumentality alleged to have caused the nuisance "at the time of the alleged nuisance." *See, e.g.*, *Clark v. Greenville Cnty.*, 313 S.C. 205, 210 (1993) (holding that "one who has no control over property at the time of the alleged nuisance cannot be held liable therefor"); *FOC Lawshe Ltd. P'ship v. Int'l Paper Co.*, 574 S.E.2d 228, 231 (Ct. App. 2002) (same). Conversely, "one who has no control over property at the time of the alleged nuisance cannot be held liable therefor." *Clark*, 313 S.C. at 210; *see also id.* at 210 (a nuisance is "that class of wrongs that arises from the unreasonable, unwarrantable, or unlawful use by a person *of his own property, personal or real*" (emphasis added)).

Based on the allegations in the Amended Complaint, Cryovac did not have control over the allegedly contaminated water at the time the alleged nuisance occurred. According to Plaintiff, Cryovac's wastewater is discharged first to the Lower Reedy WWTP. (Am. Compl. ¶ 17). Then, after the wastewater is treated by the Lower Reedy WWTP, the Lower Reedy WWTP – *not* Cryovac – discharges the water into the Reedy River. (*Id.*). At some point after the treated wastewater reaches Lake Greenwood, Plaintiff draws the water onto its property through its water intakes. (*Id.* ¶¶ 3, 4, 17, 50). Plaintiff's claims, to the extent it has any, should be directed to the Lower Reedy WWTP and not Cryovac, and the private and public nuisance claims against Cryovac should be dismissed.

**2.    The public nuisance claim also fails because Plaintiff's alleged injury is no different from that suffered by the public.**

A public nuisance can be asserted typically only by the State to remedy harms suffered by the public generally. *Carnival Corp. v. Historic Ansonborough Neighborhood Ass'n*, 407 S.C. 67,

78 (2014). A private citizen generally cannot bring a suit to abate a public nuisance and must rely on the State to assert the claim. *Id.* The one exception to this rule allows a private entity to bring a suit for a public nuisance only if it suffered a "special injury." *Id.* The special injury must be an "individual or specific damage in addition to that suffered by the public," *id.*, and "is satisfied only by injury to the individual's real or personal property." *Overcash v. S.C. Elec. & Gas Co.*, 364 S.C. 569, 575 (2005).

Plaintiff pleads no facts alleging that it has suffered any unique injury that is not suffered by the public at large, and it does not allege injury to its own real or personal property. Plaintiff alleges that its special injury is "the inability to provide potable water to customers without concentrations of PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals deemed unsafe by EPA . . . ." (Am. Compl. ¶ 73). This alleged injury is no different than the injury allegedly suffered by the public at large – the alleged contamination of water with PFAS. (*See id.* ¶ 53). Also, although Plaintiff alleges that it has "lost use of its property," it does not identify an injury to its own personal or real property. (*Id.*). As such, Plaintiff's claim for public nuisance fails as a matter of law and should be dismissed.

### C. Plaintiff cannot state a claim for trespass as a matter of law.

#### 1. The trespass claim fails because Plaintiff voluntarily caused the allegedly contaminated water to enter its property.

"The essence of trespass is the unauthorized entry onto the land of another." *Ravan v. Greenville County*, 315 S.C. 447, 464 (Ct. App. 1993). Thus, to state a claim for trespass, Plaintiff must plead facts establishing "an invasion (a) which interfered with the right of exclusive possession of the land, and (b) which was a direct result of some act committed by the defendant." *Graham v. Town of Latta*, 417 S.C. 164, 192-93 (Ct. App. 2016) (internal quotation omitted). It requires an "intentional invasion" of the plaintiff's property by the defendant: "[T]here must be an

11

affirmative act, the invasion of the land must be intentional, and the harm caused must be the direct result of that invasion." *Snow v. City of Columbia*, 305 S.C. 544, 553 (Ct. App. 1991).

Here, Plaintiff alleges that it voluntarily draws the allegedly contaminated water onto its property through its water intakes. (Am. Compl. ¶¶ 3, 4, 17, 50). *Plaintiff itself authorized the entry of the water onto its property*. (*Id.* ¶¶ 3, 4, 17, 50). Plaintiff also does not allege that Cryovac discharges its wastewater directly onto Plaintiff's property. (*Id.* ¶ 17). The Amended Complaint is clear that Cryovac's wastewater is discharged first to the Lower Reedy WWTP. (*Id.* ¶ 17). Then, after the wastewater is treated by the Lower Reedy WWTP, it discharges into the Reedy River upstream of Lake Greenwood. (*Id.*). After the treated wastewater reaches Lake Greenwood, *Plaintiff* draws the water onto its property through its water intakes. (Id. ¶¶ 3, 4, 17, 50). Without Plaintiff's own actions causing the water to enter its property, the water would not enter Plaintiff's property. There is no "unauthorized entry" onto Plaintiff's land and, thus, there is no trespass, and the claim should be dismissed. *Ravan*, 315 S.C. at 464.

### 2. The trespass claim also fails because there has been no invasion by a physical, tangible thing.

In South Carolina, there must be "an invasion by a physical, tangible thing for a trespass to exist." *Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 145 (2013). To be sufficiently "tangible," the invasion must "interfere with the right to exclusive possession" and not "merely interfere with the right to use and enjoyment." *Id.* at 151. In *Babb*, the South Carolina Supreme Court adopted the "dimensional test" for determining whether a trespass has occurred. *Id.* Pursuant to the dimensional test, "a trespass only exists where the invasion of land occurs through a physical, tangible object." *Id.* at 145. In reaching this conclusion, our Supreme Court rejected the line of cases that refused to apply the dimensional test and instead permitted recovery based on the nature of the interest harmed. *Id.* at 146. The seminal case, rejected by *Babb*, that eschewed

12

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735
ELECTRONICALLY FILED - 2025 Feb 14 10:52 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

the dimensional test was *Martin v. Reynolds Metals Co.*, 342 P.2d 790 (Or. 1959). In *Martin*, the plaintiffs asserted a trespass claim against an aluminum smelter for fluoride gases and microscopic particulates allegedly emitted by the smelter that traveled through the air and settled on the plaintiffs' property. *Babb*, 405 S.C. at 146 (citing *Martin*, 342 P.2d at 791). The court in *Martin* dispensed with the dimensional test and held that "the intrusion of fluoride was a trespass despite its intangible nature," and, "while the fluoride particles were individually minute and invisible, each particle that entered the plaintiffs' property was a physical intrusion, and but for their size, would undoubtedly give rise to a trespass action." *Id.* at 147 (citing *Martin*, 342 P.2d at 791). *Babb* also rejected the decision in *Borland v. Sanders Lead Co., Inc.*, 369 So.2d 523 (Ala.1979), where the Alabama court refused to apply the dimensional test and found a trespass was pled "where the plaintiffs sued a lead smelter for lead and sulfoxide emissions they alleged settled on and damaged their property." *Babb*, 405 S.C. at 478.

Here, the PFAS molecules in the water that Plaintiff draws onto its property are not tangible, physical objects as required to state a claim for trespass under the dimensional test. *See Babb*, 405 S.C. at 478. They are chemical molecules measured in parts per trillion. (Am. Compl. ¶¶ 30-40). Plaintiff does not allege that PFAS can be seen or felt in the water it pulls onto its property; rather, Plaintiff only allegedly detected PFAS in its water after performing tests on samples of water. (*Id.* ¶¶ 47-51). PFAS is the equivalent of the fluoride particles in *Martin* and the lead and sulfur emissions in *Borland*, neither of which are tangible, physical objects capable of invading property as necessary to state a claim for trespass under the dimensional rule mandated by *Babb*. As such, Plaintiff's claim for trespass fails as a matter of law and must be dismissed.

### D.    Plaintiff's negligence claim fails because Cryovac does not owe a duty to Plaintiff.

"An essential element in a cause of action for negligence is the existence of a legal

13

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735
ELECTRONICALLY FILED - 2025 Feb 14 10:52 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2024 Dec 09 5:12 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735
ELECTRONICALLY FILED - 2025 Feb 14 10:52 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

duty of care owed by the defendant to the plaintiff." *Huggins v. Citibank, N.A.*, 355 S.C. 329, 332 (2003). "If there is no duty, then the defendant in a negligence action is entitled to a judgment as a matter of law." *Madison ex Rel. v. Babcock*, 371 S.C. 123, 135-36 (2006). Under South Carolina law, "there is no general duty to control the conduct of another or to warn a third person or potential victim of danger." *Id.* at 136. Additionally, one who does not have control over the use of property does not have a duty of care not to harm others by its use. *Miller v. City of Camden*, 329 S.C. 310, 314 (1997).

Here, the facts Plaintiff alleges do not establish that Cryovac owes a duty of care to Plaintiff. As set forth above, Plaintiff alleges that Cryovac discharged its wastewater to the Lower Reedy WWTP. (Am. Compl. ¶ 17). Lower Reedy WWTP then has control over the wastewater and treats the water before discharging it further downstream to the Reedy River. (*Id.*). As with Plaintiff's nuisance claim, Plaintiff's negligence claim, to the extent it has one, should be directed to the Lower Reedy WWTP and not Cryovac, and the negligence claim against Cryovac should be dismissed.

## CONCLUSION

For the foregoing reasons, Cryovac respectfully requests that the Court grant their motion to dismiss Plaintiff's Amended Complaint with prejudice.

**K&L GATES, LLP**

*/s/ Jennifer H. Thiem*
Jennifer H. Thiem (SC Bar #73739)
134 Meeting Street, Suite 500
Charleston, SC 29401
Telephone: 843.579.5600
Facsimile: 843.579.5601
jennifer.thiem@klgates.com

*Attorneys for Cryovac, Inc. and Cryovac, LLC*

14

ELECTRONICALLY FILED - 2025 Feb 14 12:16 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | |
|---|---|
| **STATE OF SOUTH CAROLINA** | **IN THE COURT OF COMMON PLEAS** |
| **COUNTY OF GREENWOOD** | **EIGHTH JUDICIAL CIRCUIT** |

<table>
<tr>
<td>

GREENWOOD COMMISSIONERS OF PUBLIC WORKS,

*Plaintiff,*

v.

CONE MILLS RECEIVER, LLC; CRYOVAC, INC.; CRYOVAC, LLC; FIRSTSOURCE WORLDWIDE, LLC; FITESA SIMPSONVILLE, INC.; MILLIKEN & COMPANY; OPPERMAN WEBBING, INC.; T&S BRASS AND BRONZE WORKS, INC.; UNICHEM SPECIALTY CHEMICALS, LLC,

*Defendants.*

</td>
<td>

C.A. No. 2024-CP-24-00735

**DEFENDANT FITESA SIMPSONVILLE, INC'S MEMORANDUM IN SUPPORT OF ITS MOTION FOR PROTECTIVE ORDER AND STAY OF DISCOVERY**

</td>
</tr>
</table>

Defendant Fitesa Simpsonville, Inc. ("Fitesa") respectfully submits this memorandum in support of its Motion for a Protective Order and Stay of Discovery pending this Court's decision on Fitesa's Motion to Dismiss. The Motion is based on the ground that responding to Plaintiff Greenwood Commissioners of Public Works' ("Plaintiff" or "Greenwood") Discovery Requests while Fitesa's Motion to Dismiss is pending would impose an unnecessary burden on Fitesa.

## BACKGROUND

Fitesa is the owner and operator of an industrial facility in Simpsonville, South Carolina. As part of its industrial operations, Fitesa discharges wastewater to a wastewater treatment plant for treatment.

Plaintiff, according to the Amended Complaint, is the duly elected commission authorized to provide potable water and additional public utility services to residents of Greenwood and Abbeville Counties. *See* Amended Complaint ¶ 13.

ELECTRONICALLY FILED - 2025 Feb 14 12:16 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Plaintiff filed its Amended Complaint in the above-captioned action against Defendant Fitesa and others on August 23, 2024, and served Fitesa on October 28, 2024. Plaintiff's Amended Complaint alleges that Plaintiff suffered an injury as a result Fitesa's alleged discharge of wastewater containing certain per- and polyfluoroalkyl substances ("PFAS") that Plaintiff drew into its water treatment plant.

Also on October 28, 2024, Plaintiff served on Fitesa Plaintiff's First Set of Interrogatories, Requests to Produce, and Requests to Admit ("Discovery Requests"). Plaintiff's Discovery Requests are attached hereto as **Exhibit A.** Plaintiff's counsel agreed to an extension of time for Fitesa to respond to the Amended Complaint and Discovery Requests through January 22, 2025. On December 20, 2024, Fitesa filed a Motion to Dismiss Plaintiff's Amended Complaint pursuant to Rule 12(b) in lieu of an Answer, illustrating to the Court that the Plaintiff's claims against Fitesa should be dismissed for several grounds, including (1) the claims are not ripe; (2) Fitesa does not control the wastewater discharge that is the alleged source of the alleged nuisance; (3) the alleged contamination of public waters is not a private nuisance; (4) Fitesa cannot be negligent because it does not owe a duty to Plaintiff; and (5) voluntary acceptance of intangible matter cannot be a trespass.

## STANDARD OF REVIEW

Rule 26(c) of the South Carolina Rules of Civil Procedure provides that "[u]pon motion by a party... and for good cause shown, the court in which the action is pending... may make any order which justice requires to protect a party or person from annoyance, embarrassment, oppression, or undue burden by expense, including... that the discovery not be had." As this Court knows, the Court may stay discovery during the pendency of a dispositive motion if there is good cause to do so. *Boudreaux Grp., Inc. v. Clark Nexsen*, *Owen, Barbieri, Gibson, P.C.*, No. 8:18-CV-1498-

ELECTRONICALLY FILED - 2025 Feb 14 12:16 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

TMC, 2018 WL 9785308, at *4–5 (D.S.C. Nov. 20, 2018) (finding that defendants demonstrated good cause to stay discovery pending their Motion to Dismiss because the granting of their Motion to Dismiss would dispose of the entire matter as to defendants).

Moreover, this Court has the inherent authority to manage the conduct of proceedings and may also grant a motion seeking the stay of discovery when a dispositive motion has been filed and not yet decided. *See, e.g.*, *Tilley v. United States*, 270 F. Supp. 2d 731, 734 (M.D.N.C. 2003), *aff'd*, 85 F. App'x 333 (4th Cir. 2004) (holding that a protective order under Rule 26(c) to stay discovery pending determination of party's dispositive motion was warranted).

## **ARGUMENT**

A protective order and temporary stay of discovery are warranted in this matter because the granting of Fitesa's pending motion to dismiss will dispose of this entire matter as it relates to Fitesa. As noted above, the Amended Complaint does not allege any viable claims against Fitesa.

Further, the Discovery Requests Plaintiff served on Fitesa generally are not limited in time, overly broad and unduly burdensome. Accordingly, Fitesa should not suffer the further expense of responding to Plaintiff's Discovery Requests prior to the Court's decision on Fitesa's Motion to Dismiss.

Further, even though Fitesa did not believe discovery should be initiated until after the resolution of Fitesa's pending Motion to Dismiss, in the spirit of cooperation, Fitesa did serve responses to Plaintiff's interrogatories and requests to produce on January 21, 2025 (*see* **Exhibit B**), within the extension period granted by Plaintiff.

Fitesa respectfully submits that a protective order should be entered (proposed Order attached as **Exhibit C**), and a temporary stay should be granted so that Fitesa may avoid engaging in the unduly burdensome and expensive process of responding to Plaintiff's Discovery Requests

ELECTRONICALLY FILED - 2025 Feb 14 12:16 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

until the Court decides if Plaintiff's claims should be dismissed (and they should be dismissed because Plaintiff has failed to state a claim against Fitesa).

Respectfully submitted, this 14th day of February, 2025.

/s/ *Robert H. Jordan*
Robert H. Jordan
SC State Bar No. 13612
PARKER POE ADAMS & BERNSTEIN LLP
850 Morrison Drive, Suite 400
Charleston, South Carolina 29403
Phone: 843-727-2650
E-mail: robertjordan@parkerpoe.com

Kevin A. Dunlap
SC State Bar No. 13081
Parker Poe Adams & Bernstein LLP
110 East Court Street, Suite 200
Greenville, SC 29601
Telephone: (864) 577-6370
Email: kevindunlap@parkerpoe.com

Steven D. Weber
S.C. State Bar No. 16917
PARKER POE ADAMS & BERNSTEIN LLP
620 South Tryon St., Ste. 800
Charlotte, North Carolina 28202
Tel.: (704) 372-9000
Email: steveweber@parkerpoe.com

*Attorneys for Defendant Fitesa Simpsonville, Inc.*

4

# Exhibit A

ELECTRONICALLY FILED - 2025 Feb 14 12:16 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 14 12:16 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF GREENWOOD** | ) | **EIGHTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| GREENWOOD COMMISSIONERS OF | ) | C.A. No. 2024-CP-24-00735 |
| PUBLIC WORKS, | ) | |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| FITESA SIMPSONVILLE, INC. *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |

## PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION TO FITESA SIMPSONVILLE, INC.

### DEFINITIONS

1. **"You"** and **"Your"** mean the Defendant to whom these discovery requests are propounded, as well as all of its partners, directors, officers, employees, servants, agents, attorneys, joint ventures, third-party contractors, or other representatives, including all corporations and entities affiliated with Defendant. "You" and "Your" shall also include all predecessor business entities, as well as any predecessor's partners, directors, officers, employees, servants, agents, attorneys, joint ventures, third-party contractors, or other representatives. "You" or "Your" shall also include all foreign subsidiaries or foreign parent companies, as well as any foreign subsidiaries' or parent companies' partners, directors, officers, employees, servants, agents, attorneys, joint ventures, third-party contractors, or other representatives.

2. **"Documents"** is coextensive with the meanings of "documents" and "tangible things" in Rule 34, SCRCP, and has the broadest possible meaning and interpretation ascribed to those terms under that rule. Consistent with this definition, Documents include, without limitation, any database, written, printed, typed, photostatic, photographed, recorded, computer-generated, computer-stored, or otherwise maintained or reproduced communication or representation, any data compilation in any form, whether comprised of letters, words, numbers, pictures, sounds, bytes, e-mails, electronic signals or impulses, electronic data, active files, deleted files, file fragments, or any combination thereof including, without limitation, all memoranda, notes, records, letters, envelopes, telegrams, messages, studies, analyses, contracts, agreements, projections, estimates, working papers, accounts, analytical records, reports and/or summaries of investigations, opinions or reports of consultants, opinions or reports of experts, opinions or reports of accountants, other reports, trade letters, press releases, comparisons, books, diaries, articles, magazines, newspapers, booklets, brochures, pamphlets, circulars, bulletins, notices, forecasts, drawings, diagrams, instructions, minutes of meetings, correspondence and

ELECTRONICALLY FILED - 2025 Feb 14 12:16 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

communications (as defined below) of any type (including but not limited to video files, audio files, and inter- and intra-office communications), questionnaires, surveys, charts, graphs, photographs, phonographs, films, tapes, discs, data cells, drums, printouts, all other compiled data which can be obtained (translated, if necessary, through intermediary or other devices into usable forms), Documents maintained on, stored in or generated on any electronic transfer or storage system, any preliminary versions, drafts or revisions of any of the foregoing, and other writings or Documents of whatever description or kind, whether produced or authorized by or on behalf of You or anyone else, and shall include all non-identical copies and drafts of any of the foregoing now in the possession, custody, or control of You, or the former or present directors, officers, counsel, agents, employees, partners, consultants, principals, and/or persons acting on Your behalf.

3. **"Communications"** and **"Correspondence"** mean any oral, written, spoken, or electronic transmission of information, including but not limited to meetings, discussions, conversations, telephone calls, memoranda, letters, emails, text messages, postings, instructions, conferences, seminars, or any other exchange of information between You and any other person or entity, or between persons, departments, or other subdivisions within Your organization.

4. **"PFAS"** is intended to be broad and inclusive, and means any fluorinated substances that contain at least one fully fluorinated methyl or methylene carbon atom (without any H/Cl/Br/I atom attached to it). That is, a PFAS is any chemical with at least a perfluorinated methyl group ($-CF_3-$) or a perfluorinated methylene group ($-CF_2-$). PFAS includes nonpolymeric and polymeric PFAS. By way of example and not limitation, PFAS includes perfluoroalkyl acids ("PFAAs"), such as PFOA and PFOS; precursors that can degrade or transform to PFAAs, such as perfluoroalkyl iodides and fluorotelomer alcohols; fluoropolymers such as PTFE and PVDF; and side-chain fluorinated polymers.

5. **"Facility"** or **"Facilities"** mean Your facility or facilities that discharge wastewater directly and/or indirectly to the Reedy River, Saluda River, or to a tributary of either waterway. For purposes of these discovery requests, indirect discharge means discharge to a wastewater treatment plant that discharges to any of these waterways or their tributaries.

6. **"Operative Period"** means the time period beginning with Your earliest purchase, sale, manufacture, use, and/or disposal of PFAS through the present and continuing.

## INTERROGATORIES

1. For the Operative Period, identify all products, materials, or substances present at or used at Your Facility(s) that contained or which you reasonably suspect may have contained PFAS, and for each such product, material, or substance, provide at least the following information:

    (a) the name of the product, material, or substance;

    (b) The manufacturer, vendor, intermediary, and/or supplier of the product, material, or substance; and

    (c) the date range for when You used the product, material, or substance at Your Facility(s).

ELECTRONICALLY FILED - 2025 Feb 14 12:16 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

## REQUESTS FOR PRODUCTION

1. Produce Documents supporting your identification of the products, materials, or substances; manufacturers, vendors, intermediaries, and/or suppliers; and applicable date ranges identified in response to Interrogatory No. 1.

2. Produce all safety data sheets ("SDS") and technical data sheets ("TDS") in Your possession for products, materials, or substances that contain or which you reasonably suspect may contain PFAS.

3. Produce all Documents and Communications related to any testing for PFAS of Your waste streams or emissions, including Your wastewater discharges or effluent.

4. Produce all Documents and Communications related to any testing by You for PFAS of surface waters, groundwater, soil, plant or animal life, or any other environmental media.

5. Produce all Documents and Communications related to any testing for PFAS of Your workers or employees, such as (by way of example and not limitation) testing to determine levels of PFAS present in Your workers' blood.

6. Produce all Documents and Communications related to any testing for PFAS of any materials, products, substances, components, processes, or other elements of Your manufacturing processes.

7. Produce all Documents and Communications related to any testing for PFAS of any products manufactured, sold, distributed, or otherwise supplied by You.

Respectfully submitted,

/s/ John B. White. Jr.
John B. White, Jr. (S.C. Bar No. 5996)
Marghretta H. Shisko (S.C. Bar No. 100106)
Christopher R. Jones (S.C. Bar No. 101265)
Griffin L. Lynch (S.C. Bar No. 72518)
John B. White, Jr., P.A.
291 S. Pine Street
P.O. Box 2465 (29304)
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
cjones@johnbwhitelaw.com
glynch@johnbwhitelaw.com

October 22, 2024                    *Attorneys for Plaintiff*

ELECTRONICALLY FILED - 2025 Feb 14 12:16 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF GREENWOOD** | ) | **EIGHTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| Greenwood Commissioners of Public Works, | ) | C.A. No.: 2024-CP-24-00735 |
| | ) | |
| *Plaintiff,* | ) | |
| | ) | |
| v. | ) | **CERTIFICATE OF SERVICE BY** |
| | ) | **CERTIFIED MAIL** |
| Fitesa Simpsonville, Inc. *et al.,* | ) | |
| | ) | |
| *Defendants.* | ) | |
| | ) | |
| | ) | |
| | ) | |

IT IS HEREBY CERTIFIED that copies of the filed **Amended Summons and Amended Complaint**, and **Plaintiff's First Interrogatories and Requests for Production to Fitesa Simpsonville, Inc.** in this action were served upon Defendant Fitesa Simpsonville, Inc. by placing copies of same via U.S. Mail, Certified Mail, Restricted Delivery, Return Receipt Requested this date with sufficient postage affixed thereto, addressed as follows:

Fitesa Simpsonville, Inc.
c/o The Corporation Trust Company
1209 Orange Street
Wilmington, DE 19801

JOHN B. WHITE, JR., PA

Nicole M. Rice, Paralegal

October 22, 2024

# Exhibit B

ELECTRONICALLY FILED - 2025 Feb 14 12:16 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 14 12:16 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735



**Robert H. Jordan**
t: 843.727.2670
f: 843.727.2680
robertjordan@parkerpoe.com

Atlanta, GA
Charleston, SC
Charlotte, NC
Columbia, SC
Greenville, SC
Raleigh, NC
Spartanburg, SC
Washington, DC

January 21, 2025

**Via E-mail**

John B. White, Jr.
Marghretta Shisko
John B. White Jr. P.A. Law Firm
291 South Pine Street
Spartanburg, SC  29304
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com

Re:  ***Greenwood Commissioners of Public Works v. Cone Mills Receiver, LLC et al.*  C.A. No. 2024-CP-30-00735**

Dear Counsel:

Enclosed please find Fitesa Simpsonville, Inc.'s Responses to Plaintiff's First Interrogatories and Requests for Production regarding the above-referenced matter.

Please do not hesitate to contact us if you have any questions.

Sincerely,

Robert H. Jordan

RHJ/cmm
Enclosure

Cc:  All Counsel of Record

ELECTRONICALLY FILED - 2025 Feb 14 12:16 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | |
|---|---|
| **STATE OF SOUTH CAROLINA** | **IN THE COURT OF COMMON PLEAS** |
| **COUNTY OF GREENWOOD** | **EIGHTH JUDICIAL CIRCUIT** |

GREENWOOD COMMISSIONERS OF PUBLIC WORKS,

*Plaintiff,*

**v.**

CONE MILLS RECEIVER, LLC; CRYOVAC, INC.; CRYOVAC, LLC; FIRSTSOURCE WORLDWIDE, LLC; FITESA SIMPSONVILLE, INC.; MILLIKEN & COMPANY; OPPERMAN WEBBING, INC.; T&S BRASS AND BRONZE WORKS, INC.; UNICHEM SPECIALTY CHEMICALS, LLC,

*Defendants.*

C.A. No. 2024-CP-24-00735

**DEFENDANT FITESA SIMPSONVILLE, INC.'S RESPONSES TO PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION**

Defendant Fitesa Simpsonville, Inc. ("Fitesa"), by and through undersigned counsel, and pursuant to the South Carolina Rules of Civil Procedure ("SCRCP") 26 and 33, and the South Carolina Rules of Evidence ("SCRE"), hereby serves its objections and responses to Plaintiff's First Set of Interrogatories ("Interrogatories") and Requests for Production of Documents ("Requests").

**PRELIMINARY STATEMENT OF OBJECTIONS**

Fitesa has not completed its investigation of the facts or law relating to this litigation and discovery in this matter is ongoing. Accordingly, these objections are provided without prejudice to Fitesa's right to produce evidence of any facts, subsequently discovered facts, or additional facts, information or documents that may exist whose location, relevance, significance or applicability has not yet been determined by Fitesa. These objections are provided in good faith based on documents and information presently available and known to Fitesa. In providing these objections, Fitesa reserves all objections as to competency, relevancy, materiality, authenticity and

admissibility of any information or documents.  To the extent Fitesa has objections or declines to respond to any specific Interrogatory or Request, Fitesa is willing to meet and confer with Plaintiff's counsel to narrow the scope or otherwise modify the Interrogatory or Request to allow further response.  Fitesa will conduct a reasonable search for information requested, subject to and without waiving the objections set forth herein, and pursuant to the terms and in a form consistent with the SCRCP and SCRE.

Each objection below, is provided subject to, and without waiver of, general or specific objections.  This preliminary statement is hereby incorporated by reference into each objection to the specific Interrogatories and Requests set forth below.

**OBJECTIONS TO INSTRUCTIONS AND DEFINITIONS**

1.      Fitesa objects to each and every one of the Instructions and Definitions in the Interrogatories and Requests to the extent they attempt to impose obligations on Fitesa other than those imposed or authorized by the SCRCP, including but not limited to, the extent they exceed the permissible scope of discovery under the SCRCP, and/or seek to impose duties of responding and/or supplementation different from or in excess of those imposed by the SCRCP.

2.      Fitesa objects to Plaintiff's definition of the term "Documents" because it is vague, ambiguous, unduly burdensome, overly broad, and beyond the common or reasonable understanding of that term.  Fitesa further objects to the extent this definition attempts to impose obligations beyond those set forth in the SCRCP or SCRE.  Fitesa further objects to this definition to the extent it calls for the forensic investigation into computing devices or systems to determine or locate information indicating or evidencing documents that were deleted or that are no longer accessible as active data, as such measures are unduly burdensome, and purport to impose obligations greater than those set forth in the applicable rules.  Fitesa further objects to this definition on the grounds that the definition is unduly burdensome to the extent that it purports to

2

ELECTRONICALLY FILED - 2025 Feb 14 12:16 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 14 12:16 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

require the production of categories of information that Fitesa does not maintain in the regular course of business or that would be unduly burdensome to identify, collect, and produce. In responding to the Interrogatories and Requests, Fitesa will comply with its obligations under the SCRCP and SCRE.

3.    Fitesa objects to Plaintiff's definition of the terms "You" and "Your" because they are vague, ambiguous, overly broad, unduly burdensome, and not stated with reasonable particularity. Fitesa further objects to the extent the terms purport to apply to predecessor, successor and affiliate companies.

4.    Fitesa objects to Plaintiff's definition of the terms "Communications" and "Correspondence" because they are vague, ambiguous, unduly burdensome, and fail to satisfy the Plaintiffs' obligation to describe the items requested with reasonable particularity. Specifically, the inclusion of such terms as "meetings," "discussions," "conversations," "postings," "instructions," "conferences," "seminars," and "any other exchange of information" in the definitions expands their scope beyond the requirement that production be limited to being already in some form of media, as they are kept in the ordinary course of business.

5.    Fitesa objects to Plaintiff's definition of the term "PFAS" because it is overly broad, vague and ambiguous.

6.    Fitesa objects to Plaintiff's definition of the terms "Facility" or "Facilities" because "Facility" is a defined term under the Comprehensive Environmental Response, Compensation, and Liability Act ("CERCLA").

7.    Fitesa objects to Plaintiff's definition of the term "Operative Period" in that it is overly broad and insofar as it implies Fitesa purchased, sold, manufactured, used or disposed of PFAS.

3

8.      Notwithstanding Fitesa's specific objections to Plaintiff's definitions, Fitesa states to its knowledge that other, non-defined terms in Plaintiff's Interrogatories and Requests are vague, ambiguous, overly broad and otherwise objectionable.  Fitesa maintains, and does not waive, any such objections to those terms.

These objections to instructions and definitions, the preliminary statement of objections above, and the general objections and limitations herein are hereby incorporated into each objection to the specific Interrogatories and Requests set forth below, and any repetition or omission of these objections and limitations in each objection below does not waive the incorporation of each and every objection and limitation.

## GENERAL OBJECTIONS TO INTERROGATORIES AND REQUESTS

1.      Fitesa objects to the Interrogatories and Requests on the bases that they are overly broad, impose an undue burden and expense, are not reasonably calculated to lead to the discovery of admissible evidence,  and/or seek information  and/or documents that are  neither relevant  nor proportional to the needs of the case, considering the parties' relative access to the information requested and the fact that the burden and expense of the proposed discovery outweighs any potential benefit.

2.      Fitesa objects to the extent that the Interrogatories and Requests purport to seek information not within Fitesa's possession, custody or control.  Fitesa further objects to the extent the Interrogatories and Requests purport to seek documents that provide duplicative information.

3.      Fitesa objects to the Interrogatories and Requests to the extent that they seek information that is protected by privilege (including, but not limited to, the attorney-client privilege; the attorney work product doctrine and consultant/consulting expert information) or not otherwise discoverable.  Fitesa will meet and confer with Plaintiff regarding providing a log of protected documents, if necessary.  Any inadvertent production of any such privileged or protected documents

ELECTRONICALLY FILED - 2025 Feb 14 12:16 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 14 12:16 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

or information shall not constitute a waiver of any privilege or protection applicable thereto, or to any related information or documents, and anyone suspecting such an inadvertent production by Fitesa is requested to return such information or documents immediately and bring it to the attention of the undersigned counsel.  Furthermore, Fitesa reserves the right to demand the return of any documents from Plaintiff that may be inadvertently produced if Fitesa determines that such documents may include or contain information protected by any applicable privilege or protection.

4.      Fitesa objects to the Interrogatories and Requests to the extent that they seek the disclosure of information including Fitesa's confidential, business or proprietary information or the confidential, business or proprietary information of persons or entities in contractual privity with Fitesa and/or to whom Fitesa has an obligation to maintain confidentiality.

5.      Fitesa objects to the Interrogatories and Requests to the extent that they seek information that is reflected in, or is determinable from, publicly available documents or sources and/or is equally or more readily available and/or accessible to Plaintiff.  Among other things, and without limiting the objections above, Fitesa objects on the basis that, in many instances, Plaintiff has failed to disclose the specific documents and/or information on which its Interrogatories and Requests are based, and to the extent the Interrogatories and Requests ask Fitesa to conduct a search of information that is publicly available and/or in the possession of Plaintiff's counsel, on the basis that Plaintiff is equally or better positioned to search for the information it seeks.

6.      Neither the fact that Fitesa has responded to the Interrogatories and Requests, nor the Objections themselves, constitute an admission or acknowledgement that any or all of the Interrogatories or Requests are proper; that the information such Interrogatories and Requests seek is relevant, material, or otherwise within the proper bounds of discovery or admissible at trial; or that other Interrogatories and Requests will be treated in a similar fashion.  A partial response or objection

5

ELECTRONICALLY FILED - 2025 Feb 14 12:16 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

to any Interrogatory and Request to which Fitesa has objected, in whole or in part, does not constitute a waiver of any objection.

7.     In addition to specific terms objected to above, Fitesa objects to the descriptions and all terms utilized throughout the Interrogatories and Requests to the extent that they assume or imply allegations or elements of Plaintiff's claims in this case. Fitesa's Objections to the Interrogatories and Requests are not to be deemed an admission of assent or agreement.

8.     Fitesa objects to the Interrogatories and Requests to the extent that they assume facts that do not exist or have not been established.

9.     Fitesa objects to the Interrogatories and Requests to the extent that they seek to impose burdens and/or obligations upon Fitesa that exceed and/or are inconsistent with those set forth in the SCRCP and SCRE.

10.     Fitesa's objections to the Interrogatories and Requests are made subject to, and without waiver of, its rights to:  (a) at any hearing or trial, contest the admissibility of any evidence disclosed in these objections, in any production of documents, or in any disclosure of information occurring pursuant to any Interrogatory or Request; (b) object to any other subsequent discovery requests that may or may not relate to these objections; and (c) modify or amend these objections in any manner.

11.     Fitesa reserves the right to use documents or information later discovered, and/or to supplement and/or amend its objections to the Interrogatories and Requests in the event additional responsive material is discovered.

12.     Fitesa objects to these Interrogatories and Requests  to the extent they would require Fitesa to make, accept, or interpret legal conclusions.

13.     Fitesa objects to each definition that is unintelligible, vague, or ambiguous, such that an ordinary, literal reading of said language would expand the scope of an Interrogatory  and

6

ELECTRONICALLY FILED - 2025 Feb 14 12:16 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Request to seek material irrelevant to the claims or defenses in this litigation, and thus, imposes an unreasonable burden on Fitesa, disproportionate to the needs of the case.

14.    Fitesa objects to the Interrogatories and Requests to the extent they call for the production of trade secret, proprietary, personal, commercially sensitive, or other confidential, information.  Fitesa will only produce such information that is responsive, relevant, and not otherwise privileged or protected from disclosure, pursuant to the SCRCP and SCRE.

These general objections and limitations are hereby incorporated into each objection to the specific Interrogatories and Requests set forth below, and any repetition or omission of these objections and limitations above, and in each objection below does not waive the incorporation of each and every objection and limitation.  Investigation and discovery are ongoing and Fitesa specifically reserves its right to amend, modify, change and/or supplement its objections to these Interrogatories and Requests as appropriate.  Fitesa is willing to meet and confer, as necessary, to identify ways to conduct a reasonable search for documents and information.  Subject to and without waiving the foregoing objections and limitations, Fitesa responds as follows:

<u>**RESPONSES TO INTERROGATORIES**</u>

1.    For the Operative Period, identify all products, materials, or substances present at or used at Your Facility(s) that contained or which you reasonably suspect may have contained PFAS, and for each such product, material, or substance, provide at least the following information:

(a)    the name of the product, material, or substance;

(b)    The manufacturer, vendor, intermediary, and/or supplier of the product, material, or substance; and

(c)    the date range for when You used the product, material, or substance at Your Facility(s).

7

ELECTRONICALLY FILED - 2025 Feb 14 12:16 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**RESPONSE:** In addition to its General Objections, Fitesa objects to this Interrogatory because it is not limited in time. Subject to, and without waiving the foregoing objections, Fitesa responds that, to its knowledge, it has not used and does not use PFAS at its plant.

## RESPONSES TO REQUESTS FOR PRODUCTION

1.     Produce Documents supporting your identification of the products, materials, or substances; manufacturers, vendors, intermediaries, and/or suppliers; and applicable date ranges identified in response to Interrogatory No. 1.

**RESPONSE:** In addition to its General Objections, Fitesa objects to this Request because it is overly broad and unduly burdensome. Subject to, and without waiving the foregoing objections, Fitesa responds that, to its knowledge, it has not used and does not use PFAS at its plant and does not possess documents responsive to this Request. Fitesa continues to investigate whether responsive documents exist and reserves the right to supplement this response.

2.     Produce all safety data sheets ("SDS") and technical data sheets ("TDS") in Your possession for products, materials, or substances that contain or which you reasonably suspect may contain PFAS.

**RESPONSE:** In addition to its General Objections, Fitesa objects to this Request because it is overly broad and unduly burdensome. Subject to, and without waiving the foregoing objections, Fitesa responds that, to its knowledge, it has not used and does not use PFAS at its plant and does not possess documents responsive to this Request. Fitesa continues to investigate whether responsive documents exist and reserves the right to supplement this response.

3.     Produce all Documents and Communications related to any testing for PFAS of Your waste streams or emissions, including Your wastewater discharges or effluent.

**RESPONSE:** In addition to its General Objections, Fitesa objects to this Request because it is overly broad and unduly burdensome. Fitesa further objects to the extent that any such test

ELECTRONICALLY FILED - 2025 Feb 14 12:16 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

results are publicly available.  Subject to, and without waiving the foregoing objections, Fitesa responds that it has not conducted PFAS testing.  Fitesa refers plaintiff to documents Fitesa will produce in response to this Request.

4.      Produce all Documents and Communications related to any testing by You for PFAS of surface waters, groundwater, soil, plant or animal life, or any other environmental media.

**RESPONSE:**  In addition to its General Objections, Fitesa objects to this Request because it is overly broad and unduly burdensome.  Subject to, and without waiving the foregoing objections, Fitesa responds that it has not conducted PFAS testing and does not possess documents responsive to this Request.

5.      Produce all Documents and Communications related to any testing for PFAS of Your workers or employees, such as (by way of example and not limitation) testing to determine levels of PFAS present in Your workers' blood.

**RESPONSE:**  In addition to its General Objections, Fitesa objects to this Request because it is overly broad and unduly burdensome.  Subject to, and without waiving the foregoing objections, Fitesa responds that it has not conducted PFAS testing and does not possess documents responsive to this Request.

6.      Produce all Documents and Communications related to any testing for PFAS of any materials, products, substances, components, processes, or other elements of Your manufacturing processes.

**RESPONSE:**  In addition to its General Objections, Fitesa objects to this Request because it is overly broad and unduly burdensome.  Subject to, and without waiving the foregoing objections, Fitesa responds that it has not conducted PFAS testing and does not possess documents responsive to this Request.

9

7.      Produce all Documents and Communications related to any testing for PFAS of any products manufactured, sold, distributed, or otherwise supplied by You.

**RESPONSE:**  In addition to its General Objections, Fitesa objects to this Request because it is overly broad and unduly burdensome.  Subject to, and without waiving the foregoing objections, Fitesa responds that it has not conducted PFAS testing and does not possess documents responsive to this Request.

This 21st day of January, 2025.

/s/ *Robert H. Jordan*
Robert H. Jordan
SC State Bar No. 13612
PARKER POE ADAMS & BERNSTEIN LLP
850 Morrison Drive, Suite 400
Charleston, South Carolina 29403
Phone: 843-727-2650
E-mail: robertjordan@parkerpoe.com

Kevin A. Dunlap
SC State Bar No. 13081
Parker Poe Adams & Bernstein LLP
110 East Court Street, Suite 200
Greenville, SC 29601
Telephone: (864) 577-6370
Email: kevindunlap@parkerpoe.com

Steven D. Weber
S.C. State Bar No. 16917
PARKER POE ADAMS & BERNSTEIN LLP
620 South Tryon St., Ste. 800
Charlotte, North Carolina 28202
Tel.: (704) 372-9000
Email: steveweber@parkerpoe.com

*Attorneys for Defendant Fitesa Simpsonville, Inc.*

ELECTRONICALLY FILED - 2025 Feb 14 12:16 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

10

ELECTRONICALLY FILED - 2025 Feb 14 12:16 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
|---|---|
| COUNTY OF GREENWOOD | EIGHTH JUDICIAL CIRCUIT |

| | |
|---|---|
| GREENWOOD COMMISSIONERS OF PUBLIC WORKS, | C.A. No. 2024-CP-24-00735 |
| *Plaintiff,* | |
| **v.** | |
| CONE MILLS RECEIVER, LLC; CRYOVAC, INC.; CRYOVAC, LLC; FIRSTSOURCE WORLDWIDE, LLC; FITESA SIMPSONVILLE, INC.; MILLIKEN & COMPANY; OPPERMAN WEBBING, INC.; T&S BRASS AND BRONZE WORKS, INC.; UNICHEM SPECIALTY CHEMICALS, LLC, | **CERTIFICATE OF SERVICE** |
| *Defendants.* | |

I hereby certify that a true and correct copy of **DEFENDANT FITESA SIMPSONVILLE, INC.'S RESPONSES TO PLAINTIFF'S FIRST INTERROGATORIES AND REQUESTS FOR PRODUCTION** was sent via electronic mail only to the counsel of record listed below and to all defense counsel of record on January 21, 2025.

| | |
|---|---|
| John B. White, Jr.<br>Marghretta Shisko<br>John B. White Jr. P.A. Law Firm<br>291 South Pine Street<br>Spartanburg, SC 29304<br>jwhite@johnbwhitelaw.com<br>mshisko@johnbwhitelaw.com<br><br>*Attorneys for Plaintiff* | Jennifer Thiem<br>K&L Gates LLP<br>134 Meeting Street, Suite 500<br>Charleston, SC 29401<br>jennifer.thiem@klgates.com<br><br>*Attorneys for Cryovac, Inc. and Cryovac, LLC* |

11

ELECTRONICALLY FILED - 2025 Feb 14 12:16 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Paul Harrill
Burr & Forman LLP
PO Box 11390
Columbia, SC 29211
pharrill@burr.com

*Attorneys for FirstSource Worldwide, LLC
and Opperman Webbing, Inc.*

Richard Willis
Williams Mullen
1230 Main Street, Suite 330
Columbia, SC 29201
rwillis@williamsmullen.com

*Attorneys for T&S Brass and Bronze Works,
Inc.*

Kelly Lowery
P.O. Drawer 750
White Stone, SC 29386
kelly@lowryandassociates.com

*Attorneys for Cone Mills Receiver*

Rita Bolt Barker
Wyche Law Firm
PO Box 728
Greenville, SC 29601
rbarker@wyche.com

*Attorneys for Miliken & Company*

James Weatherholtz
Womble Bond Dickinson LLP
PO Box 999
Charleston, SC 29402
james.weatherholtz@wbd-us.com

*Attorneys for Unichem Specialty Chemicals,
LLC*

PARKER POE ADAMS & BERNSTEIN LLP
850 Morrison Drive, Suite 400
Charleston, SC 29403

12

ELECTRONICALLY FILED - 2025 Feb 14 10:55 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

STATE OF SOUTH CAROLINA

COUNTY OF GREENWOOD

IN THE COURT OF COMMON PLEAS

EIGHTH JUDICIAL CIRCUIT

GREENWOOD COMMISSIONERS OF
PUBLIC WORKS,

*Plaintiff,*

v.

CONE MILLS RECEIVER, LLC;
CRYOVAC, INC.; CRYOVAC, LLC;
FIRSTSOURCE WORLDWIDE, LLC;
FITESA SIMPSONVILLE, INC.;
MILLIKEN & COMPANY; OPPERMAN
WEBBING, INC.; T&S BRASS AND
BRONZE WORKS, INC.; UNICHEM
SPECIALTY CHEMICALS, LLC,

*Defendants.*

C.A. No. 2024-CP-24-00735

**MEMORANDUM OF LAW IN SUPPORT
OF FITESA SIMPSONVILLE, INC'S
MOTION TO DISMISS PLAINTIFF'S
AMENDED COMPLAINT**

Defendant Fitesa Simpsonville, Inc. ("Fitesa"), by and through its undersigned counsel, hereby respectfully submits this memorandum of law in support of its motion to dismiss all claims asserted against Fitesa in the Amended Complaint of Plaintiff Greenwood Commissioners of Public Works ("Plaintiff" or "Greenwood").

## **INTRODUCTION AND SUMMARY OF ARGUMENT**

In short, Plaintiff's claims are not ripe because its claims are based on regulatory standards that are not required for four more years, and may never be required in their current form. Even if Plaintiff's claims were ripe (and they are not), they fail as a matter of law on the pleadings alone because the allegations in the complaint do not support claims for trespass, public nuisance, private nuisance or negligence. A summary of Fitesa's argument follows:

- Plaintiff's claims are not ripe because Plaintiff bases this lawsuit on the mere possibility that it *may*, more than four years from now, be required to comply with regulations limiting the amount of per- and polyfluoroalkyl substances ("PFAS") in drinking water that Plaintiff provides to its customers, but only *if*: (1) the regulations remain in place and are unchanged; and (2) the water Plaintiff withdraws from Lake Greenwood in four years continues to contain levels of PFAS that exceed regulatory limits that might ultimately be adopted.

- Even if Plaintiff's claims were ripe (and they are not), the Amended Complaint still should be dismissed because it fails to state a claim on which relief can be granted as to the four tort claims Plaintiff raises: trespass, private nuisance, public nuisance and negligence.

  o Plaintiff's **trespass** claim fails for two reasons:

    ▪ First, trespass requires an invasion by a physical, tangible thing, and the South Carolina Supreme Court held in *Babb v. Lee County Landfill SC, LLC*, that molecules and microscopic particles do not constitute tangible items for purposes of a trespass claim. 405 S.C. 129, 145, 405 S.E.2d 468, 476 (2013). The levels of the chemical molecules at issue are so small they cannot even be seen by a microscope – at part per trillion levels – which are the equivalent of a drop of water in 20 Olympic-sized swimming pools.[1]

    ▪ Second, trespass requires the unauthorized entry onto Plaintiff's land. Here, Fitesa did not enter Plaintiff's land. Rather, Plaintiff voluntarily drew the allegedly contaminated water from Lake Greenwood onto its property through its water intakes, approximately 30 miles from Fitesa's manufacturing plant as the crow flies.

  o The **private nuisance** claim fails because under existing precedent, when allegedly contaminated water impacts a municipal water supply, the presence of alleged contamination in the public water supply does not support a private nuisance claim.

  o The **public nuisance** claim fails because Plaintiff did not allege an injury that is separate and distinct from the alleged injury to the public – water allegedly contaminated with PFAS. Without a separate and distinct injury, Plaintiff cannot state a claim for public nuisance.

  o **Both nuisance claims** fail because Fitesa did not have control over the instrumentality alleged to have caused the nuisance as is required to state a claim. Fitesa does not discharge anything directly into Lake Greenwood. Fitesa is approximately 30 miles from Lake Greenwood. Rather, Fitesa discharges wastewater to a wastewater treatment plant. Thus, Plaintiff's allegations make clear that Fitesa does not control discharges into Lake Greenwood or Lake Greenwood

---

[1] *See* https://dnr.mo.gov/monitoring/understanding-data (last visited Feb. 13, 2025).

2

ELECTRONICALLY FILED - 2025 Feb 14 10:55 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 14 10:55 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

itself. Therefore, Plaintiff's claims for private and public nuisance against Fitesa cannot be maintained.

o   Plaintiff's **negligence** claim fails because Fitesa does not owe Plaintiff a duty of care, as shown by Plaintiff's failure to plead such a duty. Fitesa does not have control over the wastewater that is discharged into Lake Greenwood. It is well-established that a party does not owe a duty of care to control a third party or warn another of a third-party's conduct.

o   Finally, Plaintiff's claims are barred by the **free public service doctrine** and preemption since the South Carolina Department of Environmental Services (the "Department") has primary jurisdiction over the alleged claims.

For these reasons and as more fully set forth below, Fitesa respectfully requests that the Court dismiss Plaintiff's Amended Complaint with prejudice.

## FACTUAL ALLEGATIONS IN AMENDED COMPLAINT

Plaintiff alleges that it owns and operates the W.R. Wise Water Treatment Facility, a surface water treatment plant ("SWTP") that treats raw water from Lake Greenwood and provides potable water to residents of Greenwood and Abbeville Counties. (Am. Compl. ¶¶ 3, 5) Plaintiff alleges that PFAS is "pervasive in industrial, commercial, and consumer products" and their chemistry make them "persisten[t] in the environment." (*Id.* ¶ 25) Plaintiff contends that, "[d]ue to their persistent nature, PFOA [perfluorooctanoic acid] and PFOS [perfluorooctane sulfonate] remain in the environment from decades of legacy industrial use." (*Id.* ¶ 31) Plaintiff further alleges that PFAS are "colloquially termed 'forever chemicals,' as terminal PFAS have no known environmental breakdown mechanism . . . ." (*Id.* ¶ 25) Plaintiff further contends "PFAS leach from soil to groundwater and are highly mobile and water soluble, making groundwater and surface water particularly vulnerable to contamination." (*Id.* ¶ 29)

Plaintiff alleges that the defendants operate facilities upstream from Lake Greenwood and are responsible for PFAS found in the water Plaintiff withdraws from Lake Greenwood. (*Id.* ¶ 4) Plaintiff admits that the defendants do not discharge wastewater directly onto Plaintiff's property

3

ELECTRONICALLY FILED - 2025 Feb 14 10:55 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

or even into Lake Greenwood. (*Id.*) Rather, Plaintiff alleges that the defendants discharge wastewater to "certain wastewater treatment plants ('WWTPs') located upstream of Plaintiff's water intakes." (*Id.*) Regarding Fitesa, Plaintiff alleges that Fitesa uses products at its upstream facility that "contain or degrade to PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals," and that Fitesa "discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to the Lower Reedy WWTP." (*Id.* ¶ 19) Plaintiff alleges that the Lower Reedy WWTP cannot adequately remove the PFAS that is allegedly present in the water entering the WWTP. (*Id.* ¶¶ 5, 19) After the wastewater is treated at the WWTP, it is discharged into the Reedy River upstream of Lake Greenwood. (*Id.*) After the treated wastewater reaches Lake Greenwood, Plaintiff draws the water onto its property through its water intakes. (*Id.* ¶¶ 3, 4, 19, 50).

Plaintiff alleges that the water it draws from Lake Greenwood contains PFAS at levels that exceed the newly enacted maximum contaminant levels ("MCLs") set forth in the United States Environmental Protection Agency's ("EPA") regulations for drinking water in the National Primary Drinking Water Regulation ("NPDWR"). (*Id.* ¶¶ 53-54) The NPDWR establishes MCLs for six types of PFAS in drinking water: PFOA, PFOS, PFHxS, PFNA, HFPO-DA, and PFAS mixtures containing at least two or more of PFHxS, PFNA, HFPO-DA and PFBS. *See* 40 CFR 141.900, *et seq.* Compliance with the MCLs is not required until April 26, 2029. *See* 40 CFR 141.900(b)(4). (*See also* Am. Compl. ¶ 44). In fact, current legal challenges to the rule, future Congressional action or future EPA rulemaking could alter, amend or eliminate compliance standards applicable to Fitesa. *See, e.g., Petition for Review, The Chemours Co. v. EPA*, No. 24-1192 (D.C. Cir. June 10, 2024).

ELECTRONICALLY FILED - 2025 Feb 14 10:55 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Based on the foregoing allegations, Plaintiff asserts claims for private nuisance, public nuisance, trespass and negligence, gross negligence, and/or recklessness against Fitesa and all other defendants.

## **ARGUMENT**

I.      **Plaintiff's Amended Complaint must be dismissed because Plaintiff's claims are not ripe.**

   A.      **It is well settled that contingent, hypothetical or abstract claims are not ripe for adjudication.**

"A threshold inquiry for any court is a determination of justiciability, i.e., whether the litigation presents an active case or controversy." *Peoples Fed. Sav. & Loan Ass'n of S.C. v. Res. Plan. Corp.*, 358 S.C. 460, 477, 596 S.E.2d 51, 60 (2004) (quoting *Lennon v. S.C. Coastal Council,* 330 S.C. 414, 415, 498 S.E.2d 906, 906 (S.C. App. 1998)).   Justiciability includes whether the plaintiff's claims are ripe for adjudication.  *See James v. Anne's Inc.*, 390 S.C. 188, 193, 701 S.E.2d 730, 732 (2010) (citing *Jackson v. State*, 331 S.C. 486, 490 n.2, 489 S.E.2d 915, 917 n.2 (1997)).  Where a claim presents only "a contingent, hypothetical or abstract dispute," the claim is not ripe for adjudication and must be dismissed.  *See Pee Dee Elec. Co-op., Inc. v. Carolina Power & Light Co.*, 279 S.C. 64, 66, 301 S.E.2d 761, 762 (1983); *see also Peoples Fed. Sav. & Loan Ass'n of S.C.*, 358 S.C. at 477, 596 S.E.2d at 60 ("A justiciable controversy is a real and substantial controversy which is ripe and appropriate for judicial determination, as distinguished from a contingent, hypothetical or abstract dispute.") (citation omitted).

Plaintiff's claim fails as a matter of law because its Complaint alleges that its injury is, at best, contingent on potential enforcement of an EPA regulation four years in the future which is unquestionably not an active case or controversy.  *See McClanahan v. Richland Cnty. Council*, 350 S.C. 433, 441, 567 S.E.2d 240, 244 (2002) (property owner's claim based on adoption of

5

ELECTRONICALLY FILED - 2025 Feb 14 10:55 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

land use plan not yet implemented is unripe); *Kiawah Prop. Owners Grp. v. Pub. Serv. Comm'n of S.C.*, 357 S.C. 232, 242-43, 593 S.E.2d 148, 154 (2004) (no justiciable controversy where plaintiffs "assert only that the loan provisions may have some negative impact in the future" on water utility's customers).

> **B.    Plaintiff has not shown it needs to act to meet the new MCLs, and the MCLs at issue may never go into effect.**

Plaintiff asserts nothing more than contingent, hypothetical and abstract claims because Plaintiff may never suffer the harm it alleges.  Indeed, although EPA's PFAS drinking water standards ( "MCLs") were adopted in April 2024, (Am. Compl. ¶ 42), they were immediately challenged, and it has not yet been determined how, if at all, the PFAS MCL rule might impact the Plaintiff or its ability to provide drinking water.  Notably, even if EPA's PFAS MCL rule were to survive the multiple legal and political challenges they face, Plaintiff admits that it would not even be required to comply with the MCLs until April 26, 2029.  (*Id.* ¶ 44)  In fact, prior to the MCL compliance date, there is a three-year "initial monitoring" period that runs through April 26, 2027.  (*Id.*); *see* PFAS National Primary Drinking Water Regulation, 89 Fed. Reg. 32,532, 32,633 (Apr. 26, 2024) (40 CFR Parts 141 and 142).

Plaintiff does not allege any facts demonstrating that, at this time, it is doing anything other than waiting to see if and when it will have to take action to comply with the 2029 MCLs. Importantly, Plaintiff has not alleged that it has incurred any costs or expenses whatsoever due to the alleged presence of PFAS in its source water.  Rather, Plaintiff demands expenses associated with **future** "acquisition, installation, and operation of required treatment technologies." (Am. Compl. ¶ 79).  Nothing in the Amended Complaint indicates that Plaintiff's operations have changed at all from the period before the EPA PFAS MCL rule was adopted in April or as a result of alleged PFAS in Lake Greenwood.

6

Plaintiff's wait-and-see approach may continue indefinitely. For example, Plaintiff's testing during the initial monitoring period may indicate that Plaintiff will not be required to make any capital investments to remain in compliance with applicable regulations. Further, it is entirely uncertain whether the MCLs will remain valid law by the time they would actually apply to Plaintiff. In June 2024, three sets of plaintiffs filed challenges to EPA's PFAS MCL rule in actions currently pending before the D.C. Circuit Court of Appeals. *See Petition for Review, The Chemours Co. v. EPA*, No. 24-1192 (D.C. Cir. June 10, 2024)[2]; *Petition for Review, Nat'l Assoc. of Mfrs. v. EPA*, No. 24-1191 (D.C. Cir. June 10, 2024)[3]; *Petition for Review, Am. Water Works Assoc. v. EPA*, No. 24-1188 (D.C. Cir. June 7, 2024).[4] The changes to the MCLs that could result from these cases, or from future Congressional or EPA actions or interpretations, preclude Plaintiff's claims from being ripe at this time. *See Jowers v. S.C. Dep't of Health & Env't Control*, 423 S.C. 343, 364, 815 S.E.2d 446, 457 (2018) (finding action was not ripe because the plaintiff's claim "depends on there being no changes to the law regarding surface water withdrawals"). Because of these numerous contingencies and the resulting uncertainty, the facts alleged by Plaintiff demonstrate, at most, "the mere threat of potential injury," which is "too contingent or remote to support present adjudication." *Waters v. S.C. Land Res. Conservation Comm'n*, 321 S.C. 219, 228, 467 S.E.2d 913, 918 (1996) (quoting *Thrifty Rent- A-Car Sys., Inc. v. Thrifty Auto Sales of Charleston, Inc.*, 849 F. Supp. 1083, 1085-86 (D.S.C. 1991)). Further, the new Presidential Administration has signaled its distaste for PFAS regulations by issuing a series of Executive Orders freezing new EPA regulations.[5]

---

[2] Available at https://www.epa.gov/system/files/documents/2024-06/chemours- v.-epa_d.c.cir_.pdf.
[3] Available at https://www.fbm.com/content/uploads/2024/06/24-1191_Documents.pdf.
[4] Available at https://www.awwa.org/Portals/0/AWWA/Government/062124Insiders/AWWA-v-EPA-No-1188-DC-Cir-Filed-Petition.pdf.
[5] *See, e.g.*, https://www.whitehouse.gov/presidential-actions/2025/01/regulatory-freeze-pending-review/ (last visited Feb. 13, 2025).

ELECTRONICALLY FILED - 2025 Feb 14 10:55 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

For these reasons alone, Plaintiff's claims are not ripe for adjudication and should be dismissed.

**II.    The Amended Complaint also fails to state a claim for relief because the trespass, nuisance and negligence claims fail as a matter of law.**

**A.    Plaintiff's trespass claim fails as a matter of law.**

**1.    Plaintiff's trespass claim fails because there has been no invasion of Plaintiff's property by a physical, tangible thing.**

In South Carolina, there must be "an invasion by a physical, tangible thing for a trespass to exist." *Babb*, 405 S.C. at145. In *Babb*, the South Carolina Supreme Court adopted the "dimensional test" for determining whether a trespass has occurred, pursuant to which, "a trespass only exists where the invasion of land occurs through a **physical, tangible object**." *Id.* at 145 (emphasis added). In reaching this conclusion, our Supreme Court rejected the line of cases that refused to apply the dimensional test and instead permitted recovery based on the nature of the interest harmed, such as energy and force, or microscopic air emissions. *Id.* at 146-48.

In *Babb*, the South Carolina Supreme Court rejected two opinions that rejected the dimensional test, *Martin v. Reynolds Metals Co.*, 342 P.2d 790 (Or. 1959) (the determination of whether an invasion of the right to exclusive possession occurred, and thus whether a trespass occurred, is best determined by consideration of the energy and force of the thing intruding upon a plaintiff's land) and *Borland v. Sanders Lead Co., Inc.*, 369 So.2d 523 (Ala.1979) (refusing to apply the dimensional test and finding that a trespass was pled "where the plaintiffs sued a lead smelter for lead and sulfoxide emissions they alleged settled on and damaged their property"). Instead, the Supreme Court found persuasive the Michigan Court of Appeals' affirmation of the dimensional test in *Adams v. Cleveland-Cliffs Iron Co.* in which the Michigan Court held that intangible invasions cannot give rise to a trespass action. 602 N.W.2d 215, 222 (Mich. App. 1999)

8

ELECTRONICALLY FILED - 2025 Feb 14 10:55 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 14 10:55 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

("In the present case, because the intrusions of which plaintiffs complained were intangible things [noise, dust and vibrations], the trial court erred in allowing the jury to award damages in trespass.")

In the present case, microscopic PFAS molecules in the water (tens of thousand times smaller than dust) that Plaintiff draws onto its property are not tangible, physical objects as required to state a claim for trespass under the dimensional test. *See Babb*, 405 S.C. at 478. They are chemical molecules that are measured in **parts per trillion**. (Am. Compl. ¶¶ 30-40) Plaintiff does not allege that PFAS can be seen or felt in the water it pulls onto its property; rather, Plaintiff only allegedly detected PFAS in its water after performing tests on samples of water. (*Id.* ¶ 47) The nearly undetectable size of these PFAS molecules cannot be overstated – they are the equivalent to a drop water in 20 Olympic sized swimming pools, or one inch in 16 million miles (600 trips around the earth).[6] In fact, they are so small that until recently, laboratories could not even measure such small amounts of PFAS with any real accuracy.[7] After years of development, EPA finally adopted a final method for analyzing PFAS in water in January 2024, which was just revised in December 2024.[8]

PFAS is much smaller than the dust in the *Adams* case that the Michigan appellate court concluded did not state a claim for trespass, and which our South Carolina Supreme Court affirmed under the dimensional rule mandated by *Babb.* As such, Plaintiff's claim for trespass fails as a matter of law and must be dismissed.

---

[6] *See* https://dnr.mo.gov/monitoring/understanding-data (last visited Feb. 13, 2025); https://www.needhamma.gov/Faq.aspx?QID=406#:~:text=One%20part%20per%20million%20(ppm,600+%20times%20around%20the%20earth) (last visited Feb. 13, 2025).
[7] *See* https://www.epa.gov/water-research/pfas-analytical-methods-development-and-sampling-research (last visited Feb. 13, 2025).
[8] *See* Method 1633A Analysis of Per- and Polyfluoroalkyl Substances (PFAS) in Aqueous, Solid, Biosolids, and Tissue Samples by LC-MS/MS, https://www.epa.gov/system/files/documents/2024-12/method-1633a-december-5-2024-508-compliant.pdf (last visited Feb. 13, 2025).

**2.    The trespass claim also fails because Plaintiff voluntarily caused the allegedly contaminated water to enter its property.**

"The essence of trespass is the unauthorized entry onto the land of another." *Ravan v. Greenville Cnty.*, 315 S.C. 447, 464, 434 S.E.2d 296, 306 (Ct. App. 1993). Thus, to state a claim for trespass, Plaintiff must plead facts establishing "an invasion (a) which interfered with the right of exclusive possession of the land, and (b) which was a direct result of some act committed by the defendant." *Graham v. Town of Latta*, 417 S.C. 164, 192, 789 S.E.2d 71, 86 (Ct. App. 2016) (internal quotation omitted). Trespass requires an "intentional invasion" of the plaintiff's property by the defendant: "[T]here must be an affirmative act, the invasion of the land must be intentional, and the harm caused must be the direct result of that invasion." *Snow v. City of Columbia*, 305 S.C. 544, 553, 409 S.E.2d 797, 802 (Ct. App. 1991).

Here, Plaintiff alleges that it voluntarily draws the allegedly contaminated water onto its property through its water intakes. (Am. Compl. ¶¶ 3, 4, 19, 50) Plaintiff itself authorized the entry of the water onto its property. (*Id.*) Plaintiff also does not allege that Fitesa discharges its wastewater directly onto Plaintiff's property. (*Id.* ¶ 19) The Amended Complaint is clear that Fitesa's wastewater is discharged to a wastewater treatment plant approximately 30 miles from Lake Greenwood. (*Id.*) Then, after the wastewater is treated by the wastewater treatment plant, it allegedly is discharged into the Reedy River upstream of Lake Greenwood. (*Id.*) After the treated wastewater reaches Lake Greenwood, Plaintiff intentionally draws the water onto its property through its water intakes. (*Id.* ¶¶ 3, 4, 19, 50) Without Plaintiff's own voluntary actions causing the water to enter its property, the water would not enter Plaintiff's property. There is no

ELECTRONICALLY FILED - 2025 Feb 14 10:55 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 14 10:55 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

"unauthorized entry" onto Plaintiff's land; therefore, there is no trespass, and the claim should be dismissed.[9]

### B.   Plaintiff's private nuisance claim fails as a matter of law.

Plaintiff's private nuisance claim against Fitesa should be dismissed because the alleged contamination of a public water body cannot form the basis of a claim for private nuisance. Indeed, "[a] private nuisance affects only one person or a determinate number of persons," whereas "[a] nuisance is public because of the danger to the public which might have been created." *See Home Sales, Inc. v. City of N. Myrtle Beach*, 299 S.C. 70, 81, 382 S.E.2d 463, 469 (Ct. App. 1989) ("A nuisance is public because of the danger to the public which might have been created. It is private only because the individual as distinguished from the public has been or may be injured."); *see also Charleston Dev. Co. v. Alami*, 433 S.C. 533, 547-48, 860 S.E.2d 687, 695 (Ct. App. 2021) ("'A private nuisance is anything done to the hurt or annoyance of the lands, tenements, or hereditaments of another. It produces damage to but one or two persons, and cannot be said to be public.'") (citations omitted).

The *Priselac v. Chemours Co.* case is instructive because it involves allegations of nuisance regarding a body of water. *Id.*, No. 7:20-cv-190, 2022 WL 909406, at *5 (E.D.N.C. Mar. 28, 2022) In *Priselac*, the District Court held, "[E]ven though defendants' alleged contamination of the Cape Fear River and the surrounding air, soil, and groundwater negatively affects Priselac's use and enjoyment of her private property, the interest affected is a public interest. . . . Priselac alleges the invasion of a public, not a private, interest and thus fails to state

---

[9] Plaintiff cannot establish that Fitesa is the source of the alleged PFAS in the water in Lake Greenwood because Fitesa discharges its wastewater approximately 30 miles upstream from Plaintiff's intakes. Between Fitesa's discharge and Plaintiff's intakes lie dozens, if not hundreds, of other potential sources of the PFAS allegedly found in Lake Greenwood, including rainwater and other possible sources of PFAS.

ELECTRONICALLY FILED - 2025 Feb 14 10:55 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

a private nuisance claim." *Id.*; *accord Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 96-97 (4th Cir. 2011) ("If the only interest that is invaded is an interest shared equally by members of the public, then the alleged nuisance is public in nature. Such a circumstance is precisely the situation presented here, because DuPont's allegedly tortious conduct interfered with the general public's access to clean drinking water. . . . We therefore conclude . . . that when a release of pollutants directly affects a municipal water supply and does not interfere with any private water source, such as a well drilled on private property, the presence of the pollutants in the public water supply will not support a private nuisance claim.") (citations omitted).

Plaintiff's Amended Complaint makes clear that its claims against Fitesa are based on the alleged contamination of the Reedy River (the discharge point for the Lower Reedy WWTP) and Lake Greenwood (the location of Plaintiff's water intakes). (*See* Am. Compl. ¶ 19) (alleging that "Fitesa's facility discharges industrial wastewater contaminated with products that contain or degrade to these PFAS to the Lower Reedy WWTP . . . which it discharges into the Reedy River upstream of Lake Greenwood and Plaintiff's water intakes"); *see also id.* ¶¶ 2-5, 45-48, 50, 60, 64, 66, 72-74, 78). Plaintiff's nuisance claim therefore involves an alleged nuisance that is "public in nature," which "will not support a private nuisance claim." *See Rhodes*, 636 F.3d at 96-97. As such, Plaintiff's private nuisance claim should be dismissed. Similarly, Plaintiff's public nuisance claim fails because Plaintiff has failed to plead a special injury.

## C. Plaintiff's public nuisance claim also fails as a matter of law.

A public nuisance can be asserted typically only by the State to remedy harms suffered by the public generally. *Carnival Corp. v. Historic Ansonborough Neighborhood Ass'n*, 407 S.C. 67, 78, 753 S.E.2d 846, 852 (2014). A private citizen generally cannot bring a suit to abate a public nuisance and must rely on the State to assert the claim. *Id.* The one, very narrow exception

12

ELECTRONICALLY FILED - 2025 Feb 14 10:55 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

to this rule allows a private entity to bring a suit for a public nuisance only if it suffered a "special injury." *Id.* The special injury must be an "individual or specific damage in addition to that suffered by the public," (*id.*), and "is satisfied only by injury to the individual's real or personal property." *Overcash v. S.C. Elec. & Gas Co.*, 364 S.C. 569, 575, 614 S.E.2d 619, 622 (2005). Plaintiff does not plead any facts alleging that it has suffered any unique injury that is not suffered by the public at large, and it does not allege injury to its own real or personal property. Plaintiff alleges that its special injury is "the inability to provide potable water to customers without concentrations of PFOA, PFOS, PFHxS, PFNA, PFBS, and/or GenX Chemicals deemed unsafe by EPA . . . ." (Am. Compl. ¶ 73) This alleged injury is no different than the injury allegedly suffered by the public at large – the alleged contamination of water with PFAS. (*See id.* ¶ 53) Also, although Plaintiff alleges that it has "lost use of its property," it does not identify an injury to its own personal or real property. (*Id.*) As such, Plaintiff's claim for public nuisance fails as a matter of law and should be dismissed.

**D.    Both Plaintiff's public and private nuisance claims fail because Fitesa did not have control over the instrumentality alleged to have caused the nuisance.**

Under South Carolina law, an action for private or public nuisance requires a plaintiff to demonstrate that the defendant had control over the instrumentality alleged to have caused the nuisance "at the time of the alleged nuisance." *See, e.g., Clark v. Greenville Cnty.*, 313 S.C. 205, 210, 437 S.E.2d 117, 119 (1993) (holding that "one who has no control over property at the time of the alleged nuisance cannot be held liable therefor"); *FOC Lawshe Ltd. P'ship v. Int'l Paper Co.*, 352 S.C. 408, 414, 574 S.E.2d 228, 231 (Ct. App. 2002) (same). Conversely, "one who has no control over property at the time of the alleged nuisance cannot be held liable therefor." *Clark*, 313 S.C. at 210; *see also id.* at 209 (a nuisance is "that class of wrongs that arises from the unreasonable, unwarrantable, or unlawful use by a person of his own property, personal or real").

13

Based on the allegations in the Amended Complaint, Fitesa did not have control over the allegedly contaminated water at the time the alleged nuisance occurred. Plaintiff admits that Fitesa does not discharge *anything* directly into Lake Greenwood. Rather, Fitesa discharges wastewater to a wastewater treatment plant. (Am. Compl. ¶ 19). Thus, Plaintiff's allegations make clear that Fitesa does not control the discharge into Lake Greenwood, and, therefore, Plaintiff's claims for private and public nuisance against Fitesa should be dismissed.

The South Carolina Supreme Court has made clear that "one who has no control over property at the time of the alleged nuisance cannot be held liable therefor." *Clark*, 313 S.C. at 210. As such, in the absence of any allegations evidencing Fitesa's control over Lake Greenwood, Plaintiff's nuisance claim fails and must be dismissed. *See Weatherford v. E.I. Dupont de Neumours & Co.*, No. 4:22-cv-1427, 2023 WL 11015357, at \*6 (D.S.C. Sept. 27, 2023) (concluding that because "Plaintiffs have not alleged Defendants had control over the PFAS once they were sold to the textile plants," the Defendants could not be held liable for the PFAS and therefore "Defendants' motion to dismiss is granted as to Plaintiffs' nuisance cause of action").[10]

**E.      Plaintiff's negligence claim fails because Fitesa does not owe a duty to Plaintiff.**

"An essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff." *Huggins v. Citibank, N.A.*, 355 S.C. 329, 332, 585 S.E.2d 275, 276 (2003). "If there is no duty, then the defendant in a negligence action is entitled to a judgment as a matter of law." *Madison ex Rel. v. Babcock*, 371 S.C. 123, 135-36, 638 S.E.2d 65, 656 (2006). Under South Carolina law, "there is no general duty to control the conduct of another or to warn a third person or potential victim of danger." *Id.* at 136. Additionally, one who

---

[10] *See also, e.g., Long v. O'Reilly's Auto. Stores, Inc.*, No. 6:12-cv-901, 2013 WL 12148122, at \*4 (D.S.C. Mar. 7, 2013) (dismissing nuisance claim against defendants who had no control over property that was source of water that discharged onto and damaged the plaintiff's property).

14

ELECTRONICALLY FILED - 2025 Feb 14 10:55 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

does not have control over the use of property does not have a duty of care not to harm others by its use. *Miller v. City of Camden*, 329 S.C. 310, 314, 494 S.E.2d 813, 815 (1997).

Here, Plaintiff does not allege any facts that suggest the existence of a relationship between Plaintiff and Fitesa sufficient to establish a legal duty of care. Indeed, Plaintiff does not allege any duty "created by statute, a contractual relationship, status, property interest, or some other special circumstance," but instead alleges only that the "Defendants have a duty to use due care in the handling, use, and disposal of products containing or degrading to [PFAS] to avoid causing an unreasonable risk of harm to others." (*See* Am. Compl. ¶ 91) However, South Carolina does not recognize or impose such a broad and oversimplified duty of care. In fact, under South Carolina law, "one who has no control owes no duty." *See Miller*, 329 S.C. at 314 (citing *Clark*, 313 S.C. at 209); *see also Ellis v. Tall Ships Charleston, LLC*, 593 F. Supp. 3d 253, 268 (D.S.C. 2022) ("Under South Carolina law, there is no general duty to control the conduct of another or to warn a third person or potential victim of danger." (quoting *Faile v. S.C. Dep't of Juv. Just.*, 350 S.C. 315, 334, 566 S.E.2d 536, 546 (2002))). Accordingly, by discharging its wastewater to a wastewater treatment plant, Fitesa owed no duty to the Plaintiff. *See, e.g., Oulla v. Velazques*, 427 S.C. 428, 444, 831 S.E.2d 450, 458 (Ct. App. 2019) (finding that sod manufacturer that placed sod pallets on truck trailer that later fell from trailer leading to accident and injury to motorist did not owe a legal duty to motorist to ensure pallets were properly secured). As a result of the absence of any duty, Plaintiff's negligence claim against Fitesa should be dismissed.

III.    **Plaintiff's claims are barred by the Free Public Service Doctrine and the Department has primary jurisdiction over Plaintiff's claims.**

   A.    **The Free Public Services Doctrine precludes the speculative damages plaintiff alleges.**

15

ELECTRONICALLY FILED - 2025 Feb 14 10:55 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 14 10:55 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Under the free public service doctrine, public expenditures made in the performance of governmental functions are not recoverable in tort. *See U.S. v. Standard Oil Co. of Cal.*, 332 U.S. 301, 315-17 (1947) (holding that the "exercise of judicial power to establish [] new liability . . . would be intruding within a field properly within [the legislature's] control"). Attempts by governmental bodies to sue product manufacturers over response costs are an end run around the democratic process. *See Int'l Bhd. of Teamsters, Local 734 Health & Welfare Fund v. Philip Morris, Inc.*, 196 F.3d 818, 825 (7th Cir. 1999) ("[I]t is no part of the judicial function . . . to decree a sudden, ex post shift in the financial consequences of selling a consumer product by attaching what would amount to a regressive excise tax."); *Torres v. Putnam Cnty.*, 541 S.E.2d 133, 136 & n.4 (Ga. App. 2000) (allegation that defendant "caus[ed] the county to spend money enforcing its laws and protecting its citizens" failed to state a claim).

Plaintiff is a governmental, public entity that is duly authorized to provide "potable water and additional public utility services to residents of Greenwood and Abbeville Counties." (Am. Compl. ¶ 13 (citing S.C. Code Ann. § 5-31-210)) Under S.C. Code of Laws § 5-31-250, Plaintiff "may purchase, build or contract for building any waterworks" "and may operate them and shall have full control and management of them." Further, "[i]t may supply and furnish water to citizens of the city or town." S.C. Code Ann. § 5-31-250. As a public, governmental entity, Plaintiff cannot maintain tort claims which seek relief from the Court for alleged damages to upgrade its SWTPs. *See* Am. Compl. ¶¶ 6-7

**B.     Alternatively, the Court should stay this action and refer the issue to the Department of Environmental Services.**

In the alternative, the Court should stay this action upon referral to the Department on the grounds of primary jurisdiction. "Primary jurisdiction . . . applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the

ELECTRONICALLY FILED - 2025 Feb 14 10:55 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case the judicial process is suspended pending referral of such issues to the administrativebody for its view." *U.S. v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1956) (internal quotation marks omitted).

The South Carolina State Safe Drinking Water Act ("SC SDWA") reflects the regulatory framework under which the legislature entrusted the Department with addressing the exact harm alleged here. *See* S.C. Code Ann. § 44-55-10, *et seq.* The SC SDWA prohibits any person from "render[ing] a public water system, or part or portion of a public water system, inoperable or unusable by means of contamination . . . ." *Id.* at § 44-55-80(B). The SC SDWA exclusively vests enforcement authority in the Department and, if requested by the Department, the Attorney General. *Id.* at §§ 44-55-60 through 44-55-100. Under the SC SDWA, violators are liable to the State, not the public water system, and damages are limited to actual damages sustained. *Id.* at § 44-55-90(B)(1), 44-55-1520. Because the exclusive enforcement of these issues rests with the Department, this Court should refer this case to the Department to exercise primary jurisdiction.

## CONCLUSION

For the foregoing reasons, Fitesa respectfully requests that the Court grant its motion to dismiss Plaintiff's Amended Complaint with prejudice.

17

Respectfully submitted this 14th day of February, 2025.

/s/ *Robert H. Jordan*
Kevin A. Dunlap
SC State Bar No. 13081
Parker Poe Adams & Bernstein LLP
110 East Court Street, Suite 200
Greenville, SC 29601
Telephone: (864) 577-6370
Email: kevindunlap@parkerpoe.com

Robert H. Jordan
SC State Bar No. 13612
PARKER POE ADAMS & BERNSTEIN LLP
850 Morrison Drive, Suite 400
Charleston, South Carolina 29403
Phone: 843-727-2650
E-mail: robertjordan@parkerpoe.com

Steven D. Weber
S.C. State Bar No. 16917
PARKER POE ADAMS & BERNSTEIN LLP
620 South Tryon St., Ste. 800
Charlotte, North Carolina 28202
Tel.: (704) 372-9000
Email: steveweber@parkerpoe.com

*Attorneys for Defendant Fitesa Simpsonville, Inc.*

ELECTRONICALLY FILED - 2025 Feb 14 10:55 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 14 11:04 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735



| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| IN RE: PFAS LITIGATION COORDINATED DOCKET | ) | |
| | ) | |
| COUNTY OF GREENWOOD | ) | CASE NO.: 2024-CP-24-00735 |
| | ) | |
| Greenwood Commissioners of Public Works, | ) | **T&S Brass and Bronze Works, Inc.'s Memorandum in Support of Motion to Dismiss Plaintiff's Amended Complaint** |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| Cone Mills Receiver, LLC; Cryovac, Inc.; Cryovac, LLC; FirstSource Worldwide, LLC; Fitesa Simpsonville, Inc.; Milliken & Company; Opperman Webbing, Inc.; T&S Brass and Bronze Works, Inc.; Unichem Specialty Chemicals, LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendant T&S Brass and Bronze Works, Inc. ("T&S Brass") submits this Memorandum of Law in Support of its Motion to Dismiss Plaintiff's Amended Complaint, pursuant to Rules 12(b)(1) and 12(b)(6) of the South Carolina Rules of Civil Procedure.

T&S Brass has moved to dismiss Plaintiff's claims because they are not yet ripe for adjudication. PFAS drinking water standards will not go in effect until 2029, if then, and are subject to ongoing litigation from trade organizations purporting to represent Plaintiffs' interests, challenging their validity. Whatever costs Plaintiff may have incurred in anticipation of these standards have been voluntary, and in any event have not been alleged in the Complaint. Plaintiff's claims also run afoul of the "Municipal Cost Recovery Rule," because any expenditures made by public entities in the performance of their governmental functions are not recoverable in tort, as this would violate the constitutional doctrine of separation of powers.

1

Additionally, Plaintiff's causes of action for nuisance and trespass fail to state a claim under South Carolina black letter law. There has been no unreasonable interference with the use and enjoyment of Plaintiff's property or property rights, and no trespass that has intentionally interfered with Plaintiff's rights of exclusive possession of its property. Plaintiff's negligence claim must be dismissed because T&S Brass owes no cognizable legal duty to Plaintiff, or if so, Plaintiff has voluntarily assumed the risk of operating as a public water provider and has as yet incurred no recoverable damages. Finally, Plaintiff has failed to join indispensable parties necessary to an adjudication of this case. Alternately, this Court should stay this action and refer these issues to the South Carolina Department of Environmental Services, under the doctrine of primary jurisdiction.

### Background

Plaintiff filed its Amended Complaint against T&S Brass and various co-defendants asserting causes of action for negligence, private nuisance, public nuisance, and trespass related to alleged "ongoing contamination of the Reedy River, Saluda River, Lake Greenwood, and Plaintiff's property." (Am. Compl. ¶ 1). Plaintiff alleges T&S Brass, along with the co-defendants, has discharged and continues to unlawfully discharge wastewater that contains certain toxic per- and polyfluoroalkyl substances ("PFAS") or degrades to PFAS into the above-referenced waterways. (*Id*. at ¶ 2).

As Plaintiff knows, T&S Brass, along with most of the other defendants, does not discharge effluent directly to any public or private water body or source. Instead, they discharge their industrial wastewater to certain publicly owned wastewater treatment plants ("WWTP"), pursuant to permits issued by the WWTPs, and the WWTPs then treat the wastewater pursuant to permits issued by the South Carolina Department of Environmental Services ("DES") in accordance with

ELECTRONICALLY FILED - 2025 Feb 14 11:04 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 14 11:04 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

state and federal regulations that impose discharge limits. (*See id.* at ¶¶ 2–5). After treatment, this wastewater is then discharged by the WWTP to the Reedy River (in the case of T&S Brass) and travels downstream to Plaintiff's water intakes on Lake Greenwood and, according to the Complaint, allegedly contaminates both Plaintiff's real property and the domestic water supply for approximately 23,500 customers in Greenwood and Abbeville Counties. (*Id.* at ¶ 2). Plaintiff claims that it has suffered past, present, and future losses to the use and enjoyment of certain property interests and has experienced physical trespass and been damaged by water contaminated with concentrations of PFAS, which if distributed to its customers using current wastewater supply technology, would contain PFAS at levels EPA has recently deemed to be potentially unsafe. (*Id.* at ¶ 5).

Although not explicitly stated in the Amended Complaint, Plaintiff's claims are founded on an assertion of property rights related to the W.R. Wise Water Treatment Facility (a surface water treatment plant) and its water treatment and distribution system, as well as Plaintiff's conditional right to withdraw water from Lake Greenwood to provide potable water to the public after appropriate treatment. (*Id.* at ¶¶ 3, 14, 54).

### Standard of Review

Pursuant to Rule 12(b)(6), SCRCP, "[a] claim may be dismissed when the defendant demonstrates that the plaintiff has failed to allege facts sufficient to support a cause of action." *Disabato v. South Carolina Ass'n of School Adm'rs*, 404 S.C. 433, 441, 746 S.E.2d 329, 333 (2013). "A ruling on a motion to dismiss pursuant to Rule 12(b)(6) must be based solely on the factual allegations set forth in the complaint, and the court must consider all well-pled allegations as true." *Id.* Although the court is required to presume all well pled facts as true, the same cannot be said for propositions of law. *HHHunt Corp. v. Town of Lexington*, 389 S.C. 623, 635, 699

3

ELECTRONICALLY FILED - 2025 Feb 14 11:04 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

S.E.2d 699, 705 (Ct. App. 2010). A plaintiff "cannot transform an unsupported proposition of law into a statement of fact" to avoid dismissal under Rule 12(b)(6). *Id.*

**Argument**

As explained below, the Amended Complaint fails to state facts sufficient to constitute a cause of action on multiple grounds.

## I. Plaintiff's Amended Complaint and Common Law Claims Fail to State a Justiciable Controversy Capable of Judicial Redress.

As a threshold matter, the causes of action set forth in the Amended Complaint are not ripe for adjudication, and Plaintiff does not have standing to assert these claims. Therefore, Plaintiff has failed to present a justiciable controversy.

### a. *Justiciability*

South Carolina "courts will not address the merits of any case unless it presents a justiciable controversy." *Jowers v. S.C. Dep't of Health & Env't Control*, 423 S.C. 343, 353, 815 S.E.2d 446, 451 (2018) (*citing Byrd v. Irmo High Sch.*, 321 S.C. 426, 430-31, 468 S.E.2d 861, 864 (1996)). A threshold inquiry for any court is a determination of "justiciability"; that is, whether the litigation presents an active case or controversy. *Id.* (citing *Peoples Fed. Sav. & Loan Ass'n v. Res. Planning Corp.*, 358 S.C. 460, 477, 596 S.E.2d 51, 60 (2004)). "Justiciability encompasses ripeness and standing." *Id.* (quoting *James v. Anne's Inc.*, 390 S.C. 188, 193, 701 S.E.2d 730, 732 (2010)) (internal quotations omitted).

"Standing is a personal stake in the subject matter of the lawsuit." *Id.* (citation omitted) (internal quotations omitted). There are three requirements to meet the "stringent standing test[.]" *Sea Pines Ass'n for Prot. of Wildlife, Inc. v. S.C. Dep't of Nat. Res.*, 345 S.C. 594, 601, 550 S.E.2d 287, 291 (2001). "First, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not

4

'conjectural' or 'hypothetical.'" *Id.* (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555, 559-61 (1992)) (emphasis added). "Second, there must be a causal connection between the injury and the conduct complained of—the injury has to be 'fairly traceable to the challenged action of the defendant, and not ... the result of the independent action of some third party not before the court.'" *Id.* And "[t]hird, it must be 'likely,' as opposed to merely 'speculative,' that the injury will be 'redressed by a favorable decision.'" *Id.* "The party seeking to establish standing carries the burden of demonstrating each of the three elements." *Id.*

Ripeness, on the other hand, is more often explained "by defining what is not ripe," as "'an issue that is contingent, hypothetical, or abstract is not ripe for judicial review.'" *Jowers*, 423 S.C. at 353–54, 815 S.E.2d at 451 (*quoting Colleton Cty. Taxpayers Ass'n v. Sch. Dist. of Colleton Cty.*, 371 S.C. 224, 242, 638 S.E.2d 685, 694 (2006)). A claim "is not ripe if it is contingent on future events." *Encore Tech. Grp., LLC v. Trask*, 436 S.C. 289, 309, 871 S.E.2d 608, 619 (Ct. App. 2021) (citation omitted) (emphasis added).

      *b.   Standing*

Plaintiff lacks standing to bring this action because it cannot establish the necessary elements of injury in fact or redressability. As a drinking water provider, Plaintiff bases its claims on recently adopted and still developing standards promulgated by the EPA related to permissible future PFAS levels in drinking water. As alleged in the Amended Complaint, Plaintiff will not be required to comply with these new standards until **2029, if ever**. (Am. Compl. ¶ 44); 40 CFR § 141.6. There is no current legal standard for PFAS levels in drinking water distributed by Plaintiff and may never be.

Plaintiff has not alleged (nor can it) that it has been required to incur any costs or damages related to the allegedly contaminated water or to comply with the new EPA-standards, since the

ELECTRONICALLY FILED - 2025 Feb 14 11:04 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

EPA standards currently do not (and may never) apply to its drinking water supply. Nonetheless, this lawsuit purports to seek compensation for damages (i.e., future improvements to Plaintiff's water treatment systems) that have yet to occur or be required (if at all). Between now and 2029, the standards may change, or may be abandoned altogether; indeed, the same EPA water standards upon which Plaintiff bases its claims are the subject of on-going litigation that seeks to overturn those standards.[1] *See Nat'l Ass'n of Home Builders v. E.P.A.*, 667 F.3d 6, 13 (D.C. Cir. 2011) (rejecting theory of standing based on only the "*possibility* of [harmful] regulation by federal agency) (emphasis in original).

Additionally, available treatment technologies might change, as the regulatory requirements continue to develop. The Trump Administration's EPA has recently withdrawn pending related regulations, which proposed to set effluent limitations in the permits for discharge of PFAS in industrial wastewater. Coupled with the Administration's executive order placing a freeze on any new federal regulations, this withdrawal casts significant uncertainty regarding whether the PFAS regulations at issue will ever go into effect, or if so, in what form.

Plaintiff does not claim, nor can it, that the purported tortious misconduct of T&S Brass as it relates to discharging PFAS has degraded Plaintiff's capability to meet its <u>current requirements</u> under federal and state water quality standards. Plaintiff has not alleged its <u>current technology</u> cannot treat wastewater intake to the <u>current EPA standards</u>. Rather, Plaintiff's claim for damages focuses solely on <u>speculative anticipated future costs</u> associated with the "acquisition, installation,

---

[1] In June 2024, three separate actions were filed challenging the EPA's rule and are currently pending before the U.S. Court of Appeals for the D.C. Circuit. *See Am Water Works Assoc. v. U.S. EPA*, Case No. 24-1188; *Nat'l Assoc. of Manufacturers, et al. v. U.S. EPA*, Case No. 24-1191; *The Chemours Company FC, LLC v. U.S. EPA*, Case No. 24-1192.

ELECTRONICALLY FILED - 2025 Feb 14 11:04 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 14 11:04 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

and operation of water treatment technologies at Plaintiff's SWTP that will remove [] PFAS from drinking water."  (Am. Compl. ¶ 7).

Even assuming these standards might go into effect in 2029, Plaintiff's alleged injury is not redressable through the claims asserted against T&S Brass.  It is speculative—at best—as to what measures, if any, Plaintiff will be required to take to meet those standards.  And in the almost five years before the water standards *may* become effective, technologies will almost certainly improve that could dramatically change the cost of compliance for Plaintiffs.  Plaintiff's alleged injury is thus hypothetical and unlikely to be redressed by this litigation.  Plaintiff cannot meet the "irreducible constitutional minimum of standing," and its claims must be dismissed.  *Sea Pines Ass'n for Prot. of Wildlife, Inc.*, 345 S.C. at 601, 550 S.E.2d at 291 (*quoting Lujan v. Defenders of Wildlife*, 504 U.S. 555 (1992)).

To the extent Plaintiff contends that it is bringing this action on behalf of the public, (Am. Compl. at p. 17 ("Defendants have harmed Plaintiff and Plaintiff's community.")), Plaintiff lacks standing under doctrines which may soften standing requirements.  The doctrine of *parens patriae* applies only to sovereigns asserting at least quasi-sovereign interests apart from the interests of particular private citizens. *Alfred L. Snapp & Son, Inc. v. Puerto Rico*, 458 U.S. 592 (1982).  Political subdivisions, such as cities and counties, lack the element of sovereignty that is a prerequisite to maintaining a suit under the doctrine of *parens patriae. Capital View Fire Dist. V. County of Richland*, 297 S.C. 359, 362, 377 S.E.2d 122, 124 (Ct. App. 1989) (citing *Board of County Commissioners v. Denver Board of Water Commissioners*, 718 P.2d 235 (Colo.1986); *United States v. City of Pittsburg, California*, 661 F.2d 783 (9th Cir.1981); *Board of Supervisors of Fairfax County, Virginia v. United States*, 408 F.Supp. 556, 566 (E.D.Va.1976)).  Plaintiff is a

7

ELECTRONICALLY FILED - 2025 Feb 14 11:04 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

political subdivision of the state.[2]  Therefore, Plaintiff cannot find standing under the doctrine of *parens patriae*.

The "public importance" doctrine is also unavailing.  *Jowers*, 423 S.C. at 360, 815 S.E.2d at 455.  "[S]tanding may be conferred upon a party when an issue is of such public importance as to require its resolution for future guidance."  *Id.* (*citing ATC S., Inc. v. Charleston Cty.*, 380 S.C. 191, 198, 669 S.E.2d 337, 341 (2008)).  "However, [courts] 'must be cautious with this exception, lest it swallow the rule.'" *Id.* (*citing S.C. Pub. Interest Found. v. S.C. Transp. Infrastructure Bank*, 403 S.C. 640, 646, 744 S.E.2d 521, 524 (2013)).  Here, there is no need for guidance from the South Carolina trial courts as to future events.  Either the water standards will go into effect or not, and the cost of compliance will be borne out based on the available technologies in 2029, not 2024.  Guidance from the courts at this point is not at issue, and therefore, the public interest doctrine does not confer standing.

### c.  *Ripeness*

Because Plaintiff's claims are "contingent on future events," *Trask*, 436 S.C. at 309, 871 S.E.2d at 619 (citation omitted), Plaintiff's claims, at their core, are akin to equitable indemnity, prematurely brought by a party attempting to ensure the limitation of its own potential exposure.

South Carolina courts maintain that a right to indemnity "does not ripen until decided by the finder of fact." *Jourdan v. Boggs/Vaughn Contracting, Inc.*, 324 S.C. 309, 313, 476 S.E.2d 708, 711 (Ct. App. 1996).  This principle rests on the reasoning that the 'injury in fact' which makes a claim for indemnity redressable cannot actually occur and—therefore, remains contingent,

---

[2] As the Court is aware, the State of South Carolina has already filed suit in the Court of Common Pleas for Richland County, denominated as 2023-CP-40-05532, against entities that purportedly manufacture, sale, distribute, and use of products that contain PFAS "to protect and restore the State's natural resources and environment from contamination caused by PFAS."

ELECTRONICALLY FILED - 2025 Feb 14 11:04 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

hypothetical, or abstract—until a finder of fact determines liability and/or judgment is entered against the party seeking indemnification. *See id*. ("Clearly the right to recover [on an indemnity claim], while it exists, does not ripen until decided by the finder of fact."); *see also First Gen. Servs. of Charleston, Inc. v. Miller*, 314 S.C. 439, 444, 445 S.E.2d 446, 449 (1994) (holding that an indemnity claim does not accrue until "the time judgment is entered against the defendant" seeking indemnification). Similarly, Plaintiff cannot seek recovery against T&S Brass until it is required to incur costs.

Plaintiff does not allege any facts indicating that, at this time, it is doing anything other than waiting to see if and when it will have to take action to comply with the MCLs in 2029. Plaintiff has not alleged it has incurred any costs or expenses whatsoever due to PFAS currently in its source water. Rather, it is seeking "expenses associated with the ***future*** acquisition, installation, and operation of required treatment technologies[.]" (Am. Compl., ¶ 73 (emphasis added)). Nothing in the Complaint indicates that Plaintiff's operations have changed at all from the period before the MCLs were finalized in April 2024.

This status quo may continue indefinitely.[3] Plaintiff's testing during the initial monitoring period may indicate Plaintiff will not be required to make any capital investments to remain in compliance with applicable regulations. It is also uncertain whether the MCLs will remain valid law by the time they would be applicable to Plaintiff. As mentioned above, three sets of plaintiffs

---

[3] If Plaintiff's claims are allowed to proceed now, there is potential that Plaintiff would receive an unwarranted windfall. Plaintiff asks the Court to speculate that the condition of its source water five years from now will be the same as it is today—that there will be no changes to PFAS contributions (such as would result from the installation of third-party wastewater pretreatment systems), river flow rates, termination of use of PFAS containing materials, or any other developments that will moot Plaintiff's claims before 2029. Furthermore, in the event Plaintiff's claims do become ripe, they will lie only against any parties legally responsible for contributing PFAS to Plaintiff's source water at that time, not today.

filed challenges to EPA's rule in actions currently pending before the Court of Appeals for the D.C. Circuit. *See Am. Water Works Assoc. v. U.S. EPA*, Case No. 24-1188; *Nat'l Assoc. of Manufacturers, et al. v. U.S. EPA*, Case No. 24-1191; *The Chemours Company FC, LLC v. U.S. EPA*, Case No. 24-1192. The potential changes that could result from these cases (or for other reasons) preclude Plaintiff's claims from being ripe. *See Jowers*, 423 S.C. at 364, 815 S.E.2d at 457 (finding that action was not ripe because the plaintiff's claim "depends on there being no changes to the law regarding surface water withdrawals."). Because of these numerous uncertainties, the facts alleged by Plaintiff demonstrate, at most, "the mere threat of potential injury," which is "too contingent or remote to support present adjudication." *Waters v. S.C. Land Res. Conservation Comm'n*, 321 S.C. 219, 228, 467 S.E.2d 913, 918 (1996) (quoting *Thrifty Rent–A–Car Sys., Inc. v. Thrifty Auto Sales of Charleston, Inc.*, 849 F. Supp. 1083, 1086 (D.S.C. 1991)). Accordingly, Plaintiff's claims are not ripe and should be dismissed.

**II.     The Municipal Cost Recovery Rule (or "Free Public Services Doctrine) Precludes the Speculative Damages Plaintiff Seeks.**

Plaintiff is a governmental, public entity that is authorized to provide "potable water and additional public utility services to residents of Greenwood and Abbeville Counties." (Am. Compl. ¶ 13 (citing S.C. Code Ann. § 5-31-210)). Under the municipal cost recovery rule, also known as the "free public services doctrine," public expenditures made in the performance of governmental functions, like those sought by Plaintiff to eventually upgrade its SWTP, are not recoverable in tort.

The rule is based, in part, on the constitutional doctrine of separation of powers. *See, e.g., United States v. Standard Oil Co. of California*, 332 U.S. 301, 314–15 (1947) (declining to recognize cause of action by federal government to recover costs of injured soldier's hospitalization and pay resulting from negligence of defendants; noting that Congress, not the

10

ELECTRONICALLY FILED - 2025 Feb 14 11:04 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 14 11:04 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Court, "is the custodian of the national purse," and the "exclusive arbiter of federal fiscal affairs"). Although it does not appear that South Carolina courts have specifically considered the municipal cost recovery rule, the reasoning by other courts regarding its application is directly relevant to the case presented here.

The seminal case on the doctrine is *City of Flagstaff v. Atchison, Topeka & Santa Fe. Ry. Co.*, 719 F.2d 322, 324 (9th Cir. 1983), in which the City of Flagstaff attempted to recover from the railway the costs associated with emergency response after the derailment of tank cars carrying explosive gas. The city's theories of liability were negligence and conduct of an ultrahazardous activity. *City of Flagstaff*, 719 F.2d at 323. Affirming the district court's dismissal of the complaint, the Ninth Circuit held that "the cost of public services for protection from fire or safety hazards is to be borne by the public as a whole, not assessed against the tortfeasor whose negligence creates the need for the service." *Id*. at 323; *see also City of Chicago v. Beretta U.S.A. Corp.*, 213 Ill.2d 351, 821 N.E.2d 1099 (Ill. 2004) (holding that the rule against governments funding operations through litigation could not be circumvented by calling the proceedings "public nuisance"); *Koch v. Consolidated Edison Co. of New York, Inc.*, 62 N.Y.2d 548, 468 N.E.2d 1 (1984) (explaining the "general rule is that public expenditures made in the performance of governmental functions are not recoverable).[4]

---

[4] *See also District of Columbia v. Air Florida, Inc.*, 750 F.2d 1077 (D.C. Cir. 1984) (aircraft accident); *County of San Luis Obispo v. Abalone Alliance*, 223 Cal. Rptr. 846, 851, 178 Cal.App.3d 848, 858–59 (1986) (public protest); *Kodiak Island Borough v. Exxon Corp.*, 991 P.2d 757, 760–61 (Alaska 1999) (oil spill); *Ouachita Wilderness Institute, Inc. v. Mergen*, 329 Ark. 405, 412, 947 S.W.2d 780, 784 (1997) (inmate theft); *Kapheer v. MFG Chemicals, Inc.*, 277 Ga.App. 112, 113-14, 625 S.E.2d 513, 515 (2005) (air contamination); *Thomas v. Pang*, 72 Haw. 191, 196-97, 811 P.2d 821, 825 (1991) (building demolition); *Mayor & Council of City of Morgan City v. Jesse J. Fontenot, Inc.*, 460 So.2d 685, 688 (La. App. 1984) (fire); *Crews v. Hollenbach*, 358 Md. 627, 642, 751 A.2d 481, 489 (2000) (gas explosion); *North Carolina Highway & Public Works Comm'n v. Cobb*, 215 N.C. 556, 557–59, 2 S.E.2d 565, 567 (1939) (prisoner recapture).

11

The decision in *City of Flagstaff* did not turn on the underlying theory of tort liability, or the question of proximate cause. Rather, the decision to deny recovery focused on the identity of the claimant (a government entity) and the nature of the costs. *City of Chicago*, 213 Ill.2d at 425, 821 N.E.2d at 570. As the court in *Flagstaff* explained:

> Where such services are provided by the government and the costs are spread by taxes, the tortfeasor does not expect a demand for reimbursement. This is so even though the tortfeasor is fully aware that private parties injured by its conduct, who cannot spread their risk to the general public, will have a cause of action against it for damages proximately or legally caused.

*Flagstaff*, 719 F.2d at 324. Therefore, the expectation of potential defendants, both business entities and individuals, would be disturbed if an entirely new scheme of liability were imposed. *Id*. at 323. With regard to municipal services like the services provided by Plaintiff to the communities of Greenwood and Abbeville counties, "a fair and sensible system for spreading costs is already in place." *Id*.

> [G]overnmental entities themselves currently bear the cost in question, and they have taken no action to shift it elsewhere. If the government has chosen to bear the cost for reasons of economic efficiency, or even as a subsidy to the citizens and their business[es], the decision implicates fiscal policy; **the legislature and its public deliberative processes, rather than the court, is the appropriate forum to address such fiscal concerns**.

*Id*. at 324 (citing *Standard Oil*, 332 U.S. at 314–17) (emphasis added).

Plaintiff's claim for damages in this case amounts to selective "taxation by litigation." The relief sought– funding the "acquisition, installation, and operation of water treatment technologies at Plaintiff's SWTP"–from T&S Brass (as well as the co-defendants) without seeking similar funding from all sources of PFAS in drinking water, is an end run around the democratic process and represents a form of court-ordered subsidy. Unless Plaintiff has specific legislative authorization to sue to recover such costs, Plaintiff cannot ask for this relief through the courts. Accordingly, the Amended Complaint should be dismissed.

12

ELECTRONICALLY FILED - 2025 Feb 14 11:04 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

### III.    Plaintiff has Failed to Join an Indispensable Party.

T&S Brass does not discharge its industrial wastewater to the Reedy River, as Plaintiff acknowledges in the Complaint.  (Am. Compl. ¶ 49).  Rather, the injuries Plaintiff attributes to T&S Brass arise from the alleged discharge of PFAS by the Mauldin Road WWTP ("Mauldin WWTP") in Greenville, South Carolina.  Pursuant to a permit from Mauldin WWTP and as mandated by DES regulations, T&S Brass discharges its industrial wastewater to the Mauldin WWTP.[5]  In accordance with the federal Clean Water Act, Mauldin WWTP, a third party, treats the wastewater to state water quality standards (which are based on MCLs set by the EPA), then discharges the water into the Reedy River upstream of Lake Greenwood and Plaintiff's water intakes.  (Am. Compl. ¶ 22).  T&S Brass has no control over the Mauldin WWTP's operations or discharges, which are subject to strict requirements in permits issued by DES and the EPA.[6]

For reasons unknown to T&S Brass, Plaintiff has chosen not to sue Mauldin WWTP, an indispensable party under Rule 19, SCRCP.  South Carolina law does not allow Plaintiff to sue T&S Brass for the conduct of Mauldin WWTP.  Therefore, the Court should either order that Mauldin WWTP be joined in this case as a defendant under Rule 19, SCRCP, or dismiss this case.

---

[5] DES issued Mauldin WWTP a discharge permit with technology-based effluent limitations ("TBELs") and water quality based effluent limitations ("WQBELs") calculated to protect human health and the environment at Plaintiff's intake, including protection from PFAS chemicals. Plaintiff has not alleged T&S Brass's discharge to Mauldin WWTP resulted in a violation of Mauldin WWTP's restrictions.

[6] Mauldin WWTP sought permission to operate and enforce the Publicly Owned Treatment Works Pretreatment Program ("Pretreatment Program") against T&S Brass.  The Pretreatment Program by law requires Mauldin WWTP accept and treat industrial wastewater from T&S Brass to meet levels for the protection of human health and the environment.  As a condition of compliance with the Pretreatment Program, Mauldin WWTP is required to enforce a program and operate Mauldin WWTP such that pollutants introduced into Mauldin WWTP (including PFAS) by a nondomestic source shall not pass through the WWTP or interfere with operation and performance of the treatment works.  40 C.F.R. § 403.5.  To satisfy this legal standard, Mauldin WWTP issued to T&S Brass an industrial pretreatment discharge permit for discharge of all of its industrial wastewaters, including those which Plaintiff alleges contain PFAS.

13

ELECTRONICALLY FILED - 2025 Feb 14 11:04 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

*See Charleston County Parents for Public Schools, Inc. v. Moseley*, 343 S.C. 509, 514–15, 541 S.E.2d 533, 535 (2001).

### IV.     Plaintiff's Claim for Trespass Fails Due to an Incurable Defect of Law.

The facts and issues presented in the Amended Complaint do not support a claim for trespass under South Carolina law.  First, South Carolina follows the traditional rule that there must be "an invasion by a physical, tangible thing for a trespass to exist."  *Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 145, 747 S.E.2d 468, 476 (2013).  To be "tangible," the invasion must "interfere with the right to exclusive <u>possession</u>" and not "merely interfere with the right to use and enjoyment."  *Id*. at 151, 747 S.E.2d at 480.  The PFAS molecules at issue in this case are not "tangible."  Their alleged concentrations in the Reedy River are incomprehensibly small and are measured, if at all, in parts per trillion.  (Am. Compl. ¶¶ 24–44).  Plaintiff does not allege that PFAS can be seen, felt, or otherwise perceived in the water, and therefore, its trespass claim fails to satisfy the requirement of physical invasion as a matter of law.  Were this not the case, any chemical substance in the water withdrawn by Plaintiff from Lake Greenwood would constitute an actionable "trespass."

Plaintiff's trespass claim also fails because Plaintiff does not have an exclusive right of possession with respect to the allegedly contaminated water.  Trespass protects only the "rights of exclusive possession."  *Babb*, 405 S.C. at 141, 747 S.E. 2d at 474–75.  Plaintiff, however, has only a limited right of reasonable use, which—by definition—is not an exclusive right.  *See White v. Whitney Mfg. Co.*, 60 S.C. 254, 38 S.E. 456 (1901); (Am. Compl. ¶ 82) ("Plaintiff has the right to draw water from Lake Greenwood to provide potable water to its customers, and Plaintiff has a possessory interest in the water that it withdraws from Lake Greenwood to treat and sell to its customers.").

14

Plaintiff concedes that the alleged trespass of PFAS-contaminated water only occurs as a result of its own actions: when Plaintiff turns on its intake pumps. (Am. Compl. ¶ 85). This does not constitute an actionable trespass under South Carolina law, which requires that the trespass be caused by T&S Brass's "affirmative act [and that] the invasion of the <u>land</u> must be intentional. . . ." *Snow v. City of Columbia*, 305 S.C. 544, 553, 409 S.E.2d 797, 802 (Ct. App. 1991). There is no trespass here, because Plaintiff's act of turning on its intake pumps invites and authorizes the alleged PFAS-contaminated water to enter its facility. *See Ravan v. Greenville Cnty.*, 315 S.C. 447, 464, 434 S.E.2d 296, 306 (Ct. App. 1993) ("The essence of trespass is the unauthorized entry onto the land of another.").

Other courts have found that a drinking water utility does not state a cause of action for trespass where it voluntarily draws alleged PFAS-contaminated water from a river. *See Utilities Bd. of Tuskegee v. 3M Co., Inc.*, No. 2:22-cv-420-WKW, 2023 WL 1870912, at *16 (M.D. Ala. Feb. 9, 2023) ("As alleged, the facts here do not sound in trespass because, unlike other indirect trespasses, Defendants' PFAS did not cross onto [plaintiff's] boundary line by a natural process . . . Rather, [the Utility] pulls the water onto its property through an intake system from a public waterway . . .."); *see also W. Morgan-E. Lawrence Water & Sewer Auth. v. 3M Co.*, 208 F. Supp. 3d 1227, 1235 (N.D. Ala. 2016). The same is true here, and Plaintiff's claim for trespass must be dismissed.

## V.     Plaintiff's Fails to State a Cause of Action for Nuisance.

Plaintiff's claims for nuisance (both private and public) fail as a matter of law, because T&S Brass cannot be liable to Plaintiff for delivering alleged contamination to a WWTP. The South Carolina Supreme Court has held that "one who has no control over property **at the time** of the alleged nuisance cannot be held liable therefor." *Clark v. Greenville Cnty.*, 313 S.C. 205, 210,

15

ELECTRONICALLY FILED - 2025 Feb 14 11:04 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

437 S.E.2d 117, 119 (1993) (emphasis added). Plaintiff's allegations of nuisance against T&S Brass arise solely from the Mauldin WWTP's discharges from its wastewater treatment plant. (Am. Compl. ¶¶ 4–5, 22, 48–49, 52). Accordingly, Plaintiff's only colorable nuisance claim (if any) must be in an action against Mauldin WWTP.

*Greenville County* is indistinguishable in all material respects. In *Greenville County*, the plaintiffs alleged that their properties were contaminated by hazardous waste that had escaped from a nearby landfill. They sued the landfill as well as a number of corporations that had sent hazardous waste to the landfill for disposal. The South Carolina Supreme Court affirmed judgment for the defendant corporations on the nuisance claim because plaintiffs "neither alleged nor produced any evidence the corporate respondents had control over the landfill or the hazardous waste once it was deposited at the landfill." *Id*. at 210, 437 S.E.2d at 119. Likewise, Plaintiff concedes that control of the allegedly PFAS containing wastewater is passed from T&S Brass to the Mauldin WWTP before any PFAS is discharged into the river system, and Plaintiff does not allege that T&S Brass has any control over Mauldin WWTP's treatment facility.

The District Court for the District of South Carolina, in *Weatherford v. E.I. Dupont de Neumours & Co*., No. 4:22-CV-1427-RBH, 2023 WL 11015357 (D.S.C. Sept. 27, 2023), recently held that *Greenville County* compelled it to dismiss PFAS nuisance claims nearly identical to Plaintiff's. In *Weatherford*, the plaintiffs alleged that their drinking water wells were contaminated with PFAS which had been discharged from a textile facility's wastewater treatment plant. They brought claims against the companies that manufactured and distributed the PFAS to that facility. The court dismissed the nuisance claims because those defendants were not alleged to have control over the manufacturing facility (*id*. at *6), despite the plaintiffs' allegation that the defendants "knew [the PFAS they supplied] would go into the water and soil surrounding the textile plant."

16

ELECTRONICALLY FILED - 2025 Feb 14 11:04 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

*Id*. at \*1. The same result is required here. Accordingly, Plaintiff's private nuisance and public nuisance claims[7] should be dismissed.

Plaintiff's claim for private nuisance should be dismissed for an additional reason. The alleged contamination of a public water body cannot be the basis of a private nuisance claim. A private nuisance "produces damages to but one or two persons, and cannot be said to be public." *Charleston Dev. Co., LLC v. Alami*, 433 S.C. 533, 547–48, 860 S.E.2d 687, 695 (Ct. App. 2021); *see also Baltzeger v. Carolina Midland Ry. Co.*, 54 S.C. 242, 248, 32 S.E. 358, 360 (1899) ("A private nuisance affects only one person or a determinate number of persons."). Accordingly, Plaintiff's claim for private nuisance related to a public water body is not proper under South Carolina law and should be dismissed.

### VI. Plaintiff's Complaint Fails to State a Cause of Action for Negligence against T&S Brass.

Plaintiff's claim for negligence fails because (1) there is no duty under the law that flows from T&S Brass to Plaintiff; (2) Plaintiff assumed the risk, and the duty, of treating the water and complying with drinking water standards; and (3) Plaintiff has not suffered any damages.

#### a. *T&S Brass Owes No Duty to Plaintiff*

Under South Carolina law "[a]n essential element in a cause of action for negligence is the existence of a legal duty of care owed by the defendant to the plaintiff." *Huggins v. Citibank, N.A.*, 355 S.C. 329, 332, 585 S.E.2d 275, 276 (2003). The parties must "have a relationship recognized by law as providing the foundation for a duty to prevent an injury." *McCullough v. Goodrich & Pennington Mortg. Fund, Inc.*, 373 S.C. 43, 47, 644 S.E.2d 43, 46 (2007). That duty "may be

---

[7] T&S Brass' lack of control over Mauldin WWTP precludes Plaintiff's public and private nuisance claims, as the difference between the two causes of action is based only on the persons affected, not "the nature or character of the thing or activity itself." *Home Sales, Inc. v. City of N. Myrtle Beach*, 299 S.C. 70, 81, 382 S.E.2d 463, 469 (Ct. App. 1989).

ELECTRONICALLY FILED - 2025 Feb 14 11:04 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

created by statute, a contractual relationship, status, property interest, or some other special circumstance." *Madison ex. rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 136, 638 S.E.2d 650, 656–57 (2006). The existence of a duty is a question of law for the Court, not the jury. *McCord v. Laurens County Health Care Sys.*, 429 S.C. 286, 296, 838 S.E.2d 220, 225 (Ct. App. 2020).

Here, there is no cognizable duty of care owed by T&S Brass to Plaintiff created by statute, relationship, status, property interest, or special circumstance. Plaintiff's allegations attempt to construe strict liability principles to conjure up a negligence duty, claiming that because PFAS chemicals may cause potential harm to some persons at some point in the future, a duty must exist. That is not the law in South Carolina.

Plaintiff's Complaint alleges that T&S Brass has "a duty to use due care in the handling, use, and disposal of products containing or degrading to PFOA, PFOS, PFHxS, PFNA, and/or GenX Chemicals to avoid causing an unreasonable risk of harm to others, which includes preventing the direct and/or indirect discharge of these PFAS into the Reedy River . . . thereby interfering with Plaintiff's property rights and injuring Plaintiff's property." (Am. Compl. ¶ 91). Notwithstanding Plaintiff's tacit admission that T&S Brass does not directly discharge PFAS into the Reedy River, South Carolina law does not recognize such a broad and general negligence duty. Nor has Plaintiff alleged any cognizable relationship between the parties that would give rise to such a duty. If anything, the only special relationship or legal duty that exists in this matter flows *from Plaintiff to T&S Brass* and the public at large.

"[T]here is no general duty to control the conduct of another or to warn a third person or potential victim of danger." *Babcock Ctr.*, 371 S.C. at 136, 638 S.E.2d at 656. Moreover, "one who has no control owes no duty." *Miller v. City of Camden*, 329 S.C. 310, 314, 494 S.E.2d 813, 815 (1997). Because T&S Brass delivers its industrial wastewater to the Mauldin WWTP pursuant

18

ELECTRONICALLY FILED - 2025 Feb 14 11:04 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

to a permit issued by Mauldin WWTP, T&S Brass has no duty to ensure Mauldin WWTP treats the wastewater in a way that does not risk harm to third parties and, thus, T&S Brass owes no duty to Plaintiff. *See, e.g., Oulla v. Velazques*, 427 S.C. 428, 444, 831 S.E.2d 450, 458 (Ct. App. 2019) (finding that a sod manufacturer that placed sod on a truck which subsequently fell and injured a motorist did not owe a duty to the motorist to ensure that the sod was properly secured).

### b. *Plaintiff has Assumed the Risk and Any Related Duties of Compliance*

Plaintiff's conduct in voluntarily assuming the role of intaking, treating, and selling potable water and additional public utility services to residents of Greenwood and Abbeville Counties constitutes a primary implied assumption of the risk for any alleged injury it now complains of, and bars any recovery from T&S Brass for negligence.

"Primary implied assumption of risk arises when the plaintiff impliedly assumes those risks that are inherent in a particular activity." *Humphrey v. Day & Zimmerman Intern., Inc.*, 997 F.Supp.2d 388, 396 (D.S.C. 2014) (citing *Cole v. Boy Scouts of America*, 397 S.C. 247, 251, 725 S.E.2d 476, 478 (2011)). The doctrine of primary implied assumption of risk "goes to the initial determination of whether the defendant's legal duty encompasses the risk encountered by the plaintiff." *Davenport v. Cotton Hope Plantation Horizontal Prop. Regime*, 333 S.C. 71, 81, 508 S.E.2d 565, 570 (1998). Under the doctrine, the focus is not on the plaintiff's conduct in assuming the risk, but on the defendant's general duty of care. *Id.* Primary implied assumption of risk is simply another way of stating that a plaintiff has failed to establish a prima facie case of negligence by failing to establish that a duty exists. *Id.*; *see also McCune v. Myrtle Beach Indoor Shooting Range, Inc.*, 364 S.C. 242, 247, 612 S.E.2d 462, 464 (Ct. App. 2005).

In voluntarily assuming the role of a public water provider, Plaintiff "freely and voluntarily exposed [itself] to [PFAS], which [it] clearly knew and appreciated was a known [risk since at

19

least 2009].” *Humphrey*, 997 F.Supp.2d at 397; (Am. Compl. ¶ 33 (acknowledging EPA published provisional drinking water health advisories for short-term exposure to PFAS in 2009)). Plaintiff accepted a permit to intake raw water from Lake Greenwood to subsequently treat and produce potable drinking water (for a profit) and assumed the inherent risk that the water may contain unregulated contaminants like PFAS and other contaminants from unknown sources.[8] As such, any duty of T&S Brass to discharge its industrial wastewater to the Mauldin WWTP with reasonable care does not encompass injuries allegedly sustained by Plaintiff's intake of the water. As alleged in the Amended Complaint, Plaintiff should have appreciated the purported risk of PFAS to its drinking water system, if any, by at least 2009 and, in so doing, freely and voluntarily exposed itself to a known and appreciated risk after that time period. (Am. Compl. ¶ 33) (“based on the science available in 2009, EPA published provisional drinking water health advisories for short-term exposure to PFOA and PFOS.”).

### c. *Plaintiff Fails to Allege Actionable Damages*

Plaintiff's negligence claim also fails because Plaintiff has alleged no facts that would establish the requisite damages of such a claim. A negligence claim “requires a plaintiff to establish physical injury or property damage.” *Babb*, 405 S.C. at 153, 747 S.E.2d at 481. As explained above, Plaintiff does not own the water in the Reedy River or Lake Greenwood, but merely has a conditional right to use some of it, pursuant to DES permits. Additionally, Plaintiff has not alleged (nor can it) that it has been required to incur any costs due to the new EPA standards

---

[8] The EPA has promulgated the National Primary Drinking Water Regulations, 40 CFR § 141, which are legally enforceable primary standards and treatment techniques that apply to public water systems. These standards and techniques protect public health by limiting the levels for a minimum of 90 contaminants in drinking water.

ELECTRONICALLY FILED - 2025 Feb 14 11:04 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

or on account of the alleged contaminated water, which will not come into effect (if ever) until 2029.

While the Amended Complaint makes references to damage or injury to property, Plaintiff fails to allege any facts showing that anything other than river water has been impacted by PFAS; Plaintiff does not allege PFAS impaired, damages, or diminishes its current technology from operating in accordance with appropriate standards. Rather, the Amended Complaint reveals that Plaintiff's alleged damages are conjectural and contingent on the EPA standards going into effect in 2029 that *might* result in operating cost increases in the future. Such damages do not constitute "physical injury or property damage." *See Gray v. S. Facilities, Inc.*, 256 S.C. 558, 183 S.E.2d 438 (1971) (finding that a property owner could not recover for diminution if value of his property resulting from an oil fire in adjacent river that did not cause actual physical damage to his property). Therefore, based on the above discussion, Plaintiff's negligence claim should be dismissed.

### VII.    In the Alternative, the Court Should Stay this Action and Refer the Issue to the Department of Environmental Services.

In the alternative, the Court should stay this action upon referral to the South Carolina Department of Environmental Services (the "Department") on the grounds of primary jurisdiction. The Supreme Court of the United States describes the doctrine of primary jurisdiction:

> 'Primary jurisdiction' . . . applies where a claim is originally cognizable in the courts, and comes into play whenever enforcement of the claim requires the resolution of issues which, under a regulatory scheme, have been placed within the special competence of an administrative body; in such a case, the judicial process is suspended pending referral of such issues to the administrative body for its view.

*U.S. v. W. Pac. R.R. Co.*, 352 U.S. 59, 63 (1956).[9]

---

[9] Our Supreme Court acknowledged but denied primary jurisdiction in *Fullbright v. Spinnaker Resorts, Inc.*, 420 S.C. 265, 802 S.E.2d 794 (2017). The Court denied primary jurisdiction because

21

ELECTRONICALLY FILED - 2025 Feb 14 11:04 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

The doctrine of primary jurisdiction has "two primary purposes: uniform regulation and reliance upon agency experts." *Stevens v. Boston Sci. Corp.*, 152 F.Supp.3d 527, 532 (S.D.W. Va. 2016). "In every case the question is whether the reasons for the existence of the doctrine are present and whether the purposes it serves will be aided by its application in the particular litigation." *Id.* at 533 (quoting *W. Pac. R.R. Co.*, 352 U.S. at 64). "[T]he principal purposes underlying the application of the doctrine of primary jurisdiction are present here. Imposing the severe . . . relief that the plaintiff seeks would prevent the [Department] from taking the first action in an area in which that agency clearly has expertise and an interest in the uniform application of its regulatory framework." *Id.* 152 F.Supp.3d at 537.

The South Carolina State Safe Drinking Water Act (the "Act") reflects the regulatory framework under which the legislature entrusted the Department with addressing the exact harm alleged here. *See* S.C. Code Ann. § 44-55-10, *et seq.* The Act prohibits any person from "render[ing] a public water system, or part or portion of a public water system, inoperable or unusable by means of contamination . . ." *Id*. at § 44-55-80(B). The Act exclusively vests enforcement authority in the Department and the Attorney General, if requested by the Department. *Id*. at §§ 44-55-60 through 44-55-100. Violators are liable to the State, not the public water system providers, and damages are limited to actual damages sustained by the plaintiff. *Id*. at § 44-55-90(B)(1) and 44-55-1520. Because the General Assembly has vested <u>exclusive</u>

---

it would frustrate legislative intent of the relevant statute and the statute directed the agency to promulgate regulations "subject to" the Administrative Procedures Act, which provides for judicial review. *Id.* 420 S.C. at 280. The State Safe Drinking Water Act is easily distinguished in that it does not express a legislative intent for courts to hear private party suits and it does not direct the Department to promulgate regulations "subject to" the Administrative Procedures Act except in the specific contexts of increases to annual fees and regulation of alternative tile field products. S.C. Code Ann. §§ 44-55-120 and 1350.

ELECTRONICALLY FILED - 2025 Feb 14 11:04 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

enforcement of these issues in the Department, this Court should dismiss this case or stay it while the Department exercises its primary jurisdiction.

## CONCLUSION

For the reasons set forth above, Plaintiff's claims against T&S Brass fail to state claims upon which relief can be granted and T&S Brass is entitled to dismissal of this action for several reasons. First, it is premature. For that reason, Plaintiff's claims fail to state a justiciable controversy capable of redress. Second, the municipal cost recovery rule precludes the speculative damages Plaintiff seeks. Third, Plaintiff has failed to join the Mauldin WWTP (an indispensable party). Fourth, Plaintiff's claims for trespass and nuisance fail due to incurable defects of law. Fifth, Plaintiff's claim for negligence fails because there is no duty under the law that flows from T&S Brass to Plaintiff. Sixth, Plaintiff has voluntarily and knowingly assumed the risk and the duty of treating the water and complying with drinking water standards. Finally, Plaintiff has not suffered any actionable damages. In the alternative, the Court should stay this action and refer the issue to the Department of Environmental Servies under the primary jurisdiction doctrine.

In conclusion, TS& Brass respectfully requests that the Court dismiss Plaintiff's Amended Complaint, with prejudice; and grant such other relief as the Court deems just and proper.

[signature on following page]

23

ELECTRONICALLY FILED - 2025 Feb 14 11:04 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

WILLIAMS MULLEN

By: s/John G. Tamasitis
Richard H. Willis (SC Bar No. 6159)
Ethan R. Ware (SC Bar No. 7990)
John G. Tamasitis (SC Bar No. 101875)
1230 Main Street, Suite 330
Columbia, SC 29201
Tel. 803.567.4615
Fax: 803.567.4601
*rwillis@williamsmullen.com*
*eware@williamsmullen.com*
*jtamasitis@williamsmullen.com*

*Counsel for Defendant T&S Brass and Bronze Works, Inc.*

February 14, 2025
Columbia, South Carolina

ELECTRONICALLY FILED - 2025 Feb 14 11:04 AM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

24

ELECTRONICALLY FILED - 2025 Feb 14 12:58 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| STATE OF SOUTH CAROLINA | ) | IN THE COURT OF COMMON PLEAS |
| | ) | |
| COUNTY OF GREENWOOD | ) | FOR THE EIGHTH JUDICIAL CIRCUIT |
| | ) | |
| **PFAS LITIGATION COORDINATED DOCKET** | ) | CA No. 2024-CP-00735 |
| | ) | |
| GREENWOOD COMMISSIONERS OF PUBLIC WORKS, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONE MILLS RECEIVER, LLC; CRYOVAC, INC.; CRYOVAC, LLC; FIRSTSOURCE WORLDWIDE, LLC; FITESA SIMPSONVILLE, INC.; MILLIKEN & COMPANY; OPPERMAN WEBBING, INC.; T&S BRASS AND BRONZE WORKS, INC.; UNICHEM SPECIALTY CHEMICALS, LLC, | ) ) ) ) ) ) ) ) ) ) ) ) | **UNICHEM SPECIALTY CHEMICALS, LLC'S MEMORANDUM IN SUPPORT OF ITS MOTION TO DISMISS THE AMENDED COMPLAINT** |
| | ) | |
| Defendants. | ) | |
| | ) | |

Defendant Unichem Specialty Chemicals, LLC ("Unichem"), by and through its undersigned attorneys, respectfully submits this Memorandum of Law in support of its Motion to Dismiss the Amended Complaint. Plaintiff Greenwood Commissioners of Public Works ("Plaintiff") has failed to identify a justiciable controversy, failed to allege facts sufficient to constitute a cause of action, and failed to otherwise plead a viable claim against Unichem. For these reasons, as described in detail below, and pursuant to Rules 12(b)(1) and 12(b)(6) of the South Carolina Rules of Civil Procedure, the Amended Complaint should be dismissed in its entirety.

## BACKGROUND & RELEVANT FACTS

This lawsuit purports to arise out of injuries that Plaintiff *might* incur at some future date, and, therefore, should not be allowed to proceed. Plaintiff is seeking to fund the acquisition,

1

ELECTRONICALLY FILED - 2025 Feb 14 12:58 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

installation, and operation of water treatment technology through this litigation. However, Plaintiff has not identified any injury-in-fact, and the issues presented are contingent on future events that may or may not occur, *i.e.*, the effective date and implementation of the EPA's maximum contaminant levels ("MCLs") for PFAS in drinking water. Furthermore, Plaintiff's allegations do not support the causes of actions asserted against Unichem. The necessary elements of causation, control, intent, duty, and breach are lacking throughout. As a consequence, the Amended Complaint should be dismissed or, in the alternative, held in abeyance until the MCLs are actually enforced and/or Plaintiff has established a treatment plan.

As alleged in the Amended Complaint, Plaintiff is an elected commission providing potable water and public utility services to certain residents of Greenwood and Abbeville Counties pursuant to S.C. Code Ann. § 5-31-210, *et seq*. Am. Compl. ¶ 13. Plaintiff owns and operates a surface water treatment plant ("SWTP") on Lake Greenwood, from which it draws water for treatment in the SWTP prior to distribution. *Id.* at ¶¶ 3, 14. Unichem has, for a short period of time, operated an industrial facility in Greenville, South Carolina, more than 50 miles from Plaintiff's water intakes (Unichem acquired the facility in August 2021, as can be verified by public record). *See id.* at ¶¶ 23, 45.

Plaintiff alleges that Unichem used or uses products containing PFAS at the Greenville facility. *Id.* at ¶ 23. However, nowhere does the Amended Complaint allege that Unichem discharged industrial wastewater containing PFAS into the Reedy River. Instead, Plaintiff concedes that Unichem's wastewater was *disposed at the wastewater treatment plant ("WWTP")* on Mauldin Road for treatment. *Id.* at ¶¶ 23, 48–49 (emphasis added). The Mauldin Road WWTP then treated the water and discharged it into the Reedy River. *Id.* at ¶ 49.

2

The Amended Complaint then alleges that this treated water flowed into Lake Greenwood and was or is drawn into Plaintiff's water intakes at the SWTP (more than 50 miles from Unichem's property) to be further treated. *See id.* at ¶ 23, 49. Plaintiff has not previously raised issue with this process nor alleged that Unichem or the Mauldin Road WWTP had violated any law or breached any duty. Moreover, as Plaintiff explains at length, the EPA's guidance for safe handling of PFAS has evolved over recent years before reaching a final proposal for drinking water MCLs in April 2024. *Id.* ¶¶ 33–42. These MCLs will not be implemented until April 26, 2029, if at all. *See id.* at ¶ 44. Plaintiff has not alleged that it is taking any action to comply with the anticipated regulations. Instead, Plaintiff has initiated this action against Unichem seeking recovery of potential, future injuries due to alleged contamination of Lake Greenwood caused by the Mauldin Road WWTP. These facts presented in the Amended Complaint simply cannot establish a justiciable controversy or a viable cause of action against Unichem.

## **LAW & ANALYSIS**

**I.    THE AMENDED COMPLAINT FAILS TO PRESENT A JUSTICIABLE CONTROVERSY.**

South Carolina "courts will not address the merits of any case unless it presents a justiciable controversy." *Jowers v. S.C. Dep't Health & Env'l Control*, 423 S.C. 343, 353, 815 S.E.2d 446, 451 (2018). "Justiciability encompasses ripeness and standing." *Id.* (quoting *James v. Anne's Inc.*, 390 S.C. 188, 193, 701 S.E.2d 730, 732 (2010)) (cleaned up). The South Carolina Supreme Court has "explained ripeness by defining what is not ripe, stating 'an issue that is contingent, hypothetical, or abstract is not ripe for judicial review.'" *Id.* (quoting *Colleton Cnty. Taxpayers Ass'n v. Sch. Dist. of Colleton Cnty.*, 371 S.C. 224, 242, 638 S.E.2d 685, 694 (2006)). Additionally, to "meet the 'stringent' test for standing, the plaintiff must have suffered an 'injury in fact'—an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or

ELECTRONICALLY FILED - 2025 Feb 14 12:58 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 14 12:58 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

imminent, not 'conjectural' or 'hypothetical.'" *Id.* (internal quotes omitted) (quoting *Sea Pines Ass'n for Prot. of Wildlife, Inc. v. S.C. Dep't Nat. Res.*, 345 S.C. 600, 601, 550 S.E.2d 287, 291 (2001)).

The Amended Complaint does not set forth a justiciable controversy. By Plaintiff's own admission, there is no injury in fact and the issues are contingent and hypothetical. First, Plaintiff has not alleged any injury beyond potential future costs that it may incur should the MCLs, in fact, take effect in April 2029. Plaintiff's asserted damages are the "expenses associated with *future* acquisition, installation, and operation of required treatment technologies." Am. Compl. ¶ 73 (emphasis added). However, "[i]t is not enough that a threat of *possible* injury currently exists; the mere threat of potential injury is too contingent or remote to support present adjudication." *Waters v. S.C. Land Res. Conservation Comm'n*, 321 S.C. 219, 228, 467 S.E.2d 913, 918 (1996) (emphasis in original) (quoting *Thrifty Rent-A-Car Sys., Inc. v. Thrifty Auto Sales of Charleston, Inc.*, 849 F. Supp. 1038, 1086 (D.S.C. 1991). Nothing in the Amended Complaint indicates that Plaintiff's operations have changed at all from the period before the MCLs were finalized in April or as a result of PFAS in Lake Greenwood. Moreover, if the MCLs remain valid in their current form, Plaintiff has not shown that it will be out of compliance with those MCLs after the initial monitoring period. Thus, Plaintiff's purported "injury" is conjectural and hypothetical in nature, contingent on future events.

Second, and relatedly, the dispute presented to the Court is not ripe for review. Plaintiff concedes that the new MCLs for PFAS in drinking water will not be enforced until 2029, with a three-year "initial monitoring" period running through April 2027. *See* Am. Compl. ¶ 44. It is uncertain that the MCLs will remain in their current form, or remain valid law at all, by April 2029. For instance, the MCLs face several legal challenges. *See* Pet. for Review, *The Chemours Co. v.*

4

ELECTRONICALLY FILED - 2025 Feb 14 12:58 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

*EPA*, No. 24-1192 (D.C. Cir. June 10, 2024); Pet. for Review, *Nat'l Ass'n of Mfrs. v. EPA*, No. 24-1191 (D.C. Cir. June 10, 2024); Pet. for Review, *Am. Water Works Ass'n v. EPA*, No. 24-1188 (D.C. Cir. June 7, 2024). Moreover, the EPA's new leadership recently indicated that it is currently reviewing the MCLs and "could take further action that may obviate the need for judicial resolution of some or all of the disputed issues." EPA's Unopposed Mot. to Hold Case in Abeyance ¶¶ 3, 7, *Am. Water Works Ass'n v. EPA*, No. 24-1188 (D.C. Cir. Feb. 7, 2025). These challenges prevent Plaintiff from bringing the claim for the relief sought at this time, if ever. *See Jowers*, 423 S.C. at 364, 815 S.E.2d at 457 (finding an action was not justiciable because the plaintiffs' claim "depends on there being no changes to the law regarding surface water withdrawals between now and the occurrence of these unknown future circumstances").

Because the issues presented by Plaintiff are conjectural, hypothetical in nature, and dependent on future events, they are not ripe for review. Thus, the Amended Complaint should be dismissed for lack of any active case or controversy over which a court may exercise jurisdiction.

## II. ADDITIONALLY, OR AS AN ALTERNATIVE GROUND FOR DISMISSAL, PLAINTIFF HAS NOT ALLEGED FACTS SUFFICIENT TO CONSTITUTE A CAUSE OF ACTION.

A complaint should be dismissed when, even accepting as true the well-pled allegations, "the facts alleged and inferences reasonably deducible from the pleadings" do not "entitle the plaintiff to relief on any theory of the case." *Rydde v. Morris*, 381 S.C. 643, 646, 675 S.E.2d 431, 433 (2009) (quoting *Williams v. Condon*, 347 S.C. 227, 233, 553 S.E.2d 496, 499 (Ct. App. 2001)). The complaint must identify "the facts showing that the pleader is entitled to relief,' Rule 8(a)(2), SCRCP, and mere conclusory allegations are insufficient, *see Jones v. Gilstrap*, 288 S.C. 525, 528, 343 S.E.2d 646, 648 (Ct. App. 1986).

**A. Every Cause of Action in the Amended Complaint is Founded on Unreasonable Inferences and Unsupported Conclusions Which is Not Sufficient to Survive Rule 12(b)(6) Scrutiny.**

In the Amended Complaint, Plaintiff asserts claims for private nuisance, public nuisance, trespass, and negligence. The specific causes of action fail as a matter of law for lack of essential elements, as discussed below. However, the Amended Complaint suffers an over-arching defect meriting dismissal. Each of Plaintiff's claims against Unichem can only survive on well-pled factual allegations establishing that the chemicals allegedly found in Lake Greenwood are present there *as a result of the conduct of Unichem*.[1] But Plaintiff has not alleged facts reasonably leading to this conclusion. In fact, Plaintiff's own allegations contradict its conclusions as to Unichem's liability.

The Amended Complaint references the term "forever chemicals" when discussing PFAS. *See* Am. Compl. ¶ 25. Plaintiff explains at length that PFAS are "pervasive in industrial, commercial, and consumer products," "persisten[t] in the environment," "highly mobile and water soluble," and "remain in the environment from decades of legacy industrial use." *Id.* at ¶¶ 25, 29, 31. Yet, Plaintiff provides no facts reasonably inferring that the PFAS contamination it complains of is the same PFAS allegedly used by Unichem as opposed to the product of some other third party. Likewise, Plaintiff does not provide facts supporting that any PFAS allegedly used by Unichem in the short time it has owned its facility migrated more than 50 miles to Plaintiff's water

---

[1] *See Clark v. Greenville County*, 313 S.C. 205, 209, 210, 437 S.E.2d 117 (1993) (emphasis added) (quoting *Peden v. Furman Univ.*, 155 S.C. 1, 151 S.E. 907, 912 (1930)) ("[N]uisance is 'that class of wrongs *that arises from* the unreasonable, unwarrantable, or unlawful use by a person of his own property, personal or real.'"); *Snow v. City of Columbia*, 305 S.C. 544, 553, 409 S.E.2d 797, 802 (Ct. App. 1991) (requiring, as an element of trespass, that "the harm caused must be the direct result of [defendant's] invasion"); *Madison v. Babcock Ctr., Inc.*, 371 S.C. 123, 135, 638 S.E.2d 650, 656 (2006) ("In a negligence action, a plaintiff must show that . . . the defendant's breach was the actual and proximate cause of the plaintiff's injury").

6

ELECTRONICALLY FILED - 2025 Feb 14 12:58 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 14 12:58 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

intakes. Plaintiff makes no factual allegations plausibly contending that—even accepting as true the allegation that Unichem discharged PFAS in its wastewater—the PFAS Plaintiff found at its site is the PFAS discharged by Unichem. Without these vital allegations, the Amended Complaint cannot establish *any* cause of action against Unichem and should be dismissed.

Strikingly, the Amended Complaint alleges that the contaminated water in Lake Greenwood was ***not*** put there by Unichem.[2] Any PFAS-contaminated water was first treated by the Mauldin Road WWTP and then discharged by Mauldin Road WWTP into the Reedy River before it could have reached Lake Greenwood. *See* Am. Compl. ¶ 49. The only allegation that Unichem affirmatively acted with respect to the allegedly contaminated water is that Unichem discharged it to the Mauldin Road WWTP as one of its customers. *See id.* at ¶ 23. The Amended Complaint does not allege that Unichem discharged contaminants into the public waterways. Those allegations are directed solely at Mauldin Road WWTP, which is not a party to this action. Thus, the Amended Complaint should be dismissed in its entirety for the simple fact that the allegations do not connect the alleged contamination to the conduct of Unichem.

**B. Plaintiff Cannot Maintain a Claim for Private or Public Nuisance for the Alleged Contamination.**

*1. Plaintiff's causes of action for private and public nuisance fail to establish the essential element of control over the alleged nuisance.*

Whether pursuing a claim for private or public nuisance, Plaintiff must, as part of its *prima facie* case, establish that Unichem controlled the instrumentality alleged to have caused the nuisance at the time of the alleged nuisance. *See, e.g.*, *Clark v. Greenville Cnty.*, 313 S.C. 205, 210, 437 S.E.2d 117 (1993) (holding that "one who has no control over property at the time of the

---

[2] Such allegation runs contrary to the fundamental requirement that the conduct of Unichem directly and proximately caused the complained of damages. *See supra* n.1.

ELECTRONICALLY FILED - 2025 Feb 14 12:58 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

alleged nuisance cannot be held liable therefor"); *FOC Lawshe Ltd. P'ship v. Int'l Paper Co.*, 352 S.C. 408, 414, 574 S.E.2d 228, 231 (Ct. App. 2002) (same).

According to the Amended Complaint, Unichem did not have control over the allegedly contaminated water at the time of the alleged nuisance. Rather, Plaintiff alleges that Unichem discharged its wastewater to the Mauldin Road WWTP. Am. Compl. ¶¶ 23, 49. There are no allegations that Unichem exercised any authority or control of Mauldin Road WWTP with respect to its treatment and discharge of water into the Reedy River. Plaintiff only alleges that the discharge of water by the Mauldin Road WWTP is "damaging Plaintiff's property and contaminating its water source," and it's allegations confirm that Unichem's alleged misconduct is limited to its disposal of wastewater to the Mauldin Road WWTP, which occurs prior to (and entirely separate and apart from) any discharge into the Reedy River. *See id.* at ¶¶ 23, 49, 57–80.

This same issue has been previously addressed by the South Carolina Supreme Court. In *Clark v. Greenwood County*, property owners brought nuisance claims against corporate defendants alleging that they had disposed of hazardous chemicals at a nearby landfill which caused the contamination of the plaintiffs' properties. 313 S.C. at 207, 437 S.E.2d at 118. The trial court granted summary judgment to the corporate defendants, and the South Carolina Supreme Court affirmed, stating "we now hold one who has no control over property at the time of the alleged nuisance cannot be held liable therefor." *Id.* at 210, 437 S.E.2d at 119. The Court explained that the property owners "neither alleged nor produced evidence the corporate respondents had control over the landfill or the hazardous waste once it was deposited at the landfill," and, thus, "the corporate respondents could not be liable for nuisance because they had no control over the property allegedly used as a nuisance." *Id.* Likewise, Unichem had no control over the contaminated water after "depositing" it at the Mauldin Road WWTP and exercises no control

8

ELECTRONICALLY FILED - 2025 Feb 14 12:58 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

over the WWTP. Accordingly, Plaintiff's private and public nuisance claims against Unichem both fail as a matter of law.

### 2. Plaintiff's nuisance claims also fail because the alleged interference is general in nature.

Additionally, Plaintiff's cause of action for private nuisance fails because it alleges a harm to the general community. A private nuisance "is anything done to the hurt or annoyance of the lands, tenements, or hereditaments of another. It produces damage to but one or two persons, and cannot be said to be public." *Charleston Dev. Co. v. Alami*, 433 S.C. 533, 547–48, 860 S.E.2d 687 (Ct. App. 2021) (quoting *Deason v. S. Ry. Co.*, 142 S.C. 328, 334, 140 S.E. 575, 577 (1927)). Here, the alleged nuisance (contamination of Lake Greenwood) affects the general public. *See* Am. Compl. ¶¶ 49–51; *see also id.* at p. 17 ("Defendants have harmed Plaintiff and Plaintiff's Community"). Thus, Plaintiff cannot maintain a claim for private nuisance based upon alleged interference with public waterways.

Plaintiff's public nuisance cause of action also fails because South Carolina does not permit a private citizen to bring a claim based on public nuisance. *See, e.g.*, *Johnston v. Anderson Reg'l Landfill, LLC*, 725 F. Supp. 3d 527, 536 (2024) (citing *Huggin v. Gaffney Dev. Co.*, 229 S.C. 340, 92 S.E.2d 883, 884 (1956)) ("In general, a private citizen cannot bring a suit to abate a public nuisance but must rely upon the state to do so."). Such a claim is permitted only where a plaintiff can demonstrate a "special" or "particularized" injury. *See Carnival Corp. v. Historic Ansonborough Neighborhood Ass'n*, 407 S.C. 67, 78, 753 S.E.2d 846, 852 (2014). A special injury must be an "individual or specific damage in addition to that suffered by the public." *Id.* (quoting *Brown v. Hendricks*, 211 S.C. 395, 400, 45 S.E.2d 603, 605 (1947)). Here, Plaintiff has not alleged a special injury that differs from the injury experienced by the community and other riparian rights holders along the Reedy River and Lake Greenwood. Moreover, "[n]othering is a public nuisance

9

ELECTRONICALLY FILED - 2025 Feb 14 12:58 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

which the law itself authorizes." *Home Sales, Inc. v. City of N. Myrtle Beach*, 299 S.C. 70, 81, 382 S.E.2d 463, 469 (Ct. App. 1989). As discussed further in Section III.D, Plaintiff has not alleged that Unichem or the Maudlin Road WWTP violated any laws, regulations, or guidelines. Thus, its claim for public nuisance cannot be maintained.

### C. Plaintiff's Claim for Trespass Fails as a Matter of Law Because, in Addition to the Complaint's Failure to Establish Necessary Elements, South Carolina Does Not Permit a Cause of Action for Intangible Invasions.

"To constitute an actionable trespass . . . there must be [1] an affirmative act, [2] the invasion of the land must be intentional, and [3] the harm caused must be the direct result of that invasion." *Snow v. City of Columbia*, 305 S.C. 544, 553, 409 S.E.2d 797, 802 (Ct. App. 1991). "Trespass does not lie for nonfeasance or failure to perform a duty." *Id.* Rather, "[t]respass is any intentional invasion of the plaintiff's interest in the exclusive possession of his property." *Hawkins v. City of Greenville*, 358 S.C. 280, 296, 594 S.E.2d 557, 565 (Ct. App. 2004). Additionally, South Carolina law requires that there be "an invasion by a physical, tangible thing for a trespass to exist." *Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 145, 747 S.E.2d 468, 476 (2013).

As discussed above, the Amended Complaint does not allege that Unichem affirmatively or intentionally discharged water onto Plaintiff's property, nor even that it intentionally and affirmatively discharged water into the Reedy River or Lake Greenwood. Plaintiff alleges only that Unichem "discharged" PFAS-containing water to the Maudlin Road WWTP, which then itself discharged the water into the Reedy River. *See* Am. Compl. ¶¶ 49, 83. This does not amount to an intentional invasion onto Plaintiff's property by Unichem. Moreover, Plaintiff has not identified unauthorized entry by any party. *See Ravan v. Greenville County*, 315 S.C. 447, 464, 434 S.E.2d 296, 306 (Ct. App. 1993) ("The essence of trespass is the unauthorized entry onto the land of

ELECTRONICALLY FILED - 2025 Feb 14 12:58 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

another."). Plaintiff voluntarily draws the PFAS onto its property through its own water intakes. Am. Compl. ¶ 85.

Additionally, Plaintiff's claims are based entirely on the alleged invasion by an intangible substance: chemicals at extremely low concentrations detectible only by lab testing. This is not the type of injury recoverable under a trespass claim in South Carolina. To be sufficiently "tangible," the invasion must "interfere with the right to exclusive possession" and not "merely interfere with the right to use and enjoyment." *Babb*, 405 S.C. at 151, 747 S.E.2d at 480. In *Babb*, the South Carolina Supreme Court adopted the "dimensional test" for determining whether a trespass has occurred. *Id.* at 152, 747 S.E.2d at 480. Pursuant to the dimensional test, "a trespass only exists where the invasion of land occurs through a physical, tangible object." *Id.* at 146, 747 S.E.2d at 477. In reaching this conclusion, our Supreme Court rejected the line of cases that refused to apply the dimensional test and instead permitted recovery based on the nature of the interest harmed.

The seminal case, rejected by *Babb*, that eschewed the dimensional test was *Martin v. Reynolds Metals Co.*, 342 P.2d 790 (Or. 1959). In *Martin*, the plaintiffs asserted a trespass claim against an aluminum smelter for fluoride gases and microscopic particulates allegedly emitted by the smelter that traveled through the air and settled on the plaintiffs' properties. *Babb*, 405 S.C. at 146, 747 S.E.2d at 477 (citing *Martin*, 342 P.2d at 791). The court in *Martin* dispensed with the dimensional test and held that "the intrusion of fluoride was a trespass despite its intangible nature," and, "while the fluoride particles were individually minute and invisible, each particle that entered the plaintiffs' property was a physical intrusion, and but for their size, would undoubtedly give rise to a trespass action." *Id.* at 147, 747 S.E.2d at 477 (citing *Martin*, 342 P.2d at 792). The *Babb* Court also rejected the decision in *Borland v. Sanders Lead Co., Inc.*, 369 So.2d 523 (Ala. 1979), where the Alabama Supreme Court refused to apply the dimensional test and found a

11

ELECTRONICALLY FILED - 2025 Feb 14 12:58 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

trespass was pled "where the plaintiffs sued a lead smelter for lead and sulfoxide emissions they alleged settled on and damaged their property." *Babb*, 405 S.C. at 148, 747 S.E.2d at 478. Rejecting these "divergent line of decisions," the *Babb* Court concluded that "the dimensional test is superior to the divergent view" because it preserves the common law "distinction between trespass and nuisance." *Id.* at 150–51, 747 S.E.2d at 479–80.

Here, the PFAS molecules in the water that Plaintiff draws onto its property are not tangible, physical objects as required to state a claim for trespass under the dimensional test. They are chemical molecules measured in parts per trillion. *See* Am. Compl. ¶¶ 30–40. Plaintiff does not allege that PFAS can be seen or felt in the water it pulls onto its property; rather, Plaintiff only allegedly detected PFAS in its water after performing tests on samples of water. *Id.* at ¶¶ 47–51. PFAS are, at best, the equivalent of the fluoride particles in *Martin* and the lead and sulfur emissions in *Borland*, neither of which are tangible, physical objects capable of invading property as necessary to state a claim for trespass under the dimensional rule applied in South Carolina. As such, Plaintiff's claim for trespass fails as a matter of law and must be dismissed.

### D. Plaintiff's Negligence Claim Fails to Identify a Recognized Duty of Care as well as Any Breach of Such Duty.

"An essential element in a negligence action is "the existence of a legal duty of care owed by the defendant to the plaintiff." *Shaw v. Psychemedics Corp.*, 426 S.C. 194, 197, 826 S.E.2d 281, 282 (2019) (quoting *Oblachinski v. Reynolds*, 391 S.C. 557, 561, 706 S.E.2d 844, 845–46 (2011)). "If there is no duty, then the defendant in a negligence action is entitled to judgment as a matter of law." *Madison v. Babcock Ctr., Inc.*, 371 S.C. 123, 135–36, 638 S.E.2d 650, 656 (2006) (citing *Steinke v. S.C. Dep't of Labor, Licensing & Regul.*, 336 S.C. 373, 387, 520 S.E.2d 142, 149 (1999)); *see also McCullough v. Goodrich & Pennington Mortg. Fund, Inc.*, 373 S.C. 43, 47, 644 S.E.2d 43, 46 (2007) ("In order for liability to attach based on a theory of negligence, the parties

12

ELECTRONICALLY FILED - 2025 Feb 14 12:58 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

must have a relationship recognized by law as providing the foundation for a duty to prevent an injury.").

Here, Plaintiff has simply not identified any legally cognizable duty of care. *See Madison*, 371 S.C. at 135–36, 638 S.E.2d at 656 ("Under South Carolina law, there is no general duty to control the conduct of another or to warn a third person or potential victim of danger."). In disposing of wastewater at the Mauldin Road WWTP, Unichem had no duty to ensure that the Mauldin Road WWTP would treat the wastewater in a way that avoids any risk of harm to third parties, and therefore owed no duty to the Plaintiff. *See, e.g.*, *Oulla v. Velazques*, 427 S.C. 428, 444, 831 S.E.2d 450, 458 (Ct. App. 2019) (finding that a sod distributor's placement of sod pallets on a third-party's truck trailer did not create a legal duty of care to motorists to ensure sod pallets were properly secured in order to prevent roadway accidents). By failing to identify a legally recognized duty, Plaintiff has not met the threshold requirement for a viable negligence cause of action.

Furthermore, even if Plaintiff could identify a duty of care, it cannot demonstrate that Unichem breached such a duty in the few short years it has owned the facility at issue, nor that such breach caused the alleged injury, especially in light of the fact that Unichem discharged the wastewater to the Mauldin Road WWTP pursuant to a duly issued permit for the water to be treated. Although Plaintiff details the gradual evolution of PFAS regulation, *see* Am. Compl. ¶¶ 33–43, it has not alleged that Unichem breached a standard of care by failing to comply with laws, regulations, or generally accepted practices related to safe handling and disposal of PFAS. Additionally, as discussed above in Subsection II.A, Plaintiff has not provided sufficient factual allegations supporting a *reasonable* inference that Unichem's alleged discharge to Mauldin Road WWTP actually or proximately caused any of the alleged injuries (a shortcoming amplified by the

ELECTRONICALLY FILED - 2025 Feb 14 12:58 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

absence of allegations identifying any specific, non-speculative, injuries). *See Madison*, 371 S.C. at 146, 638 S.E.2d at 662 ("Negligence is not actionable unless it is a proximate cause of the injury"). Thus, Plaintiff not only failed to identify a duty applicable to Unichem, it also failed to plead facts demonstrating a breach of the generally applicable guidance from the EPA. Thus, Plaintiff's claim for negligence should be dismissed.

## III.    PLAINTIFF'S CLAIMS ARE BARRED BY THE FREE PUBLIC SERVICE DOCTRINE.

Plaintiff is a governmental, special purpose entity that is duly authorized to provide "potable water to residents of Greenwood." Am. Compl. ¶ 13 (citing S.C. Code Ann. § 6-11-1610). Under the municipal cost recovery rule, also known as the "free public services doctrine," public expenditures made in the performance of governmental functions, like those speculative and undefinable costs sought by Plaintiff to upgrade its surface water treatment plant ("SWTP"), are not recoverable in tort. *See United States v. Standard Oil Co. of Cal.*, 332 U.S. 301 (1947).

## IV.    IN THE ALTERNATIVE, THE COURT MAY HOLD THIS ACTION IN ABEYANCE.

In the alternative, if the claims against Unichem are not dismissed in their entirety, the Court should hold the action in abeyance until the MCLs are enforced and/or Plaintiff has established a treatment plan.

## CONCLUSION

For the foregoing reasons, Unichem respectfully requests that the Court grant this Motion and issue an order dismissing Plaintiff's Amended Complaint and grant any further relief as the Court deems just.

14

ELECTRONICALLY FILED - 2025 Feb 14 12:58 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

WOMBLE BOND DICKINSON (US) LLP

*s/ Andrea L. McDonald*

_____
James E. Weatherholtz, S.C. Bar No. 16872
Andrea L. McDonald, S.C. Bar No. 105308
5 Exchange St.
P.O. Box 999 [29402]
Charleston, SC 29401
843-722-3400
James.Weatherholtz@wbd-us.com
Andi.McDonald@wbd-us.com

*Attorneys for Defendant Unichem Specialty Chemicals, LLC*

Charleston, South Carolina
February 14, 2025

15

ELECTRONICALLY FILED - 2025 Feb 14 3:17 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | | |
|---|---|---|
| **STATE OF SOUTH CAROLINA** | ) | **IN THE COURT OF COMMON PLEAS** |
| | ) | |
| **COUNTY OF GREENWOOD** | ) | **EIGHTH JUDICIAL CIRCUIT** |
| | ) | |
| | ) | |
| GREENWOOD COMMISSIONERS | ) | C.A. No. 2024-CP-24-00735 |
| OF PUBLIC WORKS, | ) | |
| | ) | **PFAS Litigation Coordinated Docket** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | |
| | ) | |
| CONE MILLS RECEIVER, LLC; | ) | |
| CRYOVAC, INC.; CRYOVAC, LLC; | ) | |
| FIRSTSOURCE WORLDWIDE, LLC; | ) | |
| FITESA SIMPSONVILLE, INC.; | ) | |
| MILLIKEN & COMPANY; | ) | |
| OPPERMANN WEBBING, INC.; T&S | ) | |
| BRASS AND BRONZE WORKS, INC.; | ) | |
| UNICHEM SPECIALTY CHEMICALS, | ) | |
| LLC, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |

### MILLIKEN & COMPANY'S MEMORANDUM OF LAW IN SUPPORT OF ITS <u>RENEWED MOTION TO DISMISS PLAINTIFF'S AMENDED COMPLAINT</u>

Defendant MILLIKEN & COMPANY ("Milliken"), pursuant to Rules 8(a), 12(b)(1), and 12(b)(6) of the South Carolina Rules of Civil Procedure, hereby submits its Memorandum of Law in Support of its Renewed Motion to Dismiss all claims asserted against it in Plaintiff's Amended Complaint, respectfully stating as follows:

### INTRODUCTION

All the causes of action against Milliken in plaintiff's Amended Complaint arise from the allegations in a single paragraph: that Milliken used per- and polyfluoroalkyl chemicals (known as "PFAS") at its former Judson yarn mill in Greenville; Milliken discharged those chemicals to a wastewater treatment facility; the facility did not treat the wastewater properly, and PFAS

ELECTRONICALLY FILED - 2025 Feb 14 3:17 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

flowed into plaintiff's water intakes. (Plaintiff also alleges the mill site is "contaminated" with PFAS, which also makes its way to plaintiff's intakes.) Plaintiff contends it will have to upgrade its facilities to remove PFAS to meet new U.S. Environmental Protection Agency ("EPA") standards set to take effect in 2029, and demands Milliken and its codefendants foot the bill.

Setting aside the question of whether Milliken ever actually used PFAS at Judson[1] – and plaintiff does not identify a specific product ever manufactured there that used PFAS, which is typically applied to certain finished products, not raw yarn – plaintiff's Amended Complaint does not state a claim against Milliken. Based on the allegations in the Amended Complaint itself, plaintiff's claims fail for a number of reasons:

1. **The claims are not ripe.** Plaintiff contends it will be required to acquire, install, and operate a new water treatment system in the future, but the Amended Complaint itself acknowledges it is currently testing its water to determine whether and to what extent it is over the future limit – if that limit survives court challenges and the change in presidential administrations. At this point, whether plaintiff will need to undertake any work is in question.

2. **The statute of limitations bars plaintiff's claims.** As plaintiff itself alleges, Milliken has not owned the facility at issue since 2015. The statute of limitations for any "damage to real property" is three years.

3. **Milliken did not control the discharge at issue.** Plaintiff itself admits the Judson plant (which ceased operations in 2015) discharged its water to a wastewater treatment facility, on Mauldin Road in Greenville, and there is no

---

[1] In fact, the Judson mill never used PFAS in its operations. Milliken intends to file a summary judgment motion on that basis shortly, providing the undisputed evidence no PFAS allegedly present in plaintiff's water supply could have come from Judson.

2

ELECTRONICALLY FILED - 2025 Feb 14 3:17 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

allegation Milliken violated any permit or regulation in doing so. It was the Mauldin Road facility that is alleged to have discharged PFAS into the Reedy River upstream from plaintiff's intake. It is the operator of that facility, not Milliken, who would be liable for any failure to remove PFAS from its discharge, and for discharging them in a manner that could impact plaintiff. For that reason, Milliken did not owe plaintiff a duty of care to support a negligence claim and its actions cannot form the basis for a nuisance claim.

4. **An alleged contamination of public waters is not a private nuisance.** South Carolina law does not permit a claim for private nuisance for an act that affects the general public.

5. **Voluntary acceptance of intangible matter cannot be a trespass.** Plaintiff's trespass claim fails for two reasons: PFAS molecules constitute "intangible" matter, and plaintiff brought any PFAS onto its property by its own actions.

For all those reasons, plaintiff's claims fail as a matter of law and should be dismissed.

## ARGUMENT AND CITATION TO AUTHORITY

### A. PLAINTIFF'S CLAIMS ARE NOT RIPE FOR ADJUDICATION

**1. A claim is not ripe for adjudication until there is a cognizable injury.**

"A threshold inquiry for any court is a determination of justiciability, i.e., whether the litigation presents an active case or controversy." *Peoples Fed. Sav. & Loan Ass'n of S.C. v. Res. Plan. Corp.*, 358 S.C. 460, 477, 596 S.E.2d 51, 60 (2004) (quoting *Lennon v. S.C. Coastal Council,* 330 S.C. 414, 415, 498 S.E.2d 906, 906 (S.C. App. 1998)). Justiciability includes whether the plaintiff's claims are ripe for adjudication. *See James v. Anne's Inc*., 390 S.C. 188, 193, 701 S.E.2d 730, 732 (2010) (citing *Jackson v. State*, 331 S.C. 486, 490 n.2, 489 S.E.2d 915,

3

917 n.2 (1997)). Where, as here, a claim presents only "a contingent, hypothetical or abstract dispute," the claim is not ripe for adjudication and must be dismissed. *See Pee Dee Elec. Co-op., Inc. v. Carolina Power & Light Co.*, 279 S.C. 64, 66, 301 S.E.2d 761, 762 (1983); *see also Peoples Fed. Sav. & Loan Ass'n of S.C.*, 358 S.C. at 477, 596 S.E.2d at 60 ("A justiciable controversy is a real and substantial controversy which is ripe and appropriate for judicial determination, as distinguished from a contingent, hypothetical or abstract dispute.") (citation omitted).[2] *See also Carolina Care Plan, Inc. v. United HealthCare Servs., Inc.*, 361 S.C. 544, 557, 606 S.E.2d 752, 759 (2004) (affirming dismissal of complaint where claims were contingent in nature and therefore not yet ripe for adjudication).[3]

### 2.  Plaintiff has not shown it will need to act to meet new EPA standards.

In this case, plaintiff's own allegations demonstrate it has not yet suffered any legally cognizable injury due to PFAS, and in fact it might never suffer such injury. Indeed, while EPA's standards for "maximum contaminant levels" ("MCLs") of PFAS became final in April 2024 (Compl. ¶ 42), it has not yet been determined how, if at all, the rule will impact the plaintiff or its ability to provide acceptable drinking water. Most importantly, plaintiff will not be required to comply with the MCLs until April 26, 2029. (*Id.* ¶ 44). Prior to that date is a three-

---

[2] *See also Wild Virginia v. Council on Env't Quality*, 56 F.4th 281, 294 (4th Cir. 2022) (claim is unripe if "plaintiff has not yet suffered injury and any future impact 'remains wholly speculative.'") (citation omitted); *South Carolina v. U.S.*, 912 F.3d 720, 730 (4th Cir. 2019) (claim unripe "if it rests upon contingent future events that may not occur as anticipated, or indeed may not occur at all." (quoting *Scoggins v. Lee's Crossing Homeowners Ass'n*, 718 F.3d 262, 270 (4th Cir. 2013))).

[3] *See also Kiawah Prop. Owners Grp. v. Pub. Serv. Comm'n of S.C.*, 357 S.C. 232, 242-43, 593 S.E.2d 148, 154 (2004) (no justiciable controversy where plaintiffs "assert only that the loan provisions may have some negative impact in the future" on water utility's customers); *McClanahan v. Richland Cnty. Council*, 350 S.C. 433, 441, 567 S.E.2d 240, 244 (2002) (property owner's claim based on adoption of land use plan not yet implemented is unripe); *see also, e.g.*, *Tracy v. Tracy*, 384 S.C. 91, 100, 682 S.E.2d 14, 18 (S.C. App. 2009) (determining case not ripe for review where appellant not yet exposed to liability due to appellee's conduct).

4

ELECTRONICALLY FILED - 2025 Feb 14 3:17 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

year "initial monitoring" period that runs through April 26, 2027. (*Id.*; *see also* PFAS Nat'l Primary Drinking Water Reg., 89 Fed. Reg. 32,532, 32,633 (Apr. 26, 2024) (codified at 40 CFR Parts 141 and 142).)

Plaintiff does not allege any facts demonstrating it will have to take action of any sort to comply with the 2029 MCLs. In fact, plaintiff has not alleged that it has incurred any costs or expenses whatsoever due to the presence of PFAS in its source water. Rather, it is seeking "expenses associated with *future* acquisition, installation, and operation of required treatment technologies." (Am. Compl. ¶ 73 (emphasis added)). Nothing in the Amended Complaint indicates plaintiff has changed its operations either since EPA finalized the MCLs in April or as a result of any PFAS in Lake Greenwood.

### 3.   The standards at issue may never go into effect.

This status quo may continue indefinitely. Plaintiff's testing during the initial monitoring period may indicate plaintiff will not have to make any capital investments to remain in compliance with applicable regulations. And that's if the MCLs go into effect at all: In June 2024, three sets of plaintiffs filed challenges to the EPA's PFAS rule in actions currently pending before the D.C. Circuit Court of Appeals. *See* Pet. for Rev., *The Chemours Co. v. EPA*, No. 24-1192 (D.C. Cir. June 10, 2024)[4]; Pet. for Rev, *Nat'l Assoc. of Mfrs. v. EPA*, No. 24-1191 (D.C. Cir. June 10, 2024)[5]; Pet. for Rev, *Am. Water Works Assoc. v. EPA*, No. 24-1188 (D.C. Cir. June 7, 2024)[6]. Changes to the MCLs that could result from these cases could also affect the extent to which plaintiff must take any action to comply, if at all; and the MCLs could simply be changed

---

[4] Available at https://www.epa.gov/system/files/documents/2024-06/chemours- v.-epa_d.c.cir_.pdf.
[5] Available at https://www.fbm.com/content/uploads/2024/06/24-1191_Documents.pdf.
[6] Available at https://www.awwa.org/Portals/0/AWWA/Government/062124Insiders/AWWA-v- EPA-No-1188-DC-Cir-Filed-Petition.pdf.

or eliminated entirely based on differing priorities of the incoming Trump Administration.[7]

Indeed, the effective date for the new MCLs were paused 60 days for review by executive order

on January 20, 2025, along with other similarly situated pending rules.[8] These circumstances

preclude plaintiff's claims from being ripe at this time. *See Jowers v. S.C. Dep't of Health &*

*Env't Control*, 423 S.C. 343, 364, 815 S.E.2d 446, 457 (2018) (finding action was not ripe

because claim "depends on there being no changes to the law regarding surface water

withdrawals"). Because of these numerous contingencies and the resulting uncertainty, the facts

alleged by plaintiff demonstrate at most "the mere threat of potential injury," which is "too

contingent or remote to support present adjudication." *Waters v. S.C. Land Res. Cons. Comm'n*,

321 S.C. 219, 228, 467 S.E.2d 913, 918 (1996) (quoting *Thrifty Rent-A-Car Sys., Inc. v. Thrifty*

*Auto Sales of Charleston, Inc*., 849 F. Supp. 1083, 1086 (D.S.C. 1991)). For this reason alone,

plaintiff's claims are not ripe for adjudication and should be dismissed.

**4. South Carolina law does not allow a public utility like plaintiff to recover the costs of providing its statutory services.**

Plaintiff's claims should also be dismissed because it is a public utility authorized by

statute to provide a service to the public at large. Under the municipal cost recovery rule, a

public entity cannot recover in tort the cost incurred in providing its services – for example, a fire

department cannot sue a person who left a space heater plugged in for the cost of its response.

*See*, *e.g.*, *Walker County v. Tri-State Crematory*, 284 Ga. App. 34, 36–37 (2007) (county cannot

sue crematorium for cost occurred in cleaning up contaminated site); *Pittsburgh v. Equitable*

*Gas*, 512 A.2d 83, 84 (Pa. Cmwlth. Ct. 1986) (city cannot sue gas provider for cost of emergency

response after explosion).

---

[7] *See, e.g.,* https://www.usatoday.com/story/news/investigations/2024/11/08/water-activists-worried-about-trump-presidency/76110402007/.
[8] https://www.whitehouse.gov/presidential-actions/2025/01/regulatory-freeze-pending-review/.

6

ELECTRONICALLY FILED - 2025 Feb 14 3:17 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Here, plaintiff is authorized – and, indeed, directed – to provide clean water to residents in its service area pursuant to the State Safe Water Drinking Act, S.C. Code § 44-55-10, *et seq*., and enabling regulations. But nothing in the statute authorizes a public water utility to recover the cost of providing that service from an entity it contends makes that service necessary. *See id*.; *see also United States v. Standard Oil Co. of Cal.*, 332 U.S. 301 (1947) (reversing judgment for federal government seeking recovery for cost of treating soldier insured in accident because recovery not authorized by Congress); *Pittsburgh*, 512 A.2d at 84 (city may not recover absent authorization from legislature). Nor has any South Carolina court authorized a claim as plaintiff purports to assert here. It should be dismissed.

## B. THE STATUTE OF LIMITATIONS BARS PLAINTIFF'S CLAIMS BECAUSE MILLIKEN'S PLANT CLOSED IN 2015

### 1. Milliken could not have harmed plaintiff within the statutory period.

Under S.C. Code § 15-3-530(3), any action alleging injury to land – or, in the language of the statute, "an action for trespass upon or damage to real property," must be brought within three years. Plaintiff filed its original Complaint on July 10, 2024 and its Amended Complaint, which first named Milliken as a defendant, on August 23, 2024. The Amended Complaint alleges Milliken owned the Judson Mill – the site that forms the basis of all plaintiff's claims against Milliken – "between approximately 1960 and 2015."

Based on plaintiff's own allegations, then, plaintiff's claim is outside the statute of limitations and must be dismissed. More than eight years[9] have elapsed since plaintiff claims Milliken operated the mill, well outside the statutory period. Milliken could not have taken any

---

[9] Milliken closed the mill in 2015 but did not sell the property until October 2017, but even if one uses the later date (though the mill was not operating and not discharging wastewater), more than six years have passed since Milliken exercised any ownership or control over the property. That is still twice as long as the statutory period.

ELECTRONICALLY FILED - 2025 Feb 14 3:17 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 14 3:17 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

action to harm plaintiff within the statutory period. There is no exception to Section 15-3-530 that allows plaintiff's claims to survive.

### 2. The nuisance and trespass alleged by plaintiff is not continuing because it is not abatable.

Despite any efforts in the Amended Complaint to characterize it as such, plaintiff does not allege a "continuing nuisance" or "continuing trespass" under South Carolina law as to Milliken. Despite the nomenclature, the key difference between a "continuing" and "permanent" nuisance or trespass is not just whether it is expected to continue; it is whether it is abatable. *See Silvester v. Spring Valley Country Club*, 344 S.C. 280, 286-87, 543 S.E.2d 563 (S.C. App. 2001). "A nuisance is continuing ***if abatement is reasonably and practicably possible***." *Id*. at 287 (citing 58 Am. Jur.2d *Nuisances* § 29 (1989)) (emphasis added). A building encroaching on a plaintiff's land will continue to trespass permanently, but it is not a "permanent" nuisance because it cannot simply be abated. *Id*. at 286.

Here, abatement is not possible. Milliken does not own the property from which plaintiff alleges the nuisance originated, and has not for a half-dozen years. Any alleged PFAS discharged in its wastewater left its property at least eight years ago. Nor can Milliken take any action to address the "contaminat[ion] with these PFAS and their precursors that migrate to Brushy Creek and the Reedy River via groundwater migration and stormwater discharges," (Am. Compl. ¶ 20), because it has no control over the land plaintiff alleges is contaminated. *See McCurley v. S.C. State Hwy. Dept.*, 256 S.C. 332, 182 S.E.2d 299 (S.C. 1971) (trespass abatable because state landowner was able to install new culvert under street). To the extent plaintiff argues "abatement" consists of funding plaintiff's efforts to remove PFAS from its own property, that is not abatement – that is simply compensating a plaintiff for its injury.

8

ELECTRONICALLY FILED - 2025 Feb 14 3:17 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

The South Carolina Court of Appeals made this clear in its decision in *Hedgepath v. American Tel. & Tel. Co.* In *Hedgepath*, property owners sued, among others, the former owner of a copper reclamation facility for alleged pollution on their land. 348 S.C. 340, 349-50, 559 S.E.2d 327 (S.C. App. 2001). The suit was filed just over three years after one defendant ceased operations in preparation for the sale to another entity, meaning the last polluting event attributable to that defendant must have occurred more than three years before commencement of the action. *Id.* at 358-59. The trial court concluded there was no evidence of any injuries to any plaintiff caused by the former owner within the statutory period and granted summary judgment. *Id.* at 359. The Court of Appeals affirmed. *Id.*

### C. PLAINTIFF'S NEGLIGENCE CLAIM FAILS FOR A LACK OF DUTY

#### 1. A duty requires a relationship between the parties, not mere foreseeability of injury.

It is well-settled in South Carolina (and everywhere) that an "essential element in a negligence action is 'the existence of a legal duty of care owed by the defendant to the plaintiff.'" *Shaw v. Psychemedics Corp.*, 426 S.C. 194, 197, 826 S.E.2d 281, 282 (2019) (quoting *Oblachinski v. Reynolds*, 391 S.C. 557, 561, 706 S.E.2d 844, 845-46 (2011)). "If there is no duty, then the defendant in a negligence action is entitled to judgment as a matter of law." *Madison ex rel. Bryant v. Babcock Ctr., Inc.*, 371 S.C. 123, 135-36, 638 S.E.2d 650, 656 (2006) (citing *Steinke v. S.C. Dep't of Labor, Licensing & Regulation*, 336 S.C. 373, 387, 520 S.E.2d 142, 149 (1999)). "An affirmative legal duty may be created by statute, a contractual relationship, status, property interest, or some other special circumstance." *McPherson v. CSX Transp., Inc.*, No. 4:16-cv-2725, 2017 WL 1135291, at *2 (D.S.C. Mar. 27, 2017) (citing *Madison ex rel. Bryant*, 371 S.C. at 136, 638 S.E.2d at 656-57). "However, South Carolina courts 'will not extend the concept of a legal duty of care in tort liability beyond reasonable limits,'" and without more,

9

"[f]oreseeability of injury, in and of itself, does not give rise to a duty." *Shaw*, 426 S.C. at 198, 826 S.E.2d at 283 (quoting *McCullough*, 373 S.C. at 48, 644 S.E.2d at 46); *Charleston Dry Cleaners & Laundry, Inc. v. Zurich Am. Ins. Co.*, 355 S.C. 614, 618, 586 S.E.2d 586, 588 (2003).

### 2. Milliken does not owe a legal duty of care to the plaintiff.

Here, plaintiff does not allege any facts that suggest the existence of a relationship between it and Milliken sufficient to establish a legal duty of care. Plaintiff does not allege any duty "created by statute, a contractual relationship, status, property interest, or some other special circumstance," but instead alleges only that the "Defendants have a duty to use due care in the handling, use, and disposal of products containing or degrading to [PFAS] to avoid causing an unreasonable risk of harm to others." (*See* Am. Compl. ¶ 91). But South Carolina does not recognize or impose such a broad and oversimplified duty of care. Just the opposite, because under South Carolina law, "*one who has no control owes no duty*." *Miller v. City of Camden*, 329 S.C. 310, 314, 494 S.E.2d 813, 815 (1997) (citing *Clark v. Greenville Cnty.*, 313 S.C. 205, 209, 437 S.E.2d 117, 119 (1993) (emphasis added)); *see also Ellis v. Tall Ships Charleston, LLC*, 593 F. Supp. 3d 253, 268 (D.S.C. 2022) ("Under South Carolina law, there is no general duty to control the conduct of another or to warn a third person or potential victim of danger." (quoting *Faile v. S.C. Dep't of Juv. Just.*, 350 S.C. 315, 334, 566 S.E.2d 536, 546 (2002))).

Accordingly, in disposing of wastewater at the Mauldin Road WWTP, Milliken had no duty to ensure that the Mauldin Road WWTP would treat the wastewater in a way that avoids any risk of harm to third parties, and therefore owed no duty to the plaintiff. *See, e.g.*, *Oulla v. Velazques*, 427 S.C. 428, 444, 831 S.E.2d 450, 458 (S.C. App. 2019) (sod manufacturer that placed pallets on truck trailer that later fell, leading to accident, did not owe legal duty to injured motorist to ensure pallets were properly secured). As a result of the absence of any duty, plaintiff's Fourth Cause of Action in the Amended Complaint should be dismissed.

ELECTRONICALLY FILED - 2025 Feb 14 3:17 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 14 3:17 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

### D.  MILLIKEN IS ENTITLED TO DISMISSAL OF BOTH NUISANCE CLAIMS

**1.  Milliken cannot be liable for nuisance because it lacked control over the property directly responsible for the alleged nuisance.**

**a.  Control is an essential element of nuisance.**

Under black letter South Carolina law, Milliken cannot be held liable to plaintiff under a nuisance theory based upon its alleged disposal of industrial wastewater at the Mauldin Road WWTP. Rather, nuisance law is primarily a mechanism for resolving "conflicting interests of landowners," and to effect a "balancing of the[ir] correlative rights." *See DeBorde v. St. Michael & All Angels Episcopal Church*, 272 S.C. 490, 502, 252 S.E.2d 876, 882 (1979); *Winget v. Winn-Dixie Stores, Inc.*, 242 S.C. 152, 159, 130 S.E.2d 363, 367 (1963). For that reason, the South Carolina Supreme Court has made clear that "one who has no control over property at the time of the alleged nuisance cannot be held liable therefor." *Clark v. Greenville Cnty.*, 313 S.C. 205, 210, 437 S.E.2d 117, 119 (1993). As such, in the absence of allegations evidencing control, a nuisance claim fails and must be dismissed. *See id.*; *see also Weatherford v. E.I. Dupont de Neumours & Co.*, No. 4:22-cv-1427, 2023 WL 11015357, at *6 (D.S.C. Sept. 27, 2023) (dismissing nuisance claim because "Plaintiffs have not alleged Defendants had control over the PFAS once they were sold to the textile plants").

**b.  The Supreme Court has already ruled defendants cannot be liable for delivering waste to landowner who allegedly causes nuisance.**

The South Carolina Supreme Court's decision in *Clark v. Greenwood County* is directly on point. In that case, the plaintiffs were property owners who alleged their properties had been contaminated by hazardous chemical waste disposed of at a nearby landfill. *See* 313 S.C. at 206-07, 437 S.E.2d at 118. As a result, the property owners filed suit against five corporations that had used the landfill. *Id.* at 207, 118. The trial court ruled that because the corporate respondents did not own or control the landfill, "no action for private nuisance could be maintained against

11

the corporate respondents." *Id.* at 209, 119. On appeal, the Supreme Court affirmed, explaining that "[t]he only issue we need address is whether one must own or have control of the property allegedly used as a nuisance"; and held control was indeed a prerequisite to any action for nuisance: "[W]e now hold one who has no control over property at the time of the alleged nuisance cannot be held liable therefor." *Id.* at 209-10, 119. Thus, because "appellants neither alleged nor produced any evidence the corporate respondents had control over the landfill or the hazardous waste once it was deposited at the landfill," the court concluded that "the trial judge correctly ruled the corporate respondents could not be liable for nuisance because they had no control over the property allegedly used as a nuisance." *Id.* at 210, 119.

Here, plaintiff's Amended Complaint alleges **the Mauldin Road WWTP** – not Milliken – "discharged into the Reedy River upstream of Lake Greenwood and Plaintiff's water intakes." (Am. Compl. ¶ 20). Just like in *Greenwood County*, the allegation in this case is that Milliken discharged wastewater **to** the Mauldin Road WWTP, which occurs prior to (and entirely separate and apart from) any discharge **by** the Mauldin Road WWTP.[10] (*See id.* ¶¶ 20, 83). Because Milliken had no control over the Mauldin Road WWTP, it "had no control over the property allegedly used as a nuisance." *See Greenwood Cnty.*, 313 S.C. at 210, 437 S.E.2d at 119. Accordingly, plaintiff's private and public nuisance claims against Milliken – the First and Second Causes of Action – both fail as a matter of law and must be dismissed.

---

[10] Plaintiff attempts to dodge the impact of *Greenwood County* by tacking on an allegation Milliken "did not remediate Judson Mill upon its closure, and the site remains contaminated with these PFAS," and those PFAS somehow end up 60 miles away at the W.R. Wise Water Treatment Facility operated by plaintiff. (Am. Compl. ¶ 20.) This allegation fails for two reasons. First, plaintiff acknowledges Milliken has not owned the site for several years (*id.*), and the statute of limitations bars that claim. *See infra*. Second, in South Carolina, a nuisance is "a substantial and unreasonable interference with the plaintiff's use and enjoyment of his land." *FOC Lawshe Ltd. P'ship v. Int'l Paper Co.*, 574 S.E.2d 228, 231 (S.C. App. 2002). Regardless of the magnitude of plaintiff's alleged harm due to the conduct of all defendants together, nothing in the Amended Complaint suggests the alleged presence of chemicals miles away interferes with plaintiff's use of its land in a "substantial and unreasonable" manner.

12

ELECTRONICALLY FILED - 2025 Feb 14 3:17 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

## 2. Plaintiff's private nuisance claim also fails because plaintiff alleges an injury to the public at large.

Plaintiff's private nuisance claim against Milliken should also be dismissed because the alleged contamination of a public water body cannot form the basis of a claim for private nuisance. "A private nuisance affects only one person or a determinate number of persons," whereas a "nuisance is public because of the danger to the public which might have been created." *See Baltzeger v. Carolina Midland Ry. Co.*, 54 S.C. 242, 248, 32 S.E. 358, 360 (1899); *Home Sales, Inc. v. City of N. Myrtle Beach*, 299 S.C. 70, 81, 382 S.E.2d 463, 469 (S.C. App. 1989) ("A nuisance is public because of the danger to the public which might have been created. It is private only because the individual as distinguished from the public has been or may be injured."); *see also Charleston Dev. Co. v. Alami*, 433 S.C. 533, 547-48, 860 S.E.2d 687, 695 (S.C. App. 2021) (a private nuisance "produces damage to but one or two persons, and cannot be said to be public."); *accord Rhodes v. E.I. du Pont de Nemours & Co.*, 636 F.3d 88, 96-97 (4th Cir. 2011) ("when a release of pollutants directly affects a municipal water supply and does not interfere with any private water source, such as a well drilled on private property, the presence of the pollutants in the public water supply will not support a private nuisance claim.").

Plaintiff's Amended Complaint makes clear its claims against Milliken are based on the alleged contamination of Lake Greenwood, the location of plaintiff's water intakes. (Am. Compl. ¶ 20.) Plaintiff's nuisance claim therefore involves an alleged nuisance that is "public in nature," which "will not support a private nuisance claim." *See Rhodes*, 636 F.3d at 96-97. For this additional reason, the First Cause of Action for private nuisance should be dismissed.

13

ELECTRONICALLY FILED - 2025 Feb 14 3:17 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 14 3:17 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

### E. MICROSCOPIC PARTICLES BROUGHT IN VOLUNTARILY CANNOT FORM THE BASIS OF A TRESPASS CLAIM

#### 1. South Carolina follows the traditional rule that a trespass requires "an invasion by a physical, tangible thing."

The Supreme Court has definitively stated South Carolina follows the traditional rule that "only recognizes intrusions by physical, tangible things as capable of constituting a trespass." *Babb v. Lee Cnty. Landfill SC, LLC*, 405 S.C. 129, 152, 747 S.E.2d 468, 480 (2013). Under the traditional rule, the interference must be "with the right to exclusive possession," as opposed to "merely interfer[ing] with the right to use and enjoyment." *Id.* at 151, 747 S.E.2d at 480. Thus, intrusions by "microscopic particulates" or similarly intangible "infiltration[s] of contaminants onto a plaintiff's property" – while potentially giving rise to a nuisance claim – do not constitute an actionable trespass under South Carolina law. *Id.* at 144-52, 476-80.

In adhering to the traditional rule that requires "an invasion by a physical, tangible thing," the Supreme Court recognized it was "an imperfect rule" that may not incorporate the pure scientific definition of matter. *Id.* at 150, 479. Nevertheless, the court held the traditional rule remained "superior" to the alternate rules which require the adoption of an uncertain "substantiality requirement," because it "possesses the virtues of clarity, ease of implementation, and ability to serve as a guide for future conduct" that will "yield a stable rule as to what rises to the level of a trespass." *Id.* at 149-51, 479-80. The Court further explained that the traditional rule preserves "the distinction between trespass and nuisance," whereas "the divergent view would transform trespass into nuisance," thereby "leav[ing] property owners with less, rather than more, protection of their property rights." *Id.* at 151-52, 480.

By retaining the traditional rule, the Supreme Court expressly rejected "divergent" cases in Oregon and Alabama, which held intrusions of "fluoride particles" and "sulfoxide emissions" respectively were sufficient to constitute a trespass despite their "intangible nature." *Id.* at 146-

14

49, 747 S.E.2d at 477-78 (rejecting *Martin v. Reynolds Metals Co.*, 342 P.2d 790 (1959) and *Borland v. Sanders Lead Co.*, 369 So. 2d 523 (Ala. 1979)). Instead, the Court followed the Michigan Court of Appeals' decision in *Adams v. Cleveland-Cliffs Iron Co.* that concluded dust is "not actionable in trespass" because "dust, along with other forms of airborne particulate, does not normally present itself as a significant physical intrusion," but instead "become[s] a part of the ambient circumstances of th[e] space" on which it settles. *See Babb,* 405 S.C. at 149-50, 747 S.E.2d at 479; *see also* 237 Mich. App. 51, 67-70, 602 N.W.2d 215, 222-24 (1999).

### 2.   Plaintiff alleges trespass only by "intangible matter."

In this case, plaintiff's trespass claim is based on the alleged contamination from PFAS molecules, which are precisely the kind of "intangible matter" the Supreme Court held "are insufficient to constitute a trespass." *See Babb*, 405 S.C. at 144-52, 747 S.E.2d at 476-80. Indeed, plaintiff's own Amended Complaint demonstrates PFAS molecules are microscopic particles — measured, if at all, in the parts per ***trillion*** – that cannot be visibly seen, felt, or otherwise perceived in water or any other medium. (*See* Am. Compl. ¶¶ 33-34, 36-37, 39-40, 43). Moreover, the damages plaintiff alleges from the PFAS contamination are not to its right to the exclusive possession of its property but are based on the alleged "losses to the use and enjoyment of its property rights" (*id*. ¶ 5) and the alleged "interference with Plaintiff's right to use and enjoy its property" (*id*. ¶ 55), which can be remedied only through a claim for nuisance, not trespass. *Babb*, 405 S.C. at 139, 149-52, 747 S.E.2d at 473, 479-80.  For these reasons, plaintiff's allegations do not state an actionable claim for trespass under South Carolina law, and its Third Cause of Action should be dismissed.

ELECTRONICALLY FILED - 2025 Feb 14 3:17 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 14 3:17 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

### 3. Plaintiff does not enjoy exclusive possession of the water from Lake Greenwood or the Saluda River.

Plaintiff's trespass claim also fails for other reasons. First, plaintiff does not sufficiently allege a physical invasion of its property. As the South Carolina Supreme Court has made clear, trespass protects only the "right to *exclusive* possession." *See Babb*, 405 S.C. at 150-51, 747 S.E.2d at 479- 80 (2013) (emphasis added). Here, plaintiff does not hold an exclusive right to the water from the Saluda River or Lake Greenwood, only a riparian right of reasonable use. *See White v. Whitney Mfg. Co.*, 60 S.C. 254, 265, 38 S.E. 456, 460 (1901) (it is a "well-settled rule of law" that while a riparian owner has "an equal right to the use of the water which flows in the stream adjacent to his lands . . . [h]e has no property in the water itself, but a simple usufruct").

### 4. Any PFAS allegedly on plaintiff's property was drawn there by plaintiff's own actions.

Second, though plaintiff alleges PFAS contamination is present on its property, it concedes this alleged contamination only occurs as a result of its own actions, when plaintiff turns on its water pumps to draw water from Lake Greenwood. (Am. Compl. ¶¶ 85, 87). That does not constitute an actionable trespass under South Carolina law, which must be based on "an affirmative act" by the defendant, and "the invasion of the land must be intentional." *Snow v. City of Columbia*, 305 S.C. 544, 553, 409 S.E.2d 797, 802 (S.C. App. 1991). An act is only intentional if "done with knowledge that it will to a substantial certainty result in the entry of the foreign matter" on the plaintiff's land. *Sales v. S.C. Dep't of Transp.*, No. 2014-000582, 2016 WL 3607225, at *2 (S.C. App. June 30, 2016) (quoting Restatement (Second) of Torts § 158 cmt. i (1965)). Here, there could be no "substantial certainty" PFAS would enter plaintiff's property, because it can only occur when plaintiff affirmatively acts to activate of its water pumps. Plaintiff's affirmative action to pump water onto its property is the third additional reason its trespass claim fails: any PFAS allegedly enters its property through its own voluntary

16

decision. *See Ravan v. Greenville Cnty.*, 315 S.C. 447, 464, 434 S.E.2d 296, 306 (S.C. App. 1993) ("The essence of trespass is the unauthorized entry onto the land of another."). *See also Util. Bd. of Tuskegee v. 3M Co.*, No. 2:22-cv-420, 2023 WL 1870912, at *16 (M.D. Ala. Feb. 9, 2023) (dismissing similar trespass claim asserted by water system because "unlike other indirect trespasses, Defendants' PFAS did not cross onto UBT's boundary line by a natural process. Rather, UBT pulls the water onto its property through an intake system from a public waterway (over which UBT does not have exclusive possession)"). Just as it was in that case, plaintiff's Third Cause of Action should be dismissed.

## CONCLUSION

Even if Milliken had ever used PFAS at the mill at issue – which it did not – plaintiff's claims against Milliken fail for several reasons: They are not ripe because it is uncertain whether it will ever suffer the injury alleged. They are barred by the statute of limitations because it has been several years since Milliken owned or operated the mill. And even if the claims were valid despite those proscriptions, each claim would fail because they are not supported by South Carolina law. Milliken's motion should be granted and all claims against it dismissed.

Respectfully submitted, this 14th day of February, 2025.

/s/  Rachael L. Anna
Rachel L. Anna (SC Bar No. 100486)
Rita Bolt Barker (SC Bar No. 77600)
WYCHE, P.A.
200 East Broad Street, Suite 400
Greenville, SC 29601-2892
Tel: (864) 242-8200
Fax: (864) 235-8900
ranna@wyche.com
rbarker@wyche.com

-and-

Jameson B. Carroll (Admitted *pro hac vice*)

17

ELECTRONICALLY FILED - 2025 Feb 14 3:17 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 14 3:17 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

Michael Weiss (Admitted *pro hac vice*)
CARROLL & WEISS LLP
2870 Peachtree Rd NW, Suite 193
Atlanta, GA 30305-2918
Tel: (404) 514-5061
jcarroll@carrollweiss.com
mweiss@carrollweiss.com

*ATTORNEYS FOR DEFENDANT*
*MILLIKEN & COMPANY*

ELECTRONICALLY FILED - 2025 Feb 26 4:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

STATE OF SOUTH CAROLINA

COUNTY OF GREENWOOD

IN THE COURT OF COMMON PLEAS

FOR THE EIGHTH JUDICIAL CIRCUIT

GREENWOOD COMMISSIONERS OF
PUBLIC WORKS,

Plaintiff,

v.

CONE MILLS RECEIVER, LLC *et al.*,

Defendants.

CASE NO. 2024-CP-24-00735

**MOTION FOR PRO HAC VICE
ADMISSION OF HAMILTON
JORDAN**

The undersigned local counsel hereby moves, together with the attached Application and Affidavit, that Hamilton Jordan of Cory Watson, P.C., 1033 Demonbreun St., #300, Nashville, TN 37203, be admitted *pro hac vice* in the above captioned matter. As local counsel I understand that:

1. I will personally sign each pleading, motion, discovery procedure, or other document that I serve or file in this court.

2. All pleadings and other documents that I file in this case will contain my name, firm name, address, and phone number and those of my associate counsel admitted *pro hac vice*; and service of all pleadings and notices as required shall be sufficient if served upon me, and it is my responsibility to serve my associate counsel admitted *pro hac vice*.

3. Unless excused by the court, I will be present at all pretrial conferences, hearings, and trials and may attend discovery proceedings. I will be prepared to actively participate, if necessary.

4. Undersigned counsel hereby certifies that they contacted counsel of record regarding Mr. Jordan's admission and received no objection.

Mr. Jordan is a member in good standing with his local bar association, and the Verified Application for Admission *Pro Hac Vice* in the State of South Carolina setting forth the necessary

1

information required by Rule 404(d), SCACR, is attached to and incorporated into this motion.

      Dated: February 26, 2025

                                          RESPECTFULLY SUBMITTED,

                                          **JOHN B. WHITE JR., PA**

                                          By: *s /John B. White, Jr.*
                                          John B. White, Jr. (SC Bar No. 5996)
                                          Marghretta H. Shisko (SC Bar No. 100106)
                                          Griffin L. Lynch (SC Bar No. 72518)
                                          Christopher R. Jones (SC Bar No. 101265)
                                          291 S. Pine Street
                                          Spartanburg, SC 29302
                                          (864) 594-5988
                                          jwhite@johnbwhitelaw.com
                                          mshisko@johnbwhitelaw.com
                                          glynch@johnbwhitelaw.com
                                          cjones@johnbwhitelaw.com

                                          *Attorneys for Plaintiff*

ELECTRONICALLY FILED - 2025 Feb 26 4:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

2

# EXHIBIT

ELECTRONICALLY FILED - 2025 Feb 26 4:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

# VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE*
# IN THE STATE OF SOUTH CAROLINA

**Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.**

| Greenwood Commissioners Of Public Works, | 2024-CP-24-00735 | In The Court of Common Pleas Eighth Judicial Circuit |
|---|---|---|
| Plaintiff | Case No. | Tribunal |

vs.

Mailing Address of Tribunal:

| Cone Mills Receiver, LLC, et al | | 528 Monument Street |
|---|---|---|
| Defendant | | Greenwood, SC 29646 |

Comes now ___Hamilton Jordan_____, applicant herein, and respectfully represents the following:

1. Applicant resides at:

▆▆▆▆▆▆▆▆▆▆

**Street Address**

▆▆▆▆▆       Davidson       TN       ▆▆▆▆

**City**       **County**       **State**       **Zip Code**

▆▆▆▆▆

**Telephone**

2. Applicant is an attorney and a member of the law firm of (or practices law under the name of)

Cory Watson, P.C. _____, with offices at

1033 Demonbreun St. #300

**Street Address**

| Nashville | Davidson | TN | 37203 |
|---|---|---|---|
| City | County | State | Zip Code |
| 615-903-4660 | 334-714-1783 | 866-327-4000 | hjordan@corywatson.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

3. Applicant has been retained personally or as a member of the above-named law firm by

___Greenwood Commissioners Of Public Works_____ to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

4. Since ___October 19th___ of ___2017_____, Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of ___Tennessee_____ where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

ELECTRONICALLY FILED - 2025 Feb 26 4:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

5. List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
| --- | --- |
| Tennessee Supreme Court | 10/19/2017 |
| Tennessee State Courts | 10/19/2017 |
| United States District Court Eastern District of Tennessee | 3/16/2022 |
| United States District Court Middle District of Tennessee | 10/21/2016 |
| North Carolina State Courts | 7/21/2023 |
| | |
| | |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

| Yes |
| --- |

6. Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency? If yes, give particulars, e.g., jurisdiction, court date.

| No |
| --- |

7. Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked? If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

| No |
| --- |

8. Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked? If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

| No |
| --- |

9. Please be aware that local counsel must be Rule 403 certified. Local counsel of record associated

with Applicant in this case is ___John B. White, Jr.___ of the ___John B. White, Jr., P.A.___

law firm, which has offices at:

291 S. Pine Street/ P.O. Box 2465 (29304)
Street Address

| Spartanburg | Spartanburg | South Carolina | 29302 |
| --- | --- | --- | --- |
| City | County | State | Zip Code |
| 864-594-5988 | 864-706-8701 | 864-594-5870 | jwhite@johnbwhitelaw.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

ELECTRONICALLY FILED - 2025 Feb 26 4:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 26 4:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

5996
_____
South Carolina Bar Number
(You must provide Bar Number)

10.    Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

| Yes  - See Attached Exhibit A |
|---|

11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

| Yes |
|---|

12. Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this  *31st*  day of  *January* , 20 *25*

_____
APPLICANT

*Page 3 of 4*

# VERIFICATION

STATE OF ___TENNESSEE___ )

COUNTY OF ___DAVIDSON___ )

I, ___HAMILTON JORDAN___, do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true. I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice. Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding. Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

_____
APPLICANT/AFFIANT

Subscribed and sworn to before me this ___31___ day of ___Van___, 20 _25_

_____
(Notary Signature)

Notary Public for the State of ___Tennessee___

My Commission Expires: ___Sept 5th 2028___

JEAN CARLOS COLLADO
STATE OF TENNESSEE
NOTARY PUBLIC
DAVIDSON COUNTY
My Commission Expires Sept. 5, 2028

## LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this ___11th___ day of ___February___, 20 _25_

_____
LOCAL COUNSEL OF RECORD

## CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this ___11th___ day of ___February___, 20 _25_

_____

*Page 4 of 4*

ELECTRONICALLY FILED - 2025 Feb 26 4:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**Exhibit A**

**Application to Appear *Pro Hac Vice* in South Carolina for Hamilton Jordan**

| Case Name | Status | Date of Application | Local Counsel | Granting/ Pending |
|---|---|---|---|---|
| Laurens County Water and Sewer Commission v. Cone Mills Receiver, LLC, et al | Active | 8/21/2024 | Marghretta Shisko | Granted |
| Grand Strand Water and Sewer Authority v. Aladdin Manufacturing Corporation, et al | Active | 8/21/2024 | Marghretta Shisko | Granted |
| City of Union v. Milliken & Company, et al | Active | 12/30/2024 | Marghretta Shisko | Granted |
| City of Clinton v. Fibertex Nonwovens, Inc., et al | Active | 1/23/2025 | John B. White Jr. | Pending |
| City of Florence v. Aladdin Manufacturing Corporation, | Active | 1/31/2025 | John B. White, Jr. | Pending |
| The Gaffney Board of Public Works v. Bommer Industries, Inc., et al | Active | 1/31/2025 | John B. White, Jr. | Pending |
| South Carolina Public Service Authority v. China Jushi USA Corporation, et al | Active | 1/31/2025 | John B. White, Jr. | Pending |

ELECTRONICALLY FILED - 2025 Feb 26 4:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 26 4:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

# *Supreme Court of Tennessee*

## *Certificate of Good Standing*

I, James M. Hivner, Clerk of the Supreme Court of the State of Tennessee, do hereby certify that

## Hamilton G. Jordan

is a licensed and practicing attorney of the Courts of this State, having been admitted to practice on October 19, 2017, and is presently in good standing. The Supreme Court is the Court of last resort in Tennessee.

In testimony whereof, I have set my hand and affixed the seal of the Court on this the 20th day of December, 2024.

James M. Hivner
Clerk of the Supreme Court of Tennessee

By: *Kim Meador, D.C.*
Kim Meador, D.C.

ELECTRONICALLY FILED - 2025 Feb 27 1:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

STATE OF SOUTH CAROLINA

COUNTY OF GREENWOOD

IN THE COURT OF COMMON PLEAS

FOR THE EIGHTH JUDICIAL CIRCUIT

GREENWOOD COMMISSIONERS OF PUBLIC WORKS,

Plaintiff,

v.

CONE MILLS RECEIVER, LLC *et al.*,

Defendants.

CASE NO. 2024-CP-24-00735

**ORDER GRANTING PRO HAC VICE ADMISSION OF HAMILTON JORDAN**

Having considered the Motion of John B. White, Jr., on behalf of Plaintiff Greenwood Commissioners of Public Works, to admit Hamilton Jordan, of Cory Watson, P.C., 1033 Demonbreun St., #300, Nashville, TN 37203, *pro hac vice*, to appear on behalf of the Plaintiff in the above captioned matter and the Verified Application for Admission *Pro Hac Vice* in support thereof, it is hereby

ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**

ELECTRONICALLY FILED - 2025 Feb 27 1:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735



Greenwood Common Pleas

**Case Caption:**  Greenwood Commissioners Of Public Works VS   Cone Mills
Receiver, Llc , defendant, et al

**Case Number:**  2024CP2400735

**Type:**  Order/Pro Hac Vice


IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760


Electronically signed on 2025-02-27 12:26:53     page 2 of 2

ELECTRONICALLY FILED - 2025 Feb 26 4:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

STATE OF SOUTH CAROLINA

COUNTY OF GREENWOOD

IN THE COURT OF COMMON PLEAS

FOR THE EIGHTH JUDICIAL CIRCUIT

GREENWOOD COMMISSIONERS OF
PUBLIC WORKS,

Plaintiff,

v.

CONE MILLS RECEIVER, LLC *et al.*,

Defendants.

CASE NO. 2024-CP-24-00735

**MOTION FOR PRO HAC VICE
ADMISSION OF HIRLYE RAY
LUTZ, III**

The undersigned local counsel hereby moves, together with the attached Application and Affidavit, that Hirlye Ray Lutz, III of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, be admitted *pro hac vice* in the above captioned matter. As local counsel I understand that:

1.  I will personally sign each pleading, motion, discovery procedure, or other document that I serve or file in this court.

2.  All pleadings and other documents that I file in this case will contain my name, firm name, address, and phone number and those of my associate counsel admitted *pro hac vice*; and service of all pleadings and notices as required shall be sufficient if served upon me, and it is my responsibility to serve my associate counsel admitted *pro hac vice*.

3.  Unless excused by the court, I will be present at all pretrial conferences, hearings, and trials and may attend discovery proceedings. I will be prepared to actively participate, if necessary.

4.  Undersigned counsel hereby certifies that they contacted counsel of record regarding Mr. Lutz's admission and received no objection.

Mr, Lutz is a member in good standing with his local bar association, and the Verified

1

Application for Admission *Pro Hac Vice* in the State of South Carolina setting forth the necessary

information required by Rule 404(d), SCACR, is attached to and incorporated into this motion.

Dated: February 26, 2025

RESPECTFULLY SUBMITTED,

**JOHN B. WHITE JR., PA**

By: *s /John B. White, Jr.*
John B. White, Jr. (SC Bar No. 5996)
Marghretta H. Shisko (SC Bar No. 100106)
Griffin L. Lynch (SC Bar No. 72518)
Christopher R. Jones (SC Bar No. 101265)
291 S. Pine Street
Spartanburg, SC 29302
(864) 594-5988
jwhite@johnbwhitelaw.com
mshisko@johnbwhitelaw.com
glynch@johnbwhitelaw.com
cjones@johnbwhitelaw.com

*Attorneys for Plaintiff*

ELECTRONICALLY FILED - 2025 Feb 26 4:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

2

# EXHIBIT

ELECTRONICALLY FILED - 2025 Feb 26 4:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 26 4:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

## VERIFIED APPLICATION FOR ADMISSION *PRO HAC VICE*
## IN THE STATE OF SOUTH CAROLINA

**Please type your answers in the space provided. Provide an answer for every question asked. In your own handwriting, sign in all spaces where a signature is required (no e-signatures). The accompanying certificate of good standing should not be older than 90 days at the time of the filing of this application.**

| | | |
|---|---|---|
| Greenwood Commissioners of Public Works, <br> Plaintiff | 2024-CP-24-00735 <br> Case No. | In The Court of Common Pleas <br> Eighth Judicial Circuit <br> Tribunal |
| vs. | | |
| | Mailing Address of Tribunal: | |
| Cone Mills Receiver, LLC, et al, <br> Defendant | | 528 Monument Street <br> Greenwood, SC 29646 |

Comes now ___Hirlye Ray Lutz, III___ , applicant herein, and respectfully represents the following:

    1.  Applicant resides at:

███████████

**Street Address**

███████       Jefferson       Alabama       ████

**City**        **County**        **State**        **Zip Code**

███████

**Telephone**

    2.  Applicant is an attorney and a member of the law firm of (or practices law under the name of)
Cory Watson, P.C.   , with offices at

2131 Magnolia Avenue South

**Street Address**

| Birmingham | Jefferson | Alabama | 35205 |
|---|---|---|---|
| **City** | **County** | **State** | **Zip Code** |
| 205-328-2200 | 205-914-1502 | 205-324-7896 | rlutz@corywatson.com |
| **Primary Telephone** | **Cell Phone** | **Fax Number** | **Email Address** |

    3.  Applicant has been retained personally or as a member of the above-named law firm by
___Greenwood Commissioners of Public Works___ to provide legal representation in connection with the above case now pending before the above-named tribunal of the State of South Carolina.

    4.  Since  September 26th of  2006  , Applicant has been, and presently is, a member in good standing of the bar of the highest court of the District of Columbia or the State of
___Alabama___ where Applicant regularly practices law. Attached is a certificate of good standing dated within the last 90 days from the bar of the highest court of the District of Columbia or the State where applicant regularly practices law. It is not necessary to provide a certificate of good standing from all courts before which you are admitted.

*Page 1 of 4*

5.  List all courts before which Applicant has been admitted to practice law, including United States District Courts; United States Circuit Courts of Appeals; the Supreme Court of the United States; and state courts or the District of Columbia.

| Court: | Date Admitted: |
|---|---|
| Alabama Supreme Court | 9/26/2006 |
| United States District Court Northern District of Alabama | 10/19/2006 |
| United States District Court Middle District of Alabama | 10/19/2006 |
| United States District Court Southern District of Alabama | 10/19/20006 |
| United States District Court Western District of Wisconsin | 5/24/2013 |
| United States District Court Southern District of Indiana | 12/16/2011 |
| Please see the attachment below for remaining courts. | |

Is Applicant presently a member in good standing of the bars of those courts listed above? List any court named in the preceding paragraph that applicant is no longer admitted to practice before.

Yes

6.  Is Applicant presently subject to any suspension or disbarment proceedings, or has Applicant been formally notified of any complaints pending before a disciplinary agency?  If yes, give particulars, e.g., jurisdiction, court date.

No

7.  Has Applicant had any application for admission *pro hac vice* in this or any other jurisdiction denied or any *pro hac vice* admission revoked?  If yes give particulars, e.g., date, court, docket number, judge, circumstances; attach a copy of any order of denial or revocation.

No

8.  Has Applicant had any certificate or privilege to appear and practice before any court or administrative body suspended or revoked?  If yes, give particulars, e.g., date, court, administrative body, date of suspension and reinstatement.

No

9.  Please be aware that local counsel must be Rule 403 certified.  Local counsel of record associated

with Applicant in this case is ___John B. White, Jr.___ of the ___John B. White, Jr., P.A.___

law firm, which has offices at:

291 S. Pine Street/ P.O. Box 2465 (29304)
_____
Street Address

| Spartanburg | Spartanburg | South Carolina | 29302 |
|---|---|---|---|
| City | County | State | Zip Code |
| 864-594-5988 | 894-590-8701 | 894-594-5870 | jwhite@johnbwhitelaw.com |
| Primary Telephone | Cell Phone | Fax Number | Email Address |

*Page 2 of 4*

ELECTRONICALLY FILED - 2025 Feb 26 4:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

5996
_____
South Carolina Bar Number
(You must provide Bar Number)

10.     Has Applicant previously filed an application to appear *pro hac vice* in South Carolina cases? If yes, give case name and status of litigation, date of application, local counsel of record in each case, and state whether application is pending or was granted.

| Yes - See Attached Exhibit A |
|---|

11. Does Applicant agree to comply with the applicable statutes, laws and rules of the State of South Carolina and familiarize him/herself with and comply with the South Carolina Rules of Professional Conduct? Does Applicant consent to the jurisdiction of the South Carolina courts and Commission on Lawyer Conduct.

| Yes |
|---|

12. Applicant respectfully requests to be admitted to practice in the above-named tribunal for this case only.

DATED this ____28____ day of ____Jan____, 20 _25_

_____
APPLICANT

ELECTRONICALLY FILED - 2025 Feb 26 4:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

# VERIFICATION

STATE OF ___ALABAMA___ )

COUNTY OF ___JEFFERSON___ )

I, ___HIRLYE RAY LUTZ, III___ , do hereby swear or affirm under penalty of perjury that I am the applicant in the above-styled matter; that I have read the foregoing application and know the contents thereof; and that the contents are true of my own knowledge, except as to those matters stated on information and belief, and that as to those matters I believe them to be true. I understand that I am under a continuing duty to promptly update the information provided in the application until the tribunal has ruled on the motion for admission pro hac vice. Further, if the motion is granted, I understand that I am under a continuing duty to promptly update the information provided in the application as long as I continue to appear pro hac vice in the action or proceeding. Any updated information shall be provided to both the tribunal that granted the motion and to the tribunal in which the action or proceeding may then be pending.

_____
APPLICANT/AFFIANT

Subscribed and sworn to before me this ___26___ day of ___January___, 20 ___25___

_____
(Notary Signature)

Notary Public for the State of ___Alabama___

My Commission Expires: ___9/15/28___

SKYLER VAN LEEMPUT
MY COMMISSION EXPIRES
SEPTEMBER 15, 2028
NOTARY PUBLIC
STATE OF ALABAMA

# LOCAL COUNSEL CONSENT

I hereby consent, as local counsel of record, to the association of applicant in this cause pursuant to Rules Governing Admission *Pro Hac Vice* to the South Carolina Bar.

DATED this ___11th___ day of ___February___, 20 ___25___

_____
LOCAL COUNSEL OF RECORD

# CERTIFICATE OF SERVICE

I hereby certify that I have served a copy of this application upon the South Carolina Supreme Court by mail addressed to: South Carolina Supreme Court Office of Bar Admissions, PO Box 11330, Columbia, SC 29211, accompanied by payment of the $250 filing fee payable to the South Carolina Supreme Court on this ___11th___ day of ___February___, 20 ___25___

_____

*Page 4 of 4*

ELECTRONICALLY FILED - 2025 Feb 26 4:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 26 4:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

**ATTACHMENT TO PRO HAC VICE APPLICATION OF HIRLYE R. LUTZ, III**

| Court | Date Admitted: |
|---|---|
| US Court of Appeals for the 9th Circuit | 12/30/2011 |
| US Court of Appeals for the 11th Circuit | 2/5/2014 |
| US Court of Appeals for the 5th Circuit | 6/30/2015 |

**Exhibit A**

**Application to Appear *Pro Hac Vice* in South Carolina for Hirlye R. Lutz, III**

| Case Name | Status | Date of Application | Local Counsel | Granting/ Pending |
|---|---|---|---|---|
| Woodruff-Roebuck Water District v. AFL Telecommunications, LLC, et al | Active | 7/3/2024 | John B. White | Granted |
| Grand Strand Water and Sewer Authority v. Aladdin Manufacturing Corporation, et al | Active | 8/22/2024 | Marghretta Shisko | Granted |
| Laurens County Water & sewer Commission v. Cone Mills Receiver, LLC, et al | Active | 9/4/2024 | John B. White, Jr. | Granted |
| South Carolina Public Service Authority v. China Jushi USA Corporation, et al | Active | 12/11/2024 | Marghretta Shisko | Granted |
| City of Florence v. Aladdin Manufacturing Corporation | Active | 12/27/2024 | Marghretta Shisko | Granted |
| City of Clinton v. Fibertex Nonwovens, Inc., et al | Active | 1/27/2025 | John B. White, Jr. | Pending |
| City of Union v. Milliken & Company, et al | Active | 1/28/2025 | John B. White, Jr. | Pending |
| The Gaffney Board of Public Works v. Bommer Industries, Inc., et al | Active | 1/28/2025 | John B. White, Jr. | Pending |

ELECTRONICALLY FILED - 2025 Feb 26 4:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 26 4:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

# The Supreme Court of Alabama



## Certificate Of Admission

I, Megan B. Rhodebeck, Clerk of the Supreme Court of Alabama, do hereby certify that _____ **Hirlye Ray Lutz III** _____

was duly and legally admitted to practice law by the Supreme Court of Alabama on _____ September 26, 2006 _____ and is now an attorney in good standing at the Bar of this Court, as shown by the records of said Court on file in this office.

I further certify that the Supreme Court of Alabama is the highest court of record in this State.

Done on _____ December 5, 2024 _____

with the seal of the Supreme Court of Alabama attached.



*Megan B. Rhodebeck*

Megan B. Rhodebeck
Clerk of the Supreme Court of Alabama

ELECTRONICALLY FILED - 2025 Feb 27 1:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

STATE OF SOUTH CAROLINA

COUNTY OF GREENWOOD

IN THE COURT OF COMMON PLEAS

FOR THE EIGHTH JUDICIAL CIRCUIT

GREENWOOD COMMISSIONERS OF
PUBLIC WORKS,

Plaintiff,

v.

CONE MILLS RECEIVER, LLC *et al.*,

Defendants.

CASE NO. 2024-CP-24-00735

**ORDER GRANTING PRO HAC
VICE ADMISSION OF HIRLYE RAY
LUTZ, III**

Having considered the Motion of John B. White, Jr., on behalf of Plaintiff Greenwood Commissioners of Public Works, to admit Hirlye Ray Lutz, III, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, *pro hac vice*, to appear on behalf of the Plaintiff in the above captioned matter and the Verified Application for Admission *Pro Hac Vice* in support thereof, it is hereby

ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**

ELECTRONICALLY FILED - 2025 Feb 27 1:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735



Greenwood Common Pleas

**Case Caption:**  Greenwood Commissioners Of Public Works VS   Cone Mills
Receiver, Llc , defendant, et al

**Case Number:**  2024CP2400735

**Type:**  Order/Pro Hac Vice


IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760


Electronically signed on 2025-02-27 12:27:24    page 2 of 2



# The Supreme Court of South Carolina

## Office of Bar Admissions

PATRICIA A. HOWARD
CLERK OF COURT

KATHLEEN "TINA" BRYANT
MANAGER, OFFICE OF BAR
ADMISSIONS

POST OFFICE BOX 11330
COLUMBIA, SOUTH CAROLINA 29211
TELEPHONE: (803) 734-1317
FAX: (803) 734-0394

February 18, 2025

The Honorable Chastity Copeland
Clerk of Court
528 Monument Street
Room #114
Greenwood, SC 29646

RE:    Greenwood Commissioners of Public Works v. Cone Mills Receiver, LLC, et al.

    Case No.:  2024-CP-24-00735

Dear Ms. Copeland:

I certify that the Office of Bar Admissions has received the verified application requesting Hamilton Jordan be admitted *pro hac vice* in the above action. The $250 filing fee for the applicant has been paid.

Sincerely,

M.J. Thames
Bar Admissions Coordinator

cc:    Hamilton Jordan
       John B. White, Jr.

ELECTRONICALLY FILED - 2025 Feb 26 4:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735



# The Supreme Court of South Carolina

## Office of Bar Admissions

PATRICIA A. HOWARD
CLERK OF COURT

KATHLEEN "TINA" BRYANT
MANAGER, OFFICE OF BAR
ADMISSIONS

POST OFFICE BOX 11330
COLUMBIA, SOUTH CAROLINA 29211
TELEPHONE: (803) 734-1317
FAX: (803) 734-0394

February 18, 2025

The Honorable Chastity Copeland
Clerk of Court
528 Monument Street
Room #114
Greenwood, SC 29646

RE:    Greenwood Commissioners of Public Works v. Cone Mills Receiver, LLC, et al.

Case No.:  2024-CP-24-00735

Dear Ms. Copeland:

I certify that the Office of Bar Admissions has received the verified application requesting Hirlye Ray Lutz III be admitted *pro hac vice* in the above action. The $250 filing fee for the applicant has been paid.

Sincerely,

M.J. Thames
Bar Admissions Coordinator

cc:    Hirlye Ray Lutz III
       John B. White, Jr.



# The Supreme Court of South Carolina

## Office of Bar Admissions

PATRICIA A. HOWARD
CLERK OF COURT

KATHLEEN "TINA" BRYANT
MANAGER, OFFICE OF BAR
ADMISSIONS

POST OFFICE BOX 11330
COLUMBIA, SOUTH CAROLINA 29211
TELEPHONE: (803) 734-1317
FAX: (803) 734-0394

February 18, 2025

The Honorable Chastity Copeland
Clerk of Court
528 Monument Street
Room #114
Greenwood, SC 29646

RE:    Greenwood Commissioners of Public Works v. Cone Mills Receiver, LLC, et al.

       Case No.:  2024-CP-24-00735

Dear Ms. Copeland:

I certify that the Office of Bar Admissions has received the verified application requesting Robert Akira Watson be admitted *pro hac vice* in the above action. The $250 filing fee for the applicant has been paid.

Sincerely,

M.J. Thames
Bar Admissions Coordinator

cc:    Robert Akira Watson
       John B. White, Jr.

ELECTRONICALLY FILED - 2025 Feb 26 4:19 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

ELECTRONICALLY FILED - 2025 Feb 27 1:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF GREENWOOD | FOR THE EIGHTH JUDICIAL CIRCUIT |

GREENWOOD COMMISSIONERS OF
PUBLIC WORKS,

CASE NO. 2024-CP-24-00735

Plaintiff,

v.

CONE MILLS RECEIVER, LLC *et al.*,

**ORDER GRANTING PRO HAC
VICE ADMISSION OF HAMILTON
JORDAN**

Defendants.

Having considered the Motion of John B. White, Jr., on behalf of Plaintiff Greenwood Commissioners of Public Works, to admit Hamilton Jordan, of Cory Watson, P.C., 1033 Demonbreun St., #300, Nashville, TN 37203, *pro hac vice*, to appear on behalf of the Plaintiff in the above captioned matter and the Verified Application for Admission *Pro Hac Vice* in support thereof, it is hereby

ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**

ELECTRONICALLY FILED - 2025 Feb 27 1:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735



Greenwood Common Pleas

**Case Caption:**   Greenwood Commissioners Of Public Works VS   Cone Mills
                    Receiver, Llc , defendant, et al

**Case Number:**   2024CP2400735

**Type:**          Order/Pro Hac Vice

IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760

Electronically signed on 2025-02-27 12:26:53     page 2 of 2

ELECTRONICALLY FILED - 2025 Feb 27 1:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

STATE OF SOUTH CAROLINA

COUNTY OF GREENWOOD

IN THE COURT OF COMMON PLEAS

FOR THE EIGHTH JUDICIAL CIRCUIT

GREENWOOD COMMISSIONERS OF
PUBLIC WORKS,

Plaintiff,

v.

CONE MILLS RECEIVER, LLC *et al.*,

Defendants.

CASE NO. 2024-CP-24-00735

**ORDER GRANTING PRO HAC
VICE ADMISSION OF HIRLYE RAY
LUTZ, III**

Having considered the Motion of John B. White, Jr., on behalf of Plaintiff Greenwood Commissioners of Public Works, to admit Hirlye Ray Lutz, III, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, *pro hac vice*, to appear on behalf of the Plaintiff in the above captioned matter and the Verified Application for Admission *Pro Hac Vice* in support thereof, it is hereby

ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**

ELECTRONICALLY FILED - 2025 Feb 27 1:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735



Greenwood Common Pleas

**Case Caption:**    Greenwood Commissioners Of Public Works VS   Cone Mills
                     Receiver, Llc , defendant, et al

**Case Number:**     2024CP2400735

**Type:**            Order/Pro Hac Vice

IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760

Electronically signed on 2025-02-27 12:27:24    page 2 of 2

ELECTRONICALLY FILED - 2025 Feb 27 1:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735

| | |
|---|---|
| STATE OF SOUTH CAROLINA | IN THE COURT OF COMMON PLEAS |
| COUNTY OF GREENWOOD | FOR THE EIGHTH JUDICIAL CIRCUIT |

GREENWOOD COMMISSIONERS OF
PUBLIC WORKS,

　　　　　　　　　　　Plaintiff,

　　　v.

CONE MILLS RECEIVER, LLC *et al.*,

　　　　　　　　　　　Defendants.

CASE NO. 2024-CP-24-00735

**ORDER GRANTING PRO HAC VICE ADMISSION OF ROBERT AKIRA WATSON**

　　　Having considered the Motion of John B. White, Jr., on behalf of Plaintiff Greenwood Commissioners of Public Works, to admit Robert Akira Watson, of Cory Watson, P.C., 2131 Magnolia Avenue South, Birmingham, Alabama 35205, *pro hac vice*, to appear on behalf of the Plaintiff in the above captioned matter and the Verified Application for Admission *Pro Hac Vice* in support thereof, it is hereby

　　　ORDERED that said motion is granted.

**(Judicial E-Signature to Follow)**



Greenwood Common Pleas

**Case Caption:**     Greenwood Commissioners Of Public Works VS   Cone Mills Receiver, Llc , defendant, et al

**Case Number:**     2024CP2400735

**Type:**     Order/Pro Hac Vice


IT IS SO ORDERED.

S/GRACE GILCHRIST KNIE - 2760


Electronically signed on 2025-02-27 12:26:23     page 2 of 2

ELECTRONICALLY FILED - 2025 Feb 27 1:04 PM - GREENWOOD - COMMON PLEAS - CASE#2024CP2400735